1 GREENBERG TRAURIG, LLP
  IAN C. BALLON (SBN 141819)
2 WENDY M. MANTELL (SBN 225544)
  LORI CHANG (SBN 228142)
3 2450 Colorado Avenue, Suite 400E
  Santa Monica, CA 90404
4 Telephone: (310) 586-7700
  Facsimile: (310) 586-7800
5 Email: ballon@gtlaw.com, mantellw@gtlaw.com
6
  Attorneys for Defendants,
7 Rapidshare AG, Christian Schmid, and Bobby Chang
8
                 UNITED STATES DISTRICT COURT
9
              SOUTHERN DISTRICT OF CALIFORNIA
10

11 PERFECT 10, INC., a California        CASE NO. 09 CV 2596 H (WMC)
12 corporation,
                                          **DECLARATION OF DR. BURKHARD
13           Plaintiff,                    HESS**
14
                                          DATE:     May 10, 2010
15     v.                                 TIME:     10:30 a.m.
                                          CTRM:     13
16 RAPIDSHARE A.G., a corporation,        JUDGE:    Hon. Marilyn L. Huff
   CHRISTIAN SCHMID; BOBBY
17 CHANG; and DOES 1 through 100,         DATE FILED:
18 inclusive,                             TRIAL DATE:    None Set
19           Defendants.
20
21
22
23
24
25
26
27
28

─────────────────────────────────────────
              DECLARATION OF DR. BURKHARD HESS

1    I, Dr. Burkhard Hess, declare:

2        1.    I am a professor ordinarius of the Faculty of Law, University of Heidelberg,
3   and Director of the Institute for Private International and Economic Law at Heidelberg
4   University since 2003. Since January 2009, I have been serving as a judge (part-time) at
5   the Karlsruhe Court of Appeal. In fall 2009, I was a Visiting Professor of Law at
6   Georgetown University Law Center in Washington D.C where I taught a course titled
7   "International Civil Litigation:  Current Issues and Trends in the United States and in
8   Europe". This course specifically addressed judicial conflicts between Europe and the
9   U.S. in international jurisdiction and judicial cooperation, and covered specific topics
10  such as IP litigation.

11       2.    I have written several books and articles on private international and
12  comparative law, civil procedure and European law. Inter alia, I am co-editor of the most
13  comprehensive a commentary on the German Master Proceedings Act *Kapitalanleger–*
14  *Musterverfahrensgesetz*- the German Act on Collective Redress in Securities Litigation
15  (2007). Recently, I published an article in a volume on the Google-Book Search
16  settlement currently pending in the U.S. D.C. of the Southern District of New York, see
17  Hess: Das Google Booksearch Settlement, in: Reuss/Rieble, Autorenschaft als
18  Werkherrschaft (2009), pg. 66 -89.

19       3.    My main scientific activities relate to the harmonization of European
20  procedural law, transnational (collective) litigation, arbitration, mediation and the
21  enforcement of judgments.

22       4.    Besides my academic activities I have regularly served as a legal adviser and
23  court expert in foreign law, private and public international law, and transnational
24  litigation. I have particularly focused on European procedural law, transnational
25  litigation, and the enforcement of judgments.

26       5.    Under the German academic system, I completed a habilitation in law (Dr.
27  jur. habil), which is the equivalent of a senior doctorate in law, at the University of
28  Munich in 1996. I was a professor at the University of Erlangen-Nuremberg, Germany,

from 1995 to 1996. From 1996 to 2003, I was a professor ordinarius of the Faculty of Law at the University of Tuebingen, Germany, and was Dean of the Faculty of Law from 2000 to 2002.. I was also a visiting professor at Renmin University of Beijing, China, in August 2002. From 2006 to 2009, I was a guest professor at the University of Paris I (Sorbonne). Prior to my current position, I was Dean of the Heidelberg University Faculty of Law from 2006 to 2008.

6. I am the President of the German Association of International Procedural Law and member of the boards of various international law associations, as well as a member of the Advisory Board on Private International Law at the German Federal Ministry of Justice.

7. A true and correct copy of my current *curriculum vitae* is attached hereto as Exhibit 1.

8. For the purpose of this declaration, I have examined the complaint filed by Perfect10, Inc. in this matter and can confirm, as set forth below that the types of claims asserted therein are similar to claims that could be asserted under German law.

