GREENBERG TRAURIG, LLP
IAN C. BALLON (SBN 141819)
WENDY M. MANTELL (SBN 225544)
LORI CHANG (SBN 228142)
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404
Telephone: (310) 586-7700
Facsimile: (310) 586-7800
Email: ballon@gtlaw.com, mantellw@gtlaw.com,
changl@gtlaw.com

Attorneys for defendants
Rapidshare AG, Christian Schmid, and Bobby Chang

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>RAPIDSHARE A.G., a corporation, CHRISTIAN SCHMID; BOBBY CHANG; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. 09 CV 2596 H (WMC)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR *FORUM NON CONVENIENS***<br><br>[Filed concurrently with Notice of Motion and Motion; Declarations of L. Pfaff, D. Raimer, B. Hess, and L. Chang]<br><br>DATE:     May 10, 2010<br>TIME:     10:30 a.m.<br>CTRM:     13<br>JUDGE:     Hon. Marilyn L. Huff<br><br>DATE FILED:     November 18, 2009<br>TRIAL DATE:     None Set |

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................. 1

II.  STATEMENT OF FACTS ................................................................................... 3

    A.   Defendants Are Subject To Jurisdiction In Switzerland And/Or
        Germany. ................................................................................................... 4

    B.   The Witnesses And Documents Are Also Located In
        Switzerland And Germany. ....................................................................... 4

    C.   Perfect 10 Does Not Allege That Any Of The Infringing
        Activities Occurred In California. .............................................................. 7

    D.   Switzerland And Germany Have A Modern Rule-Based
        Judicial System With Laws That Protect Intellectual Property
        Rights. ....................................................................................................... 7

III. ARGUMENT ...................................................................................................... 10

    A.   Legal Standard ........................................................................................ 10

        1.   An adequate alternative forum exists if it can assert
              jurisdiction over the defendant and provide some form of
              remedy for the plaintiff. .............................................................. 11

        2.   A plaintiff's choice of forum is not dispositive if the
              balance of convenience weighs in favor of dismissal. ...................... 12

    B.   Switzerland And Germany Are Adequate Alternative Forums ................... 12

        1.   Switzerland ................................................................................. 13

        2.   Germany ..................................................................................... 15

    C.   The Balance Of Private And Public Interest Factors Favor
        Dismissal. ................................................................................................ 17

        1.   Private interest factors favor a European forum. ............................... 17

        2.   Public interest factors also favor dismissal. .......................... 21

IV.  CONCLUSION ................................................................................................. 24

i

# TABLE OF AUTHORITIES

**Federal Cases**

*Creative Tech., Ltd. v. Aztech Sys. PTE, Ltd.*,
   61 F.3d 696 (9th Cir. 1995) ............................................................... passim

*Facebook, Inc. v. StudiVZ Ltd.*,
   No. C 08-3468 JF (HRL), 2009 WL 1190802, at *3 (N.D. Cal. May 4, 2009) 11, 15, 24

*Gardner v. Nike, Inc.*,
   279 F.3d 774 n.4 (9th Cir. 2002) ............................................................ 5

*Gemini Capital Group, Inc. v. Yap Fishing Corp.*,
   150 F.3d 1088 (9th Cir. 1998) ............................................................. 22

*Graf von Spee v. Graf von Spee*,
   514 F. Supp. 2d 302 (D. Conn. 2007) .................................................. 15

*I.A.E., Inc. v. Shaver*,
   74 F.3d 768 (7th Cir. 1996) ................................................................... 5

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*,
   153 F.3d 82 (2d Cir. 1998) ................................................................... 23

*Lockman Found. v. Evangelical Alliance Mission*,
   930 F.2d 764 (9th Cir. 1991) ..................................................... 10, 11, 24

*Loya v. Starwood Hotels & Resorts Worldwide, Inc.*,
   583 F.3d 656 (9th Cir. 2009) ............................................................... 21

*Lueck v. Sunstrand Corp.*
   236 F.3d 1137 (9th cir. 2001) ...................................................... 10, 17, 21

*Medicor AG v. Arterial Vascular Engineering*,
   No. 97-15465, 141 F.3d 1177, 1998 WL 133254, at *1 (9th Cir. Mar. 19, 1998).. 18, 23

*Merino v. U.S. Marshal*,
   326 F.2d 5 (9th Cir. 1963) .................................................................... 20

*Mizokami Bros. of Ariz., Inc. v. Baychem Corp.*,
    556 F.2d 975 (9th Cir. 1977) ............................................................... 12, 22

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ................................................................. 1

*Perfect 10, Inc. v. CCBill, LLC*,
    488 F.3d 1102 (9th Cir.)**,** *cert. denied*, 128 S. Ct. 709 (2007)........................ 1

*Perfect 10, Inc. v. VISA Int'l Service Ass'n*,
    494 F.3d 788 (9th Cir. 2007), *cert. denied*, 128 S. Ct. 2871 (2008)............................ 1

*Peter Starr Prod. Co. v. Twin Continental Films, Inc.*,
    783 F.2d 1440 (9th Cir. 1986) ............................................................... 22

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981) ....................................................................... 11, 12

*Sarandi v. Breu*,
    2009 WL 2871049, at *8 (N.D. Cal. Sept. 2, 2009) ................................ 22, 23

*Subafilms, Ltd. v. MGM-Pathe Communications Co.*,
    24 F.3d 1088 (9th Cir. 1994) ............................................................... 22

*UMG Recordings, Inc. v. Veoh Networks, Inc.*,
    665 F. Supp. 2d 1099 (C.D. Cal. 2009) ..................................................... 3

*Vivendi SA v. T-Mobile USA Inc.*,
    586 F.3d 689 (9th Cir. 2009) .............................................................. 18, 20

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
    433 F.3d 1199 (9th Cir. 2006) ............................................................... 19

**Federal Statutes**

17 U.S.C. § 106 ............................................................................. 13

**Federal Rules**

Fed. R. Civ. P. 45 ........................................................................... 20

**Other Authorities**

4 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright* §§ 17.01, 17.05 ........ 13

6 *Moore's Federal Practice* § 28.12 ................................................................. 20

17 *Moore's Federal Practice* § 111.74 ............................................................. 21

Dr. Adolf Dietz, *Germany*, in International Copyright Law And Practice (Paul Edward
    Geller ed., Lexis Nexis 2009) ....................................................... 12, 13, 15

