1
2
3
4
5

Eric J. Benink, Esq. (State Bar No. 187434)
Krause Kalfayan Benink & Slavens, LLP
625 Broadway, Suite 635
San Diego, California 92101
eric@kkbs-law.com
(619) 232-0331
(619) 232-4019

6
7
8
9
10

Jeffrey N. Mausner (State Bar No. 122385)
Law Offices of Jeffrey N. Mausner
Warner Center Towers
21800 Oxnard Street, Suite 910
Woodland Hills, California 91367
Jeff@mausnerlaw.com
(310) 617-8100; (818) 992-7500
(818) 716-2773

11

Attorneys for Plaintiff Perfect 10, Inc.

12          UNITED STATES DISTRICT COURT

13          SOUTHERN DISTRICT OF CALIFORNIA

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>             Plaintiff,<br><br>      v.<br><br>RAPIDSHARE A.G., a corporation; CHRISTIAN SCHMID; BOBBY CHANG; and DOES 1 through 100, inclusive,<br><br>             Defendants. | CASE NO. 09 CV 2596 H (WMC)<br><br>**PLAINTIFF PERFECT 10, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION AGAINST DEFENDANTS RAPIDSHARE A.G., CHRISTIAN SCHMID, AND BOBBY CHANG**<br><br>**[Filed concurrently with Notice of Motion and Motion, Declarations of Dr. Norman Zada and Melanie Poblete]**<br><br>DATE:     May 12, 2010<br>TIME:     1:30 p.m.<br>CTRM:     13<br>JUDGE:   Marilyn L. Huff<br><br>Demand for Jury Trial<br>Discovery Cut-Off Date: None Set<br>Pretrial Conference Date: None Set<br>Trial Date: None Set |

1

# <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION AND SUMMARY OF ARGUMENT...................................1

     A.     Perfect 10 Is Likely To Succeed On Its Direct Copyright
     Infringement Claim. ...................................................................................2

     B.     Perfect 10 Is Likely To Succeed On Its Contributory
     Copyright Infringement Claim. .................................................................2

     C.     Defendants' Conduct Constitutes Unfair Competition. .............................3

     D.     Defendants Have No Affirmative Defense To Their
     Unlawful Conduct. ....................................................................................3

II.     FACTUAL BACKGROUND. ................................................................................4

     A.     Perfect 10's Business And Intellectual Property...................................... 4

     B.     Defendants' Business. ............................................................................... 5

     C.     Defendants Are Continuing To Infringe Thousands Of
     P10 Images. .............................................................................................. 7

     D.     Previous Adverse Rulings Against RapidShare.........................................7

III.     APPLICABLE LEGAL STANDARDS FOR THIS MOTION. ...........................8

IV.     PERFECT 10 IS LIKELY TO SUCCEED ON ITS DIRECT
INFRINGEMENT CLAIM BECAUSE DEFENDANTS HAVE
INFRINGED AT LEAST 43,000 FULL-SIZE P10 IMAGES. ...........................8

V.     PERFECT 10 IS LIKELY TO SUCCEED ON ITS
CONTRIBUTORY COPYRIGHT INFRINGEMENT CLAIM..........................9

VI.     DEFENDANTS CANNOT ESTABLISH THAT
RAPIDSHARE IS ENTITLED TO A SAFE HARBOR
DEFENSE UNDER THE DMCA. .................................................................... 12

VII.     PERFECT 10 IS ALSO ENTITLED TO INJUNCTIVE
RELIEF UNDER CALIFORNIA'S UNFAIR COMPETITION
STATUTE. ......................................................................................................... 14

VIII.     PERFECT 10 HAS ESTABLISHED THAT IT WILL SUFFER
IRREPARABLE HARM WITHOUT INJUNCTIVE RELIEF. ......................... 17

IX.     THE BALANCE OF EQUITIES SUBSTANTIALLY
FAVORS INJUNCTIVE RELIEF..................................................................... 18

X.     AN INJUNCTION IS IN THE PUBLIC INTEREST. ....................................... 18

XI.     CONCLUSION................................................................................................... 19

Plaintiff Perfect 10, Inc.'s Memorandum Of Points And Authorities In Support Of Its Motion For
Preliminary Injunction Against Defendants RapidShare A.G., Christian Schmid, and Bobby Chang

1

## **TABLE OF AUTHORITIES**

2  **Cases**

3  *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001)...........................11

4  *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046 (9th Cir. 2009) .................8

5  *Apple Inc. v. Psystar Corp.,* 673 F.Supp.2d 943 (N.D. Cal. 2009) .............................19

6  *Arista Records  v. Usenet.com,* 633 F.Supp.2d 124 (S.D.N.Y. 2009)...........................9

7  *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,*
   20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 560-561 (1999).........................................15
8

9  *Doran v. Salem Inn, Inc.,* 422 US 922, 95 S.Ct. 2561 (1975). .....................................18

   *Elvis Presley Enterprises, Inc. v. Passport Video*, 357 F.3d 896 (9th Cir.2004) ..........19
10

11 *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192 (9th Cir. 2001)........................................15

   *LGS Architects, Inc. v. Concordia Homes of Nevada,* 434 F.3d 1150
12   (9th Cir. 2006) ..........................................................................................................17

13 *Louis Vuitton Mattetier, S.A. v. Akanoc Solutions, Inc.,* 591 F.Supp.2d 1098
     (N.D. Cal. 2008) ........................................................................................................11
14
   *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster,* 545 U.S. 913,
15   125 S.Ct. 2764 (2005).........................................................................................passim

16 *Perfect 10 v. Google, Inc.*, 416 F.Supp.2d 828 (C.D. Cal. 2006) ...................................4

17 *Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146 (9th Cir. 2007) ....................passim

18 *Perfect 10, Inc. v. Cybernet Ventures, Inc.,* 213 F.Supp.2d 1146 (C.D. Cal. 2002)........4

19 *Perfect 10, Inc. v. Guba, LLC* ........................................................................................4

20 *Scotts Co. v. United Industries Corp.*, 315 F.3d 264 (4th Cir.2002) .............................18

