1  Eric J. Benink, Esq., SBN 187434
2  Krause Kalfayan Benink & Slavens, LLP
   625 Broadway, Suite 635
3  San Diego, CA 92101
   (619) 232-0331 (ph)
4  (619) 232-4019 (fax)
   eric@kkbs-law.com
5
6  Jeffrey N. Mausner, Esq., SBN 122385
   Law Offices of Jeffrey N. Mausner
7  21800 Oxnard St., Suite 910
   Woodland Hills, CA 91367
8  (310) 617-8100 (ph)
   (818) 716-2773 (fax)
9  jeff@mausnerlaw.com

10  Attorneys for Plaintiff Perfect 10, Inc.

11              UNITED STATES DISTRICT COURT

12            SOUTHERN DISTRICT OF CALIFORNIA

13
   PERFECT 10, INC., a California      CASE NO. 09 CV 2596 H (WMC)
14  corporation,
                                        **MEMORANDUM OF POINTS AND**
15              Plaintiff,              **AUTHORITIES OF PLAINTIFF**
        v.                             **PERFECT 10 IN OPPOSITION TO**
16                                      **DEFENDANTS' RULE 12(b)(2)**
   RAPIDSHARE A.G., a corporation;     **MOTION TO DISMISS**
17  CHRISTIAN SCHMID; BOBBY
   CHANG; and DOES 1 through 100,      DATE:    May 10, 2010
18  inclusive,                         TIME:    10:30 a.m.
                                        CTRM:    13
19              Defendants.            JUDGE:   Hon. Marilyn L. Huff

20                                      Special Briefing Schedule Ordered

21                                      DATE FILED: November 18, 2009
22                                      TRIAL DATE: None Set
23
24
25
26
27
28

## **TABLE OF CONTENTS**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT .................................... 1

II.   STATEMENT OF FACTS ................................................................................ 2

    A.    RapidShare's Business.......................................................................... 2

          1.    Contrary To Its Denials, RapidShare Has An Affiliate Program ...... 3

          2.    RapidShare Has Substantial Contacts In California Through The Use Of A California Company, PayPal, As Its Primary Payment Processor ......................................... 5

          3.    Consumers Locate Illegal Files Using RapidShare Affiliates And Google ................................................................ 5

          4.    RapidShare's Business Has Been Repeatedly Ruled Illegal in Germany ................................................................ 6

    B.    Perfect 10 Operates A Legitimate Business Which It Is Simply Trying To Protect ................................................................ 7

III.  ARGUMENT ...................................................................................................... 7

    A.    The Standards Under 12(b)(2) Motion ................................................ 7

    B.    The Court May Properly Exercise Specific Jurisdiction Over Defendants ................................................................................ 8

          1.    Purposeful Availment ................................................................ 9

          2.    The claims arise out of and result from Defendants' forum-related activities ................................................................ 11

          3.    Defendants have not demonstrated that assertion of jurisdiction is unreasonable ................................................ 12

    C.    The Court May Exercise Federal Long-Arm Jurisdiction Pursuant To Rule 4(K)(2) ................................................................ 15

    D.    Schmid Is Subject To Jurisdiction As A Moving, Active, Conscious Force Behind The Infringing Activites ............................. 16

    E.    If The Court Does Not Determine There Is Personal Jurisdiction Over All Defendants, Limited Jurisdictional Discovery Is Warranted ..... 18

IV.  CONCLUSION ................................................................................................ 18

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

4

Allstar Marketing Group, LLC v. Your Store Online, LLC.
666 F.Supp.2d 1109 (C.D. Cal. 2009) ................................................ 9, 11

5

American Automobile Assoc., Inc. v. Darba Enterprises, Inc.
2009 WL 1066506 at * 4 (N.D. Cal. 2009) ................................................ 10

6

AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586 *(9th Cir. 1996)* ........................ 8

7

8

Babbit Electronics, Inc. v. Dynascan Corp., 828 F.Supp. 944 at
(S.D.Fla.1993), aff'd 38 F.3d 1161 (11th Cir.1994)........................................ 17

9

Bambu Sales, Inc. v. Sultana Crackers, Inc., 683 F.Supp. 899 (E.D.N.Y.1988) .......... 17

10

Boschetto v. Hansing 539 F.3d 1011 (9th Cir. 2008)................................................ 8, 12

11

Brainerd v. Governors of the Univ. of Alberta, 873 F.2d 1257 (9th Cir. 1989) ............ 13

12

Burger King Corp. v. Rudzewicz, 471 U.S. 462; 105 S.Ct. 2174 (1985)............. 8, 9, 15

13

*Calder v. Jones* 465 U.S. 783;104 S.Ct. 1482 (1984) ....................................... 9

14

Colt Studio Inc., v. Badpuppy Enterprise 75 F.Supp.2d 1104
(C.D. Cal.1999) ........................................................................ 1, 9, 14

15

Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414,416 (9th Cir. 1997)........................ 8, 9

16

Data Disc, Inc. v. Sys. Technology Assoc., Inc., 557 F.2d 1280 (9th Cir. 1977)....... 7, 8

17

Davis v. Metro Productions, Inc. 885 F.2d 515 (9th Cir. 1984) ................................ 2, 16

18

DirectTV, Inv. v. EQ Stuff, Inc. 207 F.Supp.2d 1077 (C.D. Cal. 2002) ..................... 12

19

20

Graduate Management Admission Council v. Raju 241 F.Supp.2d 589
(E.D. Va. 2003) ........................................................................ 16

21

*Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408;
104. S.Ct. 1868(1984)........................................................................ 8

22

23

Hewlett-Packard Co. v. Repeat-O-Type Stencil Mfg, 1995 WL 552168
(N.D. Ca. 1995)........................................................................ 17

