1  GREENBERG TRAURIG, LLP
   IAN BALLON (SBN 141819)
2  WENDY MANTELL (SBN 225544)
   LORI CHANG (SBN 228142)
3  2450 Colorado Avenue, Suite 400E
   Santa Monica, California 90404
4  Telephone: (310) 586-7700
   Facsimile: (310) 586-7800
5  Email: ballon@gtlaw.com
           changl@gtlaw.com
6
   Attorneys for defendants
7  RapidShare AG, Christian Schmid and Bobby Chang

8

9                  UNITED STATES DISTRICT COURT

10                 CENTRAL DISTRICT OF CALIFORNIA

11

12  PERFECT 10, INC., a California          CASE NO. 09 CV 2596 H (WMC)
    corporation
13                                          **DEFENDANTS' OPPOSITION TO**
                  Plaintiff(s),             **PLAINTIFF'S MOTION FOR**
14                                          **PRELIMINARY INJUNCTION**
    vs.                                     **[REDACTED]**
15
    RAPIDSHARE A.G., a corporation,         DATE:     May 12, 2010
16  CHRISTIAN SCHMID; BOBBY CHANG;          TIME:     1:30 p.m.
    and DOES 1 through 100, inclusive       CTRM:     13
17                                          JUDGE:    Hon. Marilyn L. Huff
                  Defendant(s).
18                                          DATE FILED:   November 18, 2009
                                            TRIAL DATE:   None Set
19

20

21                                          REDACTED

22

23

24

25

26

27

28

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
**[REDACTED]**

**TABLE OF CONTENTS**

I.     INTRODUCTION ....................................................................................................1

II.    FACTUAL BACKGROUND....................................................................................4

       A.    RapidShare Is A Legitimate Service Provider That Cooperates With Copyright
             Owners And Proactively Takes Down Infringing Material.................................................4

       B.    P10 Delayed Seeking A Preliminary Injunction For At Least 5 Years. ...............................8

             1.    Instead of sending proper takedown notices, P10 has been lying in wait
                   "several years" to build a record in order to file this PI Motion..............................8

             2.    P10 knew or should have known its notice was severely deficient based on
                   Judge Kozinski's earlier admonition and the notices sent by Mr. Jarvis................9

             3.    All known download links related to P10 have been disabled. ............................11

       C.    The Percentage Of Potentially Infringing Files On RapidShare's Site Is
             Dramatically Less Than What P10 Represents Through Its "Google Searches." ..............11

       D.    P10's Financial Troubles Are Due to Its Business Model and Market Forces in the
             Porn Industry, Not Infringement ......................................................................................13

       E.    P10 Alleges Infringement Of "Thousands" Of Copyrights But Presents Documents
             For Just 12 Images, Only 2 Of Which Appear To Be On The May 2009 CD. ..................13

III.   ARGUMENT.........................................................................................................13

       A.    No Irreparable Harm Where P10's Injury is Due to Market Forces and Its Own
             Flawed Business Model, Not Infringement, and Where P10 Waited "Several
             Years" To Seek A Preliminary Injunction & Refuses To Exercise Self-Help Under
             The DMCA. .......................................................................................................................13

             1.    P10's long delay confirms the lack of irreparable harm. .....................................14

             2.    P10 cannot claim "irreparable harm" when it refuses to exercise self-help
                   required under the DMCA and effective remedies exist. .....................................15

             3.    P10's Financial Condition Results From Its Own Flawed Business Model
                   and Economic Conditions in the Porn Industry, Not Infringement . .....................16

       B.    P10 Is Not Likely To Succeed On Its Copyright Infringement Claim. ..............................16

             1.    P10's failure to comply with the DMCA notice requirements precludes it
                   from recovering from RapidShare for the alleged copyright infringement
                   of its users. ........................................................................................................16

             2.    RapidShare has otherwise met the requirements of the DMCA Safe Harbor
                   for Material Stored at the Direction of a User ......................................................18

             3.    Even if DMCA did not apply, P10 is unlikely to prevail on its claim of
                   copyright infringement based on user content on the RapidShare website. ..........19

       C.    P10's Unfair Competition Claim Is Both Meritless and Preempted. .................................22

       D.    The Requested Injunction Goes Well Beyond What U.S. Law Allows..............................23

     E.     The Balance Of Hardship Weighs Against P10 ...................................................24

     F.     Injunction Should Not Issue Without A Substantial Bond.................................25

IV.    CONCLUSION...........................................................................................................25

# TABLE OF AURHORITIES

## Cases

*Arista Records v. Usenet.com,*
   633 F. Supp. 2d 124 (S.D.N.Y. 2009)........................................................................................ 22, 24

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.,*
   536 F.3d 121 (2d Cir. 2008)......................................................................................................... 27

*CoStar Group, Inc. v. Loopnet, Inc.,*
   373 F.3d 544 (4th Cir. 2004) ....................................................................................................... 27

*Doe II v. MySpace, Inc.,*
   175 Cal. App. 4th 561, 96 Cal. Rptr. 3d 148 (Cal. App. 2009) ................................................. 26

*Doe IX v. MySpace, Inc.,*
   No. 4:08-CV-140, 2009 WL 1457170 (E.D. Tex. May 22, 2009) ............................................. 26

*Doe v. Am. Online, Inc.,*
   783 So. 2d 1010 (Fla. 2001)........................................................................................................ 26

*Doe v. MySpace, Inc.,*
   528 F.3d 413 (5th Cir.), cert. denied, 129 S. Ct. 600 (2008) .................................................... 26

*Ellison v. Robertson,*
   189 F. Supp. 2d 1051 (C.D. Cal. 2002) ..................................................................................... 27

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC,*
   521 F.3d 1157 (9th Cir. 2008) (en banc) ................................................................................... 25

*Field v Google, Inc.,*
   412 F. Supp. 2d 1106 (D. Nev. 2006)......................................................................................... 27

*Fogerty v. Poor Boy Prods., Inc.,*
   124 F.3d 211, 1997 WL 579175, at *3 (9th Cir.1997) .......................................................... 16

*Gershwin Publishing Corp. v. Columbia Artists Management, Inc.,*
   443 F.2d 1159 (2d Cir. 1971)...................................................................................................... 22

*Gowan Co., LLC v. Aceto Agr. Chemicals,*
   2009 WL 2028387, at *5 (D. Ariz. July 10, 2009) ............................................................... 16, 18

*Green v. America Online,*
   318 F.3d 465 (3d Cir. 2003)........................................................................................................ 26

*H.R. Rep,.*
   No. 551(II), 105th Cong., 2d Sess. 55 (1998), 1998 WL 414916 .............................................. 19

*Hartojo Dec., ¶,¶*
   8-10. P10 ..................................................................................................................................... 17

*Hendrickson v. Amazon.com, Inc.,*
   298 F. Supp. 2d 914 (C. D. Cal. 2003) ........................................................................... 17, 18, 19

*Holiday Inns Inc. v. Aeta Ins. Co. et al,*
   571 F.Supp. 1460, 1487 n.125 (S.D.N.Y. 1983)........................................................................ 14

*Inc. v. MercExchange, LLC*,
   547 U.S. 388 (2006)......................................................................................................... 15

*Inc.*,
   165 F. Supp. 2d 1082 (C.D. Cal. 2001) ...................................................................... 18, 20

*Inc.*,
   570 F.3d 1096 (9th Cir. 2009) ......................................................................................... 25

*Kodadek v. MTV Networks*,
   152 F.3d 1209 (9th Cir. Cal. 1998)................................................................................. 27

*Lydo Enters. v. Las Vegas*,
   745 F.2d 1211 (9th Cir. 1984) ......................................................................................... 16

*McDermott v. Ampersand Pub., LLC*,
   593 F.3d 950 (9th Cir. 2010) ........................................................................................... 16

*Mead Johnson & Co. v. Abbott Labs.*,
   201 F.3d 883 (7th Cir. 2000) ........................................................................................... 28

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
   518 F. Supp. 2d 1197 (C.D. Cal. 2007) .......................................................................... 18

*MGM Studios, Inc. v. Grokster, Ltd.*,
   545 U.S. 913 (2005)......................................................................................................... 24

*Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*,
   762 F.2d 1374 (9th Cir. 1985) ......................................................................................... 16

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007) ................................................................................ passim

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
   213 F. Supp. 2d 1146 (C.D. Cal. 2002) .......................................................................... 27

*Perfect 10, Inc. v. VISA Int'l Services, Ass'n*,
   494 F.3d 788 (9th Cir. 2007) (rejecting the argument that VISA, MasterCard and various
   banks could be held liable for inducement for providing payment processing services to
   websites that allegedly sold inf............................................................................................ 25

*Religious Tech. Ctr v. Netcom On-Line Commc'n Serv., Inc.*,
   907 F. Supp. 1361 (N.D. Cal. 1995) ............................................................................... 27

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*,
   944 F.2d 597 (9th Cir. 1991) ........................................................................................... 18

*Rossi v. MPAA, Inc.*,
   391 F.3d 1000 (9th Cir. 2004) (quoting legislative history), cert. denied, 544 U.S. 1018 (2005)....... 19

*Screen Gems-Columbia Music, Inc. v. Mark F. Records, Inc.*,
   256 F. Supp. 399 (S.D.N.Y. 1966) ................................................................................. 22

*Sony Corp. v. Universal City Studios, Inc.*,
   464 U.S. 417 (1984)......................................................................................................... 23

