GREENBERG TRAURIG, LLP
IAN C. BALLON (SBN 141819)
WENDY M. MANTELL (SBN 225544)
LORI CHANG (SBN 228142)
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404
Telephone: (310) 586-7700
Facsimile: (310) 586-7800
Email:  ballon@gtlaw.com, mantellw@gtlaw.com,
changl@gtlaw.com

Attorneys for defendants
RapidShare AG, Christian Schmid, and Bobby Chang

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>RAPIDSHARE A.G., a corporation, CHRISTIAN SCHMID; BOBBY CHANG; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. 09 CV 2596 H (WMC)<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR *FORUM NON CONVENIENS***<br><br>[Filed concurrently with Supplemental Declarations of D. Raimer, C. Schmid, L. Chang, and B. Hess; and Declarations of T. Cottier, A. Markus, and M. Torke]<br><br>*[REDACTED]*<br><br>DATE:     May 12, 2010<br>TIME:     1:30 p.m.<br>CTRM:   13<br>JUDGE:  Hon. Marilyn L. Huff<br><br>DATE FILED:     November 18, 2009<br>TRIAL DATE:     None Set |

## I. INTRODUCTION

Perfect 10's ("P10") Opposition to RapidShare's *forum non conveniens* motion, like its opposition to defendants' motion to dismiss for lack of personal jurisdiction and its late-filed PI Motion, are based almost exclusively on the arguments, speculations, repetition of Internet rumors and other hearsay assertions of Norm Zada, whose declarations submitted under penalty of perjury[1] amount to little more than what Judge Matz recently characterized as "slashing claims" in chastising counsel for P10 for making unsubstantiated assertions and then challenging Google to "prove us wrong." *See* Supp. L. Chang Dec., Ex. D. As Judge Matz warned counsel Jeff Mausner, "it's not the way its going to work from here on in." *Id*.

This case is P10's attempt to avoid Judge Matz -- whose decision in *UMG Recordings, Inc. v. Veoh Networks, Inc.*, 665 F. Supp. 2d 1099 (C.D. Cal. 2009) (a case involving allegedly infringing material stored by users)[2] effectively precludes P10 from recovering for copyright infringement in a case

---

[1] The Zada declarations, in addition to being based on hearsay and questionable Internet printouts, also are inherently unbelievable because Zada is an interested party, not a disinterested expert or third party witness. His declarations confuse testimony with argument -- such as where he misrepresents (under oath) that RapidShare sells content, which it does not. 4/11/10 Zada Dec., ¶ 4; 4/29/10 Schmid Dec., ¶ 21. Even more troubling, Zada is willing to misrepresent facts in declarations, such as when he misrepresented that he "simply emailed [the Xbiz reporter] this Court's Order denying RapidShare's ex parte motion to postpone the hearing" on P10's preliminary injunction motion ("PI Motion"), yet the reporter's article quoted no fewer than 10 statements attributed to him which do not appear anywhere on the court's order. *See* Supp. L. Chang Dec., Ex. A. Zada also deliberately mischaracterized P10's own track record by representing that the Central District granted P10's motion for a preliminary injunction against Google, Inc., in 2006 (Zada Dec. ¶ 11), but failed to mention that the order was *reversed* by the Ninth Circuit. *See Perfect 10, Inc. v. Amazon.com, Inc*, 487 F.3d 701 (9th Cir. 2007). In short, the veracity of Zada's "decla-briefs" is doubtful.

