Eric J. Benink, Esq. (State Bar No. 187434)
Krause Kalfayan Benink & Slavens, LLP
625 Broadway, Suite 635
San Diego, California 92101
eric@kkbs-law.com
(619) 232-0331
(619) 232-4019

Jeffrey N. Mausner (State Bar No. 122385)
Law Offices of Jeffrey N. Mausner
Warner Center Towers
21800 Oxnard Street, Suite 910
Woodland Hills, California 91367
Jeff@mausnerlaw.com
(310) 617-8100; (818) 992-7500
(818) 716-2773

Attorneys for Plaintiff Perfect 10, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>RAPIDSHARE A.G., a corporation; CHRISTIAN SCHMID; BOBBY CHANG; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. 09 CV 2596 H (WMC)<br><br>**PERFECT 10'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION AGAINST DEFENDANTS RAPIDSHARE A.G., CHRISTIAN SCHMID, AND BOBBY CHANG**<br><br>**[Filed concurrently with Reply Declarations of Dr. Norman Zada, Jeffrey N. Mausner, John Herzfeld, and David Blocker]**<br><br>DATE:     May 12, 2010<br>TIME:     1:30 p.m.<br>CTRM:   13<br>JUDGE:   Marilyn L. Huff<br><br>Demand for Jury Trial<br>Discovery Cut-Off Date: None Set<br>Pretrial Conference Date: None Set<br>Trial Date: None Set |

# TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY OF ARGUMENT. ................................... 1

    A. Defendants Have Failed To Provide Evidence Of Their Right To Sell Any Full-Length Movie, Song, Computer Software, or P10 Image. ............................................................................................. 1

    B. Defendants Do Not Deny That They Are Offering Most Major Movies, Songs, and Computer Software To Their Members. ................... 1

    C. Defendants Have Not Identified The Alleged Third Parties Who Copied Perfect 10 Images To RapidShare Servers. .................................. 2

    D. Defendants' Opposition Is Based On A Series Of Misstatements. ........................................................................................ 2

II. DEFENDANTS HAVE NOT SHOWN THAT THEY OWN THE RIGHTS TO WHAT THEY SELL. ......................................................................... 3

    A. Defendants Are Continuing To Sell Access To At Least 7,000 P10 Images ................................................................................................. 4

III. RAPIDSHARE IS NOT ENTITLED TO DMCA SAFE HARBOR FOR MULTIPLE REASONS ................................................................................ 4

    A. Defendants Mischaracterize Perfect 10's DMCA Notices ........................ 5

IV. DEFENDANTS MAKE NUMEROUS OTHER MISSTATEMENTS. ............... 6

V. A BROAD INJUNCTION IS NECESSARY TO PREVENT MAJOR ONGOING DAMAGE ................................................................................ 7

VI. CONCLUSION. ................................................................................................ 10

i     **09cv02596**

Perfect 10's Reply Memorandum Of Points And Authorities In Support Of Its Motion For Preliminary Injunction Against Defendants Rapidshare A.G., Christian Schmid, And Bobby Chang

# **TABLE OF AUTHORITIES**

**Cases**

*Bekaert Progressive Composites Corp. v. Wave Cyber Ltd.,* 2007 WL
   1110736 *3 (S.D. Cal., Apr. 5, 2007) ................................................................. 10

*Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*,
   521 F.3d 1157 (9th Cir. 2008) ..................................................................... 8, 9

*Kodadek v. MTV Networks, Inc.,* 152 F.3d 1209 (9th Cir.1998) ................................. 10

*Perfect 10, Inc. v. CCBill, LLC,* 488 F.3d 1102 (9th Cir.), *cert. denied*,
   128 S.Ct. 709 (2007) ..................................................................................... 6

*Perfect 10, Inc. v. Visa Int'l Services, Ass'n,* 494 F.3d 788 (9th Cir. 2007) .............. 3, 7

*UMG Recordings, Inc. v. Veoh Networks, Inc.,* 665 F.Supp.2d 1099
   (C.D. Cal. 2009) ............................................................................................ 4

**Statutes**

17 U.S.C. § 512 ............................................................................................... 5

47 U.S.C. § 230 ............................................................................................... 9

**Rules**

Local Civil Rules 7.1.e.2, 7.1.f.3.c ................................................................... 1

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants RapidShare A.G. ("RapidShare"), Christian Schmid ("Schmid"), and Bobby Chang ("Chang") (collectively "Defendants"), have filed a late Opposition to Perfect 10's Motion for Preliminary Injunction (the "PI Motion")[1] that is rife with misstatements of fact. It also fails to refute Perfect 10's key evidence. As hard as they try, Defendants cannot alter the fact they have no rights to the billions of dollars of content they sell. RapidShare is just a gigantic infringing website, which steals from Californian entertainment companies and which deserves no protection under U.S. law.

