GREENBERG TRAURIG, LLP
IAN C. BALLON (SBN 141819)
WENDY M. MANTELL (SBN 225544)
LORI CHANG (SBN 228142)
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404
Telephone: (310) 586-7700
Facsimile: (310) 586-7800
Email: ballon@gtlaw.com, mantellw@gtlaw.com, changl@gtlaw.com

Attorneys for defendant RapidShare AG

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>RAPIDSHARE A.G., a corporation, CHRISTIAN SCHMID; BOBBY CHANG; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. 09 CV 2596 H (WMC)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT RAPIDSHARE'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF PERFECT 10'S FIFTH AND SIXTH CLAIMS FOR RELIEF**<br><br>[Filed concurrently with Notice of Motion and Motion; Separate Statement of Material Facts; and Declaration of L. Chang]<br><br>DATE::      July 12, 2010<br>TIME: :      10:30 a.m.<br>CTRM:       13<br>JUDGE:      Hon. Marilyn L. Huff<br><br>DATE FILED:    November 18, 2009<br>TRIAL DATE:    None Set |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1

II. MATERIAL AND BACKGROUND FACTS .................................................................. 2

III. ARGUMENT .................................................................................................................... 3

    A. Legal Standards On Summary Judgment. ............................................................ 3

    B. As in *Perfect 10, Inc. v. CCBill, Inc.*, Perfect 10's Unfair Competition and Right of Publicity Claims Are Preempted Because They Are Based on Files Uploaded By Users ............................................................................................... 3

    C. Perfect 10's Unfair Competition Claim Is Also Preempted By The Copyright Act. ....................................................................................................... 7

IV. CONCLUSION ................................................................................................................. 8

# TABLE OF AUTHORITIES

**Federal Cases**

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986) ................................................................................................................ 3
Barnes v. Yahoo!, Inc.,
  570 F.3d 1096 (9th Cir. 2009) ............................................................................................ 4, 7
Bekaert Progressive Composites Corp. v. Wave Cyber Ltd,
  2007 WL 1110736 (S.D. Cal. 2007) ...................................................................................... 8
Blumenthal v. Drudge,
  992 F. Supp. 44 (D.D.C. 1998) .......................................................................................... 2, 6
Celotex Corp. v. Catrett,
  477 U.S. 317 (1986) ................................................................................................................ 3
Doe IX v. MySpace, Inc.,
  629 F. Supp. 2d 663 (E.D. Tex. 2009) .................................................................................. 7
Doe v. MySpace, Inc.,
  528 F.3d 413 (5th Cir.), cert. denied, 129 S. Ct. 600 (2008) ................................................ 7
Fair Housing Council of San Fernando Valley v. Roommates.com, LLC,
  521 F.3d 1157, n.6 (9th Cir. 2008) ........................................................................................ 4
Ferring B.V. v. Barr Labs., Inc.,
  437 F.3d 1181 (Fed. Cir. 2006) ............................................................................................. 3
Goddard v. Google, Inc.,
  No. C 08-2738 JF (PVT), 2008 WL 5245490, at *3 (N.D. Cal. Dec. 17, 2008) ................ 6
Green v. America Online,
  318 F.3d 465 (3d Cir. 2003) .................................................................................................. 6
Kodadek v. MTV Networks,
  152 F.3d 1209 (9th Cir. Cal. 1998) ....................................................................................... 7
Perfect 10, Inc. v. CCBill, LLC,
  488 F.3d 1102 (9th Cir.), cert. denied, 128 S. Ct. 709 (2007) ...................................... passim
Roomates.com,
  521 F.3d at 1162 ..................................................................................................................... 5
Summit Mach. Tool Mfg. Corp. v. Victor CNC Systems, Inc.,
  7 F.3d 1434 (9th Cir. 1993) ................................................................................................... 7
Valladolid v. City of National City,
  976 F.2d 1293 (9th Cir. 1992) ............................................................................................... 3

**State Cases**

Doe II v. MySpace, Inc.,
  175 Cal. App. 4th 561, 96 Cal. Rptr. 3d 148 (Cal. App. 2009) .......................................... 7
Doe v. Am. Online, Inc.,
  783 So. 2d 1010 (Fla. 2001) ................................................................................................... 7
Gentry v. eBay, Inc.,
  99 Cal. App. 4th 816 (2002) .................................................................................................. 6