9. I am not representing Rapidshare as a lawyer and I have no interest in the outcome of the proceedings.

10. The U.S. and Germany are parties to the Berne Convention for the Protection of Literary and Artistic Works (the "Berne Convention"). The Berne Convention for the Protection of Literary and Artistic Works was first signed on September 9, 1886 and entered into force on December 5, 1887. Germany was among the first signatories in 1886. The Convention has since undergone seven principal revisions, the most recent being the Paris Revision signed on July 24, 1971 with entry into force on October 10, 1974. The Berne Convention now counts 164 countries as contracting parties with the United States joining as of March 1, 1989. Under Article 5 of the Berne

Convention, the holders of copyrights are entitled to vindicate their rights in all Contracting States like the holders of the equivalent rights in the respective states. A similar entitlement is derived from the TRIPS Agreement which was ratified by Germany and the U.S. in 1995 Accordingly, American copyright holders are entitled to vindicate the protection of their rights under the German Copyright Act. The pertinent provisions in this respect are Sections 2, 15 and 97 of the German Copyright Act of 9 September 1969.

11.    Under Section 2 of the German Copyright Act, the protected copyrights include "photographic works" which include photographs and films (no. 5). According to Section 15 of the Copyright Act the holder disposes especially of the exclusive rights of exploitation which comprise:   1. the right of reproduction (Article 16); 2. the right of distribution (Article 17); 3. the right of exhibition (Article 18). According to Section 15 (2) of the Act, the author is entitled to the exclusive right to communicate his work to the public in non-material form (so-called right of communication to the public).

12.    Any infringement of a copyright entails actions for injunction and damages under Section 97 of the Act. This provision reads as follows:[1]

*(1) As against any person who infringes a copyright or any other right protected by this Law, the injured party may bring an action for injunctive relief requiring the wrongdoer to cease and desist if there is a danger of repetition of the acts of infringement.*

*(2) If the infringement was intentional or the result of negligence, the infringer must compensate the damages to the injured party. In place of damages, the injured party may require surrender of the profits derived by the infringer from the acts of infringement. The claim for damages may be set as a lump sum on the basis of elements such as at least the amount of royalties or fees which would have been due if the infringer had requested authorisation to use the intellectual property right in question. Authors, including of scientific editions (Article 70), photographers (Article 72) and performers (Article 73)*

---

[1] Unofficial translation.

3

DECLARATION OF DR. BURKHARD HESS

1 | *may, if the infringement was intentional or the result of negligence, recover, as justice*
2 | *may require, a monetary indemnity for the injury caused to them even if no pecuniary*
3 | *loss has occurred.*

4 | 13. Accordingly, the holders of an U.S. copyright under 17 U.S.C. § 106 are by
5 | Article 5 of the Berne Convention protected in the same way as German holders of
6 | copyrights. They may assert damages and/or an injunction against the alleged infringer.
7 | This legal entitlement has been affirmed constantly by the case-law of German courts,
8 | see German Federal Court of Justice, *Bundesgerichtshof*, 4/29/1999, BGHZ[2] 141, 267,
9 | 271; 6/17/1992, BGHZ 118, 395, 396 (ALF - this case concerned an American plaintiff).

10 | 14. As far as photographs are concerned, the Berne Convention does not apply
11 | to non-artistic photos (see Schack, *Urheber und Verlagsrecht*, 4th ed. 2007, para 840;
12 | Court of Appeal Frankfurt, GRURInt. 1993, 872). However, as far as I understand
13 | (without verifying it in detail) Perfect10 is offering artistic photographs. Such artistic
14 | photographs are protected by the Berne Convention and correspondingly by the German
15 | Copyrights Act (see Schack, *Urheber und Verlagsrecht*, 4th ed. 2007, para 840). As a
16 | result, it can be stated that Perfect10 may assert the same copyright claims under German
17 | law in German courts as a German photographer or holder of a license of a German
18 | professional photographer.

19 | 15. As explained above (para 12), Section 97 of the German Copyright Act
20 | entitles the holder of an infringed copyright for money damages and for injunctive relief.
21 | Under Section 97 of the Copyright Act, the holder of an infringed copyright and the
22 | licensee may seek pecuniary damages from the infringer. This claim comprises all
23 | material losses sustained by the infringement, including actual losses and loss of profits.
24 | Although German law does not provide for punitive damages, the legal position of the
25 | infringed copyright holder has been improved considerably recently: According to new
26 | section 97 (2) of the Copyright Act (in force since 2008), the infringed party may choose
27 |
28 |

---

[2] Entscheidungen des Bundesgerichtshofs in Zivilsachen – Official Reports of the Federal Court of Justice.