Francois Dessemontet, *Switzerland*, in International Copyright Law And Practice (Paul
    Edward Geller ed., Lexis Nexis 2009)............................................. 12, 13, 14

German Copyright Act of September 9, 1969........................................... 15, 16

*Recognition and Enforcement of Foreign Money Judgments* (2002) .............................. 19

iv

## I.   INTRODUCTION

This is a case involving conduct in Europe that has little or no connection to the Southern District of California.  Plaintiff Perfect 10, Inc., a Beverly Hills pornography company best known for largely losing a series of very aggressive copyright infringement suits in the Central District of California brought against Visa, MasterCard, Google, Amazon.com, and others,[1] has decided to switch venues to San Diego to sue RapidShare AG ("RapidShare"), a Swiss company, and two of its executives, Christian Schmid and Bobby Chang, who are German citizens and residents of Switzerland, alleging that unauthorized naked photos of Perfect 10's models (mostly young Eastern European models whose photographs in many cases were taken by a photographer based on Europe) were posted by third parties on RapidShare's website in Germany.  RapidShare's sole place of business is in Cham, Switzerland.  It has no physical presence in the United States, owns no property here, and all witnesses and evidence about RapidShare are in Switzerland or Germany.  Similarly, all RapidShare employees, as well as its main

---

[1]  In *Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146 (9th Cir. 2007), the Ninth Circuit ruled that Perfect 10 could not maintain suits for direct infringement against Google and Amazon.com, leaving open only a narrow issue involving whether Google and Amazon.com might be held liable for contributory infringement if they had knowledge that infringing Perfect 10 images were made available through use of its search engine, could have taken simple, inexpensive steps to deter infringement, and did not do so.  *Id.,* 508 F.3d at 1168, 1172 and 1176.  Similarly, in *Perfect 10, Inc. v. CCBill, LLC,* 488 F.3d 1102 (9th Cir.), *cert. denied,* 128 S. Ct. 709 (2007), the Ninth Circuit ruled that the federal Communications Decency Act (47 U.S.C. § 230) immunized defendants from plaintiff's right of publicity claim -- virtually identical to the one asserted in this case against RapidShare -- and that the defendant (an adult age verification service that provided access to porn sites) largely complied with the Digital Millennium Copyright Act and therefore could not be held liable for copyright infringement.

Perfect 10 also has not fared so well in the Northern District of California.  In *Perfect 10, Inc. v. VISA Int'l Service Ass'n.,* 494 F.3d 788 (9th Cir. 2007), *cert. denied,* 128 S. Ct. 2871 (2008), the Ninth Circuit affirmed Judge Ware's order dismissing Perfect 10's claims against VISA and major banks in a suit in which Perfect 10 sought to hold them liable for providing payment processing services to websites that sold allegedly infringing Perfect 10 photographs.

corporate counsel, are located in Switzerland or Germany. RapidShare employees conduct business primarily in German, virtually all relevant documents and emails are in German, and many RapidShare employees speak no English. Although Perfect 10 asserts in its complaint that the alleged acts of infringement in this case were undertaken by "affiliates" of RapidShare, in fact, RapidShare has no affiliate program and if any unauthorized photos were posted in RapidShare, they were posted by users *in violation of RapidShare's policies* without the knowledge or consent of any of the defendants. Indeed, none of the defendants even heard of Perfect 10 before being sued in this lawsuit. All plausible documents, evidence, and witnesses (other than those associated with Perfect 10) are located in Switzerland, Germany, and elsewhere in Europe as Perfect 10's models are primarily eastern European (and the validity of their model releases to Perfect 10 would largely turn on evidence and witnesses located there). These facts demonstrate not only that the Court lacks personal jurisdiction over the defendants (as set forth in defendants' concurrent motion to dismiss for lack of personal jurisdiction (the "Rule 12(b)(2) Motion")), but also that California (and especially the Southern District) is not the proper forum for this lawsuit, and that plaintiff's claims should therefore be dismissed on the basis of *forum non conveniens*.

The absence of any ties between this forum and the lawsuit is further underscored by the lack of any allegation in Perfect 10's complaint that place the alleged acts of infringement in the Southern District, or elsewhere in California for that matter. The liability Perfect 10 seeks to impose on RapidShare and its executives is predicated upon the acts of third-party users who allegedly upload infringing files onto RapidShare's website and distribute the download links. *See* Compl. ¶ 20. Yet none of these third-party acts (the uploading and downloading of files that plaintiff claims infringe its copyrights) are alleged to have occurred within California. Moreover, all of RapidShare's activities take place in Europe -- a critical distinction that would likely require the Court to apply the laws of Switzerland and/or Germany to adjudicate the issue of infringement. Indeed, other U.S. companies who believe that RapidShare should

somehow be held liable for any alleged infringing acts of third-party users (no matter where the users are located), have filed suit in Germany, where RapidShare has not contested jurisdiction.  Although RapidShare is not located in Germany, it would not challenge personal jurisdiction in either Switzerland or Germany, which are adequate alternative forums for this lawsuit, and Messrs. Schmid and Chang would not contest jurisdiction in Switzerland, the country where they are domiciled.

In sum, Perfect 10 has engaged in forum shopping by bringing suit here against a Swiss company and individuals who are Swiss residents and German citizens for events that allegedly took place on computer servers in Germany, where (except for Perfect 10 itself) all of the relevant evidence and witnesses -- including one of Perfect 10's primary photographers and many or perhaps even all of the Perfect 10 models whose releases would be at issue in this case -- are located in Europe.  Moreover, it filed suit in the Southern District expressly to avoid Judge Matz, to whom Perfect 10's other aggressive claims against technology companies have been assigned and to which this case undoubtedly would have been assigned had it been filed in Perfect 10's home venue.[2]

## II.   STATEMENT OF FACTS

To avoid redundancy, defendants will not repeat much of the background facts relating to RapidShare and its officers that are detailed in defendants' Rule 12(b)(2) Motion, and which are fully incorporated herein by this reference.  Instead, defendants set forth below just those facts that directly bear upon the analysis under the *forum non conveniens* doctrine.

---

[2]   Perfect 10's cases in the Central District alleging similar claims based on user infringement against Amazon.com, Google, and Microsoft, were coordinated before Judge Matz.  *See* Consolidation Order, attached as Exhibit A to the Declaration of Lori Chang ("L. Chang Dec.").  Judge Matz was the judge who largely eviscerated Perfect 10's aggressive claims against Google and Amazon.com and who more recently granted summary judgment against Veoh, an Internet hosting site like RapidShare, based on the Digital Millennium Copyright Act.  *UMG Recordings, Inc. v. Veoh Networks, Inc.*, 665 F. Supp. 2d 1099 (C.D. Cal. 2009) (granting summary judgment for Veoh, a video hosting service, under the DMCA).