21 *Sony Corp. of America v. Universal City Studios, Inc.,* 464 U.S. 417
     104 S.Ct. 774 (1984)..................................................................................................19
22
   *Summit Entertainment, LLC v. Beckett Media, LLC,* 2010 WL 147958 *4
23   (C.D. Cal., Jan. 12, 2010) ..........................................................................................18

24 *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115 (9th Cir.1999) .................17

25 *Winter v. Natural Res. Def. Council, Inc.,* __ U.S. __, 129 S.Ct. 365 (2008) ................8

26

27

28

**Statutes**

17 U.S.C. § 502(a) ............................................................................................. 8

17 U.S.C. § 512 ....................................................................................... 12, 13, 14

17 U.S.C. §106 ................................................................................................... 8

Cal. Bus. & Prof. Code § 17200 ............................................................... passim

Cal. Bus. & Prof. Code § 17203 ...................................................................... 14

**Treatises**

13 *Rutter Group Practice Guide: Federal Civil Procedure Before Trial*
  (TRG 2010) §13:58 .................................................................................... 18

Plaintiff Perfect 10, Inc.'s Memorandum Of Points And Authorities In Support Of Its Motion For
Preliminary Injunction Against Defendants RapidShare A.G., Christian Schmid, and Bobby Chang

# I.   <u>INTRODUCTION AND SUMMARY OF ARGUMENT.</u>

Plaintiff Perfect 10, Inc. ("Perfect 10") moves this Court to enter a preliminary injunction against Defendants RapidShare A.G. ("RapidShare"), Christian Schmid ("Schmid"), and Bobby Chang ("Chang") (collectively "Defendants"), which prohibits Defendants from:

(1)     Continuing to infringe *thousands* of Perfect 10 copyrighted images; and

(2)     Continuing to engage in unfair competition with Perfect 10.

Defendants own and control the internet website *rapidshare.com,* as well as multiple foreign versions of that website, such as *rapidshare.de,* that are accessible in the United States and throughout the world (collectively, "*rapidshare.com*"). *Rapidshare.com* is a massive infringing paysite.  It is the twelfth most popular website on the Internet and receives, by its own admission, 42 million daily visitors. RapidShare is currently storing on its servers, and selling without authorization, virtually every pirated movie, song, image, and computer software.  For example, thousands of unauthorized full-length movies, such as Avatar, The Hurt Locker, the Star Wars series, and the Harry Potter series, and thousands of unauthorized songs from artists such as The Beatles, Elvis Presley, and Frank Sinatra, may be downloaded by users from *rapidshare.com.*  In addition, RapidShare allows users of *rapidshare.com* to download tens of thousands of pirated images of most major actresses and supermodels, including thousands of images owned and copyrighted by Perfect 10 ("P10 Images").  Schmid and Chang, the creator and chief executive officer of RapidShare, have personally carried out, directed, and facilitated RapidShare's infringing activities.  Declaration of Dr. Norman Zada, submitted separately herewith ("Zada Decl."), ¶¶11-12, 14, Exhs. 6, 7, 9.

Legitimate businesses such as Perfect 10, which pay for their content, cannot possibly compete with RapidShare, which sells billions of dollars of intellectual property which it does not own.  Indeed, a German appellate court recently ruled that RapidShare's business model is one that "cannot be sanctioned by the legal system and

Plaintiff Perfect 10, Inc.'s Memorandum Of Authorities In Support Of Its Motion For
Preliminary Injunction Against Defendants RapidShare A.G., Christian Schmid, and Bobby Chang

is consequently not worthy of protection."  That same court added that "there is a danger inherent in the defendant's business model, a danger to be taken seriously, that *this model is being used for the (massive) committing of criminal acts*, copyright infringements and pure acts of unfair competition."  Zada Decl. ¶14, Exhs. 9, 11 (emphasis added).

Perfect 10 will likely go into bankruptcy without the injunctive relief it is seeking in this Motion, because it cannot compete with Defendants' unlawful activities.  Zada Decl. ¶4.  Moreover, as explained below, Perfect 10 is entitled to injunctive relief because it is likely to succeed on the merits of its copyright infringement and unfair competition claims against Defendants.

**A.     Perfect 10 Is Likely To Succeed On Its Direct Copyright Infringement Claim.**

The evidence submitted by Perfect 10 establishes that Defendants: (i) have copied at least 43,000 full-size P10 Images, as well as Perfect 10 videos, onto their *rapidshare.com* servers; and (ii) are currently selling access to at least 17,000 of these images and videos.  Zada Decl. ¶5.  Such conduct constitutes direct copyright infringement, because it violates Perfect 10's reproduction and distribution rights [*see* Section IV, below].  Moreover, Defendants' unauthorized sale of intellectual property stolen from Perfect 10 is not protected by the safe harbor affirmative defense of the Digital Millennium Copyright Act (the "DMCA") [*see* Section VI, below].

**B.     Perfect 10 Is Likely To Succeed On Its Contributory Copyright Infringement Claim.**

In addition to directly infringing full-size P10 Images and Perfect 10 videos, Defendants have also created an affiliate program under which RapidShare pays its members, both when they refer traffic to *rapidshare.com* and when other RapidShare members download infringing content that these members have uploaded onto *rapidshare.com* servers.  Zada Decl. ¶¶6-7, Exhs. 1-2.  Such conduct constitutes contributory copyright infringement under the Supreme Court's decision in *Metro-*

Plaintiff Perfect 10, Inc.'s Memorandum Of Points And Authorities In Support Of Its Motion For
Preliminary Injunction Against Defendants RapidShare A.G., Christian Schmid, and Bobby Chang

*Goldwyn-Mayer Studios, Inc. v. Grokster,* 545 U.S. 913, 125 S.Ct. 2764 (2005) ("*Grokster*"), and under applicable Ninth Circuit law, because Defendants are encouraging, inducing, or materially contributing to direct infringement [*see* Section V, below].