24

*Holland Am. Line Inc. v. Wartsila N. Amer. Inc.*, 485 F.3d 450 (9th Cir. 2007)........... 15

25

ISI Int'l Inc. v. Borden Ladner Gervais LLP 256 F.3d 548 (7th Cir. 2001) ................ 15

26

Matsunoki Group, Inc. v. Timberwork Oregon, Inc. 2009 WL 1033818 at *3
(N.D. Cal. 2009)........................................................................ 2, 16, 17

27

28

Monster Cable Products, Inc. v. Euroflex SRI 642 F.Supp.2d 1001
(N.D. Cal. 2009)........................................................................ 15

Mullally v. Jones 2007 WL 674294 (D. Nev. 2007) ........................................ 10

*Ochoa v. J.B. Martin & Sons Farms, Inc.,* 287 F.3d 1182 (9th Cir.2002) .................... 16

Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267 (9th Cir. 1995) .................. 8

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340; 98 S.Ct. 2380 (1978) .................. 18

Panavision Int'l, L.P. v. Toeppen 141 F.3d 1316, (9th Cir. 1998) ......................... passim

Pebble Beach Co. v. Caddy 453 F.3d 1151 (9th Cir. 2006) ...................................... 9, 15

Playboy Enterprises, Inc. v. Starware Publishing Corp., 900 F.Supp. 438 (S.D.Fla.1995) ..................................................................................................... 17

*Shute v. Carnival Cruise Lines* 897 F.2d 377 (9th Cir. 1990) rev'd 499 U.S. 585; 111 S.Ct. 1522 (1991) ....................................................................... 11

Stomp, Inc. v. NeatO, LLC 61 F.Supp.2d 1074 (C.D. Cal 1999) ........................... 9, 10

Sunview Condominium Ass'n v. Flexel Int'l, Ltd, 116 F.3d 962 (1st Cir. 1997) ......... 18

**Statutes**

17 U.S.C. §502 .......................................................................................................... 14

Cal. Code Civ. Proc. § 410.10 .................................................................................... 8

California Business and Professions Code §17200 ..................................................... 14

California Civil Code §3344 ........................................................................................ 14


**Rules**

Fed. R. Civ. P., Rule 4(k) ..................................................................................... 2, 15

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

RapidShare A.G. ("RapidShare"), Christian Schmid, and Bobby Chang ("Defendants") contend that they cannot be haled into California because they allegedly have limited contacts with California.   But nowhere in Defendants' extensive declarations and exhibits do they dispute Plaintiff Perfect 10's central allegation that RapidShare enters into contracts with California consumers through its website RapidShare.com, which allows the consumers to "purchase virtually every pirated image, song, and movie for $10 a month......." and that "[i]t stores hundreds of thousands of unauthorized copyrighted images on its servers, along with billions of dollars in songs and major full length movies, featuring every major artist and every major movie. . . [including] Perfect 10 DVDs and videos, including Perfect 10's Model of The Year Video, which cost approximately $1,000,000 to produce."  Complaint ¶¶3, 19.   In fact, Defendants admit that they likely have customers in California. (Motion to Dismiss Pursuant to Rule 12(b)(2) ("12(b)(2) Motion"), p. 8, fn 7.)

Numerous courts have recognized this very type of interactive commercial activity through a website as a proper basis for an assertion of specific jurisdiction. See e.g. *Colt Studio Inc., v. Badpuppy Enterprise*  75 F.Supp.2d 1104 (C.D. Cal.1999). Moreover, RapidShare maintains relationships with California entities that make the assertion of jurisdiction even more reasonable.  For example, a very substantial portion of RapidShare's yearly revenue from the sale of RapidShare memberships is processed through PayPal,  a *California* company.

Individual defendant Schmid is the founder of RapidShare.  Not only is Schmid listed as the sole contact on the Internet registrations for both RapidShare.com and its predecessor, RapidShare.de, but it appears that Schmid, rather than RapidShare A.G., is the listed registered owner of both websites as well.[1]  Declaration of Dr. Norman Zada in support of Perfect 10's opposition to defendants' motions to dismiss ("Zada

---

[1] The listed owner of RapidShare.com is not RapidShare A.G., with Christian Schmid as the contact.  Instead, it is Christian Schmid, with RapidShare A.G. listed afterwards, as his apparent affiliated company and address.

Decl.") ¶6, Exh. 3. Where a plaintiff shows that a corporate employee is "the moving, active conscious force" behind the infringing activity, the Court may assert jurisdiction over the employee together with the entity defendant. *Matsunoki Group, Inc. v. Timberwork Oregon, Inc.* 2009 WL 1033818 at *3 (N.D. Cal., April 16, 2009) *citing Davis v. Metro Productions, Inc.* 885 F.2d 515, 520 (9th Cir. 1984).

Even if specific jurisdiction were not appropriate, Fed. R. Civ. P., Rule 4(k), provides a basis for the exercise of jurisdiction over the Defendants. Rule 4(k) allows for "nationwide service" when no one state has sufficient contacts, but where the defendant has engaged in business with the nation as a whole. Here, RapidShare targets consumers in the United States using PayPal, a California company, as its primary payment processor, by offering the services of "resellers" in the U.S as a secondary payment alternative, and by also allowing U.S. consumers to pay by charging the RapidShare membership to their telephone bill. As the *twelfth most-visited web site in the world*, the contacts with the U.S. are extraordinary.

Plaintiff asks that the Court not shield this global internet pirate that derives millions of dollars of revenues from Californians and U.S. Citizens through the sale of pirated works (largely created in the U.S.) from the reach of U.S. law. Defendants' motions to dismiss for lack of personal jurisdiction must be denied.