*Stormans, Inc. v. Selecky*,
   586 F.3d 1109 (9th Cir. 2009) ......................................................................................... 15

*U.S.C.*,
  § 512(c)(1); P10 .................................................................................................................. 21

*UMG Recordings, Inc. v. Veoh Networks Inc.*,
  665 F. Supp. 2d 1099 (C.D. Cal. 2009) ............................................................ 18, 20, 21, 24

*Winter v. Natural Res. Def. Council, Inc.*,
  129 S. Ct. 365 (2008) .................................................................................................. 15, 16

*Zada Dec., ¶ 6), is also false.  See id.  , P*
  10 ...................................................................................................................................... 9

**Statutes**

17 U.S.C. § 301 ......................................................................................................................... 27

17 U.S.C. § 512 ....................................................................................................................... 3, 23

17 U.S.C. § 512(c)(2) ................................................................................................................. 19

17 U.S.C. § 512(c)(3)(B)(i) ....................................................................................................... 21

17 U.S.C. § 512(i) ...................................................................................................................... 20

17 U.S.C.A. § 512(c)(3) .................................................................................................. 1, 10, 20

47 U.S.C. § 230(c)(1) ................................................................................................................. 25

Communications Decency Act (47 U.S.C. § 230(c) ................................................................... 3

**Rules**

LLC v ......................................................................................................................................... 16

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff Perfect 10, Inc. ("P10") neither needs nor is entitled to a preliminary injunction in this case.[1]  There is an easy and effective measure that P10 can (but refuses to) use to remedy the alleged infringement of its copyrights; simply, to follow the procedures required by the Digital Millennium Copyright Act (DMCA) by providing a notice that contains "information reasonably sufficient to permit the service provider to locate the material," which in this case would be file numbers or download links to the alleged infringing files saved on rapidshare.com.  *See* 17 U.S.C.A. § 512(c)(3).  Although RapidShare AG ("RapidShare") is a foreign company that has challenged personal jurisdiction in this case, it has implemented policies and procedures for expeditiously disabling access to unauthorized content and terminating alleged infringers that meet the requirements under the DMCA.  Were P10 willing to provide RapidShare with links to the alleged 43,000 images it downloaded, the allegedly unauthorized files would have been taken down immediately by RapidShare which has one of the fastest response times of any service provider in Germany (often taking down within one hour of receipt). Indeed, RapidShare has disabled access to alleged P10 files in those instances where P10's DMCA agent, Mr. Jarvis, actually sent legally sufficient takedown notices (which tellingly P10 omits from its PI Motion).  By contrast, P10 itself sent RapidShare just a CD containing porn pictures, without a cover note or explanation.  P10 also has declined RapidShare's offer to provide it with ▮▮▮▮▮▮

▮▮▮▮▮▮.  Ninth Circuit Chief Judge Kozinski even chastized P10 several years ago for its refusal to send compliant takedown notices that service providers could reasonably address.  P10 is not interested in these self-help remedies, and does not use industry standard copy protection mechanisms to deter infringement.

Although P10 alleges that it is on the verge of bankruptcy, Fred Lane, an adult entertainment industry expert, details at great length in his declaration that P10's financial problems are the result of its own flawed business model (charging more money for substantially less, less desirable content than its

---

[1]  Defendants are specially appearing for the purpose of contesting jurisdiction, contend that European laws apply, and do not waive those arguments through this filing, by order dated 1/28/10.

competitors) and industry pressures, including primarily the wide availability of free, noninfringing edgier porn on the Internet, not infringement. Indeed, as Lane describes, P10 was never profitable and failed to adapt to changing market conditions.

By investigating other P10 cases, RapidShare discovered that P10 first learned of allegedly unauthorized files on RapidShare in 2005, but waited five years before seeking a preliminary injunction. P10 even states that "26,000 P10 Images" were downloaded "over the past *several years*" (Mot. at 8) and personally by Norm Zada, whose sworn declaration states that he has spent "at least 100 hours" downloading and searching for such files (Zada Dec., ¶ 1), yet chose not to have these images removed, evidently allowing them to remain online for "several years." Even after this suit was filed, P10 refused to cooperate with RapidShare to have allegedly unauthorized images removed. RapidShare was perplexed why it was sued because its records showed that it had expeditiously disabled access to notices sent on behalf of a collection of porn companies, including P10, by a man named Mr. Jarvis. RapidShare's counsel therefore wrote P10 on February 8, 2010, stating that all files identified by Mr. Jarvis had been expeditiously removed and added to RapidShare's filtering system and asking P10 to let RapidShare or its attorneys know if there were any files that P10 believed had not been taken down. *See* 4/12/10 Ballon Dec. (attached as Chang Dec. Ex. N), Ex. B. P10 ignored calls and written communications on this issue and instead waited another two months before springing a PI Motion on RapidShare (timed to coincide with the time when P10 knew RapidShare would be working on its Reply briefs to the Jurisdictional Motions). In fact, P10 President Norm Zada, in an interview about this lawsuit in a porn industry publication on April 15, 2010, made clear that he cannot be bothered to send down take down notices, as required of copyright owners under the DMCA, and apparently believes his company is somehow above the law laid down by the Ninth Circuit in a case P10 largely lost, which bears its name -- *Perfect 10, Inc. v. CCBill, LLC* ("*P10 v. CCBill*"), 488 F.3d 1102, 1113 (9th Cir.), *cert. denied,* 128 S. Ct. 709 (2007); Chang Dec., Ex. A (Xbiz article).

P10 is not likely to prevail on the merits because it generally has refused to comply with the notice requirements of the DMCA as set forth in 17 U.S.C. § 512 and *Perfect 10, Inc. v. CCBill, LLC*, which is a precondition to maintaining a suit for copyright infringement against a service provider for material stored at the direction of a user, and in those instances where it has done so RapidShare

2

1 expeditiously disabled access to the allegedly offending files. It is likewise unlikely to prevail on the
2 merits of its unfair competition claim which -- in addition to being baseless -- is preempted by the
3 Communications Decency Act (47 U.S.C. § 230(c)) and the Copyright Act. Moreover, P10's
4 "evidence" against RapidShare is based largely on printouts from third party sites that are not affiliated
5 with RapidShare (and which RapidShare itself is trying to shut down); accusations couched as
6 "evidence" by their inclusion in a sworn declaration of P10's owner which are demonstrably false (such
7 as the assertion that RapidShare sells advertisements on its site or is a member of Google's AdSense
8 program) or amount to speculation that is simply false and defamatory (like the speculation that
9 defendants themselves posted P10 images to RapidShare and misrepresentation that RapidShare sells
10 content, which it does not). Further, the lower court German rulings cited by P10 lack probative value
11 as they are based on the same type of hearsay as P10 presents in this motion (which is admissible in
12 Germany but not in the U.S.), are not final decisions, have no precedential value, have also been
13 severely criticized by the German legal community. *See* Hess Dec., ¶¶ 6-9. Lastly, P10's inflammatory
14 assertion that there are more than 43,000 P10 images on the RapidShare site amounts to hyperbole that
15 P10 itself knows is untrue, and is based on deliberately deceptive search results on Google, not actual
16 evidence. *See* Secondo Dec., Ex. A.

17   For the same reason that P10's copyright claim lacks merit, it cannot show irreparable injury.
18 P10 has simple, easy, remedies available to it short of injunctive relief to have allegedly unauthorized
19 images removed from RapidShare, but refuses to avail itself of self help (such as use of █████
20 ████████) or even comply with the notice requirements mandated by law. Irreparable
21 injury also cannot be shown in this case because, as set forth in the Declaration of Fred Lane, an expert
22 on the adult entertainment industry, P10's allegedly precarious financial condition results from its own
23 flawed business model, and industry-wide trends, not any acts or omissions by RapidShare.[2] Since the
24 U.S. Supreme Court has recently clarified that injunctive relief may not be granted absent a showing of
25

[2] P10 was started as a vanity project of Norm Zada whose personal wealth is in the "double-digit
26 millions", according to an interview he gave in 1997, and uses his own funds to finance this project. *See*
27 Chang Dec., Ex. L (8/24/97 article featured in *SouthCoast Today*). While Zada aspired (unsuccessfully)
to be the next Hugh Hefner, P10 has never been profitable or even made economic sense. Indeed, in
28 that 1997 interview, Zada said "[i]t's not about [the money]," and "if I lose $500,000 a year on [P10],
I'll be happy" so long as he could run his personal project. *Id.*

1  irreparable injury (even in cases where, unlike here, a plaintiff can show it is likely to prevail, or indeed
2  actually prevails on the merits at trial), P10's PI Motion must be denied.

3       Finally, the assertion that P10 will be irreparably injured unless it obtains a preliminary
4  injunction against RapidShare rings hollow when P10 has already blamed multiple other companies
5  (e.g., Google, Amazon.com) for causing its supposed "irreparable harm," and asserted preliminary
6  injunction claims and lost based on allegations even more severe than those against RapidShare. *See*
7  *e.g., Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146 (9th Cir. 2007). Most recently, just a month
8  prior to filing this PI Motion, P10 filed yet another motion for preliminary injunction against Google in
9  the Central District, and blamed *Google* for "more than 222 million links" to infringing works made
10 available through its search engine, which allegedly caused P10's revenue losses and the shuttering of
11 its magazine and cell-phone downloading business. *See* Chang Dec., Ex. K (P10's 3/4/10 PI Mot.
12 against Google), at pp. 2 and 5. Although rapidshare.com links are alleged to be part of the "222 million
13 links" retrieved from Google, P10 has fingered many other web-based companies (some of which
14 indeed are websites promoting infringement) as having contributed to P10's demise. As such, any harm
15 to P10 caused by the alleged 43,000 infringing images on rapidshare.com, is comparatively
16 inconsequential when P10 is claiming massive infringement throughout the Internet and which is largely
17 due to its own failure to employ any protection mechanism and in the case of RapidShare, generally
18 refuse to send takedown notices or cooperate to prevent user infringement.