[2] Judge Matz held that the notice was defective because it identified UMG artists, but not their works, and not the files on Veoh's site that allegedly infringed those works, noting that particular artists both performed for UMG and EMI, which had licensed works to UMG. Here, similarly, P10 relies on a May 2009 disk of porn pictures sent to RapidShare without explanation as an obvious "gotcha" to trigger a lawsuit. 4/29/10 Schmid Dec. ¶¶ 18,19. Here, there is no meaningful way to distinguish P10's pictures of naked ladies from the large volume of freely available, noninfringing porn on the Internet. *See* Lane Dec. in Opp. to PI Motion. Also, as Zada admits, some of the P10 models went on to pose for Sports Illustrated or Victoria's Secret, making it even more difficult to identify P10 images (even if you could tell a given model by picture). It is because of these complexities (and the plain terms of the DMCA and its legislative history) that the Ninth Circuit clarified in *P10 v. CCBill* that "[t]he DMCA notification procedures place the burden of policing copyright infringement-identifying the potentially infringing material and adequately documenting infringement-squarely on the owners of the copyright." 488 F.3d at 1113. Similarly, in *CCBill*, the Court held it is not sufficient to allege the existence of websites -- such as *stolencelebritypics.com* in that case or Zada's unsubstantiated Google search results

like this where it has declined to provide notice of specific files alleged to be infringing.[3] All of P10's suits in the Central District have been assigned to Judge Matz. In its Opposition, P10 offers no explanation for its forum shopping trip to San Diego. Indeed, the only relevant contacts with California are P10's own contacts *in Los Angeles, in the Central District.* The only connection to San Diego is that the court here cannot consolidate this case with P10's other copyright suits before Judge Matz in Los Angeles. This case, however, belongs neither in San Diego nor Los Angeles.

Germany or Switzerland present more logical, efficient and fair venues for litigation. P10 challenges the expert declaration of Dr. Hess with the unsubstantiated, hearsay assertions of Zada, who is not a lawyer and not an expert on the German legal system. As clarified in the Reply Declaration of Dr. Hess, a German court can award the same relief (including damages and attorneys' fees) as an American court for copyright infringement, unfair competition and right of publicity violations (and indeed may award *greater* relief because under 17200 damages and fees are not recoverable and P10's state law claims are preempted). Contrary to Zada's objections, Dr. Hess confirms that P10's copyright registration certificates are *prima facie* evidence of ownership (as in the U.S.) and its assignment agreements will be admissible. A German court can also issue a world-wide injunction, including for conduct in the United States. Perhaps more importantly, a U.S. judgment is not automatically enforceable in Germany, underscoring why fairness and justice dictate that this matter be litigated in Germany.

In response to P10's challenge to Dr. Hess's assertion that Swiss law would be equally favorable to P10, RapidShare submits the Reply Declarations of Thomas Cottier and Alexander Markus, two of Switzerland's leading experts on private international law and procedure. Like Dr. Hess, they confirm that the same claims asserted in this case could be brought by P10 in Switzerland, where P10 also could

---

pages in this one -- because it is impossible to know if the material or activity is infringing without investigation and the burden of investigation is on the copyright owner, not the service provider. *Id.*, at 1102.

[3] Indeed, Zada frankly told a reporter that he doesn't believe he needs to be bothered searching for and sending takedown notices ("It's not my obligation or up to me to spend time finding those links. That's not my problem."; Supp. L. Chang Dec., Ex. A) notwithstanding that the Ninth Circuit made it clear that he does in *Perfect 10, Inc. v. CCBill, LLC*, 488 F.3d 1102, 1113 (9th Cir.), *cert. denied,* 128 S. Ct. 709 (2007) and that Judge Kozinski reprimanded P10 at oral argument for failing to comply. *See* L. Chang Dec. ISO Defendant's Opposition to Preliminary Injunction ¶6, Ex. E; Opp. to PI at 10.

recover damages if it prevailed. Dr. Markus also explains that under Swiss law any judgment entered by a foreign court against residents of Switzerland would be *unenforceable* and would have to be relitigated in Switzerland, underscoring again the reason why this case should be litigated in the first instance in Germany or Switzerland.

With respect to the convenience of the parties and witnesses, P10's arguments only reinforce why Germany or Switzerland, not California, is more convenient. Similarly, of the twelve P10 models that P10 identified as central to its claims, at least nine are located in Europe and only one appears to be in the United States. Moreover, the assignment of rights contracts submitted by P10 provide that they are governed by the laws of Germany, not the United States.