### A. Defendants Have Failed To Provide Evidence Of Their Right To Sell Any Full-Length Movie, Song, Computer Software, or P10 Image.

Defendants have failed to provide evidence that they have the right to sell *any one* of the 115 full-length movies, 58 television shows, or songs by any one of the 97 musical artists listed on pages 5-9 of Exhibit 7 to the Declaration of Dr. Norman Zada in Support of Perfect 10's Motion for Preliminary Injunction ("Zada Decl."). In fact, Defendants have provided no evidence that they own or otherwise have the right to sell *anything* of value.

### B. Defendants Do Not Deny That They Are Offering Most Major Movies, Songs, and Computer Software To Their Members.

Defendants submit no evidence in their Opposition showing that RapidShare has *actually stopped* offering access to materials it does not own. In fact, as late as April 18, 2010, RapidShare was still: (i) selling access to at least 7,000 Perfect 10 copyrighted images ("P10 Images"); (ii) offering at least 171,000 RapidShare files containing episodes of major television shows; (iii) offering at least 108,000 RapidShare files containing popular songs; and (iv) offering complete issues of major magazines, including Playboy, Maxim, Sports Illustrated, Cosmopolitan, National

---

[1] Because Defendants served and filed their Opposition late, this Court should consider simply granting Perfect 10's motion. *See* Local Civil Rules 7.1.e.2, 7.1.f.3.c ("If an opposing party fails to file the papers in the manner required by Civil Rule 7.1.e.2, that failure may constitute a consent to the granting of the motion . . .").

Geographic, and Ladies Home Journal. *See* Reply Declaration of Dr. Norman Zada, submitted herewith ("Zada Reply Decl.") ¶¶4-13, Exhs. 12-21, 28. Defendants have not demonstrated that RapidShare has the right to sell *any* of this property.

### C. Defendants Have Not Identified The Alleged Third Parties Who Copied Perfect 10 Images To RapidShare Servers.

Defendants assert that they are not liable because third parties, and not Defendants themselves, copied onto RapidShare's servers the tens of thousands of P10 Images that have been offered for sale. However, Defendants have submitted no evidence whatsoever identifying these third parties or showing that they, and not Defendants, copied these P10 Images. In fact, it is extraordinarily likely that Defendants themselves uploaded at least some of the nearly complete collection of unauthorized full length movies, songs, computer software, and images that they sell. In any event, even if Defendants showed that third parties uploaded each of the 43,000 infringing copies of P10 Images found on RapidShare servers (and they have not), Defendants would still be directly liable by virtue of their distribution (by sale) of such infringing materials, and would be contributorily liable as well. *See* Memorandum of Point and Authorities in support of the PI Motion (Docket No. 9-1) at 8-12 .

### D. Defendants' Opposition Is Based On A Series Of Misstatements.

The Opposition relies upon several critical misstatements, all of which are demonstrably false. For example: (1) That RapidShare does not sell content and is not a paysite. In fact, RapidShare asks users to pay it a fee for premium memberships to download movies, songs, and P10 Images. *See* Declaration of Jeffrey N. Mausner, submitted herewith ("Mausner Decl."); (2) That most of RapidShare's content is non-infringing. In fact, RapidShare sells access to almost every major movie and song ever created. Zada Reply Decl. ¶¶7-13, Exhs. 15-21; (3) That Ninth Circuit Chief Judge Alex Kozinski was against Perfect 10. In fact, Judge Kozinski ardently supported Perfect 10 in *Perfect 10, Inc. v. Visa Int'l Services, Ass'n,* 494 F.3d 788, 810-824 (9th Cir. 2007); (4) That Perfect 10 does not send DMCA notices.  In fact, Perfect 10 has

sent more than 230 DMCA notices to more than 20 different Internet Service Providers. Zada Reply Decl. ¶14, Exh. 28; and (5) That Alec Jarvis sent DMCA notices on behalf of Perfect 10, when in fact he did not. Zada Reply Decl. ¶15, Exh. 23. *See also* Sections III and IV, below.