**Federal Statutes**

17 U.S.C. § 301 ................................................................................................................. 7
47 U.S.C. § 230(c)(1) ............................................................................................. 1, 4, 6, 7
47 U.S.C. § 230(f)(2) ........................................................................................................ 4
47 U.S.C. § 230(f)(3) ........................................................................................................ 4

**State Statutes**

Civil Code section 1739.7 ................................................................................................. 6

# INTRODUCTION

Defendant RapidShare AG ("RapidShare") moves for partial summary judgment on the plaintiff Perfect 10, Inc.'s ("Perfect 10") fifth and sixth claims for relief for unfair competition and violation of its rights or publicity, on the basis that these state law claims are preempted by the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c)(1). The Ninth Circuit previously ruled that Perfect 10's standard right of publicity and unfair competition claims were preempted in *Perfect 10, Inc. v. CCBill, LLC*, 488 F.3d 1102, 1118 (9th Cir.), *cert. denied*, 128 S. Ct. 709 (2007), so Perfect 10 tweaked its Complaint in this case to allege that RapidShare itself, rather than its users, posted the materials at issue in this case. This allegation is nonsense, but because of it RapidShare is required to bring this narrow motion for partial summary judgment, rather than simply moving for judgment on the pleadings.

RapidShare previously introduced evidence, and the court found in its Order Denying Plaintiff's Motion For Preliminary Injunction (Doc. No. 71) ("PI Order"), that RapidShare is a cloud computing company that merely hosts files uploaded by users. *All* of the alleged Perfect 10 images stored on RapidShare's servers were uploaded by third-party users, not RapidShare. Further, as the Court previously concluded, RapidShare does not itself distribute user files; in that, RapidShare does not index its files or make them available through searches on its website. All of the download links at issue were posted on third-party websites (by users, not RapidShare), that are neither endorsed nor sponsored by RapidShare. Under *CCBill*, Perfect 10's claims are preempted.

RapidShare operates one of the world's largest websites (ranked number 12, by Perfect 10's allegations), and hosts hundreds of millions of files uploaded by users. As such, in addition to legitimate files, some users have posted unauthorized material, which is why RapidShare maintains an Abuse Department to process takedown requests and take other steps to deter infringement. In enacting the CDA, Congress sought to shield websites such as RapidShare, which does not engage in "creating" or "developing" content, from liability arising from content posted by Internet users, in order to promote and maintain "the robust nature" of Internet activities:

> The purpose of this statutory immunity is not difficult to discern. Congress recognized the threat that tort-based lawsuits pose to freedom of speech in the new and burgeoning Internet medium. The imposition of tort liability on service providers for the communications of others

1

> represented, for Congress, simply another form of intrusive government regulation of speech. Section 230 was enacted, in part, to maintain the robust nature of Internet communication and, accordingly, to keep government interference in the medium to a minimum.

*Blumenthal v. Drudge*, 992 F. Supp. 44, 50 (D.D.C. 1998). Perfect 10's state law claims in this case, as in *CCBill,* are preempted because they are based on files originating with third party users, not RapidShare itself.

As set forth in section III(C), Perfect 10's unfair competition claim is also preempted by the Copyright Act because it is based on allegations that RapidShare is hosting allegedly infringing files without an extra element beyond those required to prove copyright infringement.

### MATERIAL AND BACKGROUND FACTS

***RapidShare is an interactive computer service that hosts files stored by third parties.*** RapidShare is an interactive computer service. UF No. 1.[1] It is a cloud computing service that hosts files on its website, which are stored by users.[2]

***Perfect 10's claims are wholly based on files stored on RapidShare's website by third party users, not RapidShare.*** *See* UF No. 2. Perfect 10's claims are based on the assertion that there are unauthorized files on RapidShare's website, which violate copyrights and rights of publicity, and display trademarks in a way that dilutes and infringes the marks. *See* Compl. ¶¶ 61-66, 70-72. Although with only a few exceptions Perfect 10 has not specified exactly which files are at issue, the evidence unequivocally shows that except for licensed content located on the RapidTainment section of the rapidshare.com website and internal business communications (which are not at issue in this case),