DECLARATION OF DR. BURKHARD HESS

between the compensation of the actual damage and the surrender of the profits derived by the infringer from the acts of infringement. Finally, even if the injured party has not sustained tangible losses, the party may seek non-pecuniary compensation from the infringer if its personality rights have been infringed, see German Federal Court of Justice *Bundesgerichtshof*, 12/1/1999, NJW 2000, 2195 et seq. (*Marlene Dietrich* case). Injunctive relief includes an action for cease and desists. In addition, provisional relief is available in the case of urgency and may be granted *ex parte*.

16.    German Courts will hear any claim brought by an U.S. company based on the infringement of copyrights protected by the Berne Convention. Jurisdiction against a German defendant may be asserted either at the defendant's seat or at the place where the harmful event occurred. It is my understanding that Rapidshare is a Swiss company operating file servers in Germany. According to Article 4 of the Lugano Convention of 16 September 1988 on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters (Official Journal of the European Union 1988, no L 319, p. 9-33) the jurisdiction of German courts for alleged infringements of copyrights must be based on the Lugano Convention. The pertinent head of jurisdiction is found in Article 5 no. 3 of the Lugano Convention. This article reads as follows: *"A person domiciled in a Contracting State may, in another Contracting State be sued (...) in matters relating to tort, delict or quasi-delict, in the courts for the place where the harmful event occurred."* As far as downloads take place from servers located in Germany, German courts have jurisdiction under Article 5 no 3 Lugano Convention, *Bundesgerichtshof*, 10/13/2004, NJW 2004, 1434. Accordingly, the jurisdiction of the German courts over the Swiss defendant can be based on Article 5 no 3 of the Lugano Convention. Subject matter jurisdiction lies with the District Courts (*Landgerichte*) if the value of the asserted claim exceeds 5000 Euro.

17.    It should be noted that the German litigation system works in general efficiently: According to the Federal statistic, the average duration of a lawsuit at district courts is 7 months, see Federal Statistics Agency, Report on the Civil Judiciary 2009,

Fachserie 10, Reihe 2.1, p. 26. When the parties conclude a settlement in the hearings the average duration of the proceedings is even shorter, as German courts normally schedule hearings within a period of time between two and four months. Any judgment given by a civil court is immediately fully enforceable, even if an appeal is filed. Settlements approved by the courts are equally enforceable titles under German law.

18. The recognition and enforcement of U.S. judgments in Germany is not governed by the Lugano Convention[3], but by sections 328 and 722 *Zivilprozessordnung* (Code of Civil Procedure, CCP). Under these provisions, the recognition of foreign judgments is the rule, the non-recognition the exception. However, foreign judgments are not afforded *res judicata* effect if any of the exceptions enumerated by section 328 CCP applies. Section 328 CCP reads as follows[4]:

*(1) The recognition of the judgment of a foreign court shall be excluded:*

*1. If the courts of the state to which the foreign court belongs have no jurisdiction in accordance with the German laws;*

*2. If the defendant, who has not pleaded with regard to the proceedings and claims relief by reason of this circumstance, was not properly served with the written document initiating the proceedings or was not served with the document in such a timely manner that he was able to defend himself;*

*3. If the judgment is irreconcilable with a judgment given in Germany or with an earlier foreign judgment to be recognized or if the proceedings on which the judgment is based are irreconcilable with proceedings having become pending in Germany at an earlier time;*

*4. If the recognition of the judgment leads to a result which would be manifestly irreconcilable with material principles of German law, in particular, if the recognition would be inconsistent with the fundamental rights; [and]*

---

[3] The Lugano Convention only applies to the recognition and enforcement of judgments of the courts of other Contracting Parties. Contracting Parties are the 27 EU Member States and Iceland, Norway and Switzerland.

[4] Unofficial translation.

1    *5. If reciprocity is not guaranteed.*

2       19.   The legal procedure for the recognition of foreign judgments is governed by
3 sections 722 and 723 CCP. According to these sections, a creditor who seeks the
4 recognition of a foreign judgment must initiate separate legal proceedings for the
5 recognition of the foreign judgment or *title*. The judgment of the German court declaring
6 the foreign judgment enforceable will assimilate the foreign judgment to a final German
7 judgment.