3

### A.   Defendants Are Subject To Jurisdiction In Switzerland And/Or Germany.

Defendants are all located in Europe. RapidShare is a Swiss company with its sole place of business in Cham, Switzerland. Declaration of Bobby Chang ("Chang Dec."), ¶ 10. Its officers, Schmid and Chang, are German citizens who reside in Switzerland, and have never been domiciled in the U.S. Declaration of Christian Schmid ("Schmid Dec."), ¶ 3; Chang Dec., ¶ 3. Schmid and Chang do not travel regularly to the U.S. for any personal or business reasons. Chang Dec., ¶ 3; Schmid Dec., ¶ 3. Indeed, Schmid avoids international travel at all cost because he does not like to travel by plane, and as such, never travels internationally outside of Europe. Schmid Dec., ¶ 3. Defendants are strictly Europeans who have no residences or places of business in the United States.

All of RapidShare's business activities take place in Europe. RapidShare does not maintain any offices outside of Cham. Chang Dec., ¶ 10. None of its employees, a staff of roughly 50, are located in the U.S., and its primary corporate counsel is located in Germany. *Id.* It does not own any subsidiaries that are incorporated in or located in California. *Id.*, ¶ 11. Its user agreement (the Conditions of Use) -- which prohibit users from uploading and subsequently distributing files that infringe upon copyrights -- is deemed to be executed in Cham. *See* Declaration of Lutz Pfaff ("Pfaff Dec."), Ex. A. As detailed in the Rule 12(b)(2) Motion, the defendants' have not purposefully directed its activities toward California, and have not availed themselves of the benefits of this forum such that they would be subject to jurisdiction here.

### B.   The Witnesses And Documents Are Also Located In Switzerland And Germany.

Given that all of RapidShare's employees and places of business are in Europe, all of its potential witnesses and business records are located there as well. In addition to Schmid and Chang, who are parties to this lawsuit, the persons who would most likely be called as witnesses include employees of RapidShare's Abuse Department, as they are responsible for investigating and addressing claims of infringement. *See* Chang Dec., ¶

13; Pfaff Dec., ¶ 12.   Other than RapidShare employees and perhaps the plaintiff itself, the complaint does not identify any other known witnesses.[3]

If Schmid, Chang, or any other RapidShare employee were to be compelled to testify as a witness in this forum, the burdens on defendants and on the witnesses themselves would be severe.  *See* Chang Dec., ¶ 14.  If called for their testimony, these witnesses would have to travel to San Diego from Cham, which is several time zones ahead of California (8-10 hours, depending on the time of the year).  *Id.*  Putting aside the costs associated with making travel arrangements (e.g., flights, car rentals, hotels, and, if necessary, passports), it would be very difficult logistically to travel to San Diego.  *Id.*  RapidShare employees would have to fly out of Zurich, the location of the nearest airport (which is about an hour away from Cham by car) to a connection city (as there are virtually no direct flights between Zurich and San Diego), and travel for nearly an entire day before reaching San Diego.  *Id.*; *see also* L. Chang Dec., ¶ 2.  A schedule like this underscores not only the sheer inconvenience of California as a forum, but also the

---

[3] In addition, potential witnesses would also include the models that posed for Perfect 10, the majority of whom are in eastern Europe, plus the photographer Petter Hegre, who splits his time between Portugal and France (*see* L. Chang Dec., Ex. P), and who supplied most of the nude photos used by Perfect 10.  *See id.*, ¶¶ 18-19, and Ex. R ("The majority of *Perfect 10*'s models hail from Eastern Europe -- particularly former Soviet Union states--although many American and Brazilian models are also showcased.").   The circumstances under which Hegre assigned his copyrights to Perfect 10 would be an important issue if the case were to proceed.  Unless Perfect 10 is the owner, assignee or exclusive licensee of a copyright, it may not maintain suit.  *See, e.g., I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996), *citing* Paul Goldstein, I Copyright:  Principles, Law and Practice § 4.1.1.1, at 409 (1989); *Gardner v. Nike, Inc.*, 279 F.3d 774, 780 n.4 (9th Cir. 2002).  Hegre purports to host photos he took of models from Perfect 10 on his website (*see* L. Chang Dec., Ex. Q), raising questions about whether Perfect 10 in fact is the legitimate owner, assignee, or *exclusive* licensee of the works and making Hegre a potentially important third party witness.

Similarly, the validity of model releases may be an important issue in evaluating Perfect 10's right of publicity claim.  As many of these models are located in Europe, the validity of their releases (even releases purporting to apply US law) would be determined by local law in the countries where the young ladies allegedly signed away their rights to Perfect 10.

unreasonableness of subjecting defendants to the jurisdiction of this Court when their contacts in the context of Perfect 10's claims are so attenuated and remote.

These logistical difficulties would be compounded by costs, as RapidShare would be required under Swiss law to pay employees overtime wages or otherwise compensate them with extra days of vacation for any time spent by them traveling to the United States to testify at trial or otherwise. Chang Dec., ¶ 14. The distance, length of time involved in traveling to and from the United States, and time difference would also adversely affect RapidShare's ability to conduct business, and could require RapidShare to incur additional expenses to pay others to cover the work of RapidShare employees who were required to spend time in California in connection with this case. *Id.*

Witness examinations, whether at trial or a deposition, would also add the expense of using German translators, as neither Schmid nor Chang are fluent in English, and RapidShare does not require its employees to be fluent in any language other than German. *Id.* The documents themselves would also have to be translated into English because the overwhelming majority of RapidShare's documents and emails are in German. *See id.*

Moreover, nearly all of the potentially relevant documents that would be examined in this case are physically located in Europe. *Id.* Specifically, in Germany where the servers that allegedly store "hundreds of thousands of unauthorized copyrighted images" (Compl. ¶ 19) -- the user files -- are located, and in Cham, where RapidShare's business records are kept at its office. *Id.*; Pfaff Dec., ¶ 13. RapidShare does not maintain any records in the U.S., or use any U.S. servers. Chang Dec., ¶ 13. If the litigation were to proceed in this Court, these documents would have to make their way from multiple locations in Europe to defendants' counsel in Los Angeles, before reaching their ultimate destination in this venue.