### C. Defendants' Conduct Constitutes Unfair Competition.

Defendants are using *rapidshare.com* to commercially exploit millions of celebrity and adult-oriented photographs and likenesses, including thousands of P10 Images. They are offering for sale, for only $10 per month, thousands of stolen full-length movies, songs, computer programs, and images, worth billions of dollars. Such unlawful conduct allows Defendants to compete unfairly with Perfect 10, which cannot legally sell such pirated intellectual property. Zada Decl. ¶¶4, 12, 14, Exhs. 7, 9. It is impossible for any legitimate merchant to compete with a website that offers billions of dollars of copyrighted works for $10 per month. Accordingly, Perfect 10 is entitled to injunctive relief, because Defendants' conduct constitutes unfair, unlawful or fraudulent business practices, in violation of Section 17200 *et seq.* of the California Business and Professions Code [*see* Section VII, below].

### D. Defendants Have No Affirmative Defense To Their Unlawful Conduct.

Defendants are likely to attempt to excuse their conduct by asserting that RapidShare is merely an innocent hosting provider whose conduct is protected by the safe harbor provisions of the DMCA. This assertion fails for multiple reasons. First, because RapidShare does not even have a DMCA agent listed at the United States Copyright Office, it is ineligible for the DMCA's safe harbor provisions. Second, RapidShare failed to respond in any way to a DMCA notice which Perfect 10 sent to its offices in Switzerland in May 2009. Because it did not expeditiously process the Perfect 10 notice it received, RapidShare cannot qualify for safe harbor protection under the DMCA. Third, the DMCA does not protect Defendants' unlawful sale of stolen intellectual property. For each of these reasons, the DMCA provides no basis

for Defendants to avoid injunctive relief [*see* Section VI, below].

Perfect 10 previously obtained summary judgment on the issue of infringement in a similar case, where Guba, LLC copied and sold access to 322 P10 Images.  *See* Order Granting Plaintiff's Motion for Partial Summary Judgment in *Perfect 10, Inc. v. Guba, LLC,* Case No. 02-2842 MMC in the United States District Court for the Northern District of California, found at Zada Decl. Exh. 8.  *See also* Zada Decl. ¶13. Here, the same analysis compels this Court to enjoin Defendants from copying and selling access to thousands of P10 Images.

## II.   FACTUAL BACKGROUND.

### A.   Perfect 10's Business And Intellectual Property.

Perfect 10 is in the business of designing, creating, producing, marketing, promoting and selling copyrighted adult entertainment products, including photographs, magazines, calendars, and video productions.  For years, Perfect 10 published the magazine PERFECT 10.  After losing more than $50 million because of rampant infringement, Perfect 10 was forced to close its prized magazine in June 2007, lay off key employees, and end most of its operations.  Perfect 10 still owns and operates the website *perfect10.com* and sells monthly memberships to that website, which provides access to P10 Images and Perfect 10 videos, for $25.50 a month. Perfect 10 also sells back issues of its magazine.  Perfect 10's revenues have decreased from nearly $2,000,000 a year to less than $150,000 a year.  Zada Decl. ¶4.

Perfect 10 owns the copyrights for more than 48,000 images, including all of the P10 Images described in this Motion.  Zada Decl.¶¶1, 4, Exh. 11 (a disk); Declaration of Melanie Poblete, submitted separately herewith ("Poblete Decl.").  Perfect 10's copyrights have been found to be valid in several cases, including *Perfect 10, Inc. v. Cybernet Ventures, Inc.,* 213 F.Supp.2d 1146, 1166-1167 (C.D. Cal. 2002) ("Perfect 10 has shown a strong likelihood that it owns a valid copyright in the identified images."); *Perfect 10 v. Google, Inc.*, 416 F.Supp.2d 828, 832 (C.D. Cal. 2006) ("During the last nine years, [Perfect] 10 has invested $36 million to develop its brand in its magazine

and its website.  This investment includes approximately $12 million spent to photograph over 800 models and create 2,700 high quality images that have appeared in its magazine, along with an additional approximately 3,300 images that have appeared on perfect10.com.  [Perfect] 10 has obtained registered copyrights for its photographs from the United States Copyright Office.") (citations omitted), *aff'd in part and reversed in part on other grounds, Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146 (9th Cir. 2007) ("*Perfect 10 v. Amazon*").

The success of Perfect 10's business is entirely dependent on its intellectual property.  Zada Decl. ¶4.  Therefore, Defendants' massive ongoing infringement of Perfect 10's rights, described herein, is devastating to Perfect 10's business and threatens Perfect 10's existence.  Perfect 10 cannot compete against a massive infringer such as RapidShare, which offers billions of dollars of pirated works, including most of Perfect 10's copyrighted images, for less per month than the cost of a *perfect10.com* membership.  Zada Decl. ¶4.  Indeed, without the relief Perfect 10 is seeking, it likely will go into bankruptcy.  Zada Decl. ¶4.

**B.     Defendants' Business.**

By Defendants' own admission, Schmid created and maintains RapidShare.  He has also been identified in one article as the owner of RapidShare.  Chang has been described as RapidShare's chief executive officer.  Zada Decl. ¶14, Exh. 9.  Schmid and Chang personally carry out, direct, and facilitate RapidShare's infringing activities. Zada Decl. ¶¶9, 14, Exhs. 4, 9.

As noted above, Defendants own and operate the internet website *rapidshare.com,* as well as multiple foreign versions of that website, such as *rapidshare.de.*  Both *rapidshare.com* and *rapidshare.de* appear to be registered to Schmid, because Schmid is listed as the owner of these websites, rather than RapidShare.  Schmid is also listed as the sole registrant contact, administrative contact, and technical contact for both websites.  Zada Decl. ¶¶9, 14, Exhs. 4, 9.