## II.   STATEMENT OF FACTS

### A.   RapidShare's Business

RapidShare substantially mischaracterizes itself as a "virtual storage locker." That description minimizes two very important facts, which RapidShare does not dispute. First, RapidShare charges users (including California users) a monthly fee to download whatever RapidShare makes available from its servers. Second, what RapidShare makes available from its servers is every imaginable full-length movie, most songs, computer software, and images. Zada Decl. ¶9, Exh. 6.

How these billions of dollars of pirated material got on RapidShare's servers is in dispute. RapidShare suggests that all of this material was copied onto RapidShare's

servers by its members, ostensibly for storage purposes, without RapidShare's knowledge. However, according to RapidShare's website it *does* pay member A a fee whenever member B downloads the files placed on RapidShare's servers by member A. So in other words, if member A copies the movie "Avatar" to RapidShare's servers, whenever another RapidShare member downloads that movie, member A earns a small fee. Zada Decl. ¶5, Exh. 2. It is Perfect 10's contention that Defendants copied most of the infringing material to RapidShare's servers themselves. But whether Defendants copied the infringing material, or paid others to do so, Defendants sell billions of dollars of intellectual property that they do not own, including thousands of Perfect 10 copyrighted images ("P10 Images.")

So rather than being merely a "storage locker," RapidShare is in fact arguably the most massive infringing pay website of all time. By its own admission, it is the twelfth most-visited homepage in the world, with *42 million visitors a day*. Zada Decl. ¶7, Exh. 4. It enjoys such popularity because it sells access, for $10 a month, to thousands of full-length pirate movies (e.g. Avatar, Hurt Locker, Harry Potter, Star Wars, Batman, and Sherlock Holmes), music (e.g. The Beatles, Frank Sinatra, Sarah Brightman, Christina Aguilera, Elvis Pressley, Bob Dylan, Elton John), computer software, and images. Zada Decl. ¶¶4, 9, Exhs. 1, 6. Importantly, RapidShare is currently selling access to at least 17,000 P10 Images"). Zada Decl. ¶10, Exh. 7.

RapidShare members operate behind a cloak of anonymity. RapidShare does not disclose who copied a particular file to RapidShare servers. According to one report, RapidShare is making at least *$80 million a year* by virtue of its massive sale of pirated materials. Zada Decl. ¶7, Exh. 4. RapidShare has not ascended into this rarified air based on its excellence in the "virtual storage business."

### 1. Contrary To Its Denials, RapidShare Has An Affiliate Program

Despite its denials (12(b)(2) Motion, 8:21 – 22), RapidShare maintains an affiliate program, and it is of massive proportions. Through this affiliate program, RapidShare pays its users to copy full-length movies, popular songs, and other sought

1    after pirated materials to RapidShare servers. It also pays infringing web masters who

2    drive traffic to RapidShare. Zada Decl. ¶¶5, 7, 9-10, Exhs. 2, 4, 6-7. The following is

3    an excerpt from RapidShare.com: (1) "RapidShare now offers you an **affiliate**

4    **program** through which you can earn hard cash. …. As soon as someone buys a

5    Premium Account from the download page of a file you have uploaded, ReferrerPoints

6    will be credited to your account. You can cash out the ReferrerPoints at an exchange

7    rate which is also shown in the Premium and Collector's Zone." (2) "Currently the

8    exchange rate is 1,13 Euro for 1000 Premium-RapidPoints – that means, you will be

9    credited 22.60 euro for a one year Premium Account that *you have referred!* As if this

10   were not enough, you also get Premium-RapidPoints *when Premium customers*

11   *download your files*." (3) "We have developed a new system, *which will make*

12   *valuable rewards* possible for all our loyal customers and **partners**." (emphasis

13   added). Zada Decl. ¶5, Exh. 2. In other words, RapidShare encourages the uploading

14   of popular pirated files and pays the affiliates every time another user downloads such

15   a file!

16        This affiliate program is directly at odds with Defendants' characterization of its

17   business as one that simply provides virtual storage as a "convenience" due to the size

18   of files, security of files in the event of a computer crash, and for accessibility of the

19   files from remote locations. (12(b)(2) Motion, 6: 9 – 15.) What interest would third-

20   parties have in another user's legitimate works, such as family photos / videos, work

21   files, and insurance records, and why would any user want third parties to download

22   such personal materials?

23        RapidShare mischaracterizes Perfect 10's complaint when it states that "Perfect

24   10 asserts in its complaint that the alleged acts of infringement in this case were

25   undertaken by "affiliates" of RapidShare." (Motion to Dismiss Based on Formum Non

26   Conveniens ("FNC Motion") 2: 3 – 4.) That is not correct. Perfect 10 contends that

27   the alleged acts of infringement, namely, the copying and distribution by sale of

28   Perfect 10 copyrighted images ("P10 Images"), were done by Defendants. Perfect 10

1  also contends that Defendants are secondarily liable for the infringing acts of their
2  affiliates.

### 2.  RapidShare Has Substantial Contacts In California Through The Use Of A California Company, PayPal, As Its Primary Payment Processor

6  Defendants substantially understate their connections to California. In fact,
7  Defendants have selected PayPal, a California company, as their primary payment
8  processor. Zada Decl. ¶4, Exh. 1. This means that a substantial amount of
9  RapidShare's revenue is paid to it each year from a Californian company. Because of
10  its massive revenues, which have been estimated at $80 million a year, RapidShare
11  likely sells memberships to tens of thousands of Californians. Zada Decl. ¶7, Exh. 4.
12  And because of its massive affiliate network, RapidShare likely receives infringing
13  content and traffic from hundreds if not thousands of infringing websites located in
14  California. RapidShare, a Google advertising partner, receives as many as 154 million
15  links from Google, a Californian company. Zada Decl. ¶¶5, 9-10, Exhs. 2, 6-7.
16  RapidShare also sells memberships in the U.S. via at least three U.S. resellers, who
17  provide alternatives for customers who do not wish to pay RapidShare through a
18  PayPal account or via bank transfers or their telephone bill. Zada Decl. ¶8, Exh. 5.