19 **II.**    **FACTUAL BACKGROUND**

20 **A.**    **RapidShare Is A Legitimate Service Provider That Cooperates With Copyright Owners**
21       **And Proactively Takes Down Infringing Material.**

22      *RapidShare is a cloud computing company that provides storage space, and does not sell*
23 *content.* Relying solely on the testimony of its President, Norman Zada ("Zada"), P10 deliberately
24 misrepresents RapidShare as a "paysite" and a seller of "pirated intellectual property" despite that the
25 evidence already on record before this Court has established that RapidShare does not make publicly
26 available files saved on its website.[3] *See* Pfaff Dec., previously filed on 3/23/10, at ¶¶ 4, 7-10. Indeed,

27 _____
[3]  As in all of its other cases, P10 chooses to make inflammatory and false accusations based on
28 conjecture, hearsay, and sometimes whim, rather than present admissible evidence to prove the so-called
"facts" it asserts. *See* Chang Dec., Ex. H (R. Kassabian decl., at Ex. E, p. 146) (admonishing P10,

1  RapidShare does not sell porn or content of any kind. *See id.*; Schmid Dec. (attached as Raimer Dec.,
2  Ex. E), ¶ 21. It is a file-hosting site (like Flickr, only RapidShare is not limited to photos and allows
3  storage of files in any format) that provides users (individuals and businesses alike) with online storage
4  space for their private files. *See id.*; Schmid Dec., ¶ 21.

5      ***RapidShare is part of a new industry streamlining storage and remote access services.***
6  RapidShare provides an online storage facility that is part of the "cloud computing"[4] revolution whose
7  goal is to provide easy, affordable and scalable access to computing resources and information
8  technology ("IT") services. Instead of having to spend large amounts of money on its own IT
9  infrastructure, a customer only pays for the services it consumes.[5] The market for cloud computing is
10  huge. In a 2009 survey by *Information Week*, almost half the companies (46%) stated that, given the
11  economy, they will or are likely to use cloud services. Chang Dec., Ex. B (11/28/09 InformationWeek
12  article).[6] Not surprisingly, RapidShare has becomes one of the most popular websites on the Internet.

13      RapidShare responds expeditiously to takedown notices, proactively searches third-party
14  websites for suspect files, and has created special takedown tool for copyright owners. RapidShare
15  employs a number of methods to combat infringement and other activities on its website that are deemed
16  to be a violation of its Conditions of Use. See generally Pfaff, Hartojo, and Schmid declarations.

17
18
19
20

21  "[t]his practice or pattern of making all these slashing claims and then saying prove us wrong is not
    quite the way it's supposed to work Mr. Mausner"). Indeed, in a recent press release by Zada, he falsely
22  claimed that RapidShare "admits to selling the content, but not to copying it" and called it "the greatest
    infringing paysite of all time." *See* Chang Dec., Ex. A (4/19/10 Xbiz article).
23  [4] Cloud computing "means shifting computing tasks and storage from local desktop PCs and company
24  servers to remote systems across the internet." Chang Dec., Ex. D (4/8/10 Business Week article).
    [5] With RapidShare (*see* Pfaff Dec., ¶¶ 4-5), companies and individuals can benefit from huge storage
25  capabilities without having to pay for hardware, software and 24/7 maintenance and without having to
    transfer files via email, disk or other means (which has become increasingly less efficient given that file
26  sizes continue to grow as computing power and applications increase).
27  [6] The U.S. government's CIO stated "the U.S. government can get technology faster and at a lower cost
    through cloud computing." *Id.*, Ex. C. A recent report concluded that federal agencies save 25% to
28  50% of their IT costs with this. *See id.* Private businesses are also moving to cloud services, whichi are
    projected to increase worldwide from $14 billion in 2009 to $33 billion in 2013. *See id.*, Ex. B.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
**[REDACTED]**



RapidShare also

. *Id.*, ¶ 9.  RapidShare offered this

to P10 prior to its filing of the PI Motion.  *Id.*, ¶ 8.

As a growing Internet company,

*Id.*, ¶ 14.[7] .

---

[7]   While RapidShare (a Swiss company with predominantly German-speaking employees) may have inartfully referred to this rewards program as an "affiliate program" in the English language translation of its news webpage, it was not what in English is commonly understood as an Internet affiliate marketing program.  *Id.*

1    ***RapidShare has no commercial relationship with Google***. It has never participated in Google's
2    AdSense advertising program, and as P10's own moving papers demonstrate, a user cannot retrieve a
3    download link simply by performing a Google search unless the uploader has published the link on a
4    third-party website like filestube.com.[8] *Id.*, ¶ 23; *see* Zada Dec., Exs. 1, 7 (Google pages showing links
5    to filestube.com and other websites, but not rapidshare.com).

6    RapidShare has no index and is trying to shut down the very third-party websites (such as
7    Filestube.com and Whatsrapidshare.com) P10 tries to link to RapidShare. P10's Motion is based largely
8    on third party sites that are not owned or controlled by RapidShare and which RapidShare has already
9    taken legal steps to try to shut down. As set forth in the Jurisdictional Motions, RapidShare does not
10   index user files or offer a search function on its website. Pfaff Dec., ¶¶ 9-13. The only websites ever
11   owned or controlled by RapidShare are rapidshare.com, rapidgames.com, and rapidshare.de. Schmid
12   Dec., ¶ 2. RapidShare has also never sponsored or endorsed third-party websites such as filestube.com
13   and whatsrapidshare.com. Id., ¶ 2. Indeed, RapidShare has taken action to shut down these websites
14   and others that appear to promote misuse of the RapidShare site or to compel them to stop indexing files
15   stored on RapidShare, publishing links or otherwise encouraging users to upload infringing or other
16   illegal files on RapidShare's servers.[9] Id., ¶ 4. To date, RapidShare has filed 30 UDRP complaints with
17   WIPO in Switzerland, and has sent cease and desist letters threatening legal action to many other
18   websites. Id.; Mak Dec., ¶ 2

19   As with other large, popular websites, RapidShare has been targeted by third parties who seek to
20   use the site for their own improper purposes. Schmid Dec., ¶ 5. Accordingly, RapidShare took action to
21   shut down these third-party websites or otherwise force them to stop these practices (which encourage
22   violations of RapidShare's Conditions of Use), and will continue to pursue claims against websites that

23

24

25   [8]  P10 has also filed a separate suit for copyright infringement against Google (pending before Judge
     Matz in the Central District) and failed to secure a preliminary injunction against the Internet search
26   engine. *See Perfect 10, Inc. v. Google, Inc.*, No. 2:04 cv 9484 (C.D. Cal. Nov. 19, 2004).
27   [9]  These websites are only able to create an index of files stored on RapidShare if the uploader posts the
     download link on one of these sites. *See* Pfaff Dec., ¶¶ 7-8, 13.

28

1  infringe its own marks in addition to the copyrights of others.  *Id.*

2      ***RapidShare is not a paysite.***  Like many other websites, RapidShare provides both free services
3  and paid premium services.  Schmid Dec., ¶ 22.[10]  However, RapidShare does not charge "$10 per
4  month" for access to content (as Zada misrepresents in his declaration), and does not allow users to
5  search on its website for download links or files by content.  *See* Pfaff Dec., ¶¶ 9-13.  Moreover, the
6  accusation that RapidShare charges the premium fee to sell content is false.  Schmid Dec., ¶ 22.
7  Further, Zada's self-serving testimony that the free service "doesn't work at all or is so slow that it
8  cannot be used" (Zada Dec., ¶ 6), is also false.[11]  *See id.*

9  **B.   P10 Delayed Seeking A Preliminary Injunction For At Least 5 Years.**

10     **1.   Instead of sending proper takedown notices, P10 has been lying in wait "several**
11           **years" to build a record in order to file this PI Motion.**

12     It has better served P10 to have allegedly infringing files posted on the Internet than to have
13  them actually taken down.  At least, that is what P10's conduct suggests.  In this case, P10 claims to
14  have downloaded "26,000 P10 Images *over the past several years*" (Mot. at 8) while the ostensible
15  "takedown notice" at issue (in reality a disk of porn sent without a cover letter or explanation) was not
16  sent until May 2009, and even after, P10 refused counsel's request to provide information that would
17  allow RapidShare to locate and delete the images at issue.  *See* 4/12/10 Ballon Dec., ¶ 4.  Instead of
18  cooperating with RapidShare to take down the alleged infringing files, its president assertedly logged "at
19  least 100 hours" downloading images that P10 has attached to its PI Motion.  *See* Zada Dec., ¶ 1.  In
20  spite of its claim that the alleged infringing images are now causing it immediate and irreparable harm,
21  P10's actions (or non-action) confirm that it is more interested in building a record for this case over
22  several years, than in actually taking down the files.