Most of the other witnesses are likely current or former RapidShare employees living in Switzerland or Germany. While P10 employees admittedly are in Beverly Hills, it is not clear that anyone but Zada is an essential witness and in any case German law allows witnesses to testify by videoconference, substantially reducing the cost and inconvenience to P10. By contrast, RapidShare would likely have to bring its witnesses, including third party witnesses, to San Diego (or forego their testimony). Finally, in response to Zada's assertion that each location is equally inconvenient to the other party and that P10 is close to bankruptcy, Dr. Hess points out in his Reply brief that the cost of litigation is *DRAMATICALLY* cheaper in Germany (set by statute as a percentage of the value of a case) and cases get to trial in roughly 7 months. Either Germany or Switzerland would be more convenient, efficient and fair venues for litigation.

## II. GERMANY OR SWITZERLAND ARE MORE CONVENIENT VENUES

### A. P10's Choice Of Forum Has No Connection to the Parties, Witnesses or Claims and Any Judgment Entered Here Would Have to Be Relitigated in Germany or Switzerland.

A plaintiff's choice of forum is not dispositive where the balance of convenience favors dismissal. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 and 255 n.23 (1981). Where litigation in a foreign forum is more convenient, dismissal on the basis of *forum non conveniens* is proper where the

3

alternative forum is adequate, and the balance of private and public interest factors favor dismissal. *Lueck v Sunstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001). Here, the alternative forums are better than San Diego because in the unlikely case that P10 prevailed in this case, it would have to relitigate its claims in Germany or Switzerland. A U.S. judgment would not automatically be enforceable in Germany (and unenforceable in Switzerland) and defendants have no assets or business in this country against which a judgment could be enforced.

While P10 "strongly" argues that its choice of forum should be given "great deference," it cannot (and therefore does not even try) to explain why the *Southern District* is a proper venue. None of the parties, evidence or potential witnesses are located here.[4] This case has *no* connection whatsoever to the Southern District, rendering P10's choice of forum meaningless. *See Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1157 (S.D. Cal. 2005) ("numerous courts have given less deference to the plaintiff's choice of forum where the action has little connection with the chosen forum") (transferring case under 28 U.S.C. § 1404(a)). P10 is merely a "copyright troll"[5] that filed suit in San Diego to engage in forum shopping.

---

[4] P10 itself is in Beverly Hills. P10 also asserts connections to Google and VISA in the *Northern District of California*, although as shown in the defendants' reply brief in support of its motion to dismiss for lack of personal jurisdiction, and the supplemental declaration of Christian Schmid, those alleged California contacts are entirely false. RapidShare does not display any advertisements on its site and has no contractual relationship with Google, nor does it accept payment through VISA, Mastercard or Google. Supp. Schmid Dec., ¶ 3. Moreover, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

[5] *See* Caroline Horton Rockafellow, "Copyright Trolls: A Different Embodiment of the Patent Troll?," Enterprise IP <http://www.ipfrontline.com/depts/article.asp?id=13469&deptid=3> (defining the term and accusing P10 of positioning its photos to be linked to by Google so that it could sue Google (and now RapidShare) for huge damages for copyright infringement). Supp. L. Chang Dec., Ex. C. As described in RapidShare's Opposition to the PI Motion, P10 is a serial litigant that goes out of its way not to protect its copyrights with industry standard copy protection technologies or to send timely and compliant takedown notices that would keep its images off the Internet, preferring instead to let its images spread throughout the Internet so that it has more potential defendants to sue and shake down for settlements. Indeed, that is why it experiences infringement problems that its closest competitors do not. *See* Lane Dec., ¶¶ 61-67. The motivation for a copyright troll to release unprotected images onto the Internet and then wait to sue anyone who copies the photos (or in the case of P10, which likes to go after deep pockets such as VISA, MASTERCARD, Microsoft, Google and RapidShare, among others, whose *users* copy photos) is perhaps best articulated by Dan Heller, a photographer who not only recommends that photographers register copyrights in their works (a reasonable practice to deter infringement) but, like P10, suggests there is profit to be made (in the form of statutory damages of up to $150,000 per