## II. DEFENDANTS HAVE NOT SHOWN THAT THEY OWN THE RIGHTS TO WHAT THEY SELL

Defendants' claim that RapidShare is not a paysite is ludicrous, given the millions of dollars they make each year specifically by charging memberships. Defendants use PayPal, *resellers*, and other *payment* processors to process *payments*. Before the user can download movies, songs, computer software, or images, he or she must make a payment to become a premium member. Mausner Decl. Without any rights to the content it sells, RapidShare is just a gigantic infringing website which would not qualify for protection under any U.S. law. See Section III below.

RapidShare has had the opportunity to demonstrate that it has the right to sell any one of the 115 movies, 58 TV Shows, or songs by any one of the 97 singer/groups listed in pages 5-9 of Exhibit 7 to the Zada Declaration. However, RapidShare has not done so for ***any*** *o*f those works. In fact, RapidShare is currently selling access to *each such movie, show, or singer/group*, and in many cases, is ***offering almost all episodes of the TV Shows and almost all songs of that artist/group***. For example, RapidShare is currently offering roughly 1,146 files containing almost every song by the Rolling Stones. It is offering roughly 7,191 files containing episodes of CSI Miami. RapidShare is offering at least 171,000 files containing episodes of major TV Shows, and at least 108,000 files containing recordings by major artists. Zada Reply Decl. ¶¶7-12, Exhs. 15-20. RapidShare is doing tremendous damage to rights holders.

Defendants' claim that the vast majority of their materials are non-infringing is ludicrous. No amount of low quality user-generated content could ever compare with the billions of dollars of major movies, songs, images, and software sold by RapidShare without authorization. Defendants have not provided a single example of

anything that they own or have the right to sell that is worth anything at all.

Perfect 10 has attached additional examples of materials in the Zada Reply Decl. that RapidShare clearly does not have the rights to sell. These include full length versions of Maxim, Playboy, Sports Illustrated, National Geographic, Ladies Home Journal, Woman's Day, PC World, Popular Mechanics, Family Circle, Cosmopolitan, and Business Week, as well as thousands of images of actresses and supermodels. RapidShare is even selling access to Gospel songs sung by such artists as Amy Grant. Zada Reply Decl. ¶¶5-7, 13, Exhs. 13-15, 21, 28. [2]

### A.  Defendants Are Continuing To Sell Access To At Least 7,000 P10 Images

Defendants incorrectly suggest that they are no longer selling Perfect 10 Images. In fact, they are still selling at least 7,000 Perfect 10 Images, and likely many more. The exact number is hard to determine because of the massive quantities of pirated material offered by Rapidshare. Zada Reply Decl. ¶4, Exhs. 12, 28.

### III.  RAPIDSHARE IS NOT ENTITLED TO DMCA SAFE HARBOR FOR MULTIPLE REASONS

Defendants are not entitled to DMCA safe harbor. First, the DMCA was not designed to protect infringing websites that sell access to billions of dollars in stolen materials. Under 17 U.S.C. § 512(c)(1)(B), those who financially benefit from infringing conduct over which they have the right and ability to control are not entitled

---

[2] Defendants tout a certain (confidential) percentage of material that they claim is infringing. However, this percentage is based, at least in part, upon take-down notices that Rapidshare has received and acknowledges receiving. If this is the percentage of material that has been subject to take-down notices, it is clearly a gross understatement of the actual infringing material available on Rapidshare. The vast majority of copyright owners will not know of the infringement or be able to send take-down notices. In contrast, the *Veoh* case (*UMG Recordings, Inc. v. Veoh Networks, Inc.,* 665 F.Supp.2d 1099 (C.D. Cal. 2009)) based the estimate of percentage of infringing material on the use of a filter, Audible Magic, that found infringing materials, not on the number of take-down notices. *Id.* at 1111, note 15. Rapidshare apparently does not employ any such filter for infringing material, so its estimate for the percentage of such material is a gross understatement.

to a safe harbor. That is exactly RapidShare's situation. It is selling access to billions of dollars of intellectual property it does not own. Rapidshare has complete control over the infringing materials, because the material resides on Rapidshare's servers.