---

[1] "UF" refers to RapidShare's Separate Statement Of Material Facts, filed concurrently herewith.
[2] Although not material to the motion, it is helpful background to understand that users can upload a file of any size and type onto RapidShare's servers, and retrieve the file via a download link that the user may send to others. RapidShare makes available storage capacity, it does not sell content. Material facts are shown in bold. Supporting evidence for these background facts are set forth in declarations previously filed with the Court (and attached to the concurrently filed Declaration of L. Chang, for the Court's convenience): Declaration of L. Pfaff, filed on March 23, 2010 (Doc. No. 6-2) ("Pfaff Dec."), ¶¶ 4 ("As an Internet file-hosting service, RapidShare operates like an online storage locker that hosts files of various types and sizes belonging to companies and individuals who sign up to use its service.") and 7-8 (users upload can upload a file which can be retrieved only via a unique download link that is created upon the upload of a file and made available by RapidShare only to the uploader); Declaration of C. Schmid, filed on April 29, 2010 (Doc No. 26-5) ("4/29/10 Schmid Dec."), ¶ 21 ("RapidShare provides storage space to users"; "RapidShare is a cloud-computing service that allows users to store and access any type of digital file").

*all* of the files on RapidShare's website have been stored by users, not RapidShare itself. *See* UF No. 2; Declaration of C. Schmid (attached as Exhibit 7 to the Declaration of L. Chang, filed concurrently herewith), ¶ 2. Therefore, the files underlying Perfect 10's unfair competition and right of publicity claims comprise information originating from third parties (i.e., users), not RapidShare. *See* UF No. 2.[3]

## ARGUMENT

### A. Legal Standards On Summary Judgment.

Summary judgment should be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); Fed. R. Civ. P. 56(c). In order to defeat summary judgment, the non-movant must "go beyond the pleadings and, by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Conclusory allegations and attorney arguments are insufficient to overcome a motion for summary judgment." *Ferring B.V. v. Barr Labs., Inc.*, 437 F.3d 1181, 1193 (Fed. Cir. 2006). Moreover, irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Anderson*, 477 U.S. at 248. When the moving party has met the standard of Rule 56, summary judgment is mandatory. *Celotex*, 477 U.S. at 322-23; *Valladolid v. City of National City*, 976 F.2d 1293, 1295 (9th Cir. 1992).

### B. As in *Perfect 10, Inc. v. CCBill, Inc.*, Perfect 10's Unfair Competition and Right of Publicity Claims Are Preempted Because They Are Based on Files Uploaded By Users

The Ninth Circuit has already ruled that Perfect 10 is precluded from bringing state law claims predicated upon the same type of third-party user activity alleged here. *See Perfect 10, Inc. v. CCBill, LLC*, 488 F.3d 1102, 1118 (9th Cir.), *cert. denied*, 128 S. Ct. 709 (2007).[4] The CDA preempts claims

---

[3] Accordingly, RapidShare is not, as Perfect 10 alleges in its complaint, a "content provider for adult photographs" that it directly engages in the unauthorized exploitation of Perfect 10's "and other parties'" intellectual property rights (Compl., ¶¶ 62, 65). *See id.* While not material to this motion, RapidShare also does not sell content on its website, nor does it advertise or make user files publicly available on its website. 4/29/10 Schmid Dec. ¶¶ 21, 23; Pfaff Dec., ¶¶ 9-11 (no search engine or index of files or links on RapidShare's site; files are not publicly displayed on its site; RapidShare does not view contents of user files except when investigating abuse).

[4] In *CCBill*, Perfect 10 sued CWIE, an Internet service provider that provided webhosting and related Internet connectivity services to owners of various websites, and CCBill, an e-commerce payment processor, for violation of copyright, trademark, state unfair competition, false advertising, and right of

against interactive computer services based on the republication of content originating with third parties. *Id.* It provides that "[n]o provider or user of an interactive computer service[5] shall be treated as the publisher or speaker of any information provided by another information content provider."[6] 47 U.S.C. § 230(c)(1). As explained by the Ninth Circuit, "[s]ubsection (c)(1), by itself, shields from liability all publication decisions, whether to edit, to remove, or to post, with respect to content generated entirely by third parties." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1105 (9th Cir. 2009). The CDA insulates both "affirmative acts of publication [and] . . . the refusal to remove . . . material." *Id.* at 1105 n.11.