8       20.   In the present case, the judgment of an American court would probably be
9 recognised in Germany, unless the taking of evidence does not respect German public
10 policy (Section 328 (1) no. 4 CCP). Extensive pre-trial discovery (including fishing
11 expeditions for (electronic) documents located on German territory and the taking of
12 depositions on German territory) may be considered as an infringement of the German
13 sovereignty and be qualified as a violation of public policy. In addition, according to the
14 case law of the Federal Court of Justice, foreign judgments for punitive damages are not
15 recognized in Germany, *Bundesgerichtshof,* 6/4/1992, BGHZ[5] 118, 312; 4/29/1999,
16 BGHZ 141, 286. The same considerations are applied to multiple damages under the
17 American copyright law, see Federal Constitutional Court, (*Bundesverfassungsgericht*)
18 7/25/2003, Juristenzeitung 2003, 956, 957. Finally, John Doe actions will not be
19 recognized in Germany, as these actions are not compatible with the fundamental
20 principle of German procedural law according to which the parties of an action must be
21 clearly determined in order to guarantee the constitutional right to be heard.

22       21.   Trademarks are protected by the German Act on Trademarks of 24 October
23 1994. Sections 14 and 15 of the Trademark Act entitle the owner of a trademark to
24 injunctive relief and money damages. These remedies closely follow the pattern of the
25 Copyright Act. Since 2008, the Trademark Act grants the holder of a trademark far
26 reaching rights for information against any potential infringer. As the United States of

27

28

---

[5] Entscheidungen des Bundesgerichtshofs in Zivilsachen – Official Reports of the Federal Court of Justice.

7

DECLARATION OF DR. BURKHARD HESS

America and Germany are both contracting parties of the Paris Convention for the Protection of Industrial Property of March 20th, 1883 as well as the TRIPS Agreement, the holders of American trademarks can assert similar claims for damages and injunctive relief before German courts. As a result, their legal protection largely corresponds to the protection under the Copyright Act.

22.     Additional protection is provided for under the German Act against Unfair Competition. Section 3 of the act provides for a general prohibition of unfair commercial practices in order to protect the rights and interests of the competitors. Accordingly, an unlawful exploitation of the plaintiff's IP rights may entail a cause of action under sections 8 and 9 of the Act against Unfair Competition. According to Section 8, the plaintiff may assert an injunction for cease and desist – provisional relief is equally available in case of an imminent infringement. Section 9 of the Act gives a comprehensive right for monetary compensation. However, it should be noted that the German Act against Unfair Competition does not apply to any infringement of a copyright or a trademark. According to the constant case law of German courts, IP-rights are mainly protected by specific legislation (Copyright Act; Trademark Act), although the prohibition of unfair competition mainly applies to unlawful behavior within the market, *Bundesgerichtshof*, 11/22/2001, GRUR 2002, 623 (*shell.de*); see Ahrens, *Gewerblicher Rechtsschutz* (2008), para 558. As a result it can be stated that under German law plaintiffs will mainly base their claims on sections 97 of the Copyright Act and section 15 of the Trademark Act.

23.     Although German procedural law does not provide for pretrial discovery proceedings comparable to pretrial discovery in the United States, a party is permitted to obtain certain documents under appropriate circumstances. As a minimum threshold requirement, it must be shown that the document requested is directly relevant for the case to be decided. The addressee of such order is obliged to produce the document requested unless he can assert certain privileges (like the attorney client privilege). See Murray and Stürner, *German Civil Practice* (2004), pg. 239 – 245.

24.     In addition, German procedural law also provides for the examination of witnesses and court experts who are normally interrogated by the courts. However, the court may equally permit the parties to examine the witnesses and the experts directly. Witnesses and experts are obliged to appear in court and to testify. As a matter of principle, the court may summon the witnesses and court experts to appear in the hearing and to testify, see Murray and Stürner, *German Civil Practice* (2004), pg. 272 – 306.

25.     In addition, Germany recently implemented the EU Enforcement Directive and improved its procedural system on the obtaining of evidence in litigation with regard to intellectual property. The new system is drafted according to the model of the European Enforcement Directive which implements the TRIPS Agreement. According to section 101 of the German Copyright Act, the owner of a copyright disposes of far reaching rights for information: In the context of proceedings concerning an infringement of an intellectual property right, the claimant may seek the competent judicial authorities to order that the infringer or any third party gives information on the origin and distribution networks of the goods or services which infringe an intellectual property right unless these persons (a) were found in possession of the infringing goods on a commercial scale; (b) were found to be using the infringing services on a commercial scale; (c) were found to be providing on a commercial scale services used in infringing activities; or were (d) indicated by the person referred to in point (a), (b) or (c) as being involved in the production, manufacture or distribution of the goods or the provision of the services. According to Section 101 (3) of the Copyright Act the right for information comprises (a) the names and addresses of the producers, manufacturers, distributors, suppliers and other previous holders of the goods or services, as well as the intended wholesalers and retailers; (b) information on the quantities produced, manufactured, delivered, received or ordered, as well as the price obtained for the goods or services in question. In addition, the owner of the copyright may seek this information by provisional relief. If the requested does not answer to the request comprehensively and correctly, he or she must compensate any damage resulting from the misinformation.