**C.  Perfect 10 Does Not Allege That Any Of The Infringing Activities Occurred In California.**

As demonstrated in defendants' companion motion, the only known connection this case has with California is that it is plaintiff's home state. *See* Compl. ¶ 4. And even then, Perfect 10 resides within the Central District, not the Southern District.[4] Perfect 10 concedes that defendants are located in Switzerland (*see id.* ¶ 5), but does not affirmatively allege that defendants' alleged infringing activities actually occurred here. The servers that store user files are in Germany, and the allegation that RapidShare's website is "accessible in the United States and throughout the world" (*id.* ¶ 19) hardly suggests California as the nucleus of the relevant events.  Any allegedly infringing images would have been posted on servers housed in Germany and any documents or records relating to these files would be in Switzerland.

Neither are the infringing acts of the third-party users, the so-called "Affiliates," alleged to have taken place in California (or anywhere else in the U.S.).  Indeed, Perfect 10 does not allege the location of these third parties, or the location of the computers from which infringing files were uploaded or downloaded.

However, Perfect 10 has put RapidShare's business practices at issue in this case, and the focal point of relevant events and activities is Europe, where RapidShare operates and maintains its records.

**D.  Switzerland And Germany Have A Modern Rule-Based Judicial System With Laws That Protect Intellectual Property Rights.**

***Copyrights and trademarks are protected in Europe through various international agreements.*** Copyrights and trademark rights are recognized in Europe and protected to substantially the same degree as under U.S. laws.  This is a well-developed field in international law where there are a number of multinational agreements that operate to protect the intellectual property rights of a national from a

---

[4] Perfect 10's principal place of business is in Beverly Hills, not San Diego.  *See* L. Chang Dec., Ex. N.

participating member state in other countries that are parties to these multinational agreements. The main ones are: the Berne Convention for the Protection of Literary and Artistic Works, the Universal Copyright Convention ("U.C.C."), the Paris Convention for the Protection of Industrial Property, and the TRIPS Agreement of the WTO (which largely incorporates the Berne Convention).[5] In this case, even though Perfect 10's claims are based on alleged U.S. copyrights and trademarks, Perfect 10 could vindicate those rights in Germany and Switzerland under these agreements. *See* Declaration of Dr. Burkhard Hess ("Hess Dec."), ¶¶ 10-13, 28 (the U.S. and Germany are parties to the Berne Convention, the Paris Convention, and the TRIPS Agreement; and concluding that under these agreements, U.S. copyright holders may vindicate their rights in other member states, including Germany and Switzerland). A more detailed discussion of the protections conferred by these agreements is set forth below.

***Judicial review of plaintiff's claims is available in Germany and Switzerland.*** The types of claims asserted in the complaint -- primarily copyright and trademark infringement claims -- may be adjudicated by either a Swiss or German court, and the legal remedies sought (e.g., money damages, injunctive relief), are equally available in those two forums. *See* Hess Dec., ¶¶ 16, 21-22, and 28.

In Germany, a court will hear any claim brought by a U.S. company based on the infringement of copyrights protected by the Berne Convention. *Id.*, ¶ 16. Similarly, the legal protection of trademarks largely corresponds to the protection of copyrights. *See id.*, ¶ 21; *see also id.*, ¶ 22 ("Additional protection is provided for under the German Act against Unfair Competition. Section 3 of the act provides for a general prohibition of unfair commercial practices in order to protect the rights and interests of the competitors.

---

[5] Copies of the Berne Convention and the Paris Convention, are attached to the L. Chang Dec. as Exhibits B and C respectively. The TRIPS Agreement refers to the Agreement on Trade-Related Aspects Of Intellectual Property Rights, which is Annex 1C of the Marrakesh Agreement Establishing the World Trade Organization, signed in Marrakesh, Morocco on April 15, 1994. A copy of the TRIPS Agreement is attached to L. Chang Dec. as Exhibit D.

Accordingly, an unlawful exploitation of the plaintiff's IP rights may entail a cause of action under sections 8 and 9 of the Act against Unfair Competition."). The same rights are similarly protected in Switzerland. *See id.*, ¶ 29.

With respect to RapidShare, even though it is a Swiss company, German jurisdiction may be based on the fact that its servers are located in Germany. *See id.*, ¶16 ("As far as downloads take place from servers located in Germany, German courts have jurisdiction under Article 5 no[.] 3 [of the] Lugano Convention," which states, "A person domiciled in a Contracting State may, in another Contracting State be sued (…) in matters relating to tort, delict or quasi-delict, in the courts for the place where the harmful event occurred") (concluding that "the jurisdiction of the German courts over the Swiss defendant [RapidShare] can be based on Article 5 no[.] 3 of the Lugano Convention").[6] Notwithstanding, were plaintiff's case brought in Germany, RapidShare would not challenge jurisdiction.

In addition, parties may obtain pretrial discovery of certain documents if such documents are directly relevant to the case, and not otherwise protected by privileges like the attorney-client privileges. *See id.*, ¶¶ 23, 25. Moreover, and as further discussed below, a plaintiff may also obtain damages and injunctive relief in copyright and trademark infringement actions. *See id.*, ¶¶ 15, 21-22. Indeed, as compared to the U.S. legal system, German law provides for even more extensive relief, whereby a plaintiff may obtain a preliminary injunction on an *ex parte* basis without even affording a defendant the opportunity to present evidence or an opposition. *See id.*, ¶ 15. This is demonstrated by other lawsuits filed against RapidShare in Germany, which have been brought by European and U.S. companies alike, asserting similar allegations of liability based on user conduct.

---

[6] The jurisdiction of German courts for alleged infringement of copyrights is based on the Lugano Convention of 16 September 1988 on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters. Hess Dec., ¶ 16.

9

## III. ARGUMENT

### A. **Legal Standard**

A court may decline to exercise jurisdiction in a case "where litigation in a foreign forum would be more convenient for the parties." *Lueck v. Sunstrand Corp.* 236 F.3d 1137, 1142 (9th cir. 2001). Dismissal on the basis of *forum non conveniens* is proper where (1) there exists an adequate alternative forum, and (2) the balance of relevant private and public interest factors favor dismissal. *Id.*[7] Dismissal "will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the

---

[7] The Ninth Circuit clarified in *Lueck* that a choice-of-law analysis is not necessary in every *forum non conveniens* case to determine if dismissal is precluded:

> This court has held that "[b]efore dismissing a case for forum non conveniens, a district court must first make a choice of law determination." [Citation omitted.] However, the choice of law analysis is only determinative when the case involves a United States statute requiring venue in the United States, such as the Jones Act or the Federal Employers' Liability Act. . . . The purpose of a choice of law inquiry in a forum non conveniens analysis is to determine if one of these statutes would apply. . . .