Defendants store hundreds of thousands of unauthorized copyrighted images on

their *rapidshare.com* servers, as well as billions of dollars of songs and major full-length movies, featuring every major recording artist and every major actor.  In particular, *rapidshare.com* is currently storing and selling at least 17,000 infringing P10 Images, as well as a number of Perfect 10 videos.  For a monthly fee of only $10, Defendants are selling access to all of this stolen intellectual property.  Zada Decl. ¶¶4-7, 11-12, Exhs 1-2, 6-7.  In addition, Defendants have established an affiliate program under which RapidShare pays its members, both when they refer traffic to *rapidshare.com* and when other members download infringing content that these members have uploaded onto RapidShare's servers.  Zada Decl. ¶6, Exh. 1.  In other words, if RapidShare member John Smith copies the movie "Avatar" onto RapidShare's servers*,* Mr. Smith earns a small fee every time another RapidShare member downloads that movie.

Defendants are aware that they have been infringing Perfect 10's intellectual property, for at least four reasons.  First, on May 29, 2009, Perfect 10 sent a notice to RapidShare at its offices in Switzerland, informing it that RapidShare was infringing 842 specifically identified P10 Images that were being offered for sale and downloading on the *rapidshare.com* websites.  Defendants have not responded in any way to that notice.  Zada Decl. ¶¶9-11, Exhs. 4-6, 11.  Second, the P10 Images which Defendants sell without authorization usually contain visible Perfect 10 copyright notices or trademarks.  Zada Decl. ¶11, Exhs. 6, 11.  Third, the file names of, and links to, the P10 Images which Defendants offer for sale often utilize Perfect 10's trademark, either "P10" or "Perfect 10."  Zada Decl. ¶6 , Exh. 1.[1]  Fourth, three court decisions in Germany finding RapidShare to be a massive infringer (discussed below) should have given Defendants knowledge that *rapidshare.com* was being used overwhelmingly for infringement.

---

[1] Perfect 10 owns registered trademarks for "Perfect 10" and "P10."  Zada Decl. ¶4.

**C.**  **Defendants Are Continuing To Infringe Thousands Of P10 Images.**

Defendants are continuing to infringe thousands of P10 Images, even after the filing of this lawsuit.  In March 2010 alone, Perfect 10 has downloaded more than 17,000 P10 Images from *rapidshare.com* servers.  Zada Decl. ¶¶5-6, 11, Exhs. 1, 6, 11.  Moreover, *rapidshare.com* is continuing to receive traffic from websites (presumably RapidShare members) that infringe P10 Images and post links for downloading P10 Images from *rapidshare.com*.  Zada Decl. ¶¶6-7, 11, Exhs. 1-2, 6, 11.

**D.**  **Previous Adverse Rulings Against RapidShare.**

There have been at least three adverse court rulings against RapidShare in Germany.  Zada Decl. ¶14, Exh. 9.  In particular, on September 30, 2009, an appellate court in Hamburg, Germany issued a ruling in favor of Petter Hegre and against RapidShare.  The ruling states, in relevant part, as follows:

> [I]t is unavoidably demonstrated that the defendant's total business model, in its current form, cannot be sanctioned by the legal system and is consequently not worthy of protection, because lastly ***the infringement of copyright has been committed on a massive scale*** and the legitimate interests of the copyright holder, in spite of existing reasonable monitoring mechanisms are left unprotected in a manner that in legal terms, also against the background only of limited investigation obligations of the provider, is not acceptable.  Rather, there is a danger inherent in the defendant's business model, a danger to be taken seriously, that ***this model is being used for the (massive) committing of criminal acts, copyright infringements and pure acts of unfair competition.***  A business model that is based on such principles does not merit the protection of the legal system, because in the end, it renders the legitimate interests of owners of absolute protected rights consciously and knowingly completely unprotected."

Zada Decl. ¶14, Exhs. 9, 11 (folder "Translation of German Appeals Court ruling").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.   APPLICABLE LEGAL STANDARDS FOR THIS MOTION.

This Court may grant injunctive relief to Perfect 10 "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009), *quoting Winter v. Natural Res. Def. Council, Inc.,* __ U.S. __, 129 S.Ct. 365, 374 (2008).  *See also Perfect 10 v. Amazon,* 508 F.3d at 1158 ("[p]reliminary injunctive relief is available to a party who demonstrates either: (1) a combination of probable success on the merits and the possibility of irreparable harm; or (2) that serious questions are raised and the balance of hardships tips in its favor. These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases.") (quotation and citation omitted).  As explained below, Perfect 10's evidence establishes its right to injunctive relief on its claims that Defendants are liable for direct and contributory copyright infringement and for unfair competition.

### IV.   PERFECT 10 IS LIKELY TO SUCCEED ON ITS DIRECT INFRINGEMENT CLAIM BECAUSE DEFENDANTS HAVE INFRINGED AT LEAST 43,000 FULL-SIZE P10 IMAGES.

Defendants are liable for direct infringement if Perfect 10 shows "ownership of the allegedly infringed material" and demonstrates that Defendants "violate[d] at least one exclusive right detailed in 17 U.S.C. §106." *Perfect 10 v. Amazon,* 508 F.3d at 1159 (quotation omitted).  Here, Perfect 10 has demonstrated that it owns the P10 Images and Perfect 10 videos that are the subject of this Motion.  Zada Decl. ¶¶1, 4, Exh. 11; Poblete Decl.  Moreover, Perfect 10 has been able to download at least 43,000 infringing full-size P10 Images from *rapidshare.com* servers – 26,000 P10 Images over the past several years, and an additional 17,000 P10 Images in March

2010 alone.  Zada Decl. ¶¶5, 11, Exh. 6, 11.  It cannot be disputed that Defendants'

own servers are storing these images and communicating copies of these images to

RapidShare customers.  By copying P10 Images onto these servers, and then

offering access to these images in exchange for payment, Defendants are violating

Perfect 10's exclusive reproduction and distribution rights.  Defendants are

violating Perfect 10's exclusive rights to its Perfect 10 videos in the same manner.

Zada Decl. ¶5.

Similar massive infringers, such as *guba.com*, *usenet.com*, and *thepiratebay.org,*

have already been found liable in the United States and Sweden, respectively.  *See,*

*e.g., Arista Records  v. Usenet.com,* 633 F.Supp.2d 124, 131(S.D.N.Y. 2009) ("There

can be no dispute that Defendants' services were used overwhelmingly for copyright

infringement."); Zada Decl. ¶13, Exh. 8.  Defendants' conduct is at least as egregious

as that of the above websites, because RapidShare both stores the infringing content on

its servers and sells access to that content.  For this reason alone, Perfect 10 is entitled

to injunctive relief.