### 3.  Consumers Locate Illegal Files Using RapidShare Affiliates And Google

21  While RapidShare claims it does not allow users to search for RapidShare files,
22  numerous RapidShare affiliates have done just that. However, because most such
23  affiliates hide behind what is called an identity protected Internet registration, it is
24  unclear whether they are simply websites created and owned by RapidShare, or if not,
25  exactly what their relationship with RapidShare is. But whatever the true
26  relationship, it is easy to find infringing files using such purported third party
27  RapidShare search engines. Zada Decl. ¶¶9-10, Exhs. 6,7. Using the website
28  rapidbay.com, for example, one can type in "Perfect 10" into the search box, retrieve a

1  link to the RapidShare.com website, and within seconds, download Perfect 10's

2  copyrighted pictures from RapidShare's servers.  Zada Decl. ¶10, Exh. 7.

3          Persons looking for illegal copies of songs, music, or movies can also locate

4  files on RapidShare's servers by conducting a Google search.  For example,  a Google

5  search with the terms "RapidShare.com" with the names of major movies, such as

6  "Avatar" yields 32 million results.  The results which Perfect 10 examined all

7  promoted RapidShare and were thus likely RapidShare affiliates.  Zada Decl. ¶9, Exh.

8  6.  These affiliates, as explained above, earn money whenever either a) one of their

9  visitors clicks on a RapidShare download link which they offer and buys a RapidShare

10 membership, or b) if someone downloads whatever they copied to  RapidShare's

11 servers, such as the film Avatar.

### 4.      RapidShare's Business Has Been Repeatedly Ruled Illegal in Germany

14         RapidShare does not contest that it stores massive amounts of stolen material on

15 its own servers.  Instead, it blames its subscribers (from whom it is happy to collect

16 monthly fees) for making such content available.

17         While RapidShare claims to be an innocent "storage locker," in fact, its business

18 has been repeatedly condemned by German courts.   In fact, a German appeals court

19 recently ruled in part:

> . . . [I]t is unavoidably demonstrated that the defendant's total business
> model in its current form, cannot be sanctioned by the legal system and is
> consequently not worthy of protection, because lastly infringement of
> copyright has been committed on a massive scale . . . [and] there is a
> danger inherent in the defendant's business model, a danger to be taken
> seriously, that this model is being used for the (massive) committing of
> criminal acts, copyright infringements and pure acts of unfair
> competition.

26 Zada Decl. ¶¶12-13, Exhs. 9-10.

27         Thus, while RapidShare denies that it is a purveyor of illegal materials, that is

28 contrary to what the German courts have determined.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### B. Perfect 10 Operates A Legitimate Business Which It Is Simply Trying To Protect

Defendants attempt to marginalize Perfect 10 and its business by characterizing it as a litigious pornography company. (FNC Motion, 1: 3-4) Perfect 10 is not a "pornography company," and even if it were, that would not legitimize RapidShare's theft and sale of Perfect 10's property, in California or elsewhere. In fact, when Judge Matz granted Perfect 10 a preliminary injunction against Google in 2006, he stated in his opinion that: "The P10 photographs consistently reflect professional, skillful, and sometimes tasteful artistry. That they are of scantily-clothed or nude women is of no consequence; such images have been popular subjects for artists since before the time of 'Venus de Milo.'" Zada Decl. ¶11, Exh. 8. So there is no basis whatsoever for this attempted smear by Defendants.

Defendants then attempt to mischaracterize Perfect 10's legal record (which should be of no consequence) by mis-stating various rulings, and by leaving out the three injunctions which Perfect 10 has received (one of which was granted by Judge Matz against Google), as well an extremely important ruling by Judge Maxine M. Chesney in the Northern District of California, granting Perfect 10 summary judgment in an almost identical case against the website guba.com, who like RapidShare, copied and sold access to Perfect 10 Images. Zada Decl. ¶11, Exh. 8.

Perfect 10 has attempted to protect its copyrights because its entire business depends on those rights. Without copyright protection, its business, and that of many other copyright holders, is doomed.

### III. ARGUMENT

### A. The Standards Under 12(b)(2) Motion

Although Plaintiff bears the burden of proof on the necessary jurisdictional facts, such as the existence of "minimum contacts" between Defendant and the forum state, when Defendant's motion to dismiss is made as its initial response, a Plaintiff only needs to make a *prima facie* showing that personal jurisdiction exists. *Data Disc, Inc.*

1  *v. Sys. Technology Assoc., Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977). "Uncontroverted

2  allegations contained in a complaint must be taken as true for the purposes of

3  evaluating a jurisdictional issue and conflicts must be resolved in favor of the party

4  asserting that personal jurisdiction exists." *AT&T v. Compagnie Bruxelles Lambert,* 94

5  F.3d 586, 588 (9th Cir. 1996). In California, the personal jurisdiction statute extends

6  jurisdiction to the limits of constitutional due process. See Cal. Code Civ. Proc. §

7  410.10. In order to comport with constitutional due process requirements, the federal

8  courts have recognized two ways in which to obtain personal jurisdiction over a

9  defendant: general jurisdiction and specific jurisdiction. *Helicopteros Nacionales de*

10  *Colombia S.A. v. Hall,* 466 U.S. 408, 414-16; 104. S.Ct. 1868(1984). In the instant

11  case, there is an ample basis for this court to exercise specific jurisdiction.