23  _____

24  [10] E.g., Flickr.com and Linkedin.com both offer free and paid accounts.  *See* Chang Dec., Exs. G-F.
    [11]

25                                                        *Id.*  Both types of accounts do, however, offer
    valuable services that have nothing to do with accessing allegedly unauthorized content  (which is
26  prohibited by RapidShare's Conditions of Use).  *See id.*  For example, free accounts may be used to
    send files that are too large to be attached to regular email.  *See id.*  In this aspect, it is similar to the
27  Court's CM/ECF system which distributes a link to a filed document (and not the actual document as an
    attachment) in the notice of electronic filing.  Premium accounts, on the other hand, are better suited for
28  those who use RapidShare to backup their business or personal files,  as files are not deleted.  *See id.*

1    ***P10 complained in 2005 of infringing images uploaded onto RapidShare's servers but failed to***

2    ***take any action until now.*** By P10's own admission, it has known for years of the allegedly infringing

3    files stored on RapidShare's servers that have only now surfaced in this lawsuit. Indeed, in an August

4    2005 email sent to opposing counsel for VISA and Mastercard in a lawsuit P10 filed in January 2004,

5    P10 asserted that there were infringing files located on the rapidshare.de website. *See* Bridges Dec., ¶ 2,

6    Ex. A. Yet P10 waited until May 2009 to send what it asserts to have been a "DMCA notice." The so-

7    called "DMCA notice" sent in May 2009, however, was merely a disk that contained pornographic

8    images, with no information related to the download links or cover letter to explain why it was being

9    sent. *See* Schmid Dec., ¶ 18. & Ex. B. Although Zada claims to have sent the CD with a cover letter

10   (which, like the porn CD, provided no download links or other helpful information, *see* Zada Dec., Ex.

11   4), RapidShare received only a CD obscurely labeled "P10 5/27/09" and no cover note.[12] *See id.*, Ex. B.

12   The porn CD did not resemble a takedown notice and was assumed to be a prank or some other weird or

13   harmful communication.[13] *See id.*

14       **2.    P10 knew or should have known its notice was severely deficient based on Judge**

15           **Kozinski's earlier admonition and the notices sent by Mr. Jarvis.**

16       Notwithstanding that the Abuse Contact page on the RapidShare website specifically instructs

17

18   [12]  Given that Zada's declaration is plagued with blatant misrepresentations, there is no reason to believe
     that he actually had prepared a cover letter that somehow was never sent. But even if the alleged letter
19   was sent with the CD (which it was not), the notice would still have been deficient because it failed to
     contain any information that would enable RapidShare to search for and disable the download links and
20   files. *See* Zada Dec., Ex. 4. A DMCA notice must *identify* "the copyrighted work claimed to have been
     infringed, or if multiple copyrighted works at a single online site are covered by a single notification, a
21   representative list of such works at that site," "the material that is claimed to be infringing or to be the
     subject of infringing activity and that is to be removed or access to which is to be disabled, ***and***
22   ***information reasonably sufficient to permit the service provider to locate the material***," and musts be
     sent in writing and signed by a person authorized to act on behalf of the copyright owner (along with a
23   contact information), stating a good faith belief that the materials at issue are unauthorized, and
     providing a declaration under penalty of perjury. 17 U.S.C.A. § 512(c)(3) (emphasis added). Other than
24   claiming general copyright ownership, the purported cover letter failed to. identify "the copyrighted
     work," and more importantly, failed to provide *any* information "reasonably sufficient" to permit
25   RapidShare to locate and takedown the materials. If it was clear that the CD was intended to be a
     DMCA notice (which it was not), RapidShare could have at least sought additional information, even
26   though under the DMCA it had no legal requirement to do so. *See infra* § III.
27
     [13]  Indeed, defendants never even heard of Perfect 10 (or "P10") prior to this lawsuit. *See* declarations
28   of B. Chang, ¶ 9 and C. Schmid, ¶ 7, previously filed on 3/23/10 as exhibits A-B to 3/23/10 Raimer Dec.

that the download links must be provided in any takedown notice, P10 knew, from having been previously reprimanded by Ninth Circuit Judge Kozinski in an earlier case for failing to provide legally sufficient notice, that must, among other requirements, identify the copyrighted work, the allegedly infringing material, and provide information that would allow the service provider to locate the allegedly infringing material -- especially when P10 had access to such information.[14]

P10 likewise has on occasion employed Alec Jarvis, a DMCA agent who represents a number of companies in the porn industry, to send takedown notices to RapidShare on behalf of P10. These notices explicitly identify download links. *See* Hartojo Dec., ¶ 16, Ex. G. In response, the Abuse Department has responded expeditiously because the download links are provided. *See id.*, ¶¶ 4-7. Mr. Jarvis's notices demonstrate that P10 knows how to send a complying notice. P10 also has included links in takedown notices recently[15] sent by P10 to Google, which contain links to the thumbnails it claims to be infringing. *See* Chang Dec., Ex. I (sample takedown notices) and Ex. J (P10 Dec. of David O'Connor, stating "[t]o locate and remove the infringing material, Google should need only the Web Page URL" for the web pages resulting from Google searches identifying allegedly infringing material).

P10 accordingly sent the May 2009 "notice" as a "gotcha" in future litigation, not in the

---

[14] *See* Chang Dec., Ex. E (recording of P10's oral argument before the Appellate Court in the matter of *P10 v. CCBill*, Nos. 04-57143, 04-57207 (9th Cir. argued and submitted, December 4, 2006), where the Court rejected P10's argument that the defendant could eventually locate the material by piecing together information set forth in various interrogatory responses, and repeatedly questioned P10's failure to provide such information in the actual notice); *P10 v. CCBill*, 488 F.3d 1102, 1113 (9th Cir.), *cert. denied*, 128 S. Ct. 709 (2007) (finding P10's notices inadequate, in part, because it required the defendant to "cobble together" the relevant information from separate defective notices, and holding that "[t]he DMCA notification procedures place the burden of policing copyright infringement-identifying the potentially infringing material and adequately documenting infringement-squarely on the owners of the copyright"); *see also* Chang Dec., Ex. H (R. Kassabian declaration, at Ex. E, p. 146) (where the court, in admonishing P10, stated "[t]his practice or pattern of making all these slashing claims and then saying prove us wrong is not quite the way it's supposed to work Mr. Mausner").

[15] As here, P10's unwillingness to submit notices that actually identify specific links has been raised in the pending Google case (*Perfect 10, Inc. v. Google, Inc.*, No. 2:04cv9484 (C.D. Cal. filed Nov. 19, 2004), Google has been complaining to P10 about its unintelligible notices since at least 2007. For example, in a letter dated May 20, 2009, citing six older deficient notices, Google's counsel stated "Google has explained on multiple occasions that it is unable to process P10's purported DMCA notices in this format, which do not intelligibly identify the copyrighted work claimed to be infringed or the location of the allegedly infringing content. Instead, P10's May 7, 2009 purported notice provides google with thousands of images P10 supposedly downloaded from various websites, and thousands of other 'screenshots' of Google search results and images." Chang Decl, Ex. O (Mausner Dec., Ex. B).

expectation that a disk of porn pictures without file numbers or links would provide enough information for RapidShare to remove the alleged files. For similar reasons, P10 failed to notify RapidShare even as it was asserting in court in the *Google* case in November 2009 that Google was generating links to allegedly unauthorized files on RapidShare.[16] Likewise, P10 ignored RapidShare's request at the outset of the case to advise if P10 believed that any allegedly infringing files were on the RapidShare site so that they could be expeditiously removed. *See* 4/12/10 Ballon Dec., ¶ 4, Ex. B. P10 waited two months more and then filed its PI Motion claiming it discovered additional infringing files in March 2010. *See* Zada Dec., ¶ 5. Instead of gathering links for RapidShare to take down, P10 was busy downloading "at least 17,000" images to allege in its PI Motion. Even in the PI Motion, P10 declines to actually identify (or in fact is unable or unwilling to identify) more than a small number of actual files. Indeed, in a recent interview concerning this lawsuit, Zada himself emphatically declared that "It's not my obligation or up to me to spend time finding those links. That's not my problem." Chang Dec., Ex. A (4/19/10 Xbiz article). *See infra*, § III.

### 3. All known download links related to P10 have been disabled.

RapidShare cannot locate and delete files where the only information provided is a pornographic image. *See* Hartojo Dec., ¶ 14. However, the Abuse Department was able to find and take down certain files whose download links were identified on the screenshots that Zada attached to his declaration (*see, e.g.*, Zada Dec., Ex. 11 ("Evidence of downloads" folder)), and also proactively searched the third-party websites identified in his declaration, such as filestube.com, and took down any files listed on those sites that appeared to be suspect. *See* Hartojo Dec., ¶ 12. In addition, the download links identified in the complaint have also been disabled and the files deleted. *Id.*, ¶ 13. The Abuse Department has also begun proactively searching Google and Bing.com for files that may contain the words "RapidShare" and either "Perfect 10" or the names of the specific models identified by Zada. *Id.*, ¶ 15. However, not all links responsive to these searches actually lead to files saved on RapidShare's site. *Id.*

### C. The Percentage Of Potentially Infringing Files On RapidShare's Site Is Dramatically Less Than What P10 Represents Through Its "Google Searches."

---

[16] *See* Chang Dec., Ex. K, p. 7 (P10's PI Mot. against Google in *Perfect 10, Inc. v. Google, Inc.*, No. 2:04cv9484 (C.D. Cal. filed Nov. 19, 2004) claiming that Google searches pulled thousands of unauthorized files were saved on RapidShare's site).1

***RapidShare's*** ███████████████████████████████████

██████████████████████. RapidShare is a huge site with a relatively small

████████████████████████████████████. *See* Schmid Dec., ¶ 10. The vast majority of

files uploaded onto RapidShare's site are legitimate and non-infringing.