B.  **P10's Own Litigation Losses Are Not Evidence That Alternative Forums Are Inadequate.**

P10 argues that Germany is an inadequate forum because (i) Petter Hegre, a P10 photographer, apparently was denied recovery of damages and attorneys fees in a suit against RapidShare (Daniel Kotz Dec.), and (ii) Zada, who is neither a lawyer nor an expert in German law, asserts that P10 had difficulty proving ownership of its copyrights in the case it brought against AOL.de, although he does not attach a copy of a judgment or ruling in that case to corroborate his hearsay assertions. *See* Opp. at 14. In fact, neither assertion undermines Germany (or Switzerland) as adequate forums. First, the Kotz declaration is intentionally misleading because, while he failed to recover damages or fees *in that case,* Mr. Kotz obtained awards of attorneys' fees in suits brought against other defendants. *See* 4/29/10 Raimer Dec. in opposition to PI Motion, ¶ 4. Second, Zada's non-expert opinion that a German court "apparently will not accept P10's U.S. Copyright Certificates" (Zada Dec., ¶ 14) suggests only that P10 did not succeed in proving ownership in the AOL case (*see* Supp. Hess Dec., ¶ 4); it does not substantiate Zada's view "that German laws regarding proof of copyright ownership are very different than those in the United States" (*id.*), which carries no weight as he is not an expert on German law.[6] Fed. R. Evid. §§ 602, 701.

---

work) by positioning photos to encourage misuse by those who can they be sued for much greater profits than could be earned from legitimate sales or licenses. Using an analogy to a kid deciding between paying a $1 for a candy bar or stealing it from a store, Heller writes:

> And that's where you start hearing the click of light switches going off . . . . [I]f you knew you could get tens of thousands of dollars if a kid stole a $1 candy bar from your front counter, there may be a lot of money if you put a lot of candy bars out for hungry children to take, especially if you make it very easy for the kids to take them, and *especially* if those kids have no idea of what the penalty is, and even *more especially* if we're talking about adults working at businesses that all bear super-size responsibilities.

Dan Heller, "Making Money for Your Stolen Images" <www.danheller.com/money-from-stolen-images.html> (visited Oct. 17, 2007), attached as Ex. B to Supp. L. Chang Dec. While RapidShare is not suggesting that Heller speaks for P10, the strategy he advocates is the one employed by P10, as described more fully in the Lane Declaration.

[6] Indeed, if P10's losses in German courts were evidence of an inadequate forum, then by that standard, courts in California would also be deemed inadequate as P10 has largely lost several high profile cases in this jurisdiction. *See Perfect 10, Inc. v. VISA Int'l Service Ass'n.,* 494 F.3d 788 (9th Cir. 2007), *cert. denied,* 128 S. Ct. 2871 (2008) (dismissing P10's claims against VISA and major banks where P10 sought to hold them liable for providing payment processing services to websites that sold allegedly infringing P10 photographs); *Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1168, 1172 & 1176 (9th Cir. 2007) (reversing entry of a preliminary injunction; ruling that P10 could not maintain suits for direct infringement against Google and Amazon.com, leaving open only the narrow issue of whether

In fact, Dr. Hess confirms in his Reply Declaration that damages[7] and attorneys' fees may be awarded in copyright infringement suits in Germany, that a U.S. copyright registration certificate is *prima facie* evidence of ownership (as it is in the United States, *see* 17 U.S.C. § 410(c)) and that assignment agreements are also admissible. Hess Dec., ¶¶ 10-13, 21; Supp. Hess Dec., ¶ 3. Prevailing parties may recover damages in Switzerland as well. Cottier Dec., ¶¶ 7-9, 17, 23.