Second, RapidShare does not qualify for a DMCA safe harbor because it admittedly has no DMCA agent listed at the United States Copyright Office. RapidShare's failure to comply with this strict statutory requirement by itself causes its safe harbor affirmative defense to fail. *See* 17 U.S.C. §512(c)(2).

Third, RapidShare did not respond in any way to Perfect 10's notice.

Fourth, the safe harbor provisions of the DMCA only apply to a defendant without knowledge of infringing material. *See* 17 U.S.C. § 512(c)(1)(A). Here, Perfect 10 has alleged that RapidShare is infringing at least 115 full-length movies, 58 television shows, and the works of at least 97 musical artists. Nevertheless, RapidShare is still selling access to those same infringing works. Under these circumstances, Defendants cannot possibly claim that they do not have knowledge of infringement. Zada Reply Decl. ¶¶5-13, Exhs. 13-21, 28.

Fifth, RapidShare has not demonstrated that it has suitably implemented a policy against repeat infringers. It has provided no evidence as to when its apparently newly claimed policy was started, or provided any evidence of the actions it has taken, against who, and when, who was terminated, or their identity.

Sixth, RapidShare's assertions regarding Perfect 10's DMCA notice and Alec Jarvis are completely untrue. Mr. Jarvis has never acted as Perfect 10's DMCA agent. Perfect 10 was not even aware of his existence until recently. Zada Reply Decl. ¶15, Exh. 23 (letter from Alec Jarvis stating that he has never represented Perfect 10).

### A. Defendants Mischaracterize Perfect 10's DMCA Notices

Defendants mischaracterize Perfect 10's DMCA notices in a variety of ways.

First, the assertion that Perfect 10 and Dr. Zada are unwilling to send DMCA notices is completely false. Dr. Zada has sent more than 230 DMCA notices on behalf of Perfect 10 to at least 20 different entities in an attempt to protect Perfect 10's

business.  Zada Reply Decl. ¶¶14-18, Exhs. 22-26, 28.[3]

Second, Mr. Schmid's claim that Perfect 10 did not include a cover letter with its May 27, 2009 notice is untrue (Zada Reply Decl. ¶16), as is his claim that he had never heard of Perfect 10 until this litigation.  Mr. Schmid's contention is inconsistent both with Defendants' claim that Mr. Jarvis has been sending DMCA notices to RapidShare on behalf of Perfect 10 since 2008 and with the fact that Perfect 10's name and phone number were listed on the FedEx label of the DMCA notice it sent to RapidShare in May 2009.  *Id.* ¶16.  If Defendants lost the cover letter or did not understand the notice, they could have asked for more information.  They failed to do so.  *Id.* ¶16.

Third, Defendants' focus on *Perfect 10, Inc. v. CCBill, LLC,* 488 F.3d 1102 (9th Cir.), *cert. denied,* 128 S.Ct. 709 (2007) ignores the fact that the Perfect 10 notices from 2002 and 2003 at issue in *CCBill* are radically different than the notice at issue here.  For example, the *CCBill* notices did not contain a statement under oath.  Perfect 10 learned a painful lesson from *CCBill* and made sure it would not be repeated.  Zada Reply Decl. ¶18.  In fact, when Perfect 10 sent a notice to CCBill in 2007 that was almost identical to the notice it sent to RapidShare, CCBill blocked the entire infringing website identified in the notice.  Zada Decl. ¶18, Exh. 26.  Moreover, no court has found any DMCA notice sent by Perfect 10 after 2003 to be deficient.

## IV. DEFENDANTS MAKE NUMEROUS OTHER MISSTATEMENTS

Defendants' Opposition makes a number of other misstatements in an attempt to smear Perfect 10.  First, Judge Kozinski avidly supported Perfect 10's position in his dissent in the *Visa/Mastercard* case.  Moreover, the *Visa/Mastercard* majority ruled

---

[3] Defendants' false assertion relies largely upon an inadmissible article in which Dr. Zada was misquoted.  Dr. Zada actually said that once Perfect 10 sent RapidShare a copy of an infringing P10 Image together with the model name, RapidShare had sufficient notice for it to stop selling access to that work.  Perfect 10 has already demonstrated that RapidShare could have found these infringing images just by searching on the model name. Zada Reply Decl. ¶¶14-20, Exhs. 22-27.  Rapidshare could also find these infringing images by using image recognition software.  Zada Reply Decl. ¶17.

against Perfect 10 because it believed Perfect 10 should sue infringing websites (such as RapidShare, as it is doing), rather than credit card companies. *See Perfect 10 v. Visa,* 495 F.3d at 792-811.