The Ninth Circuit has previously adjudicated similar claims for unfair competition and violation of rights of publicity brought by Perfect 10 in the *CCBill* case and held that the CDA establishes "broad" "federal immunity" to any cause of action arising out of information posted by a user:

> The Communications Decency Act states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," and expressly preempts any state law to the contrary. 47 U.S.C. §§ 230(c)(1), (e)(3). "The majority of federal circuits have interpreted the CDA to establish broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.' " [Citations omitted.]

488 F.3d at 1118. The Ninth Circuit concluded in *CCBill* that Perfect 10's state law claims were based on conduct by third-party websites that posted Perfect 10 images, and therefore were preempted by the CDA. *Id.* at 1119.[7]

---

publicity laws based on conduct by third-party websites that posted Perfect 10 images. *Id.* at 1108. The district court granted in part and denied in part the defendants' motion for summary judgment, ruling that defendants were eligible for CDA immunity against Perfect 10's claim for unfair competition, but not for violation of its rights of publicity. The Ninth Circuit reversed, holding that both unfair competition and right of publicity claims arising out of content posted by third parties were preempted by the CDA. *Id.* at 1119.

[5] An *interactive computer service* is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). "[T]he most common interactive computer services are websites." *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162 n.6 (9th Cir. 2008) (*en banc*).

[6] An *information content provider* "means any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3).

[7] Noting that "immunity created by § 230(c)(1) is limited by § 230(e)(2), which requires the court to 'construe Section 230(c)(1) in a manner that would neither "limit or expand any law pertaining to intellectual property,"'" the Ninth Circuit further ruled that "intellectual property" as set forth in section

4

In this case, Perfect 10's claims against RapidShare are no different from those claims brought in *CCBill*, in that Perfect 10's claims for unfair competition and violation of its rights of publicity are predicated upon alleged acts of infringement by RapidShare's third-party users. UF No. 2.[8]

RapidShare is not an information content provider because it merely stores user files and does not "create" or "develop" content. *See* UF No. 2; *see also Roomates.com*, 521 F.3d at 1162 ("If it passively displays content that is created entirely by third parties, then it is only a service provider with respect to that content.") and 1169 ("providing *neutral* tools to carry out what may be unlawful or illicit . . . does not amount to 'development' for purposes of the immunity exception").[9]  Courts have rejected

---

230(e)(2) is construed "to mean 'federal intellectual property'" and not state law causes of action that protect intellectual property *Id.*, at 1118 (rationalizing that the preemption applies to state law claims, which "are by no means uniform," in part "[b]ecause material on a website may be viewed across the Internet, and thus in more than one state at a time, permitting the reach of any particular state's definition of intellectual property to dictate the contours of this federal immunity would be contrary to Congress's expressed goal of insulating the development of the Internet from the various state-law regimes") (citations omitted).

[8] *See also* PI Order at p. 6 ("Plaintiff has failed to present a prima facie case of direct infringement against RapidShare based on the present record before the Court.").

[9] Perfect 10's prior reliance on *Roomates.com* in claiming that RapidShare is a content provider because it "contributes materially to the alleged illegality of the conduct" is misplaced.  *See* Perfect 10's Reply Brief re PI Motion (Doc. No 43) at p. 9.  Perfect 10 confused the language taken from *Roomates.com* (521 F.3d at 1168) with their claim for contributory infringement, which is not what the *Roomates.com* decision referred to in explaining what constitutes "development" for purposes of taking an Internet service provider outside the scope of the immunity.  In explaining what "development" means under section 230 of the CDA, the Ninth Circuit provided the following examples "to elucidate what does and does not amount to 'development'":