26.     Recent case law of German civil courts demonstrates that the new provisions are applied frequently and efficiently. The owner of a copyright may seek the relevant information from an internet provider and any person operating websites allegedly involved in copyright infringements. See for instance: District Court Cologne, 12/17/2008, Multimedia und Recht 2009, 489; Court of Appeal Cologne, 2/9/2009, Multimedia und Recht 2009, 334; Court of Appeal Zweibrücken, 10/27/2008, Multimedia und Recht 2009, 43, generally: Hoffmann, *Das Auskunftsverfahren nach § 101 Abs. 9 UrhG n.F.*, Multimedia und Recht 2009, 655.

27.     Similar legal provisions aimed at the protection of the holders of trademarks are equally found in the Law on the Protection of Trademarks, see sections 19 and 19a of the German Act on the Protection of Trademarks.

28.     To my knowledge, American holders of IP rights are similarly protected in Switzerland.

29.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 22, 2010, in Heidelberg, Germany.

DR. BURKHARD HESS

10

DECLARATION OF DR. BURKHARD HESS

EXHIBIT

**Prof. Dr. Burkhard Hess**

**Curriculum Vitae**

Born in 1961 in Worms, Germany; current position: Professor ordinarius of the Faculty of Law, University of Heidelberg, Germany, and Director of the Institute for Private International and Economic Law since 2003; Dean of the Faculty of Law, University of Heidelberg, from 2006 - 2008. Guest professor (professeur invité) at the University of Paris I (Sorbonne) since 2006; judge in secondary appointment at the higher regional court Karlsruhe since February 2009; Guest professor at the University of Georgetown (Washington D.C.) in September 2009. Professor ordinarius of the Faculty of Law, University of Tuebingen, Germany, from 1996 - 2003; Dean of the Faculty of Law, University of Tuebingen, from 2000 - 2002. Guest professor (Comparative Procedural Law) of the Faculty of Law, Renmin University of Beijing, China, in August 2002. Professor at the University of Erlangen-Nuremberg, Germany, from 1995 - 1996.

Dr. jur. habil. (Munich 1996); venia legendi in Civil Law, Civil Procedural Law, International Private and Procedural Law, European Law and Public International Law; Assistant Professor to Prof. Dr. Peter Schlosser (University of Munich) from 1988-1995; Second Legal State Exam in 1992; Dr. jur. (Munich 1990); First Legal State Exam in 1987 (with distinction); Assistant to Prof. Dr. B. Simma (University of Munich, now The Hague) in 1987; studies in law at the Universities of Wuerzburg, Germany, Lausanne, Switzerland, Munich, Germany from 1981-1986.

Prof. Hess wrote many books and articles on private international and comparative law, civil procedure and European law. His main activities relate to the harmonisation of European procedural law, transnational (collective) litigation, mediation and the

11

DECLARATION OF DR. BURKHARD HESS

enforcement of judgments. Prof. Hess regularly serves as a legal adviser and as court expert for foreign law, private and public international law and transnational litigation.

In January 2003, Prof. Hess acted as head of a German delegation for the reform of Chinese enforcement law in Bejing, China; he was invited by the Dutch government in September 2003 as an expert of the Council of Europe on the "efficiency of justice"; and in 2005 by the Slovenian and Croatian governments. In 2003, the European Commission, Unit A3, entrusted Prof. Hess with the elaboration of a comparative study on "Making more efficient the enforcement of judgments in Europe" (Study No. JAI/A3/2002/02). The study is available at:

http://europa.eu.int/comm/justice_home/doc_centre/civil/studies/doc/enforcement_ju dicial_decisions_180204_en.pdf.

In 2005, Prof. Hess was entrusted by the EU-Commission (together with Prof. T. Pfeiffer and P. Schlosser) with the evaluation of the application of the Regulation 44/01 (Brussels I) in the 25 Member States of the European Union (Study No CLS04/2005/03). This study is available at: http://ec.europa.eu/civiljustice/news/docs/study_application_brussels_1_en.pdf.

He is president of the German Association of International Procedural Law; member of the International Association of Procedural Law, the International Law Association (German branch) and member of the ILA-Committee on International Litigation and the Public Interest, member of the German Associations of Procedural Law, Civil Law and of International Law; member of the Advisory Board on Private International Law at the German Federal Ministry of Justice (Deutscher Rat für Internationales Privatrecht).