> Where no such law is implicated, the choice of law determination is given much less deference on a forum non conveniens inquiry.

*Id.* at 1148. Likewise, a choice of law analysis is not necessary here because the only U.S. statutes under which Plaintiff seeks relief are the Lanham Act and U.S. copyright and trademark acts, and none mandate venue in the U.S. *See Creative Tech., Ltd. v. Aztech Sys. PTE, Ltd.*, 61 F.3d 696, 700-1 (9th Cir. 1995) (holding that the statutory provision investing federal district courts with "exclusive" jurisdiction over claims arising under the U.S. Copyright Act was not a mandatory venue provision, and did not render *forum non conveniens* inapplicable); and *Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 771 (9th Cir. 1991) (concluding that a choice of law determination was not necessary because "there is no arguably applicable law that would end the forum non conveniens inquiry" in a case involving U.S. copyright, RICO, and Lanham Act claims).

10

defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981).

> 1. <u>An adequate alternative forum exists if it can assert jurisdiction over the defendant and provide some form of remedy for the plaintiff.</u>

An alternative forum "ordinarily exists when the defendant is amenable to service of process in the foreign forum," and is deemed adequate if it "provide[s] the plaintiff with *some* remedy." *Id.* at 1143 (italics added). While the defendant bears the burden of showing that dismissal is warranted, only in "rare circumstances" does a court find that the foreign forum is inadequate. *Id.* ("it is only in 'rare circumstances . . . where the remedy provided by the alternative forum . . . is so clearly inadequate or unsatisfactory, that it is no remedy at all,' that this requirement is not met"). "[A] foreign forum will be deemed adequate unless it offers no practical remedy for the plaintiff's complained of wrong." *Id.*; *see also id.* at 1141-45 (concluding that even though New Zealand's no-fault accident compensation schemed barred judicial civil claims for damages, there existed an administrative remedy that would compensate plaintiffs, who were victims of a plane crash, for, among other things, medical and rehabilitative expenses, and lost earnings).

A "possibility of an unfavorable change in the law," such as a lesser remedy or the unavailability of certain claims, does not preclude dismissal. *See id.* at 1144 (noting that *Piper Aircraft* "held that a foreign country was not an inadequate forum merely because its laws offered the plaintiff a lesser remedy than eh could expect to receive in the United States court system"); *Lockman Found.*, 930 F.2d at 768 ("Even if the RICO and Lanham Act claims were unavailable in Japan, that would not furnish a sufficient reason to preclude dismissal. The 'possibility of an unfavorable change in the law' is not to be given conclusive or substantial weight in a forum non conveniens inquiry."); and *Facebook, Inc. v. StudiVZ Ltd.*, No. C 08-3468 JF (HRL), 2009 WL 1190802, at *3 (N.D. Cal. May 4, 2009) ("The alternative forum need not offer the same claims, legal theories,

or remedies as the domestic forum . . . and the 'assert[ion] [of] distinctively U.S. and California-based claims" . . . is immaterial.").

> 2. A plaintiff's choice of forum is not dispositive if the balance of convenience weighs in favor of dismissal.

"[I[f the balance of convenience suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." *Piper Aircraft*, 454 U.S. at 255 n.23. "[T]he central focus of the *forum non conveniens* inquiry is convenience." *Id.* at 249. For that reason, "[a] citizen's forum choice should not be given dispositive weight. . . ." *Id.* at 255 n.23; *see also Mizokami Bros. of Ariz., Inc. v. Baychem Corp.*, 556 F.2d 975, 977 (9th Cir. 1977) ("a United States citizen has no absolute right to sue in a United States court").

## B. Switzerland And Germany Are Adequate Alternative Forums.

Switzerland and Germany are forums that can clearly assert jurisdiction over defendants, as they are residents of those countries and/or do business there. *See* Francois Dessemontet, *Switzerland* § 8[3][a], in International Copyright Law And Practice (Paul Edward Geller ed., Lexis Nexis 2009) (attached as L. Chang Dec., Ex. L) ("Jurisdiction generally lies in a Swiss court where the defendant has his domicile or residence or its place of business in Switzerland."); Dr. Adolf Dietz, *Germany* § 8[3][a], in International Copyright Law And Practice (Paul Edward Geller ed., Lexis Nexis 2009) (attached as L. Chang Dec., Ex. I) ("German courts will . . . consider suits for infringement taking place in other E.U. member states or against E.U. domiciliaries," and "tend to take jurisdiction where torts or defendants are located in Germany"). Jurisdiction in Germany may also be proper because the alleged downloads put at issue by Perfect 10 were allegedly stored on servers located in Germany. *See* Hess Dec., ¶ 16 (concluding that jurisdiction on that basis can be based on Article 5, no. 3 of the Lugano Convention).

Swiss and German copyright protections apply to foreign authors and works under international treaties providing for copyright protection, to which the U.S., Switzerland,

12

and Germany, are all signatories.   For example, the Berne Convention extends Germany's domestic copyright protections to U.S. copyright holders.  *See id.*, ¶¶ 10, 13 (concluding that "holders of an U.S. copyright under 17 U.S.C. § 106 are by Article 5 of the Berne Convention protected in the same way as German holders of copyrights"); *see also* 4 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright* § 17.01[B] (attached as L. Chang Dec., Ex. E) and Appendix. 20 ((Matthew Bender, Rev. Ed. 2009); and Francois Dessemontet, *Switzerland* § 6[b] (attached as L. Chang Dec., Ex. K) ("where Swiss law is less favorable than an international treaty in a given case, the Swiss court may apply that treaty," and "it has been the practice of the Federal Tribunal to construe Swiss copyright to assure that its provisions are consistent with the Berne Convention").   Under the Berne Convention, "national treatment" is the rule, which means "an author who is a national of one of the member states of either Berne or the U.C.C. . . . is entitled to the same copyright protection in each other member state as such other state accords to its own nationals." 4 *Nimmer on Copyright* § 17.05[A] (attached as L. Chang Dec., Ex. F) ("Thus, a German author is entitled to protection against the infringement of his work in France, under the terms of the French copyright law, not that of the German copyright law.   The applicable law is the copyright law of the state in which the infringement occurred, not that of the state of which the author is a national, or in which the work was first published.").   In addition, the Agreement for the Mutual Protection of Copyright between the U.S. and Germany of January 15, 1892, is a bilateral agreement that protects U.S. works in Germany.   Dr. Adolf Dietz, *Germany* § 6[3] (attached as L. Chang Dec., Ex. H).