# V.     PERFECT 10 IS LIKELY TO SUCCEED ON ITS CONTRIBUTORY COPYRIGHT INFRINGEMENT CLAIM.

The evidence submitted by Perfect 10 establishes that, as part of its affiliate

program, RapidShare pays its members when: (i) they refer traffic to *rapidshare.com*;

and (ii) other RapidShare members download infringing files that these members have

uploaded to *rapidshare.com* servers.  Zada Decl. ¶6, Exh. 1.  As explained below, such

conduct establishes Defendants' liability for contributory copyright infringement.

The Supreme Court has held that "[o]ne infringes contributorily by intentionally

inducing or encouraging direct infringement." *Grokster*, 545 U.S. at 930.  The Court

has defined two different categories of contributory liability: (i) actively encouraging

or inducing infringement through specific acts; or (ii) distributing a product used to

infringe copyrights, if the product is not capable of "substantial" or "commercially

significant" noninfringing uses. *Id.* at 942 (Ginsburg, J., concurring).  *See also id.* at

9

**09cv02596**

Plaintiff Perfect 10, Inc.'s Memorandum Of Points And Authorities In Support Of Its Motion For
Preliminary Injunction Against Defendants RapidShare A.G., Christian Schmid, and Bobby Chang

936-37; *Perfect 10 v. Amazon,* 508 F.3d at 1170.  Under the first category defined by the *Grokster* Court, "an actor may be contributorily liable for intentionally encouraging direct infringement if the actor knowingly takes steps that are substantially certain to result in such direct infringement." *Perfect 10 v. Amazon,* 508 F.3d at 1171.  *See also id.* ("one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer").

Moreover, the Supreme Court has stressed the importance of the second category of contributory liability, acknowledging that "'[t]he argument for imposing indirect liability' is particularly 'powerful' when individuals using the defendant's software could make a huge number of infringing downloads every day." *Perfect 10 v. Amazon,* 508 F.3d at 1172, *quoting Grokster,* 545 U.S. at 929.  The Supreme Court has further noted that copyright holders "cannot protect their rights in a meaningful way unless they can hold providers of such services or products accountable for their actions . . ." [*id., citing Grokster,* 545 U.S. at 929-30]:

> When a widely shared service or product is used to commit infringement, it may be impossible to enforce rights in the protected work effectively against all direct infringers, the only practical alternative being to go against the distributor of the copying device for secondary liability on a theory of contributory or vicarious infringement.

*Grokster,* 545 U.S. at 929-30.

Here, Perfect 10 is likely to succeed on its claim that Defendants are liable for contributory copyright infringement under both of the above categories.  First, Defendants are actively encouraging or inducing direct infringement by paying RapidShare members that upload files to RapidShare servers every time that other RapidShare members download such files – even when such files contain infringing content.  Paying RapidShare members in such a manner is "substantially certain to result in such direct infringement" [*Perfect 10 v. Amazon,* 508 F.3d at 1171], as

evidenced by the massive amount of infringing intellectual property that has been uploaded to RapidShare servers, including more than 43,000 infringing P10 Images. Zada Decl. ¶¶5-7, 11-12, 14-15, Exhs. 1-2, 6-7, 9-10.

Second, a secondary infringer may be contributorily liable if it has actual *or* constructive knowledge of direct infringement. *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1020 (9th Cir. 2001) (contributory liability requires that the secondary infringer "know or have reason to know" of direct infringement); *Louis Vuitton Mattetier, S.A. v. Akanoc Solutions, Inc.,* 591 F.Supp.2d 1098, 1107-08 (N.D. Cal. 2008) ("a reasonable jury could find that Defendants should have known that infringing websites were using their services").  Here, Defendants' failure to respond to the notice sent by Perfect 10 to RapidShare on May 29, 2009, informing it that RapidShare was infringing 842 specifically identified P10 Images that were being offered for sale and downloading on *rapidshare.com*, unquestionably establishes Defendants' knowledge of direct infringement.  *See* Zada Decl. ¶¶9-11, Exhs. 4-6, 11. Furthermore, the visible Perfect 10 copyright notices on the P10 Images available for unlawful downloading on RapidShare servers, and the file names of these P10 Images, gave Defendants reason to know of the infringing activity occurring on RapidShare servers.  Zada Decl. ¶¶6, 11, Exhs. 1, 6, 11.

Third, the three court decisions in Germany finding RapidShare to be a massive infringer should have given RapidShare knowledge that its website was being used overwhelmingly for infringement.  For these reasons as well, Defendants are contributorily liable.  *See, e.g., A & M Records,* 239 F.3d at 1021 ("if a computer system operator learns of specific infringing material available on his system and fails to purge such material from the system, the operator knows of and contributes to direct infringement").

Finally, the fact that Defendants offer billions of dollars of infringing full-length movies, songs, images, and computer software for downloading, in exchange for only a $10 monthly fee, establishes that Defendants are providing a service that is being used

Plaintiff Perfect 10, Inc.'s Memorandum Of Points And Authorities In Support Of Its Motion For
Preliminary Injunction Against Defendants RapidShare A.G., Christian Schmid, and Bobby Chang

1   to infringe copyrights and that has no other legitimate, non-infringing use.  Zada Decl.

2   ¶¶4-7, 11-12, 14, Exhs 1-2, 6-7, 9.  Accordingly, Perfect 10 has also satisfied the

3   requirements for contributory copyright infringement under the second category for

4   contributory liability defined by the Supreme Court in *Grokster.*

5   **VI.    DEFENDANTS CANNOT ESTABLISH THAT RAPIDSHARE IS**

6   **ENTITLED TO A SAFE HARBOR DEFENSE UNDER THE DMCA.**

7        Because Perfect 10 has established that it is likely to succeed on its copyright

8   infringement claim, Defendants can defeat this Motion only by showing a likelihood of

9   success on an affirmative defense to such a claim.  *See, e.g., Perfect 10 v. Amazon*, 508

10  F.3d at 1158 (at the preliminary injunction stage, once a plaintiff "has shown a

11  likelihood of success on the merits, the burden shifts to [the defendant] to show a

12  likelihood that its affirmative defenses will succeed").  Here, Defendants cannot satisfy

13  this requirement with respect to any possible affirmative defense.  In particular,

14  RapidShare is ineligible for the safe harbor affirmative defense under the DMCA for

15  several reasons.