12  **B.**    **The Court May Properly Exercise Specific Jurisdiction Over**

13  **Defendants**

14  A district court may exercise specific jurisdiction over a nonresident Defendant

15  if three elements are satisfied: (1) the nonresident Defendant must do some act or

16  consummate some transaction with the forum by which he purposefully avails himself

17  of the privilege of conducting activities in the forum, thereby invoking the benefits and

18  protections of its laws; (2) the Plaintiff's claim must be one which arises out of or

19  results from the Defendant's forum-related activities; and (3) the district court's

20  exercise of specific jurisdiction must be reasonable. See *Cybersell, Inc. v. Cybersell,*

21  *Inc.,* 130 F.3d 414,416 (9th Cir. 1997); *Omeluk v. Langsten Slip & Batbyggeri A/S,* 52

22  F.3d 267, 270 (9th Cir. 1995). Jurisdiction cannot be avoided "merely because the

23  defendant did not physically enter the forum state." *Burger King Corp. v. Rudzewicz,*

24  471 U.S. 462, 476; 105 S.Ct. 2174 (1985).

25  The Plaintiff bears the burden on the first two prongs. *Boschetto v. Hansing* 539

26  F.3d 1011, 1016 (9th Cir. 2008). Once those prongs are satisfied, the defendant must

27  come forward with a compelling case that the exercise of jurisdiction would not be

28  reasonable. Id.

### 1.    Purposeful Availment

The purposeful availment prong of the specific jurisdiction test "ensures that a non-resident defendant will not be haled into court based upon 'random, fortuitous or attenuated contacts.'"   *Panavision Int'l, L.P. v. Toeppen* 141 F.3d 1316, 1320 (9th Cir. 1998) citing *Burger King Corp*. 471 U.S. at 475 .   The prong is satisfied if the defendant purposefully avails himself of the privilege of conducting activities in the forum or purposefully directs activities toward the forum. *Pebble Beach Co. v. Caddy* 453 F.3d 1151, 1155 (9th Cir. 2006).

Defendants rely heavily on *Calder v. Jones* 465 U.S. 783;104 S.Ct. 1482 (1984) and the effects test articulated therein.  In doing so, they disregard the standards that courts have applied to internet operators.  "In the internet context, the Ninth Circuit utilizes a sliding scale analysis under which 'passive' websites do not create sufficient contacts to establish purposeful availment, whereas interactive websites may create sufficient contacts, depending on how interactive the website is." *Allstar Marketing Group, LLC v. Your Store Online, LLC*.  666 F.Supp.2d 1109, 1121 (C.D. Cal. 2009). At one end of the scale are 'passive' websites which merely display information, such as an advertisement and at the other end of the scale are 'interactive' websites which function for commercial purposes and where users exchange information.  Id. citing *Stomp, Inc. v. NeatO, LLC* 61 F.Supp.2d 1074, 1078 (C.D. Cal 1999) and *Cybersell* 130 F.3d at 418.

Here, the unrefuted allegation is that RapidShare sells monthly subscriptions to Californians which allows them to access and download pirated materials. Courts have had no trouble determining purposeful availment in similar circumstances.  See *Allstar Marketing Group*, supra (trademark and copyright infringement action against seller of knock-off products through web site); *Colt Studio Inc*., supra   (copyright infringement action against the seller of internet subscriptions, alleging that unauthorized distribution was made of the copyrighted photographs on the defendants' website); and *Stomp, Inc.* supra (patent infringement action wherein internet operator sold infringing

1   products through its website).  Even more attenuated connections have been deemed
2   sufficient.  See *American Automobile Assoc., Inc. v. Darba Enterprises, Inc.* 2009 WL
3   1066506 at * 4 (N.D. Cal., April 21, 2009) (trademark action wherein defendant's
4   website only provided free insurance quotes after viewers provided their name and
5   contact information).

6       Moreover, the quality of the contacts, not the quantity of sales is the critical
7   inquiry.  *Stomp, Inc*. 61 F.Supp.2d at 1078.  In fact, like the Defendant in *Stomp, Inc*.,
8   Defendants here are "not being haled into a court in some unexpected location where
9   the Internet is not commonly available, but into a court in California, where a large
10  portion of the world's Internet users presumably reside."  Id. at 1079.  While only
11  Defendants possess information regarding the number of California customers, based
12  on Defendants reported *$80 million* in yearly revenue, it is hard to imagine that less
13  than tens of thousands of persons in California subscribe to RapidShare's service.
14  Zada Decl. ¶7, Exh. 4.

15      Defendants argue that "unilateral" acts of their customers have created the
16  injuries which are insufficient to establish that defendants direct their actions toward
17  the forum state.  (PJ 14:28 – 15:4.)  But it is Defendants' actions that are at issue.
18  Defendants – and no one else – sell Californians access to pirated materials in
19  exchange for payment.  It is they who profit from the sale of property belonging to
20  others.   Moreover, they encourage prolific uploading and downloading through
21  RapidShare's affiliate program and presumably there are ample members of
22  RapidShare's "affiliate" program in California.  Simply put, without Defendants, there
23  are no violations.

24      Defendants' reliance on *Mullally v. Jones* 2007 WL 674294 (D. Nev., February
25  28, 2007) is misplaced.  There, the court found there was no purposeful availment
26  where the website at issue simply provided links to third-party gambling websites
27  which the defendants did not control.  Id. at *6.  Here Defendants exert control over
28  every aspect of the website in question.