***P10's Google searches generate false hits and grossly inflated numbers.***   A Google search results page is not the same as evidence of specific files.[17]   P10's chart purportedly summarizing Google searches is misleading as to the level of allegedly infringing files located on RapidShare's servers.

***P10's reliance on the Hegre ruling is also flawed.***   Like the "evidence" from third party sites that are not RapidShare (and which RapidShare itself is trying to shut down), ad deals that don't exist and rank (and libelous) speculation that defendants themselves posted P10's images, P10's reliance on German court orders is not what it seems.   German rules of evidence allow for the introduction of hearsay -- precisely the same type of false and fraudulent assertions about RapidShare that Mr. Zada cloaks as "evidence" by including in a sworn declaration, but which in this country are inadmissible. *See* Hess Dec. ¶¶ 6, 7,10.   These cases have no precedential value, are presently on appeal, and in one instance was entered *ex parte* without notice to RapidShare or an opportunity to appear and present evidence (*i.e.*, U.S. standards of due process).[18]   *See id.*, ¶ 11; Raimer Dec. ¶ 5.   Moreover, RapidShare recently won an important appeal.   Hess ¶ 5; Raimer Dec., ¶ 6.   In reality, some courts impose a strict liability standard on service providers in Germany, holding them liable for user misconduct that they do not know about or approve,  while others do not.   The cases cited by P10 have been criticized by legal scholars and in the popular press in Germany (Hess Dec. ¶ 10; Raimer Dec., Exs. B, F) and ultimately the question of the proper standard for imposing liability under German law is currently before the German Appellate Court.  *Id.*

---

[17]  Google itself warns that the number of "results" generated by its search engine is nothing more than a "ballpark figure" that is unreliable and largely inflated due to duplicates.  *See* Secondo Dec., Ex. A ("results" decrease when click on next page because duplicates collapse).

[18]  Foreign decisions that have no precedential value, that are presently on appeal, which were based on hearsay and in one case was entered without what would amount to U.S. standards of Due Process are not admissible and should be disregarded. *See Holiday Inns Inc. v. Aeta Ins. Co. et al*, 571 F.Supp. 1460, 1487 n.125 (S.D.N.Y. 1983) (declining not to cite factual findings of prior U.K. court's decision on same facts of insurance dispute, stating "I do not cite the English court's judgment … as precedent for findings of fact in my own judgment").

12

**D.** **P10's Financial Troubles Are Due to Its Business Model and Market Forces in the Porn Industry, Not Infringement**

As shown in the declaration of industry expert Fred Lane, P10 has never been profitable and its business model is not competitive today. Other companies with better brand names or edgier content offer much more content and more varied services for much less money. In addition, P10 -- like others in the industry -- faces tough competition from free, noninfringing porn that is used to lure people to various sites or funded by advertising but which effectively drives down the demand for paid content. *See* Lane Dec., pp. 10-14. As further outlined in the Lane Declaration, P10's failure to adequately protect its digital images with watermarking or other technologies greatly contributes to its infringement problems. *See id.*, ¶¶ 65-67.

**E.** **P10 Alleges Infringement Of "Thousands" Of Copyrights But Presents Documents For Just 12 Images, Only 2 Of Which Appear To Be On The May 2009 CD.**

P10 has not provided any evidence to substantiate its sweeping assertion that defendants continue "to infringe ***thousands*** of P10 copyrighted images" (Mot. at 1), or that "Perfect 10 owns the copyrights for all of the P10 Images described as such in this declaration, including the 12 P10 Images that will  be used as a sample for Perfect 10's Motion." *See* Zada Decl., ¶ 4. P10's declarants admit they only provided copyright registration information for 12 "sample" images of the alleged total "26,000 P10 Images." A review of the evidence submitted on DVD, as Exhibit 11 to Dr. Zada's declaration, appears to show that only 2 of the 12 "sample" images are images included in the May 2009 CD P10 sent Rapidshare. Therefore, by P10's own account, it has only established ownership of copyright for 2 of the 824 images allegedly included in P10's May 27, 2009 "DMCA Notice" to Rapidshare. *See* Zada Decl., ¶¶ 9-10.

**III.** **ARGUMENT**

**A.** **No Irreparable Harm Where P10's Injury is Due to Market Forces and Its Own Flawed Business Model, Not Infringement, and Where P10 Waited "Several Years" To Seek A Preliminary Injunction & Refuses To Exercise Self-Help Under The DMCA.**

P10 pays lip service to new U.S. Supreme Court case law on injunctions but then proceeds to cite its losing opinion in *Perfect 10 v. Amazon.com, Inc.,* 508 F.3d 1146 (9th Cir. 2007) for what it knows to

13

be the *old, no longer applicable* standard for obtaining injunctive relief (Mot. at 8). In fact, the U.S. Supreme Court has made clear that injunctive relief *may not* be granted -- even where likelihood of success on the merits or the balance of hardships may be shown -- unless a plaintiff can show irreparable injury in the absence of an injunction. *eBay, Inc. v. MercExchange,* LLC, 547 U.S. 388 (2006) and *Winter v. Natural Res. Def. Council, Inc.,* 129 S. Ct. 365 (2008); *see also Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009).[19] Contrary to P10's assertions, irreparable harm may no longer presumed. *See Winter*, 129 S. Ct. at 376; *McDermott v. Ampersand Pub., LLC*, 593 F.3d 950, 957 (9th Cir. 2010). A "clear showing" of irreparable harm must be made.[20]

### 1. P10's long delay confirms the lack of irreparable harm.

P10's delay of at least five years ("several years" in Mr. Zada's own words) demonstrates that irreparable harm is *not imminent* and alone justifies denial of its motion for a preliminary injunction.[21] It is not simply P10's severe lack of diligence but also its *refusal* to comply with its obligations under the DMCA and cooperate with RapidShare to provide the relevant download links, which underscores the absence of imminent and irreparable harm. P10's own conduct in deliberately delaying its request

---

[19] "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 129 S. Ct. at 376. To obtain preliminary injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) a balance of equities tips in the favor of the moving party; and (4) that an injunction is in the public interest. *See id.*

[20] *See Winter*, 129 S. Ct. at 375-76 (plaintiff must "demonstrate that irreparable injury is *likely* in the absence of an injunction"; "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief"); *McDermott*, 593 F.3d at 957 (following *Winter*); *see also Gowan Co., LLC v. Aceto Agr. Chemicals*, 2009 WL 2028387, at *5 (D. Ariz. July 10, 2009) ("The Winter standard requires the plaintiff to demonstrate that irreparable harm is real, imminent and significant-not merely speculative or potential-with admissible evidence and a clear likelihood of success," citing *Winter*, 129 S. Ct. at 374).

[21] *E.g., Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm.") (denying request for preliminary injunction for lack of irreparable harm); *Gowan*, 2009 WL 2028387, at *4-5 (denying preliminary injunction where copyright waited to file suit three months after discovering the allegedly infringement by a competitor, and after the infringing product was widely distributed); *see also Lydo Enters. v. Las Vegas*, 745 F.2d 1211, 1212 (9th Cir. 1984) (holding that a preliminary injunction is "sought upon the theory that there is an urgent need for speedy action to protect the plaintiff's rights"); *Fogerty v. Poor Boy Prods., Inc.*, 124 F.3d 211, 1997 WL 579175, at *3 (9th Cir.1997) (ruling that the delay of more than a year in applying for a preliminary injunction seriously undermined plaintiff's claim of irreparable injury).

1    for relief demonstrates a lack of irreparable harm, and for this reason alone, the PI Motion should be

2    denied. *See Oakland Tribune*, 762 F.2d at 1377.[22]

3         **2.**      **P10 cannot claim "irreparable harm" when it refuses to exercise self-help required**

4                 **under the DMCA and effective remedies exist.**

5        Contrary to Zada's view that it is not P10's "obligation" to identify download links, "[t]he

6    DMCA notification procedures place the burden of policing copyright infringement-identifying the

7    potentially infringing material and adequately documenting infringement-squarely on the owners of the

8    copyright." *P10 v. CCBill*, 488 F.3d at 1113; *see also Hendrickson v. Amazon.com, Inc.*, 298 F. Supp.

9    2d 914, 916 (C. D. Cal. 2003).

10       Here, P10 cannot show irreparable injury in the absence of injunctive relief because it has simple

11    and effective remedies available to it to keep P10 images off the RapidShare site but refuses to avail

12    itself of those remedies. It could send DMCA notices, which RapidShare expeditiously processes --

13    RapidShare has one of the fastest records for taking down unauthorized material posted by users, and in

14    the instances where P10 actually has sent notices (through Mr. Jarvis), the allegedly offending files have

15    been promptly removed. *See* Raimer Dec., ¶ 3; Hartojo Dec., ¶¶ 8-10. P10 could also

16

17                                                 *See* Schmid Dec., ¶ 9 (RapidShare is still willing to

18    provide P10 with this tool). It could also start copy protecting its images, like others in the industry

19    including its competitors. These are all effective and available options that would remedy the harm

20    without requiring the Court to impose an extraordinary and burdensome injunction on foreign

21    defendants who have also contested this Court's jurisdiction.