C. **German And Swiss Courts Are Better Suited To Grant Injunctive Relief**

P10 argues, without basis, that German and Swiss courts are inadequate because they cannot enjoin infringing activity in the United States (Opp. at 15), but the assertion is false. An injunction awarded by a German court will not be limited to infringing activities in Germany, but will also apply to infringement committed *from* German territory and therefore may be granted on a world-wide basis. Hess Dec., ¶¶ 16-17; Supp. Hess Dec., ¶ 8; Markus Dec., ¶¶ 11, 19-21 (stating the same principle for a Swiss court). On the other hand, an injunction issued by a U.S. court that purports to enjoin activities taking place in Germany would not be immediately enforceable and would require a separate enforcement action in Germany. *See* Hess Dec., ¶¶ 18-19; Supp. Hess Dec., ¶ 8. Moreover, a Swiss court will *not* recognize or enforce a U.S. decision against a Swiss defendant on the infringement of a

---

Google and Amazon.com could be held liable for contributory infringement if they had knowledge that specific infringing P10 images were made available through use of their search engines, could have taken simple, inexpensive steps to deter infringement, and did not do so); *P10 v. CCBill*, 488 F.3d 1102 (finding P10's alleged DMCA notices inadequate, holding that P10, not defendants, had the obligation to search sites such as *stolencelebritypics.com* which P10 had identified as locations of potential infringement, and holding that P10's right of publicity claim -- like its claim in this case -- was preempted by the Communications Decency Act (47 U.S.C. § 230)). Indeed, the only clear victory it can cite to is the unreported *Guba* case from 2002, where defendants themselves posted unauthorized photos culled from the Internet. P10 has never prevailed in a case involving user submitted content such as this case or *UMG Recordings, Inc. v. Veoh Networks, Inc.*, 665 F. Supp. 2d 1099 (C.D. Cal. 2009).

[7] That punitive damages may not be available is immaterial so long as the alternate forum provides some form of remedy. *See Miles v. Paribas,* No. 94-56768, 1995 WL 501357, at *1 (9th Cir. Aug. 23, 1995) (unpublished) (finding France provided an adequate alternative forum even though French law did not provide for punitive damages); *Creager v. Yoshimoto*, No. C 05-01985 JSW, 2006 WL 680555, at *4 (N.D. Cal. March 14, 2006) (unreported) ("fact that punitive damages are not available in Japan does not alter the Court's conclusion that Japan offers an adequate alternative forum"). In any case, punitive damages may not be recovered under U.S. law for copyright infringement (*e.g., Viacom Int'l., Inc. v. YouTube, Inc*., 540 F. Supp. 2d 461, 464 (S.D.N.Y. 2008)) or violations of section 17200 (indeed, no damages of any kind may be awarded under section 17200) (*e.g., In re Tobacco II Cases,* 46 Cal. 4th 298, 312 (Cal. 2009)) and P10's right of publicity claim, as P10 knows from its own Ninth Circuit loss on this issue, is preempted. *P10. v. CCBill*, *supra.* 6

1  copyright. Markus Dec., ¶¶ 22, 27. To obtain an enforceable injunction, suit must be brought in
2  Switzerland (where defendants are located) or Germany (where RapidShare's servers are housed).[8]

3  **D.  Although P10's Claims For Unfair Competition And Right Of Publicity Are Preempted**
4  **Under U.S. Law, They May Assert Such Causes Of Action In Germany And Switzerland.**

5  Although P10's claims for unfair competition and right of publicity are both preempted by the
6  Communications Decency Act ("CDA") (47 U.S.C. § 230(c)) (*see P10 v. CCBill*, 488 F.3d 1102 (9th
7  Cir. 2007), a plaintiff may bring such causes of action in both Germany and Switzerland. *See* Hess
8  Dec., ¶ 20; Supp. Hess Dec., ¶¶ 9-10; Cottier Dec., ¶¶ 20, 24-25. P10 misread the original declaration
9  Dr. Hess, in which he explains in his supplemental declaration simply that a claim for unfair competition
10 cannot be asserted simply on the basis of a copyright claim, without more, which is basically the same
11 as under U.S. law. *See* Supp. Hess Dec., ¶ 9; *see also* Opp. to PI Motion, at Section III(C), pp. 22-23.