Second, Defendants' assertion that RapidShare was not a Google AdSense affiliate is incorrect. *RapidShare.de* was a member of AdSense. *See* Zada Reply Decl. Exh. 22 (showing Google ads on RapidShare.de next to Perfect 10 download links and Google's attempts to find advertisers for *RapidShare.de*).

Third, Perfect 10 has provided evidence that it owns the copyright for more than 12 images. In fact, Perfect 10 provided the deposit materials and copyright certificates for all of its magazines, covering at least 3,000 P10 Images. Zada Decl. ¶1, Exh. 11. Perfect 10 has offered to provide the Court with more copyright certificates and deposit materials if the Court desires. Zada Decl. ¶1, Exh. 11.

Fourth, Google provides many direct infringing links to *rapidshare.com*. Defendants' contrary contention is simply wrong. Zada Reply Decl. ¶7, Exh. 15.

Finally, Defendants have no basis for their contention that RapidShare "proactively searches third-party websites for suspect files" [Opp. at 12]. If this were true, RapidShare would not be offering access to any blockbuster movies or popular songs, because such intellectual property is clearly unauthorized. In fact, if RapidShare competed fairly, and only sold what it owned, it would be selling next to nothing. That Defendants have taken no action in response to Perfect 10's list of 115 infringing movies, 58 infringing television shows, and 97 musical artists is proof enough of RapidShare's true agenda.

## V. A BROAD INJUNCTION IS NECESSARY TO PREVENT MAJOR ONGOING DAMAGE

Defendants' theft and sale of most major movies, most popular songs, computer software, and images, is a direct attack on the well being of California entertainment companies and their employees, Perfect 10, and other copyright holders. A significant portion of the $80 million a year made by Defendants via their theft and sale of

massive quantities of pirated intellectual property, rightfully belongs to California.  No legitimate company that pays for its content can compete with the likes of RapidShare, which does not pay for the billions of dollars of other people's property that it sells.

Defendants incorrectly suggest that Perfect 10's relief should be restricted to images owned by Perfect 10.  Defendants disregard Perfect 10's right to injunctive relief under California's Unfair Competition Law, Section 17200 *et seq.* of the California Business and Professions Code (the "UCL"), in order to compete fairly with Defendants.  If Perfect 10 can only sell material for which it owns the rights, RapidShare should be similarly restricted.  Otherwise, no legitimate company will able to compete with RapidShare.[4]  *See* Declarations of John Herzfeld and David Blocker, Hollywood director/writer/producers, filed concurrently.

Defendants' position is directly contrary to the Ninth Circuit's language in its recent *en banc* decision in *Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157 (9th Cir. 2008) ("*Roommates*").  Writing for the court, Chief Judge Kozinski specifically warned that online companies (such as RapidShare) should not receive preferential treatment over regular merchants:

> The Internet is no longer a fragile new means of communication that could easily be smothered in the cradle by overzealous enforcement of laws and regulations applicable to brick-and-mortar businesses.  Rather, it has become a dominant – perhaps the preeminent – means though which commerce is conducted.  And its vast reach into the lives of millions is exactly why *we must be careful not to exceed the scope of the immunity provided by Congress and thus give online business an unfair advantage over their real-world counterparts, which must comply with the laws of general applicability.*

*Id*. at 1164 (emphasis added).  Although proprietors of real world businesses that sell stolen materials would face criminal prosecution regardless of whether they stole those materials themselves, Defendants ask this Court to allow RapidShare to continue to sell

---

[4] The availability of injunctive relief under the UCL, and the inability of Perfect 10 to obtain such relief if it were forced to litigate in either Germany or Switzerland, demonstrates that neither country is an adequate alternative forum and compels this Court to deny Defendants' pending motion to dismiss for *forum non conveniens*.

billions of dollars of stolen intellectual property for pennies on the dollar in competition with Perfect 10. This result would be directly contrary to the language of *Roommates*. No merchant, whether operating online or using brick and mortar, should be allowed to sell stolen property.