> If an individual uses an ordinary search engine to query for a "white roommate," the search engine has not contributed to any alleged unlawfulness in the individual's conduct; providing neutral tools to carry out what may be unlawful or illicit searches does not amount to "development" for purposes of the immunity exception.  A dating website that requires users to enter their sex, race, religion and marital status through drop-down menus, and that provides means for users to search along the same lines, retains its CDA immunity insofar as it does not contribute to any alleged illegality; this immunity is retained even if the website is sued for libel based on these characteristics because the website would not have contributed materially to any alleged defamation.  Similarly, a housing website that allows users to specify whether they will or will not receive emails by means of *user-defined* criteria might help some users exclude email from other users of a particular race or sex.  However, that website would be immune, so long as it does not require the use of discriminatory criteria.  A website operator who edits user-created content-such as by correcting spelling, removing obscenity or trimming for length-retains his immunity for any illegality in the user-created content, provided that the edits are unrelated to the illegality.  However, a website operator who edits in a manner that

the argument that an Internet service provider responsible for developing the content published (or copied) by users on its site when the content posted by a third party.[10]

> contributes to the alleged illegality-such as by removing the word "not" from a user's message reading "[Name] did *not* steal the artwork" in order to transform an innocent message into a libelous one-is directly involved in the alleged illegality and thus not immune.

*Id.* at 1169. Because RapidShare merely stores user files, it is not "a website operator who edits in a manner that contributes to the alleged illegality," and accordingly does not "develop" content. *See also id.* at 1174-5 (CDA immunity will be lost "[w]here it is *very clear* that the website directly participates in developing the illegality" (italics added); "section 230 must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles").

Moreover, that RapidShare may have had at one time a program that rewarded users with cash rebates does not make RapidShare a "content provider" within the meaning of the CDA because the downloaded files that resulted in the reward were still files that were uploaded by *third-party users*, and not files uploaded or created or developed by RapidShare. *See* UF No. 2. The CDA makes clear that a third-party relationship is insufficient to create liability for a website that is merely an interactive computer service. *See Blumenthal v. Drudge*, 992 F. Supp. 44, 47, 50 (D.D.C. 1998) (finding AOL exempt from liability under the CDA for defamatory statements posted on the "Drudge Report" website, an online gossip column, even though Drudge entered into a license agreement with AOL that made the Drudge Report available to all members of AOL's services, was paid for the allegedly defamatory material and had the right to edit it) ("AOL maintains that there simply is no evidence here that AOL had any role in creating or developing any of the information in the Drudge Report. The Court agrees. It is undisputed that the Blumenthal story was written by Drudge without any substantive or editorial involvement by AOL. [Citation omitted.] AOL was nothing more than a provider of an interactive computer service on which the Drudge Report was carried, and Congress has said quite clearly that such a provider shall not be treated as a "publisher or speaker" and therefore may not be held liable in tort."); *see also Goddard v. Google, Inc.*, No. C 08-2738 JF (PVT), 2008 WL 5245490, at *3 (N.D. Cal. Dec. 17, 2008) ("Finally, the fact that a website elicits online content for profit is immaterial; the only relevant inquiry is whether the interactive service provider 'creates' or 'develops' that content.") ("Moreover, even if a service provider knows that third parties are using such tools to create illegal content, the service's provider's failure to intervene is immunized."); *Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 822, 832-3 (2002) (concluding that e-Bay's practice of soliciting and then compiling user comments as part of its Feedback Forum did not mean that eBay was acting as an information content provider) ("[H]olding eBay responsible for providing a warranty under Civil Code section 1739.7 when it merely made the individual defendant's false product descriptions available to other users on its Web site, or provided the Web site on which the individual defendants designated their collectibles as autographed, puts eBay in the shoes of the individual defendants, making it responsible for their publications or statements. We therefore conclude enforcement of appellants' Civil Code section 1739.7 cause of action is inconsistent with section 230 because it would '"stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."'").

[10] For example, in *Green v. America Online*, 318 F.3d 465 (3d Cir. 2003), the court rejected arguments that plaintiff's claim over allegedly defamatory material posted about him in a chat room and a computer virus sent to him from a third party were not preempted by section 230(c)(1) because they involved AOL's own misconduct, as opposed to content posted by third parties for which the plaintiff sought to hold AOL liable as the publisher or speaker.