Moreover, under the TRIPS Agreement, U.S. trademark holders can assert infringement claims in the courts of participating member countries. *See* Hess Dec., ¶ 21.

### 1.   Switzerland

Switzerland is an adequate alternative forum in which monetary damages and injunctive relief, among other remedies, are available under Swiss laws protecting intellectual property interests.

First, via the Berne Convention, Perfect 10's copyrighted images would be covered by Switzerland's Copyright Act which protects "any literary or artistic creation of the mind, whatever its value, which evidences an individual character." *See* Francois Dessemontet, *Switzerland* § 2[1][b] and [2][a] (attached as L. Chang Dec., Ex. J) ("In including 'photographic works' with 'cinematographic and other visual or audiovisual works,' the legislature endeavored to clarify that all sorts of visual works are protectible, be they video clips, holograms, video samplings, multimedia works, etc.  Except for the Unfair Competition Act, there is no other law besides the Copyright Act available to protect photographs.").

Second, the Swiss Copyright Act provides for extensive civil remedies for infringement which are comparable to those sought by Perfect 10.  Specifically, a copyright owner can obtain:  (1) "preliminary and permanent injunctions prohibiting present or future infringement"; (2) "orders to compel defendants to state where infringing copies came from"; (3) "seizure and deliver or destruction of infringing articles on receipt"; (4) "awards of damages for actual losses"; (5) "awards of damages for pain and suffering"; (6) "accountings for defendants' profits"; (7) "declarations that a given act or situation is unlawful"; and (8) "publication of judgment."  Francois Dessemontet, *Switzerland* § 8[4][a].  Similar remedies would also be made available under the TRIPS Agreement, which would likely apply in this instance given that both Swizterland and the U.S. (plus Germany) are all members of the WTO, and under the Paris Convention of the World Intellectual Property Organization (WIPO).  *See* Hess Dec., ¶¶ 10, 21.

Third, trademarks may also be vindicated under both the Paris Convention and the TRIPS Agreement.  *See id.*, ¶ 21 ("As the United States of America and Germany are both contracting parties of the Paris Convention . . . , as well as the TRIPS Agreement, the holders of American trademarks can assert similar claims for damages and injunctive relief before German courts.").

2.   Germany

Courts have already found that Germany is an adequate forum for adjudicating intellectual property disputes.  *See Facebook*, 2009 WL 1190802, at * 3 ("Germany clearly is an adequate forum" for a trade dress infringement action); *Graf von Spee v. Graf von Spee*, 514 F. Supp. 2d 302, 314 (D. Conn. 2007)("no doubt that Germany is an available and adequate alternative forum, in that defendants clearly are subject to service of process in Germany and Germany permits litigation of the subject matter in dispute."). Indeed, Perfect 10 has even filed suit there against America Online (AOL), presumably alleging the same type of copyright and trademark infringement claims as it has asserted against defendants, Google, Amazon.com, and multiple others.  *See* L. Chang Dec., Ex. O.

First, U.S. copyright owners may seek protection under the German Copyright Act. *See* Hess Dec., ¶ 10 (identifying Sections 2, 15, and 97 of the German Copyright Act of September 9, 1969, as the pertinent provisions).   Under Section 2 of the German Copyright Act, protected copyrights include "photographic works," which include photographs and films. *Id.*, ¶¶ 11, 13 (concluding that Perfect 10's photographs would be protected under the Act); *see also* Dr. Adolf Dietz., *Germany* § 2[2] (attached as L. Chang Dec., Ex. G) (Germany's Copyright Act protects "literary, scientific, and artistic works," which includes "photographic works, including works produced by processes analogous to photography," and "cinematographic works (*Filmwerke*), including works produced by processes analogous to cinematography").[8]   Section 15 sets forth the exclusive rights of exploitation, which includes the right of reproduction (Article 16), the right of distribution (Article 17), the right of exhibition (Article 18).  Hess Dec., ¶ 11.

Second, damages and injunctions are available under Section 97 of the German Copyright Act. *See id.*, ¶¶ 12, 13 and 15; *see also* Dr. Adolf Dietz., *Germany* § 8[4][a].

---

[8]   Further, U.S. works receive further protection under the U.S.-German bilateral agreement, which protects simple photographs in addition to photographic works. *See id.* § 6[3] (simple photographs are not protected works under German copyright law).

Under Section 97, a copyright holder may seek pecuniary damages from the infringer, which comprises all material losses sustained by the infringement, including actual losses and loss of profits. Hess Dec., ¶ 15. Although German law does not provide for punitive damages, the infringed party may choose between the compensation of the actual damage and the surrender of the profits derived by the infringer from the acts of infringement. *Id.* Moreover, even if the injured party has not sustained tangible losses, the party may seek non-pecuniary compensation from the infringer if its personality rights have been infringed. *Id.* Claims for injunctive relief (such as actions for cease and desists) are also available, in additional to provisional relief in cases of emergency, which may be granted *ex parte. Id.*

Third, trademarks are protected by the German Act on Trademarks of October 24, 1994. *Id.*, ¶ 21. Specifically, Section 14 and 15 of the Trademark Act entitle the trademark owner to injunctive relief and money damages. *Id.* Also, since 2008, the act grants the trademark holder far reaching rights for information against any potential infringer. *Id.* And as with Switzerland, Germany is also a party to the TRIPS Agreement and the Paris Convention, which provide for trademark protection and similar remedies. *See id.*

Moreover, while infringement claims are governed by the German Copyright Act and Trademark Act, additional protection is provided for under the German Act against Unfair Competition, which mainly applies to unlawful behavior within the market. *See id.*, ¶ 22. Specifically, Section 3 of the act provides for a general prohibition of unfair commercial practices in order to protect the rights and interests of the competitors. *Id.* Accordingly, an unlawful exploitation of the plaintiff's intellectual property rights may entail a cause of action under sections 8 and 9 of the act. *Id.* Through this act, a plaintiff may also obtain an injunction for cease and desist, even on a provisional basis. *Id.*

## C.     <u>The Balance Of Private And Public Interest Factors Favor Dismissal.</u>

     1.     <u>Private interest factors favor a European forum.</u>

Since the Southern District of California is thousands of miles from the operative events in the Complaint (and as a result thousands of miles from the relevant witnesses and evidence), and since the logistics of bringing this evidence before the Court are complex and unduly burdensome, the private interest factors weigh strongly against litigation of this matter in this Court. The private interest factors considered by courts in the Ninth Circuit are: "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) 'all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Lueck,* 236 F.3d at 1145.