16       First, RapidShare has not designated a DMCA agent with the United States

17  Copyright Office to receive notifications of claimed infringement by copyright holders

18  such as Perfect 10.  For this reason alone, its affirmative defense fails.  *See* 17 U.S.C.

19  § 512(c)(2) (providing that the DMCA's limitations on liability apply only if a service

20  provider has provided the Copyright Office with the name, address, phone number, and

21  electronic mail address of its designated agent).

22       Second, the safe harbor provisions of Section 512(c) of the DMCA apply only if

23  RapidShare: (i) does not have actual knowledge that the material or an activity using

24  the material on its system is infringing; (ii) in the absence of such actual knowledge, is

25  not aware of facts or circumstances from which infringing activity is apparent; or

26  (iii) "upon obtaining such knowledge or awareness [of infringing material or activity],

27  acts expeditiously to remove, or disable access to, the [allegedly infringing] material."

28  17 U.S.C. §§ 512(c)(1)(A)(i-iii).  Here, RapidShare had actual knowledge of infringing

Plaintiff Perfect 10, Inc.'s Memorandum Of Points And Authorities In Support Of Its Motion For
Preliminary Injunction Against Defendants RapidShare A.G., Christian Schmid, and Bobby Chang

content on its system and was aware of facts from which infringing activity was apparent. Nevertheless, RapidShare did not respond at all to the DMCA notice sent directly to its offices by Perfect 10 on May 27, 2009, let alone respond expeditiously to remove the infringing material identified in that notice. Zada Decl. ¶¶9-11, Exhs. 4-6, 11. For this reason as well, RapidShare does not qualify for a DMCA safe harbor.

Third, and perhaps most important, the DMCA specifically provides that entities such as RapidShare that sell access to pirated copyrighted works are not eligible for a safe harbor. Rather, the statute provides that a service provider is eligible for safe harbor under the DMCA only if it "does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity." 17 U.S.C. § 512(c)(1)(B). Here, RapidShare has complete control over the infringing P10 Images and other copyrighted works to which it sells access, because these works are stored on its own servers. Moreover, RapidShare receives a direct financial benefit every time a user pays the monthly fee necessary to gain access to such infringing content. Zada Decl. ¶6, Exh. 1. Accordingly, RapidShare is ineligible for any DMCA safe harbor.

Finally, it is extraordinarily unlikely that the billions of dollars of full-length movies, popular songs, images and computer software offered for sale by RapidShare were all uploaded to RapidShare servers only by RapidShare members – and not by Defendants themselves. Indeed, if Defendants were to rely solely upon the random uploads of RapidShare members, it would be practically impossible for them to obtain a library consisting of nearly every full-length movie and song. Rather, the only possible conclusion is that Defendants themselves were involved in uploading a substantial portion of the infringing material. Defendants cannot present any evidence to the contrary, because RapidShare conveniently hides the identity of the "members" who Defendants allege have uploaded all of RapidShare's pirated materials. Zada Decl. ¶14, Exhs. 9, 11 (folder "Translation of German Appeals Court ruling").

In any event, regardless of who actually uploaded all the infringing works found

on RapidShare servers, it cannot be disputed that Defendants are running a massive infringing website, which is selling billions of dollars of stolen materials and is not entitled to legal protection under the DMCA.  For all of the reasons discussed above, Defendants cannot satisfy their burden of showing that they are likely to succeed on any DMCA safe harbor affirmative defense.[2]

## VII.   PERFECT 10 IS ALSO ENTITLED TO INJUNCTIVE RELIEF UNDER CALIFORNIA'S UNFAIR COMPETITION STATUTE.

Even if Defendants were to remove every copyrighted image owned by Perfect 10 from RapidShare servers, it would still be impossible for Perfect 10 to compete fairly with RapidShare, because RapidShare offers its members access to billions of dollars of full-length movies, songs, computer software, and images for a monthly fee of only $10.  Zada Decl. ¶4.  No legitimate business can compete with a business such as RapidShare that obtains stolen intellectual property at no cost whatsoever.  Accordingly, as explained below, Perfect 10 is entitled to injunctive relief under California's Unfair Competition Law, Sections 17200 *et seq.* of the California Business and Professions Code (the "UCL"), to prohibit Defendants from engaging in such unfair practices.

Section 17203 of the UCL provides, in pertinent part, that "[a]ny person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in

---

[2] Moreover, even if Defendants were entitled to a safe harbor defense (and they are not, for all of the reasons discussed above), Perfect 10 would still be entitled to the following injunctive relief under Section 512(j) of the DMCA: (i) An order restraining the service provider from providing access to infringing material or activity residing at a particular online site on the provider's system or network; (ii) An order restraining the service provider from providing access to a subscriber or account holder of the service provider's system or network who is engaging in infringing activity and is identified in the order, by terminating the accounts of the subscriber or account holder that are specified in the order; and (iii) Such other injunctive relief as the court may consider necessary to prevent or restrain infringement of copyrighted material specified in the order of the court at a particular online location, if such relief is the least burdensome to the service provider among the forms of relief comparably effective for that purpose.  17 U.S.C. § 512(j)(1)(a).