Although not necessary to demonstrate a finding of purposeful availment, RapidShare also maintains a number of traditional contacts with California that further support that it has availed itself of the benefits of doing business in California. RapidShare has selected Paypal, a company located in California, as its primary payment processor. In other words, the bulk of its revenues is transmitted through a California company. Google, headquartered in California, provides RapidShare with millions of links in its search results, which necessarily are available to consumers in California. Zada Decl. ¶¶9-10, Exhs. 6-7. RapidShare is a Google AdSense affiliate, meaning that it has entered into agreements with Google to receive payments from Google when users click on Google ads placed its website. Zada Decl. ¶5, Exh. 2. Finally, Google hosts thousands of websites which offer links for downloading infringing materials from RapidShare servers. Zada Decl. ¶10, Exh. 7. See *Allstar Marketing Group*, supra at 1123 (citing 'traditional contacts' as further support of its conclusion that internet company was subject to specific jurisdiction.)

## 2. The claims arise out of and result from Defendants' forum-related activities.

A lawsuit arises out of a defendant's contacts with the forum state if there is a direct nexus between the cause of action being asserted and the defendant's activites in the forum. *Shute v. Carnival Cruise Lines* 897 F.2d 377, 385 (9th Cir. 1990) rev'd on other grounds 499 U.S. 585; 111 S.Ct. 1522 (1991). The Ninth Circuit has adopted a 'but for' test when assessing whether an action arises out of a defendant's contract with the forum state. *Panavision Intern., L.P. v. Toeppen* 141 F.3d 1316 1322 (9th Cir. 1998) ("We must determine if the plaintiff Panavision would not have been injured 'but for' the defendant Toeppen's conduct directed toward Panavision in California.")

Defendants contend that Perfect 10's claims do not arise out of Defendants' forum-related activities because they do not 'control' the uploading and download of user files. (12(b)(2) Motion 16: 18 – 25.) That is a merits argument that has no bearing on this motion. Defendants possess illegal copies of Plaintiff's copyrighted

materials and sell California subscribers access to them for a fee.  But for Defendants'
operation of its illegal business which has been unquestionably offered to and accepted
by Californians, Perfect 10 would not have been injured.  The nexus is undeniable.

### 3.    Defendants have not demonstrated that assertion of jurisdiction is unreasonable

As discussed above, once plaintiff has satisfied the first two prongs, the
defendant must come forward with a **compelling case** that the exercise of jurisdiction
would not be reasonable.  *Boschetto v. Hansing* 539 F.3d 1011, 1016 (9th Cir. 2008).
The Ninth Circuit considers seven factors when assessing the reasonableness of
jurisdiction: (1) the extent of a Defendant's purposeful interjection; (2) the burden on
the Defendant in defending in the forum; (3) the extent of conflict with the sovereignty
of the Defendant's state; (4) the forum state's interest in adjudicating the dispute; (5)
the most efficient judicial resolution of the controversy; (6) the importance of the
forum to the Plaintiff's interest in convenient and effective relief; and (7) the existence
of an alternative forum   *Panavision v. Toeppen* 141 F.3d 1316, 1323 (9th Cir. 1998).
No one factor is dispositive; a court must balance all seven.  Id.   The balance in this
case is decisively in favor of finding jurisdiction in this district.

**Extent of Purposeful Injection** – Defendants completely understate their
connections with California.  They do not deny contracts with California subscribers.
They do not even mention their selection of PayPal, a Californian company, as their
primary payment processor.  Nor do they discuss their advertising relationships with
Google, or Google's provision of millions of links to RapidShare in its search results.
Zada Decl. ¶¶4, 9-10, Exhs. 1, 6-7.   Defendants simply repeat their mantra that third
parties are responsible for the conduct at issue, which Plaintiff has discussed, *supra*.
They do not attempt to argue that only a small number of Californians have subscribed.
See *DirectTV, Inv. v. EQ Stuff, Inc.* 207 F.Supp.2d 1077 (C.D. Cal. 2002) (citing
number of units sold in California as basis for determining reasonableness.)

**Burden on Defendant** – "A defendant's burden in litigating in the forum is a

factor in the asseesment of reasonableness, but unless the inconvenience is so great as to constitute a deprivation of due process it will not overcome clear justifications for the exercise of jurisdiction." *Panavision* 141 F.3d at 1323. These wealthy defendants that have operated the twelfth most visited website in the world, and have made tens of millions of dollars selling other people's property. Defending an action in California which is largely based on electronic files and records will not result in a deprivation of due process. *Panavision* 141 F.3d at 1322 (stating that in this era of fax machines and discount air travel, requiring [defendants] to litigate in California is not constitutionally unreasonable.) Furthermore, Defendants substantially understate Mr. Chang's English, which is, in fact, quite good. Zada Decl. ¶7, Exh. 4.

**Conflict with Sovereignty of Defendant's Home State** – This prong concerns whether exercising jurisdiction would implicate sovereignty concerns of Defendants' home state, Germany or Switzerland. *Panavision* 141 F.3d at 1323. Defendants do not cite any sovereignty concerns. They only argue that a monetary judgment would have to be imposed upon the courts or governing bodies of Switzerland and/or Germany for enforcement. (12(b)(2) Motion, 13:13 – 22.) This is not a conflict.

**California's Interest in Adjudicating the Controversy** -- Plaintiff is a California resident and California has "a strong interest in protecting its residents from torts that cause injury within the state, and in providing a forum for relief." *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir. 1989). This case is not only important for Perfect 10, but also for all of the California-based entertainment companies who are being substantially damaged by Defendants' unauthorized theft and sale of their intellectual property.