22

23

24

25   [22]   Moreover, P10 claimed to be close to "bankruptcy" last November in papers that identified

26   RapidShare as one of the sources of the 222 million links on Google to allegedly infringing material.

    *See* Chang Dec., Ex. K (P10's PI Mot. against Google). Most recently, within the past couple of

27   months, P10 has accused Google of being responsible for the closure of its magazine and cell-phone

28   downloading business. *See id.* (blaming Google for its loss of revenues, dropping from allegedly $2

    million to $150,000 per year).

15

3.   **P10's Financial Condition Results From Its Own Flawed Business Model and Economic Conditions in the Porn Industry, Not Infringement .**

Monetary loss does not establish irreparable harm, especially when it is self-induced.[23]   As detailed at length in the declaration of Fred Lane, P10's alleged economic difficulties result from a flawed business model and its inability to compete with other subscription services such as Playboy, which has much better brand recognition and offers much larger libraries of material and varied services at lower prices, and the difficulty of competing with the large body of free, noninfringing and generally edgier adult content available online today.  As Lane describes in his declaration, P10's business model never made business sense and as market conditions changed P10 failed to adapt.   It is these circumstances, and not infringement on RapidShare, that account for P10's alleged financial distress.

B.   **P10 Is Not Likely To Succeed On Its Copyright Infringement Claim.**

1.   **P10's failure to comply with the DMCA notice requirements precludes it from recovering from RapidShare for the alleged copyright infringement of its users.**

P10 cannot prevail on the merits because case law is unequivocal that a copyright owner that does not send compliant DMCA notices may not maintain suit for copyright infringement if the defendant otherwise meets the requirements of the statute. *Henrickson v. eBay, Inc.*, 165 F. Supp. 2d 1082, 1090 (C.D. Cal. 2001); *see also Henrickson v. Amazon*, 298 F. Supp. 2d 914 at 916 (setting forth legislative history, explained above); *UMG Recordings, Inc. v. Veoh Networks Inc.*, 665 F. Supp. 2d 1099 (C.D. Cal. 2009).[24]

---

[23]  *See Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (economic injury does not support a finding of irreparable harm because it can be remedied by damages); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1210 (C.D. Cal. 2007) (same); *Gowen*, 2009 WL 2028387, at *5 ("Harm is irreparable when it cannot be remedied except through injunctive relief. . . .").

[24]  P10 alleges that RapidShare cannot benefit from the DMCA even if it complies with the other elements of the statute because it has not designated an agent in a filing with the U.S. Copyright Office. However, a technical failure by a foreign service provider that does not believe itself to be subject to U.S. jurisdiction to file a notice with the U.S. Copyright Office should not be determinative when the goal sought to be achieved by the filing has otherwise been accomplished and there is no prejudice to the copyright owner.  The filing requirement is intended to provide notice to copyright owners such as P10.  17 U.S.C. § 512(c)(2) requires a service provider to designate an agent to receive notifications of claimed infringement and make available the agent's information on its website, which RapidShare has done (*see* Hartojo Dec., ¶ 11, Exs. E-F), and file a notice with the U.S. Copyright Office, which RapidShare has not done because it is a Swiss company not subject to U.S. jurisdiction (and indeed, if it

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
**[REDACTED]**

1      The DMCA places the initial burden on copyright owners to search the Internet for infringing

2 material (which presumably they are best able to identify) and send substantially complying DMCA

3 notices to service providers, who then have the burden of disabling access to or removing material

4 reasonably identified in the notices.[25] *See, e.g., Perfect 10, Inc. v. CCBill, LLC*, 488 F.3d at 1113 ("The

5 DMCA notification procedures place the burden of policing copyright infringement--identifying the

6 potentially infringing material and adequately documenting infringement--squarely on the owners of the

7 copyright."). A copyright owner cannot shift its obligation to search for material and send notifications

8 by instructing a service provider prospectively to disable access to or remove material stored in the

9 future (or to remove "all copies" that ever may appear on a site or service). *See Hendrickson v.*

10 *Amazon.com, Inc.*, 298 F. Supp. 2d at 918. Likewise, as here, it cannot try to shift that burden by

11 merely providing copies of porn pictures and assuming that the service provider has any meaningful

12 way to respond.

13      In support of its PI Motion, P10 alleges 26,000 acts of infringement but provided the court with

14 *no* compliant notices.[26] The sole "DMCA notice" at issue is the May 2009 porn CD, which was

15 delivered without the alleged cover letter (and even if the letter had been received, it was still deficient

16

17 filed a DMCA agent form with the Copyright Office, that fact would have been cited by RapidShare as
evidence that RapidShare has availed itself of the privileges and benefits of doing business in the United

18 States). The purpose of requiring a company to register an agent with the U.S. Copyright Office, in
addition to posting the agent's contact information, is simply to provide notice. The legislative history

19 makes clear that substantial, not strict compliance is what is required for this particular provision. H.R.
Rep. No. 551(II), 105th Cong., 2d Sess. 55 (1998), 1998 WL 414916 ("The service provider's

20 designation shall substantially comply with these elements."). If P10 had been unable to locate
RapidShare's agent, RapidShare's failure to register with the U.S. Copyright Office might be material.

21 Here, however, P10 was well aware of how to contact RapidShare, as evidenced by the DMCA
compliant notices sent by Mr. Jarvis (which resulted in expeditious takedown of links, *see* Hartojo Dec.,

22 ¶¶ 8, 16) and even Norm Zada's noncompliant porn disk, which was properly addressed to RapidShare.

23 [25] Congress enacted the DMCA because it recognized that in "the ordinary course of their operations,
service providers must engage in all kinds of acts that expose them to potential copyright infringement

24 liability." S Rep. 105-190, at 8 (May 11, 1998). With the safe harbor, Congress "intended to balance
the need for rapid response to potential infringement with the end-users['] legitimate interests in not

25 having material removed without recourse." *Rossi v. MPAA, Inc.*, 391 F.3d 1000, 1003 (9th Cir. 2004)

26 (*quoting* legislative history), *cert. denied*, 544 U.S. 1018 (2005). The statute thus creates "strong
incentives for service providers and copyright owners to cooperate to detect and deal with copyright

27 infringements that take place in the digital network environment." *Id.*

28 [26] Significantly, P10 omits any reference to the Jarvis notices sent on behalf of P10 which were
compliant, and which RapidShare responded to expeditiously. Hartojo Dec., ¶

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
**[REDACTED]**

1  because it failed to identify the files allegedly infringed, either by file number or download link). The
2  CD itself did not provide any information except for the alleged model names; however, as the *Veoh*
3  court held, "[a]n artist's name is not 'information reasonably sufficient to permit the service provider to
4  locate [such] material." *Veoh*, 665 F. Supp. 2d at 1110.

5    The DMCA mandates specificity, rather than generalized notice, for takedown notices, by
6  requiring substantial compliance with the requirements for Notifications before a Service Provider has
7  the obligation to disable access to or remove material. 17 U.S.C.A. § 512(c)(3). Where, as here, that
8  specificity is not provided, the copyright owner cannot prevail on the merits. *E.g., Hendrickson v. eBay,*
9  *Inc.*, 165 F. Supp. 2d 1082, 1090 (C.D. Cal. 2001) (holding that, based on the facts of that case, the
10  plaintiff was required to identify, among other things, specific listing numbers to meet the requirement
11  of substantial compliance, while noting in *dicta* that a more general description could suffice if a
12  plaintiff were identifying *all* works of a particular nature on a site); *Veoh*, 665 F. Supp. 2d at 1109-10
13  (holding that a notice from the RIAA that identified UMG artists, but not their works, and not the files
14  on Veoh's site that allegedly infringed those works, was deficient).

15    **2. RapidShare has otherwise met the requirements of the DMCA Safe Harbor for**
16      **Material Stored at the Direction of a User**

17    To limit its liability under any of the DMCA safe harbors, a Service Provider must adopt,
18  reasonably implement and inform subscribers and account holders of a policy of terminating the
19  accounts or subscriptions of repeat infringers, in appropriate circumstances, and accommodate and not
20  interfere with "standard technical measures." 17 U.S.C. § 512(i). RapidShare's policy of terminating
21  repeat infringers on a third strike (or less, where warranted; Schmid Decl. ¶ 6) has been held to amount
22  to reasonable implementation of a DMCA policy. *E.g., Veoh*, 665 F. Supp. 2d 1099.

23    RapidShare also is required to expeditiously disable access to or remove material or activity
24  identified as infringing in substantially complying notifications,[27] where it has actual knowledge of
25  specific infringement or activity or where it is "aware of facts or circumstances from which infringing
26  activity is apparent . . . ," which in the legislative history is explained as material that raises a "red flag."

27  ───────────
 [27] The requirements for a complaint notification are set forth in section 512(c)(3). Unless these
28  requirements are met, a service provider has no obligation to respond to a notice and its failure to do so
may not be cited as evidence of knowledge or awareness of infringement. 17 U.S.C. § 512(c)(3)(B)(i).