12 **III.  3D PARTY WITNESSES -- ▬▬▬ AND P10 MODELS -- ARE IN EUROPE.**

13 **A.  All Relevant ▬▬▬ Witnesses And Documents Are Located In Europe.**

14 P10 has called out ▬▬▬, as the single most important third-
15 party witness to this case.[9]
16 ▬▬▬ Relying on Zada's flawed Internet
17 searches, P10 jumped to the erroneous conclusion that RapidShare's contract with ▬▬▬
18 ▬▬▬
19 ▬▬▬

---

[8] P10 asserts that it seeks to enforce an injunction ▬▬▬ Third party sites (which P10 mischaracterizes as "affiliates") have no connection to RapidShare and would have to be separately sued wherever they are located.

[9] ▬▬▬

CASE NO. 09CV2596
REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR *FORUM NON CONVENIENS*
**[REDACTED]**

[REDACTED] *See also Saleh*, 361 F. Supp. 2d at 1157 ("Importantly, '[w]hile the convenience of party witnesses is a factor to be considered, the convenience of non-party witnesses is the more important factor,'") *citing Aquatic Amusement Associates, Ltd. v. Walt Disney World Co.,* 734 F. Supp. 54, 57 (N.D.N.Y. 1990)).

**B. The Relevant Models Identified By P10 Are In Europe And The Assignments Of Rights Agreements That P10 Has Asserted Are At Issue Are Governed By German Law.**

The other third-party witnesses that P10 has identified as relevant to the issue of copyright ownership and publicity rights are almost all located in Europe. Although Zada declares that "[m]any of our photographers and our models are located in the United States" (Zada Dec., ¶ 15), the models he actually identified as material to this lawsuit -- *i.e.*, the 12 models from "The Sample" -- reside mostly in Europe. *See* 4/11/10 Zada Dec., ¶ 1, Ex. 11; 4/11/10 Poblete Dec., ¶¶ 2-15. Specifically, the model releases contained in the materials provided for "The Sample" (*see* Zada Dec., Ex. 11) place at least 9 of these models in Europe: Alexa Latona (Polish citizen residing in Helsinki, Finland); Evelina Papontoniov (Athens, Greece); Isabelle Funaro (Paris, France); Kristel Kama (German phone number); Lisa Fuxler (Sweden); Sasha Brinkova (Czech Republic); Vibe Sorenson (Denmark); Zita Gorocs (Hungarian citizen residing in Budapest, Hungary); and Zova Konyieva (addresses in Ukraine and Russia). Only one of these models provided a U.S. address (Ashley Degenford, a.k.a. "Ashley Reed," with both a Hollywood, CA and Tulsa, OK address); and information relating to the remaining model, Victoria Pankova, was not provided in P10's materials.

Moreover, in spite of Zada's testimony that "[n]one of our photographers are located in either Germany or Switzerland" (Zada Dec., ¶ 15), each of the assignments of rights for the photographers (Clifford Wright, Marcel Indik, Roman Sluka, and Tracy Kahn) provided within "The Sample" materials expressly state that the scope of the photographers' assignment is **governed by the laws of Germany**. *See* Zada Dec., Ex. 11 (subfolder "Assignment of Rights" within "The Sample" folder). Despite Zada's assertions under oath, the evidence he relies on shows that Germany, not California, is

the more logical and convenient place to address the circumstances surrounding the creation of the works at issue (and the assignments made to P10 all point to Germany).

### C. The Party Witnesses Material To P10's Claims Are Mostly RapidShare Employees Located In Europe.

P10's main claim for copyright infringement would involve Zada and perhaps one other P10 employee (Sheena Chou, who allegedly downloaded images from RapidShare's site),[10] but the majority of witnesses will likely be Christian Schmid and Bobby Chang (as identified by P10, Opp. at 8) plus members of RapidShare's Abuse Department (e.g., Allan Hartojo), all of whom work in Cham, Switzerland.  *See* B. Chang Dec., ¶¶ 10, 14.  To prove ownership of its copyrights, P10 need only present the copyright registrations and assignments to create a factual presumption.  Supp. Hess Dec., ¶¶ 5-7.  P10 need not present a team of witnesses; and even if it chose to, witnesses could appear by videoconference in the courts of Germany and Switzerland.[11]  Supp. Hess Dec., ¶ 7; Markus Dec., ¶ 39.