Defendants mistakenly contend that Perfect 10's claim under the UCL is preempted by the Communications Decency Act (the "CDA"). Opp. at 22-23. In fact, the grant of immunity provided by Section 230 of the CDA "applies only if the interactive computer service provider is not also an 'information content provider,' which is defined as someone who is 'responsible, in whole or in part, for the creation or development of' the offending content." *Roommates,* 521 F.3d at 1162, *quoting* 47 U.S.C. § 230(f)(3). Moreover, in passing Section 230, "Congress sought to immunize the *removal* of user-generated content, not the *creation* of content." *Id*. at 1163 (emphasis in original). As the Ninth Circuit noted, Section 230 is titled "Protection for 'good samaritan' blocking and screening of offensive material." Accordingly, "the substance of section 230(c) can and should be interpreted consistent with its caption." *Id.* at 1163-64. The Ninth Circuit has held that an entity "helps to develop unlawful content, and thus falls within the exception to section 230, if it contributes materially to the alleged illegality of the conduct." *Id.* at 1168. Here, RapidShare contributes materially to the illegal conduct because RapidShare itself a) stores billions of dollars of infringing material on its servers, b) controls what infringing material it offers to its members, c) sells access to that material, and d) compensates third parties both for infringing material and for referrals. Under these circumstances, Defendants are completely responsible for every aspect of the infringing activity on the RapidShare website. Zada Decl. ¶¶6-7, 14, Exhs. 1-2, 9; Zada Reply Decl. ¶¶4-13, Exhs. 12-21, 28; Mausner Decl. For this reason, Defendants' CDA defense fails.

Finally, Defendants contend that Perfect 10's unfair competition claim is preempted by the Copyright Act because it is premised on copying. Opp. at 23. The sole case upon which Defendants rely, however, specifically holds that a "state law

Perfect 10's Reply Memorandum Of Points And Authorities In Support Of Its Motion For Preliminary Injunction Against Defendants Rapidshare A.G., Christian Schmid, And Bobby Chang

1  cause of action is preempted by the Copyright Act" only if "the rights that a plaintiff
2  asserts under state law [are] 'rights that are equivalent' to those protected by the
3  Copyright Act." *Kodadek v. MTV Networks, Inc.,* 152 F.3d 1209, 1212 (9th
4  Cir.1998).  Here, the rights asserted by Perfect 10 in connection with its UCL claim
5  are not "equivalent" to those protected by the Copyright Act, because the act of unfair
6  competition arises from Defendants' theft and sale of intellectual property belonging
7  to third parties.  Complaint¶62.  *See, e.g., Bekaert Progressive Composites Corp. v.*
8  *Wave Cyber Ltd.,* 2007 WL 1110736 *3 (S.D. Cal., Apr. 5, 2007) (plaintiff's UCL
9  claim not preempted by Copyright Act because plaintiff has pled "elements of
10 wrongdoing in addition to and qualitatively different from the elements of a Copyright
11 Act claim").

## VI.   CONCLUSION

Perfect 10 desperately needs an injunction, not only against Defendants' theft and sale of its own property, but that of other rights holders as well.  As demonstrated by the profound decline in the fortunes of newspapers, magazines, recording studios, and movie studios, copyright holders desperately need relief from the massive unfair competition of entities like RapidShare.  A broad injunction against Defendants is not only critical to Perfect 10's survival; it is critical to the health of this country's entire entertainment and magazine publishing industry.  RapidShare, like all other businesses, should not be allowed to sell access to property it does not own.  Accordingly, for all of the above reasons, and for all of the reasons set forth in its moving papers, Perfect 10 respectfully requests that the Court grant its PI Motion and enter a preliminary injunction against Defendants, both on Perfect 10's claim under the Copyright Act and on its claim under the UCL.

Dated: May 5, 2010           Respectfully submitted,
                             LAW OFFICES OF JEFFREY N. MAUSNER

                             By: __/s/ Jeffrey N. Mausner_____
                                Jeffrey N. Mausner,
                                Attorney for Plaintiff Perfect 10, Inc.
                                Email: Jeff@MausnerLaw.com