6

Moreover, RapidShare's alleged failure to take down material would not bring it outside the scope of the CDA immunity. *See Barnes*, 570 F.3d at 1103, 1105 (ruling that the CDA preempted plaintiff's claim for negligence against Yahoo for failing to remove "indecent profiles [of the plaintiff] that her former boyfriend posted on Yahoo's website").

### C. Perfect 10's Unfair Competition Claim Is Also Preempted By The Copyright Act.

Perfect 10's unfair competition claim is predicated on the assertion that there are Perfect 10 images and other unauthorized files stored on RapidShare's website.[11] As the Court determined in denying the PI Motion, "Plaintiff's unfair competition claim rests on its cause of action for copyright infringement," in that it "argues that RapidShare is providing access to 'stolen intellectual property' in a manner which significantly harms competition." PI Order at p. 13. This claim is premised on *copying* without an extra element and therefore preempted by the Copyright Act. 17 U.S.C. § 301; *Kodadek v. MTV Networks*, 152 F.3d 1209, 1213 (9th Cir. Cal. 1998) (holding an unfair competition claim preempted because the rights asserted by the plaintiff were equivalent to rights protected under the Copyright Act and the work involved fell within the subject matter of the Act); *Summit Mach. Tool Mfg. Corp. v. Victor CNC Systems, Inc.*, 7 F.3d 1434, 1440, 1142 (9th Cir. 1993) ("Thus, 'preemption law . . . requires analysis of each theory [of unfair competition] to determine whether it contains the necessary qualitatively different extra element distinguishing it from copyright [or patent] protection.'" (citation

---

Similarly, in *Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir.), *cert. denied*, 129 S. Ct. 600 (2008), the court rejected the assertion that MySpace could be held liable for failing to implement measures that would have prevented a minor from being contacted by a predator. The Fifth Circuit panel wrote that these "allegations are merely another way of claiming that MySpace was liable for publishing the communications and they speak to MySpace's role as a publisher of online third-party-generated content." *Id.* at 420; *see also Doe IX v. MySpace, Inc.*, 629 F. Supp. 2d 663 (E.D. Tex. 2009); *Doe II v. MySpace, Inc.*, 175 Cal. App. 4th 561, 96 Cal. Rptr. 3d 148 (Cal. App. 2009) (holding MySpace exempt from claims based on minors who allegedly were abused by people they met on MySpace). Likewise, in *Doe v. Am. Online, Inc.*, 783 So. 2d 1010 (Fla. 2001), the Florida Supreme Court held that section 230(c)(1) immunized AOL from a claim that the company should have been held liable because of abuse that resulted when a pedophile met the plaintiff's child in an AOL chatroom.

[11] *See* Compl., ¶ 62 ("RapidShare has commercially exploited and used millions of marketable adult-oriented photographs and likeness," and "*[t]hrough these photographs*, . . . RapidShare is unlawfully exploiting the publicity rights and trademark rights" (italics added); further, "RapidShare is also selling without authorization . . . songs, full-length movies, and even computer software" in addition to "offering for free" such content).

7

omitted)) ("To the extent that Summit may complain that Victor has 'pirated' its lathe by employing a particularly unfair method of copying, such a claim is preempted by federal law.").[12]

### CONCLUSION

For the foregoing reasons, the Court should grant RapidShare's motion and enter partial summary judgment against Perfect 10 on its state law unfair competition and right of publicity claims.

DATED:  June 11, 2010                           GREENBERG TRAURIG, LLP


By: s/Ian C. Ballon
Attorneys for defendant RapidShare AG
Email:  ballon@gtlaw.com

---

[12] For the same reason, *Bekaert Progressive Composites Corp. v. Wave Cyber Ltd*, 2007 WL 1110736 (S.D. Cal. 2007), does not support Perfect 10.  In *Bekaert*, the court denied defendant's motion to dismiss holding that plaintiff's allegations of misrepresentation constituted elements in addition to and different from the elements of a Copyright Act claim and therefore, adequate to avoid preemption. Perfect 10, on the other hand, has not alleged misrepresentation and its unfair competition claim is based on the presence on RapidShare's servers of allegedly infringing material.  In short, it is based on alleged copying without an extra element.

8

CASE NO. 09CV2596
MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
LA-128,890,646v6