All of these private interest factors point to either Switzerland or Germany as the proper forum and demonstrate the extreme inconvenience of litigating this dispute in California:

> ➤ ***Europe is the location of defendants, witnesses (e.g., RapidShare employees), and the vast majority of potentially relevant documents (e.g., RapidShare's records and user files).*** Defendants all reside in Europe and do not have homes or places of business anywhere in the U.S. Schmid Dec., ¶¶ 3, 5; Chang Dec., ¶¶ 3, 5, and 10-11. All of RapidShare's employees -- the key witnesses who would testify to RapidShare's business practices and investigation of abuse claims -- are located in Europe. *See* Chang Dec., ¶¶ 10, 14. This forum is completely out of reach to the parties and witnesses who would need to travel across several time zones to participate in this action. *Id.,* ¶ 14. Moreover, all potentially relevant information and documents (which include RapidShare's business records and the servers that store user files) are located in Switzerland or Germany. *Id.*; Pfaff, ¶ 14;

*see also Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 696 (9th Cir. 2009) (finding that this factor favored dismissal, notwithstanding that "technological advances in document production and deposition video-conferencing," where the "vast majority of *original*, relevant documents" were in Europe).

➢ ***Defendants' costs would be substantial if forced to defend a foreign lawsuit.*** Defendants have already incurred significant expenses by having to employ American-based counsel (in addition to their domestic counsel), to represent them. These litigation expenses would be compounded by costs associated with bringing witnesses into this forum for live testimony, transferring documents from abroad, and translating both testimony and documents from German to English and vice versa. *See* Chang Dec., ¶ 14; *see also Medicor AG v. Arterial Vascular Engineering*, No. 97-15465, 141 F.3d 1177, 1998 WL 133254, at *1 (9th Cir. Mar. 19, 1998) (finding that "the impact of language differences and the necessity of translating documents" was a relevant factor) (concluding that "Switzerland offers a clearly adequate forum" in an employment contract case) (unpublished opinion).

➢ ***Perfect 10 is no stranger to international lawsuits.*** As litigious as Perfect 10 is in domestic courts, it is an equally active plaintiff abroad. Indeed, in a recent interview in September 2009, Perfect 10 President Norm Zada announced that Perfect 10 filed a lawsuit against America Online (AOL.de) in Germany. *See* L. Chang Dec., Ex. O (also reporting another lawsuit against Google in Canada). The lawsuit against AOL.de confirms that it would not be difficult or burdensome for Perfect 10 to bring this case in Germany.

➢ ***European courts have greater authority to compel witnesses who reside there and enforce judgments against their own citizens.*** This factor alone

should be compelling enough to dismiss in favor of a European forum. *See Creative Tech.*, 61 F.3d at 702 (dismissing plaintiff's claim based on forum non conveniens, finding that a Singaporean court would be a better forum to enjoin infringing conduct in Singapore, stating "we are unable to conceive of a more effective means of protecting [the plaintiff's] United States copyright interests than by shutting off the pipeline of infringing goods at the source").  There is no question that any judgment obtained against RapidShare would have to be enforced on European territory, the situs of not only RapidShare but the business activities that Perfect 10 seeks to enjoin. On the other hand, a U.S. judgment may not be fully recognized in Switzerland or Germany if it conflicts with their native public policies and/or laws. *See* Hess Dec., ¶¶ 18-20 (concluding that "the judgment of an American court would probably be recognised [sic] in Germany, unless the taking of evidence does not respect German public policy"; stating further that "foreign judgments for punitive damages are not recognized in Germany," and neither are "John Doe actions . . . as these actions are not compatible with the fundamental principle of German procedural law according to which the parties of an action must be clearly determined in order to guarantee the constitutional right to be heard"); *see also Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1212 (9th Cir. 2006) (involving claim for declaratory relief that French interim orders could not be enforced in the U.S. against the California-based company, stating "[t]here is currently no federal statute governing recognition of foreign judgments in the federal courts"); and Office of the Chief Counsel for International Commerce, U.S. Department of Commerce, *Recognition and Enforcement of Foreign Money Judgments* (2002), available at http://www.osec.doc.gov/ogc/occic/refmj.htm ("Switzerland . . . will refuse to enforce a judgment against their nationals unless there is a

19

'clear indication' that the national intended to submit to the foreign court's jurisdiction.") (attached as L. Chang Dec., Ex. M). In addition, a European trial offers better means to compel witnesses and the production of documentary evidence located there. *See* Hess Dec., ¶ 24 ("German procedural law also provides for the examination of witnesses and court experts who are normally interrogated by the courts," but "the court may equally permit the parties to examine the witnesses and the experts directly"; and "[w]itnesses and experts are obliged to appear in court and to testify"); *see also id.*, ¶ 25 (the European Union Enforcement Directive and the TRIPS Agreement set forth procedures for obtaining evidence in litigation involving intellectual property);[9] *Merino v. U.S. Marshal*, 326 F.2d 5, 13 (9th Cir. 1963) (noting that "the attendance of witnesses residing in a foreign country would not be compellable by subpoenas"); *Vivendi SA*, 586 F.3d at 696 (district court concluding "that the ability of [a U.S.] court to compel unwilling witnesses to testify slightly favors dismissal because the Hague Convention's letters rogatory process, which would be necessary to produce proof for an American trial, is more cumbersome than European Commission Regulations for taking evidence within Europe, which would be necessary to produce proof for a European trial"); Fed. R. Civ. P. 45 (b)(2) & 45 (b)(3)(authorizing service of subpoena in foreign country only to U.S. national or resident); and 6 *Moore's Federal Practice* § 28.12 [7] (Matthew Bender 3d. ed) (execution of letters of request "may take six months to a year, if not longer").

---

[9] The specific categories of information that may be obtained in an infringement action are set forth in paragraph 25 of the Hess Declaration. With particular relevance to plaintiff's claims, the owner of a copyright may seek the relevant information from an internet provider and any person operating websites allegedly involved in copyright infringements. Hess Dec., ¶ 26; *see also id.*, ¶ 27 (similar provisions for trademark claims).