14

09cv02596

Plaintiff Perfect 10, Inc.'s Memorandum Of Points And Authorities In Support Of Its Motion For Preliminary Injunction Against Defendants RapidShare A.G., Christian Schmid, and Bobby Chang

any court of competent jurisdiction." Cal. Bus. & Prof. Code § 17203. Section 17200 of the UCL defines "unfair competition" to "mean and include any unlawful, unfair or fraudulent business act or practice." *Id.* § 17200. Thus, under the UCL, a business practice may be "unfair" – and thus violative of the statute – even if it is not "fraudulent" and even if it is "lawful." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 560-561 (1999). Accordingly, the California Supreme Court has held that a "business act or practice" is "unfair" if it "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech,* 20 Cal.4th at 187, 83 Cal.Rptr.2d at 565. The Ninth Circuit has held that the UCL encompasses "practices which offend established public policy or that are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1203 (9th Cir. 2001).

Here, RapidShare's providing access to billions of dollars of stolen intellectual property for only $10 per month significantly harms competition. For example, set forth below is a list of just some of the full-length, major motion pictures available from RapidShare for $10 a month – movies for which RapidShare has no rights whatsoever:

| Google Search for "Movie Title" & rapidshare.com | Results Returned | Google Search for "Movie Title" & rapidshare.com | Results Returned |
|---|---|---|---|
| Avatar | 31,900,000 | The Young Victoria | 1,850,000 |
| The Book of Eli | 20,900,000 | Terminator | 1,600,000 |
| Smokin' Aces 2 | 19,000,000 | Transformers | 1,590,000 |
| E.T. | 18,100,000 | A Serious Man | 1,580,000 |
| Dirty Dancing | 17,400,000 | American Pie | 1,510,000 |
| Twilight | 17,100,000 | Old Dogs | 1,390,000 |
| Harry Potter | 9,580,000 | Daybreakers | 1,210,000 |
| Star Wars | 9,300,000 | Smokin Aces | 1,190,000 |
| Batman | 9,020,000 | South Park | 1,160,000 |

Plaintiff Perfect 10, Inc.'s Memorandum Of Points And Authorities In Support Of Its Motion For Preliminary Injunction Against Defendants RapidShare A.G., Christian Schmid, and Bobby Chang

| Google Search for "Movie Title" & rapidshare.com | Results Returned | Google Search for "Movie Title" & rapidshare.com | Results Returned |
|---|---|---|---|
| Star Trek | 8,700,000 | Titanic | 1,090,000 |
| Precious | 7,900,000 | Edge of Darkness | 1,030,000 |
| Sherlock Holmes | 6,820,000 | Lord of the Rings | 1,030,000 |
| New Moon | 6,770,000 | District 9 | 1,010,000 |
| The Invention of Lying | 6,680,000 | Armored | 948,000 |
| Princess and the Frog | 6,490,000 | Tomb Raider | 864,000 |
| Ninja Assassin | 6,220,000 | Bruno | 830,000 |
| The Time Traveler's Wife | 6,210,000 | Couples Retreat | 805,000 |
| Shutter Island | 5,590,000 | Hangover | 779,000 |
| Legion | 5,120,000 | The Bourne Ultimatum | 773,000 |
| The Fourth Kind | 4,990,000 | James Bond | 738,000 |
| Simpsons | 4,820,000 | Invictus | 723,000 |
| Alice in Wonderland | 4,770,000 | Zombieland | 702,000 |
| Spiderman | 4,580,000 | Astro Boy | 680,000 |
| The Boondock Saints II | 4,490,000 | Julie & Julia | 676,000 |
| Notebook | 3,990,000 | Indiana Jones | 658,000 |
| El Secreto de Sus Ojos | 3,960,000 | Godfather | 640,000 |
| X-Men | 3,760,000 | The Lovely Bones | 617,000 |
| Law Abiding Citizen | 3,630,000 | Sex and the City | 613,000 |
| Hurt Locker | 3,500,000 | Surrogates | 611,000 |
| The Men Who Stare at Goats | 3,170,000 | The Brother's Bloom | 582,000 |
| Matrix | 3,060,000 | Valentine's Day | 545,000 |
| Up in the Air | 3,000,000 | King Kong | 536,000 |
| From Paris with Love | 2,950,000 | Cirque Du Freak | 534,000 |
| Iron Man | 2,810,000 | Cloudy with a Chance of Meatballs | 534,000 |
| Agora | 2,000,000 | Crazy Heart | 527,000 |
| Tooth Fairy | 1,950,000 | Pirates of the Caribbean | 527,000 |
| Blind Side | 1,880,000 | Inglorious Bastards | 515,000 |
| Cop Out | 1,850,000 | Where the Wild Things Are | 494,000 |
| Dorian Gray | 470,000 | Pulp Fiction | 232,000 |
| Funny People | 469,000 | Back to the Future | 202,000 |
| Jurassic Park | 449,000 | It's Complicated | 188,000 |
| When in Rome | 437,000 | Borat | 176,000 |
| Jennifer's Body | 433,000 | War of the Worlds | 161,000 |
| Whiteout | 410,000 | American Beauty | 158,000 |
| Extraordinary Measures | 407,000 | Men in Black | 158,000 |
| Toy Story | 404,000 | The Incredibles | 142,000 |

Plaintiff Perfect 10, Inc.'s Memorandum Of Points And Authorities In Support Of Its Motion For Preliminary Injunction Against Defendants RapidShare A.G., Christian Schmid, and Bobby Chang

09cv02596

Zada Decl. ¶12, Exh. 7.  The "Results Returned" column in the above chart lists the number of results obtained from a Google search conducted for the particular movie title and the term "rapidshare.com."  An investigation of a sampling of those search results showed that the particular movie listed was being offered for downloading via RapidShare.  *Id.* ¶12, Exh. 7.  Similar lists of songs and television shows offered by RapidShare are also listed in Exhibit 7 to the Zada Declaration.

Perfect 10 and other copyright holders cannot compete with RapidShare's massive offering of pirated materials.  RapidShare's conduct is unethical, unscrupulous, and violates the public policy underlying copyright law.  For all of these reasons, Perfect 10 is entitled to injunctive relief under the UCL prohibiting RapidShare from continuing to engage in such unfair competition.

## VIII. <u>PERFECT 10 HAS ESTABLISHED THAT IT WILL SUFFER IRREPARABLE HARM WITHOUT INJUNCTIVE RELIEF.</u>

Perfect 10 has also established that it is likely to suffer irreparable harm in the absence of injunctive relief, for at least two separate reasons.  *See, e.g.,  Am. Trucking Ass'ns,*, 559 F.3d at 1052.