**Efficient Resolution --** This factor focuses on the location of the evidence and witnesses, but it is not afforded much weight given the modern advances in communications and transportation. *Panavision* 141 F.3d at 1322. Regardless, the controversy will be most efficiently resolved if jurisdiction is found here. The lionshare of the documents and witnesses are located in California. Zada Decl. ¶15.

California users who upload and download files are here. All of the records regarding RapidShare's revenues received from its primary processor, PayPal, are here. All of the evidence regarding Perfect 10's copyright registrations, all of the financial documents showing Perfect 10's losses, and all of the evidence regarding the infringement of Perfect 10's copyrights by RapidShare and by its affiliates, are located in California. Zada Decl. ¶15. Many of the Perfect 10's models and photographers are also located in the United States. *Id.* ¶15. None of Perfect 10's photographers and at most two or three models, are located in either Germany or in Switzerland. *Id*. ¶15.

**Convenient and Effect Relief for Plaintiff** – This district court in California provide a convenient forum to redress its injuries. It would be unduly burdensome to require Plaintiff who is facing bankruptcy, to dismiss this action, secure attorneys in Germany or Europe, and refile a new action. See *Colt Studio, Inc.*, supra (holding that a dismissal and refiling in another state takes time and money and does not advance the resolution of the matter on the merits.)

**Alternative Forum** -- A recent German Appeals Court ruling suggests that Perfect 10 could not recover either damages or attorney's fees in Germany. Zada Decl. ¶¶13-14, Exh. 10. In addition, one of Plaintiff's goals is to obtain injunctive relief to prevent RapidShare from engaging in its illegal activities in the United States. Defendants have not demonstrated that a European court could enter an injunction that would prevent RapidShare from selling its stolen wares in the United States. Thus, there is a significant chance that dismissing this action will deprive Perfect 10 of its right to injunctive relief in the U.S. under 17 U.S.C. §502. Perfect 10 also seeks relief from unfair competition under California Business and Professions Code §17200, as well as under California Civil Code §3344 (Rights Of Publicity), neither of which is likely to be available in either Germany or Switzerland.

In sum, Defendants have fallen woefully short of demonstrating that assertion of specific jurisdiction over one of the busiest internet companies in the world that sells infringing works to tens of thousands of Californians is unreasonable.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**C.    The Court May Exercise Federal Long-Arm Jurisdiction Pursuant To Rule 4(K)(2)**

Assuming *arguendo* that the Court is not inclined to assert specific jurisdiction, a separate basis for personal jurisdiction exists under Fed. R. Civ. P., Rule 4(k)(2). This Rule provides for personal jurisdiction through nationwide service when three conditions are met: (1) the cause of action must arise under federal law; (2) the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction; and (3) the federal court's exercise of personal jurisdiction must comport with due process. Rule 4(k)(2); *Pebble Beach*, 453 F.3d at 1159. Rule 4(k)(2) was added in 1993 to deal with a gap in federal personal jurisdiction law in situations where a defendant does not reside in the United States and lack contacts with a single state sufficient to justify personal jurisdiction, but has enough contacts with the United States as a whole to satisfy due process requirements. *ISI Int'l Inc. v. Borden Ladner Gervais LLP* 256 F.3d 548, 551-52 (7th Cir. 2001).

While Perfect 10 believes that the facts more than warrant specific jurisdiction in California, jurisdiction would also be warranted under the "federal long-arm" jurisdiction doctrine. First, Plaintiff's claims are based on federal law. The second factor is met if the defendant does not identify another state court in which the suit could proceed, which is the case here. *Monster Cable Products, Inc. v. Euroflex SRI* 642 F.Supp.2d 1001, 1008 (N.D. Cal. 2009) citing *Holland Am. Line Inc. v. Wartsila N. Amer. Inc.*, 485 F.3d 450, 461 (9th Cir. 2007).

The third factor's due process analysis is identical to the analysis for the forum state except the relevant forum is the United States as a whole. *Monster Cable Products*, 642 F.Supp.2d at 1008 citing *Pebble Beach*, 453 F.3d at 1159. The federal long-arm statute requires simply that jurisdiction comport with due process. *Pebble Beach*, 453 F.3d at 1159. At its base, due process seeks to ensure that a defendant is not haled into court for contacts that are random, fortuitous, or attenuated. *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174. It places responsibility on defendant's own

1  actions that create a substantial connection with the forum.  Id. The Ninth Circuit's

2  flexible approach allows for a lesser showing of contacts if considerations of

3  reasonableness are met. *Ochoa v. J.B. Martin & Sons Farms, Inc.,* 287 F.3d 1182,

4  1188, n. 2 (9th Cir.2002).

5      Here, a number of facts demonstrate that Defendants have targeted the U.S.

6  market as whole.  The RapidShare website allows persons interested in purchasing a

7  membership to find a reseller by selecting "USA" as a search criteria.  Zada Decl. ¶8,

8  Ex. 5.   In addition, Defendants use PayPal, a California company, as their primary

9  source of collecting revenues.  They allow consumers to alternatively pay by using

10  their telephone, their bank, and by using U.S. resellers.  They receive massive amounts

11  of traffic from Google, have large numbers of affiliates in the U.S., and sell access to

12  most major U.S. movies, songs, computer software, and images.  Zada Decl. ¶¶4-5, 7-

13  10, Exhs. 1-2, 4-7.  *See Graduate Management Admission Council v. Raju* 241

14  F.Supp.2d 589, 599, n. 18  (E.D. Va. 2003) ("even assuming that the website does

15  'principally target' foreigners, it is nonetheless clear that Raju is also directing his

16  activities, at least in part, at the United States.")  These facts, combined with the

17  undisputed fact that Defendants have entered into contracts with customers across the

18  U.S. through its interactive website overwhelming support a finding that an exercise of

19  jurisdiction comports with principles of due process.