1  17 U.S.C. § 512(c)(1); *P10 v. CCBill,* 488 F.3d 1102 (setting a high bar for what constitutes a "red flag"
2  based on the legislative history; concluding that a website called *stolencelebritypics.com* and websites
3  that purported to offer free passwords to access P10's website didn't raise red flags because it is
4  impossible to know if the material or activity is infringing without investigation and the burden of
5  investigation is on the copyright owner, not the service provider), *cert. denied*, 128 S. Ct. 709 (2007);
6  *Veoh,* 665 F. Supp. 2d 1099.  RapidShare's policy of expeditiously disabling access to content -- faster
7  than other file hosts in Germany and in many cases within one hour of receiving notice (Schmid Dec.
8  ¶6; Hartojo Dec., ¶ 6) -- and proactively searching third party sites and the accounts of suspected
9  infringers and removing material when found meets the requirements of the DMCA.[28]

10        For all these reasons, RapidShare is likely to prevail on its DMCA defense and P10 is unlikely to
11  prevail on the merits of its copyright infringement claim.

12        **3.      Even if DMCA did not apply, P10 is unlikely to prevail on its claim of copyright**
13                **infringement based on user content on the RapidShare website.**

14        Because RapidShare expeditiously disabled access to those files properly identified in notices
15  sent by Mr. Jarvis and P10 did not sent substantially complying notifications for any of the other files
16  ostensibly at issue in this case, P10 is not entitled to prevail on its copyright infringement claim against
17  RS.  Even if that were not the case, however, P10 has not shown that it is likely to prevail on its
18  copyright infringement claim.

19        P10's claim that RapidShare is liable for direct infringement (Mot. at 8-9) is based on
20  speculation -- indeed, the defamatory assertion -- that RapidShare itself copied unauthorized P10 files
21  onto its servers.  P10 offers no evidence to back up this libelous assertion.  RapidShare is a storage site
22  offering cloud computing services.  The files at issue in this case were stored on RapidShare by users.
23  Neither RapidShare nor the individual defendants Schmid and Chang ever copied any P10 images or
24  posted them to the site. *See* 3/23/10 Chang Dec., ¶ 9; 3/23/10 Schmid Dec., ¶ 7.  The cases relied upon

25

26  [28]  Indeed, RapidShare goes beyond what the DMCA requires by proactively searching third party sites
27  and trying to shut them down. Schmid Dec., ¶ 6; Hartojo Dec., ¶ 6.  Similarly, in this case, when
    RapidShare received notices from Mr. Jarvis it expeditiously disabled access to the files identified.
28  Similarly, it deleted the 6 files identified in P10's complaint once it was sued and the specific files (both
    P10 and others) identified in P10's PI Motion and Zada Declaration.

by RapidShare -- *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007) and *Arista Records v. Usenet.com,* 633 F. Supp. 2d 124, 131 (S.D.N.Y. 2009) -- were both cases where the defendants themselves copied files to their own servers (in *Amazon.com,* Google copied images for the fair use purpose of indexing the Internet, and in *Usenet.com,* the defendant copied images from the Usenet, including infringing images). Here, the images allegedly infringed were posted by users, not RapidShare.[29]

P10 likewise is not likely to prevail on its claims for contributory infringement or inducing infringement (Motion at 9-14). Contributory liability is "predicated upon 'the common law doctrine that one who knowingly participates or furthers a tortious act is jointly and severally liable with the prime tortfeaser . . . ." *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971), *quoting Screen Gems-Columbia Music, Inc. v. Mark F. Records, Inc.*, 256 F. Supp. 399 (S.D.N.Y. 1966). In this case, there is overwhelming evidence that RapidShare seeks to deter infringement, expeditiously remove unauthorized files, give copyright owners direct access to the site to remove material, terminate users for repeat infringement (and indeed sometimes immediately), filters content and has taken legal action against third party sites that seek to encourage and profit from misuse of RapidShare (including the very third party sites that form the cornerstone of P10's complaint, which P10 mistakenly assumed were affiliated with RapidShare). RapidShare does not knowingly participate or further third party acts of infringement and therefore P10 is unlikely to prevail on the merits.

To establish contributory infringement, a plaintiff must show that the defendant had knowledge *of specific infringing files* and failed to take action. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007) (holding that "a computer system operator can be held contributorily liable if it 'has *actual* knowledge that *specific* infringing material is available using its system,'. . . and can 'take simple measures to prevent further damage' to copyrighted works, . . . yet continues to provide access to infringing works"). P10 cannot make that showing here. The disk of porn pictures it sent RapidShare in

---

[29] P10 also briefly references its own 2002 victory in an unreported case against guba.com, but that case, like *Usenet.com* and unlike this case, involved direct copying by the defendant. Here, the files allegedly at issue were posted by third party users, not RapidShare or the individually named defendants.

1 May 2009 does not reference a single allegedly unauthorized file.[30] Conversely, in those instances
2 where Mr. Jarvis sent substantially complying notices to RapidShare, RapidShare expeditiously took
3 down the identified files. Hartojo, ¶ 16.

4    Liability for contributory infringement likewise may not be imposed where a site or service is
5 capable of *substantial or commercially significant noninfringing activity.*[31]

6    P10 likewise cannot prevail on its claim for inducement, which is a judicial doctrine developed
7 by the U.S. Supreme Court in *MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005). Inducement
8 liability is not based on individual files, but on an entire product or service[32] and thus far only three
9 Internet companies have been held liable for copyright inducement -- Grokster itself, a pirate site where
10 there was unrefuted evidence that more than **90 percent** of the files on the network were infringing and
11 ample admissible evidence that defendants sought to encourage and profit from infringement and
12 declined to take even small steps to deter it; *Arista Records LLC v. Usenet.com, Inc.,* 633 F. Supp. 2d
13 124 (S.D.N.Y. 2009), where the court found that **more than 94%** of the files were likely infringing and
14 where defendants refused to take any steps to deter infringement; and *Columbia Pictures Indus. v. Gary*
15 *Fung*, Case 2:06-cv-05578-SVW-JC, Document 391 at p. 10 (C.D. Cal. 2009), an unreported decision

16 [30] In any case, a disk of porn sent without a cover letter or explanation hardly satisfies the burden of
17 placing a service provider on *notice* of infringement. A reasonable person receiving the porn disk (with
no file links, takedown requests or certifications required by 17 U.S.C. § 512) would not have imagined
18 it was intended to be a takedown notice as opposed to some hoax or attempt to infect RapidShare's
network with a virus or spywear.
19 [31] *See Sony Corp. v. Universal City Studios, Inc.,* 464 U.S. 417 (1984); *MGM Studios, Inc. v. Grokster,*
20 *Ltd.,* 545 U.S. 913 (2005) (characterizing *Sony* as creating a safe harbor). *Sony* bars secondary liability
based on presuming or imputing intent to cause infringement solely from the design or distribution of a
21 product capable of substantial lawful use, which the distributor knows is in fact used for infringement
(such as a photocopy machine, the *Betamax* videocassette recorder at issue in *Sony* or a cloud computing
22 storage facility like RapidShare that is intended for lawful purposes but may be misused by some users).
Where substantial or commercially significant noninfringing activity is shown, *Sony* "limits imputing
23 culpable intent as a matter of law from the characteristics or uses of a distributed product." Here,
24 RapidShare offers licensed content such as Warner Brothers movie trailers, video game trailers, patches
and demos. *See* Pfaff Dec., ¶ 6. It also is used by businesses and individuals for other legitimate
25 purposes, including storing their own legitimate files. On this ground as well, P10 cannot prevail on its
claim for copyright infringement.
26 [32] The Court explained that while encouraging a particular consumer to infringe a copyright can give
27 rise to secondary liability (presumably for contributory or vicarious infringement) for the infringement
that results, "[i]nducement liability goes beyond that, and the distribution of the product can itself give
28 rise to liability where evidence shows that the distributor intended and encouraged the product to be
used to infringe." 545 U.S. at 940 n.13.                    21

1 where **95.6 percent** of the files were deemed highly likely to be infringing, and where there was also
2 ample admissible evidence that defendants had disdain for copyright owners and sought to encourage
3 infringement. There is no similar evidence in this case.

4    Here, ████████████████████████████████████████

5 ████████████████████████████ This is in line with *UMG Recordings, Inc. v. Veoh Networks, Inc.*,
6 665 F. Supp. 2d 1099, 1111, where Judge Matz found no constructive knowledge of infringing activity
7 where the number of infringing files on Veoh's system was "somewhere between 5 and 10 percent."

8    Where a defendant has not promoted its services specifically to infringe copyright, the
9 inducement doctrine is inapplicable even if users in fact may use the service for both legitimate and
10 infringing purposes. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1171 n.11 (9th Cir. 2007)
11 (rejecting P10's argument that Google could be held liable for inducement because of evidence that its
12 search engine could be used to link to tens of thousands of infringing images); *see also Perfect 10, Inc.*
13 *v. VISA Int'l Services, Ass'n*, 494 F.3d 788 (9th Cir. 2007) (rejecting the argument that VISA,
14 MasterCard and various banks could be held liable for inducement for providing payment processing
15 services to websites that allegedly sold infringing P10 images), *cert. denied*, 128 S. Ct. 2871 (2008).[33]

16 **C.    P10's Unfair Competition Claim Is Both Meritless and Preempted.**

17    P10 is unlikely to prevail on its unfair competition claim because its claim is preempted by the
18 Communications Decency Act ("CDA") and the Copyright Act and is factually meritless.