### D. Litigation Is Faster And Cheaper In Germany And Switzerland.

Another factor in favor of the alternative forums is that the costs of bringing suit in the U.S. is far greater than it is in Germany and Switzerland.  In Germany, legal fees are set by statute as a small percentage of the amount at issue, and are a tiny fraction of what litigation costs in California.  *See* Supp. Hess Dec., ¶¶ 13-18.  Moreover, both Germany and Switzerland have efficient litigation systems that can very quickly resolve P10's claims (which it alleges to be urgent, even though it waited approximately 5 years or more before seeking relief).  *See* Hess Dec., ¶ 17 (7 months is the average duration of a German lawsuit); Markus Dec., ¶ 18 (3-6 months is the average duration of a lawsuit in the Canton of Zug, where RapidShare is located); Opp. to PI Motion at pp. 2, 8-11 (documenting P10's delays).  P10's argument that a lawsuit in Europe would be equally burdensome is undermined by the dramatic cost savings afforded and quick time to trial available in German and Swiss courts.

### IV. EUROPEAN LAWS ARE LIKELY TO GOVERN THE CLAIMS OF INFRINGEMENT

---

[10] It is questionable whether P10 would need anyone other than Zada, who is virtually P10's only declarant on most issues and is characterized as "an essential witness regarding *all* aspects of this litigation." *See* Opp. at 7 (italics added).

[11] RapidShare would stipulate to appearances by videoconference if the case were brought in Germany or Switzerland.

Other than to state that California courts have a strong interest in providing a forum for its citizens to vindicate their rights, P10 has not countered the more specific showing made in defendants' moving papers on why public interest factors favor dismissal, which defendants will not repeat in this reply brief, except to elaborate further on the conflict of laws issue. Because the alleged acts of infringement occurred in Europe (where RapidShare's sole office and servers are located), there is strong authority suggesting that European law should apply to this dispute. *See Creative Tech., Ltd. v. Aztech Sys. PTE, Ltd.*, 61 F.3d 696, 701 (9th Cir. 1995) ("[T]he principle of national treatment implicates a rule of territoriality in which '"[t]he applicable law is the copyright law of the state of which the author is a national or in which the work was first published."'"); *see also* Hess Dec., ¶ 16 ("As far as downloads take place from servers located in Germany, German courts have jurisdiction under Article 5 no. 3 of the Lugano Convention"); Markus Dec., ¶¶ 12-18 (discussing Swiss jurisdiction under the Lugano Convention).[12]

## V. CONCLUSION

For all these reasons, defendants ask that the case be dismissed for *forum non conveniens*.

DATED: May 5, 2010                    GREENBERG TRAURIG, LLP

By: s/Ian C. Ballon
Attorneys for defendants RapidShare AG, Christian Schmid, and Bobby Chang
Email: ballon@gtlaw.com

---

[12] Application of European law is further warranted given that defendants are based in Europe and their conduct is directly governed by Swiss and/or German laws, under which RapidShare may not be held liable for the activities complained of. For example, in both Germany and Switzerland, individuals are allowed to store personal copies of a legally acquired work so long as the copy is not publicly distributed. *See* Supp. Raimer Dec., Ex. D at p. 12 (German appellate court decision, overturning injunction issued against RapidShare, stating that under Article 53 section 1 of the German Copyright Act, "no one is prohibited from storing a legally acquired film copy on external servers for private purposes," so long as the copy is not "publicly reveal[ed]"); Cottier Dec., ¶¶ 12-14 (Swiss Copyright Act carves out certain circumstances in which a private user may make a copy of a copyrighted work). Relying in part on this legal allowance, a recent German appellate court which overturned an injunction issued against RapidShare found that RapidShare's "business model used is indeed one approved by this legal system." *See* Supp. Raimer Dec., Ex. D at pp.15-6, 12.