The weight of these private interest factors clearly favor adjudication of Perfect 10's lawsuit in Europe, the location of all three defendants, the relevant witnesses and the documents, and ultimately the place where a judgment, if awarded, would be enforced. It is no surprise that these factors favor a European forum given that the location of the activities complained of (which assertedly implicate RapidShare's website and business practices) take place wholly within Europe. *See* 17 *Moore's Federal Practice* § 111.74[3][c][ii] (Matthew Bender 3d. ed) ("most of the private interest factors favor the forum in which the events at issue in the lawsuit took place").

### 2.   Public interest factors also favor dismissal.

The balancing of public interest factors considers the following: "(1) local interest of the lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to this forum." *Lueck,* 236 F.3d at 1145-47; *see also Creative Tech.*, 61 F.3d at 703-4 (public interest factors include "(1) administrative difficulties flowing from court congestion; (2) imposition of jury duty on the people of a community that has no relation to the litigation; (3) local interest in having localized controversies decided at home; (4) the interest in having a diversity case tried in a forum familiar with the law that governs the action; [and] (5) the avoidance of unnecessary problems in conflicts of law").

Here, the balance of public interest factors also weigh in favor of dismissal:

> ➢ ***California's interest is minimal.***  As set forth in the complaint, this case involves the allegedly infringing conduct of European residents and activities that occur in Switzerland and Germany, and those respective countries have a substantial interest in holding their local businesses accountable for violation of intellectual property laws. *See Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 665 (9th Cir. 2009) (affirming dismissal based on *forum non conveniens* and citing "Mexico's substantial interest in holding businesses operating in Mexico accountable"). On the other hand, the only alleged connection that the

claims have to California is Perfect 10 itself, which is not enough to bar dismissal where *forum non conveniens* is otherwise shown.  *See Mizokami Bros.*, 556 F.2d at 978 ("The plaintiff falls back on its United States citizenship as the sole and only possible basis for suing these defendants in a court of the United States.  This is not enough." … "when every reasonable consideration leads to the conclusion that the site of the litigation should be elsewhere"); *see also Sarandi v. Breu*, 2009 WL 2871049, at *8 (N.D. Cal. Sept. 2, 2009) (a plaintiff's choice of forum is not dispositive); *Gemini Capital Group, Inc. v. Yap Fishing Corp.*, 150 F.3d 1088, 1091 (9th Cir. 1998) (noting that there is no general presumption for or against a foreign forum).

➢  ***European laws apply because the allegedly infringing acts of RapidShare have all occurred in Switzerland and Germany.***  Here, the complaint alleges infringement by a Swiss company's operation of a website whose servers are located in Germany, and by executives who reside in Switzerland.  "[T]he principle of national treatment [as set forth under the Berne Convention] implicates a rule of territoriality in which "'[t]he applicable law is the copyright law of the state in which the infringement occurred, not that of the state of which the author is a national or in which the work was first published.'"  *Creative Tech.*, 61 F.3d at 701 (citing *Subafilms, Ltd. v. MGM-Pathe Communications Co.*, 24 F.3d 1088, 1097 (9th Cir. 1994)); *see also Subafilms*, 24 F.3d at 1089 and 1098 (holding that a claim under the U.S. Copyright Act cannot be stated where "the assertedly infringing conduct consists solely of the authorization within the territorial boundaries of the United States of acts that occur entirely abroad") (quoting *Peter Starr Prod. Co. v. Twin Continental Films, Inc.*, 783 F.2d 1440, 1442 (9th Cir. 1986) for "the continuing application of the principle that 'infringing actions that take place entirely outside the United States are not

22

actionable in United States federal courts'"). This factor weighs in favor of dismissal because either Swiss or German laws would apply here given that all of RapidShare's business activities take place in those territories. *See Creative Tech.*, 61 F.3d at 704 (dismissing claim involving U.S. copyrights where infringing acts occurred in Singapore, and finding that "an application of foreign law is likely inevitable" because the "complaint necessarily implicates the legality of infringing acts occurring in Singapore"); *Sarandi*, 2009 WL 2871049, at *8 (N.D. Cal. Sept. 2, 2009) (finding that the public interest factors weighed in favor of dismissal when the dispute was "governed by Swiss law, involve[d] a Swiss entity and addresse[d] the conduct of primarily Swiss residents."); *Medicor AG*, 1998 WL 133254, at *1 ("The strong Swiss interest in deciding a local controversy involving a Swiss citizen and a Swiss employment contract, the inappropriate imposition on a California jury of a case with little connection to that state, and the presence of complex conflict of laws problems all point toward Switzerland as the proper forum."); *see also Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 90-92 (2d Cir. 1998) (demonstrating that U.S. courts would have to resolve choice of law issues in international copyright cases and apply foreign law where necessary to resolve such disputes) (resolving such issues with assistance of court-appointed amicus curiae, and applying Russian law to determine ownership of foreign works in copyright infringement action).

> *Plaintiff's claims can be efficiently resolved in Europe.* In particular, the average duration of a German lawsuit at district courts is seven months. *See* Hess Dec., ¶ 17.

Coupled with the clear weight of private interest factors in favor of a European forum, the public interest analysis confirms that this action is better left to the forum to which it most closely relates and has a substantially greater interest than California,

23

where none of RapidShare's activities take place.  Even if the balance of public interest factors fell in the middle, the sheer burden and inconvenience to defendants, the source of the vast majority of witnesses and documents, warrants dismissal on the basis of *forum non conveniens*.  *See Lockman Found.*, 930 F.2d at 771 (upholding dismissal even though the balance of public interest factors slightly favored California over Japan); and *Facebook, Inc.*, 2009 WL 1190802, at *3 (dismissal warranted where "[t]he majority of the public interest factors [were] neutral").

## IV.   CONCLUSION

For the foregoing reasons, defendants' motion to dismiss for *forum non conveniens* should be granted with prejudice.

DATED:  March 23, 2010                    GREENBERG TRAURIG, LLP


                                          By: s/Wendy M. Mantell
                                          Attorneys for defendants RapidShare AG,
                                          Christian Schmid, and Bobby Chang
                                          E-mail:  mantellw@gtlaw.com

MEMORANDUM RE:  MOTION TO DISMISS FOR *FORUM NON CONVENIENS* -- CASE NO. 09CV2596