First, under controlling Ninth Circuit authority, "a plaintiff that demonstrates a likelihood of success on the merits of a copyright infringement claim is entitled to a presumption of irreparable harm."  *Sun Microsystems, Inc. v. Microsoft Corp*., 188 F.3d 1115, 1119 (9th Cir.1999)  "A copyright holder seeking a preliminary injunction is therefore not required to make an independent demonstration of irreparable harm."  *LGS Architects, Inc. v. Concordia Homes of Nevada,* 434 F.3d 1150, 1156-57 (9th Cir. 2006).  Accordingly, because Perfect 10 has shown that it is likely to succeed on its copyright infringement claim [*see* Sections IV and V, above], it has also established that it is likely to suffer irreparable harm if the Court does not grant this Motion.

Second, Perfect 10 has submitted sufficient evidence to establish that it will suffer irreparable harm without injunctive relief, even without the presumption discussed by the Ninth Circuit in *Sun Microsystems.*  The Supreme Court has held that

**09cv02596**
Plaintiff Perfect 10, Inc.'s Memorandum Of Points And Authorities In Support Of Its Motion For
Preliminary Injunction Against Defendants RapidShare A.G., Christian Schmid, and Bobby Chang

1  plaintiffs' undisputed allegation that "absent preliminary relief they would suffer a
2  substantial loss of business and perhaps even bankruptcy" establishes irreparable
3  injury.  *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 932, 95 S.Ct. 2561, 2568 (1975).
4  "Certainly the latter type of injury sufficiently meets the standards for granting interim
5  relief, for otherwise a favorable final judgment might well be useless."  *Id.  See also* 13
6  *Rutter Group Practice Guide: Federal Civil Procedure Before Trial* (TRG 2010)
7  §13:58.

8          Here, as well, Perfect 10 has submitted undisputed evidence that it will likely go
9  into bankruptcy without injunctive relief.  Zada Decl. ¶¶4, 11-12, Exhs. 6-7, 11.  Under
10 these circumstances, any favorable judgment against Defendants years from now
11 would be useless.  Accordingly, such evidence supports a finding of "irreparable harm"
12 under the Supreme Court's holding in *Doran.*

13 **IX.    THE BALANCE OF EQUITIES SUBSTANTIALLY FAVORS**
14 **        INJUNCTIVE RELIEF.**

15         The issue in evaluating the balance of hardships raised by injunctive relief "is
16 the degree of harm that will be suffered by the plaintiff or the defendant if the
17 injunction is *improperly* granted or denied."  *See, e.g., Scotts Co. v. United Industries*
18 *Corp.*, 315 F.3d 264, 284 (4th Cir.2002) (emphasis in original); *Summit Entertainment,*
19 *LLC v. Beckett Media, LLC,* 2010 WL 147958 *4 (C.D. Cal., Jan. 12, 2010).  Here, if
20 an injunction is improperly denied, Perfect 10's business and its copyrighted works
21 will continue to be devalued by Defendants' providing access to infringing P10 Images
22 on *rapidshare.com,* to the point where Perfect 10 likely will go into bankruptcy.  Zada
23 Decl. ¶4.  By contrast, if an injunction is improperly granted, Defendants will simply
24 not be able to sell materials they do not own anyway.  Accordingly, the balance of
25 equities tips strongly in favor of granting injunctive relief to Perfect 10.

26 **X.     AN INJUNCTION IS IN THE PUBLIC INTEREST.**

27         Both the Supreme Court and the Ninth Circuit have explained that "[t]he sole
28 interest of the United States and the primary object in conferring the monopoly [of

18                                                                    **09cv02596**

Plaintiff Perfect 10, Inc.'s Memorandum Of Points And Authorities In Support Of Its Motion For
Preliminary Injunction Against Defendants RapidShare A.G., Christian Schmid, and Bobby Chang

1  copyright protection] lie in the general benefits derived by the public from the labors of

2  authors." *Elvis Presley Enterprises, Inc. v. Passport Video*, 357 F.3d 896, 899 (9th

3  Cir.2004), *quoting Sony Corp. of America v. Universal City Studios, Inc.,* 464 U.S.

4  417, 429, 104 S.Ct. 774 (1984) (internal quotations omitted).  "In other words," as one

5  court recently noted, "the public receives a benefit when the legitimate rights of

6  copyright holders are vindicated." *Apple Inc. v. Psystar Corp.,* 673 F.Supp.2d 943,

7  950 (N.D. Cal. 2009).

8         Here, Perfect 10 has demonstrated that its rights as a copyright holder are likely

9  being violated by Defendants' copying of infringing P10 Images onto RapidShare

10  servers and then offering access to these images to RapidShare customers in exchange

11  for their payment of a monthly fee.  For this reason, the injunctive relief sought by

12  Perfect 10 is in the public interest.

13  **XI.   CONCLUSION.**

14         Perfect 10 has demonstrated that it is likely to succeed on its copyright

15  infringement and unfair competition claims against Defendants, because

16  *rapidshare.com* is a massive infringing paysite that is knowingly selling access to

17  billions of dollars of copyrighted works, including thousands of infringing P10 Images.

18  Copyright holders such as Perfect 10 cannot compete against such infringers, who do

19  not pay for their massive collections of stolen content.  Indeed, without the injunctive

20  relief sought herein, Perfect 10 likely will go bankrupt.  Accordingly, for all of the

21  above reasons, Perfect 10 respectfully requests that the Court grant this Motion and

22  enter a preliminary injunction against Defendants, and each of them.

23  Dated: April 11, 2010              Respectfully submitted,
                                       Law Offices of Jeffrey N. Mausner
24

25
                                       By: *s/ Jeffrey N. Mausner*
26                                        _____

27                                         Jeffrey N. Mausner,
                                          Attorney for Plaintiff Perfect 10, Inc.
28                                         Email: Jeff@MausnerLaw.com