20  **D.    Schmid Is Subject To Jurisdiction As A Moving, Active, Conscious**

21  **Force Behind The Infringing Activites**

22      "Under the fiduciary shield doctrine, a person's mere association with a

23  corporation that causes injury in the forum state is not sufficient in itself to permit the

24  forum to assert jurisdiction over the person." *Matsunoki Group* supra at *3  *citing*

25  *Davis v. Metro Productions, Inc.* 885 F.2d 515, 520 (9th Cir. 1984).  But where a

26  plaintiff shows that a corporate employee is "the moving, active conscious force"

27  behind the infringing activity or where the corporation is the alter ego of the individual

28  defendant, the courts will pierce the corporate veil and impute the corporate acts to the

employee *Matsunoki Group* at *3 [citations omitted.] "A plaintiff may show that a corporate employee is the moving, active conscious force behind the infringing activity by demonstrating that the corporate officer dircts, controls, ratifies, or participates in the infringing activity." Id. citing *Babbit Electronics, Inc. v. Dynascan Corp.*,38 F.3d 1161, 1184 (11th Cir. 1994) ; see also *Bambu Sales, Inc. v. Sultana Crackers, Inc.*, 683 F.Supp. 899, 913-14 (E.D.N.Y.1988) (trademark infringement); *Playboy Enterprises, Inc. v. Starware Publishing Corp.*, 900 F.Supp. 438, 441-42 (S.D.Fla.1995) (copyright infringement); *Hewlett-Packard Co. v. Repeat-O-Type Stencil Mfg*, 1995 WL 552168 (N.D. Cal, August 30, 1995) (trademark infringement).

Schmid is the quintessential "moving, active conscious force" behind RapidShare.  No only is Schmid the highest level officer of RapidShare, but he is also RapidShare's creator. Zada Decl. ¶6, Exh. 3.   He does not refute the allegations that he, RapidShare and Chang ""collectively own, operate and control the internet websites located at rapidshare.com and rapidhshare.de." RapidShare.de, is operated similarly to rapdishare.com. Zada Declaration ¶6, Exh. 3.  In fact, the website registration for RapidShare.com is not made in the name of RapidShare A.G., with Christian Schmid as the contact, they are made in the name of Christian Schmid. Schmid is also the sole listed contact for each website.  Zada Decl. ¶6, Exh. 3.

This is not a case where a corporation is engaged in numerous lines of business and has multiple operations, some of which extend into some states, but not others. In such a situation, a high-ranking officer might not have played an instrumental part in the infringing activity.   But here, the very essence of this business is that of a worldwide operator selling access to copyrighted works.  Because Schmid controls RapidShare, he is necessarily controlling the single line of business that has been purposefully injected into California and the U.S.  Furthermore, Plaintiff alleges that Schmid has personally carried out, directed, and facilitated the acts of infringement. Complaint ¶ 19.  Schmid has not disputed this allegations, which may be accepted as true for purposes of this motion.

**E.    If The Court Does Not Determine There Is Personal Jurisdiction Over All Defendants, Limited Jurisdictional Discovery Is Warranted**

Defendants have not provided any of the following evidence, which would determine the true extent of Defendants' general and specific contacts with California: 1) the number of Californian customers of RapidShare; 2) the amount of payments that defendants have received from California corporations such as PayPal; and 3) the identity of the persons or entity that received payments from Paypal and other Californian processors.   If, for example, those payments were made directly to Mr. Schmid, or to Chang, they would subject to personal jurisdiction in California.

If this Court believes it necessary, Perfect 10 requests leave to conduct jurisdictional discovery, if necessary to supplement its prima facie showing of Defendant's contacts with California (including contacts demonstrating general jurisdiction), and to amend its pleading.  See, e.g., *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351; 98 S.Ct. 2380, 2389 (1978) (". . . where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues."); *Sunview Condominium Ass'n v. Flexel Int'l, Ltd,* 116 F.3d 962, 964 (1st Cir. 1997) ("We have long held that 'a diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of in personal jurisdiction may well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense.'").

## IV.    <u>CONCLUSION</u>

Defendants' motion is a based on an unsettling premise.  They argue that the operator of the twelfth most visited website in the world, can reap millions of dollars from California and U.S. subscribers from its business, but cannot be called to answer serious charges of copyright infringment simply because it has tucked itself away in Switzerland.  In this global economy, where commercial transactions take place instantaneously through the push of a button, a Defendant who profits from persons in faraway places must be prepared to defend its actions in the forum where the harm

1  occurs. Plaintiff asks that the Court exercise jurisdiction in the same state where

2  Defendants' primary payment processor, PayPal, is located and where tens of

3  thousands of its customers undoubtedly reside. Plaintiff requests that the motion be

4  denied.

5    In the alternative, to the extent the Court believes that sufficient evidence to

6  support an exercise of personal jurisdiction might be lacking, Plaintiff respectfully

7  requests that the Court allow it to take discovery related to the jurisdictional issues, and

8  to present any further evidence obtained by it to the Court, prior to the Court's ruling

9  on Defendants' motion.

10   Finally, to the extent that the Court believes that Perfect 10 needs to amend its

11 complaint, Plaintiff requests leave to amend.

12

13 Dated: April 13, 2010      Respectfully submitted,

14              Krause Kalfayan Benink & Slavens, LLP.

15

16              By: //s// Eric J. Benink_____

17                Eric J. Benink, Esq.

               Attorney for Plaintiff, Perfect 10, Inc.

18

19

20

21

22

23

24

25

26

27

28

Plaintiff Perfect 10, Inc.'s Opposition to Motion to Dismiss   Case No. 09-2596