19    The CDA preempts claims against interactive computer services based on the republication of
20 content originating with third parties. 47 U.S.C. § 230(c)(1) provides that "[n]o provider or user of an
21 interactive computer service shall be treated as the publisher or speaker of any information provided by
22 another information content provider." *E.g., Fair Housing Council of San Fernando Valley v.*
23 *Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008) (*en banc*); *P10. v. CCBill*, 488 F.3d 1102 (9th

24

---

25 [33] P10 employs a smear campaign (similar to the one that Judge Matz chastized P10's counsel for
launching against Google), but the actual, admissible evidence in this case shows that RapidShare seeks
26 to *deter*, not induce infringement, that the percentage of allegedly unauthorized files on RapidShare is in
line with other legitimate service providers such as Veoh. To the extent P10 points to actual evidence of
27 inducement, it is from third party sites such as filetube and whatrapidshare that are *not* owned or
28 controlled by RapidShare and which RapidShare seeks to shut down through legal efforts undertaken in
Europe. Schmid Dec. ¶ 4; Mak Dec. ¶ 2. No ads are displayed on rapidshare.com. Schmid Dec., ¶ 23.

1  Cir.) (holding that the CDA preempted a right of publicity claim), *cert. denied,* 128 S. Ct. 709 (2007).

2  As explained by the Ninth Circuit, "[s]ubsection (c)(1), by itself, shields from liability all publication

3  decisions, whether to edit, to remove, or to post, with respect to content generated entirely by third

4  parties. *Barnes v. Yahoo!, Inc.,* 570 F.3d 1096, 1105 (9th Cir. 2009). The CDA insulates both

5  "affirmative acts of publication [and] ... the refusal to remove ... material." *Id.* at 1105 n.11.

6      P10 may attempt to argue that RapidShare is somehow responsible for developing the content

7  published (or copied) by users on its site, as it did recently in the *Google* case. However, courts have

8  rejected this very argument when a claim, however, framed, is based on content posted by a third party.[34]

9      Even if not preempted by the CDA, P10's claim is preempted by the Copyright Act because it is

10 premised on *copying* without an extra element.[35]

11     Finally, P10's claim is also factually meritless because it does not follow that P10's subscription

12 porn service would lose money because of the alleged free availability of non-competitive products such

13 as allegedly unauthorized computer software or music. *See* Lane Dec., ¶¶ 75-77.

14 **D.    The Requested Injunction Goes Well Beyond What U.S. Law Allows**

15     Even if injunctive relief were appropriate, the relief requested by P10 goes well beyond what

16

---

17     [34] For example, in *Green v. America Online,* 318 F.3d 465 (3d Cir. 2003), the court rejected

18 arguments that plaintiff's claim over allegedly defamatory material posted about him in a chat room and a computer virus sent to him from a third party were not preempted by section 230(c)(1) because they

19 involved AOL's own misconduct, as opposed to content posted by third parties for which the plaintiff sought to hold AOL liable as the publisher or speaker.

20     Similarly, in *Doe v. MySpace, Inc.,* 528 F.3d 413 (5th Cir.), *cert. denied,* 129 S. Ct. 600 (2008), the court rejected the assertion that MySpace could be held liable for failing to implement measures to

21 that would have prevented a minor from being contacted by a predator. The Fifth Circuit panel wrote that these "allegations are merely another way of claiming that MySpace was liable for publishing the

22 communications and they speak to MySpace's role as a publisher of online third-party-generated content." *Id.* at 420; *see also Doe IX v. MySpace, Inc.,* No. 4:08-CV-140, 2009 WL 1457170 (E.D. Tex.

23 May 22, 2009); *Doe II v. MySpace, Inc.,* 175 Cal. App. 4th 561, 96 Cal. Rptr. 3d 148 (Cal. App. 2009)

24 (holding MySpace exempt from claims based on minors who allegedly were abused by people they met on MySpace). Likewise, in *Doe v. Am. Online, Inc.,* 783 So. 2d 1010 (Fla. 2001), the Florida Supreme

25 Court held that section 230(c)(1) immunized AOL from a claim that the company should have been held liable because of abuse that resulted when a pedophile met the plaintiff's child in an AOL chatroom.

26     As in these cases, P10's unfair competition claim is premised on third party content and therefore is preempted by the CDA.

27 [35] 17 U.S.C. § 301; *Kodadek v. MTV Networks,* 152 F.3d 1209, 1213 (9th Cir. Cal. 1998) (holding an

28 unfair competition claim preempted because the rights asserted by the plaintiff were equivalent to rights protected under the Copyright Act and the work involved fell within the subject matter of the Act).

1  U.S. law permits. P10 seeks an injunction that would hold RapidShare strictly liable for user content
2  (and for keeping it offline) -- like the *Hegre* decision presently on appeal. However, U.S. law is very
3  clear that service provider liability is premised on volitional conduct, not strict liability. *See Religious*
4  *Tech. Ctr v. Netcom On-Line Commc'n Serv., Inc.*, 907 F. Supp. 1361, 1370 (N.D. Cal. 1995).[36]

5  Indeed, even where the DMCA does not apply, liability for contributory infringement requires a
6  showing that a defendant had notice of specific files. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d
7  1146, 1172 (9th Cir. 2007). Yet, P10 seeks to impose an injunction that would relieve it of the
8  obligation to provide notice of specific files and shift the burden of searching to RapidShare. While
9  such an injunction might be appropriate in a case such as *Napster* or *Grokster* where 90% or more of the
10 files on a service were infringing and there was ample admissible evidence that the defendants had
11 sought to promote infringement, it would be inappropriate in a case such as this where the defendant
12 seeks to deter infringement and the percentage of unauthorized uploads is ▮▮▮▮▮▮▮

13 **E.    The Balance Of Hardship Weighs Against P10**

14 The injunction sought by P10 would shift the burden to RapidShare to search for files that P10 is
15 in the best position to identify and ultimately is unworkable. Hartojo Dec. ¶ 14 (explaining that
16 RapidShare cannot search based on a visual image). By contrast, if an injunction does not issue, P10
17 will still have simple, inexpensive remedies available to it including sending DMCA takedown notices

18 ─────────────────────
19 [36] *See also, e.g., Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008)
    (holding that a company could not be held directly liable for its provision of a DVR service because "the
20 operator ... the person who actually presses the button to make the recording, supplies the necessary
    element of volition, not the person who manufactures, maintains, or, if distinct from the operator, owns
21 the machine"), *cert. denied,* 129 S. Ct. 2890 (2009); *CoStar Group, Inc. v. Loopnet, Inc.*, 373 F.3d 544
    (4th Cir. 2004); *Field v Google, Inc.*, 412 F. Supp. 2d 1106, 1115 (D. Nev. 2006) (holding Google not
22 liable for caching plaintiff's website articles as part of its automatic caching of the Internet, where the
    plaintiff had indicated in the meta-tags of his website that he wanted to be crawled by Google; "Google
23 is passive in this process . . . . Without the user's request the copy would not be created and sent to the
    user, and the alleged infringement at issue in this case would not occur. The automated, non-volitional
24 conduct by Google in response to a user's request does not constitute direct infringement . . . ."); *Ellison*
25 *v. Robertson*, 189 F. Supp. 2d 1051, 1057 (C.D. Cal. 2002) (following *Netcom* in holding that "AOL's
    role in the infringement as a passive provider of USENET access to AOL users could not support direct
26 copyright infringement liability" in a case involving an eBook posted to a newsgroup), *aff'd in part and*
    *rev'd in part,* 357 F.3d 1072 (9th Cir. 2004); *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d
27 1146, 1168 (C.D. Cal. 2002) (following *Netcom* for the proposition that "defendants must actively
28 engage in one of the activities recognized in the Copyright Act" before direct liability could be imposed
    on a site or service).

24

1  to RapidShare, using RapidShare's takedown tool to remove allegedly unauthorized files without having
2  to send a notice or using industry standard copy protection mechanisms to prevent infringement. For
3  these reasons, an injunction should not issue.

4  **F.    Injunction Should Not Issue Without A Substantial Bond**

5  An injunction may not issue except upon posting of a suitable bond. Here, the entry of
6  injunctive relief in a U.S. court could have cause significant reputational injury to RapidShare. Because
7  P10 is claiming to be on the verge of bankruptcy, defendants are entitled to a measure of adequate
8  protection that can be secured by a high bond. *E.g.*, *Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883,
9  888 (7th Cir. 2000) (when setting the amount of security [for a preliminary injunction], district courts
10  should err on the high side.).

11  **IV.   CONCLUSION**

12  This is not a case where a copyright owner has tried in vain to comply with the DMCA, has been
13  unable to obtain compliance from a service provider and urgently needs injunctive relief. To the
14  contrary, as Norm Zada himself admitted in an interview on April 15, 2010, he does not believe he
15  should have to send takedown notices as required by, among other cases, *Perfect 10, Inc. v. CCBill*, and
16  seeks a preliminary injunction beyond what U.S. law even permits -- to compel RapidShare to keep P10
17  images off its site without notice of what files allegedly infringe P10 images.

18  Unless and until P10 shows that it is unable through simple means to have allegedly
19  unauthorized files removed from the RapidShare site, it should not be granted extraordinary relief --
20  especially in the face of evidence that it has known about allegedly infringing files posted on
21  RapidShare for five or more years but has taken virtually no action on its own to remedy the problem,
22  and where the injuries sustained by P10 result from its own failed business model and competitive
23  pressures in the porn industry, as well as its own failure to employ industry standard copy protection
24  mechanisms, not infringement.

DATED: April 28, 2010                          Greenberg Traurig, LLP

25

26

27                                             By: s/Ian C. Ballon
                                               Attorneys for defendants Rapidshare AG,Christian
28                                             Schmid, and Bobby Chang
                                               Email: ballon@gtlaw.com