GREENBERG TRAURIG, LLP
IAN C. BALLON (SBN 141819)
WENDY M. MANTELL (SBN 225544)
LORI CHANG (SBN 228142)
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404
Telephone: (310) 586-7700
Facsimile: (310) 586-7800
Email: ballon@gtlaw.com, mantellw@gtlaw.com, changl@gtlaw.com

Attorneys for defendant RapidShare AG

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>        Plaintiff,<br><br>   v.<br><br>RAPIDSHARE A.G., a corporation, CHRISTIAN SCHMID; BOBBY CHANG; and DOES 1 through 100, inclusive,<br><br>        Defendants.<br><br><br>RAPIDSHARE AG, a Swiss company,<br><br>        Counter-claimant,<br><br>   v.<br><br>PERFECT 10, INC., a California corporation.<br><br>        Counter-defendant. | CASE NO. 09 CV 2596 H (WMC)<br><br>**DEFENDANT AND COUNTER-CLAIMANT RAPIDSHARE AG'S AMENDED COUNTERCLAIMS AGAINST COUNTER-DEFENDANT PERFECT 10, INC. FOR:**<br><br>1) **UNFAIR BUSINESS PRACTICES, CAL. BUS & PROF. CODE §§ 17200,** *et seq.***; AND**<br><br>2) **COMMON LAW UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL**<br><br>DATE FILED:    November 18, 2009<br>TRIAL DATE:    None Set |

---

CASE NO. 09CV2596
RAPIDSHARE'S AMENDED COUNTERCLAIMS AGAINST PERFECT 10

Defendant and counter-claimant RapidShare AG ("RapidShare"), for its counterclaims against the plaintiff and counter-defendant Perfect 10, Inc. ("Perfect 10"), alleges as follows:

### JURISDICTION

1. This Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1332(a) based on diversity of citizenship. RapidShare is company with its sole place of business in Cham, Switzerland, while Perfect 10's headquarters and principal place of business is in Beverly Hills, California. The amount in controversy exceeds $75,000.

2. This Court also has supplemental jurisdiction under 28 U.S.C. § 1367(a) as the facts and counterclaims alleged are so related to the claims in plaintiff's Complaint that they form part of the same case or controversy under Article III of the United States Constitution.

### FACTS RELEVANT TO ALL COUNTERCLAIMS

**A. RapidShare Is A Cloud-Computing Company That Operates A File-Hosting Website That Functions Like An Online Storage Locker For Its Users**

3. RapidShare is a Swiss company that operates an online storage site at www.rapidshare.com, where users may upload files of any type or size onto RapidShare's servers. Because it is a storage site, RapidShare does not open, view or modify user files in any way. Users retrieve their files via corresponding download links that are made available only to the person who uploaded them, who may then choose to keep their files private or make them available to others by providing access to the download link.

4. Users, not RapidShare, make links to files available to friends, family members or other third parties, or keep them confidential. RapidShare itself does not publicize, post or otherwise make user files available to the public. RapidShare also does not sell content or accept advertisements. It does not index user files or download links, and does not offer a search engine on its website that would enable users to search through files saved on its servers. If a link to a file is made publicly available it is because a user, not RapidShare, has chosen to make the file available.

5. RapidShare prohibits users from storing files that violate copyright and other laws. Its Conditions Of Use expressly provides that users may not store illegal files, such as files that constitute

child pornography, works the download of which violate third party copyrights, racist or violence-glorifying works, or instructions to criminal offenses against public peace.

6. RapidShare's website clearly advises users and copyright holders to contact its Abuse Department via email identifying any files claimed to be infringing or otherwise illegal. The website specifically directs copyright owners to send the Abuse Department the download link to the file(s) at issue via email to Abuse@RapidShare.com.

7. RapidShare has one of the fastest response times of any company in Germany in disabling access to material in response to takedown notices. Its Abuse Department responds expeditiously to takedown notices. It immediately disables access to any files identified in Digital Millennium Copyright Act ("DMCA") or other takedown notices and thereafter permanently deletes the file(s). RapidShare also uses a filter that prevents the subsequent upload of the same file that was deleted.

8. In addition, RapidShare has also never sponsored or endorsed third-party websites that encourage infringement on RapidShare's site. Indeed, RapidShare has taken action to shut down websites that appear to promote misuse of the RapidShare site or to compel them to stop indexing files stored on RapidShare, publishing links or otherwise encouraging users to upload infringing or other illegal files on RapidShare's servers. To date, RapidShare has filed at least 40 UDRP complaints with WIPO in Switzerland, and has sent cease and desist letters threatening legal action to many other websites.

**B. Perfect 10 Is A Copyright Troll that Does Not Operate A Real Business**

9. Perfect 10 is a copyright troll that does not operate a real business and instead seeks to foster the spread of infringing copies of works that it owns over the Internet in order to entrap and shakedown websites and services where copies of its images may randomly end up.

10. Perfect 10 does not have the employees or attributes of a legitimate business. Today, Perfect 10 is essentially a paralegal service masquerading as a porn company. It is run by its founder, Norm Zada, out of his Beverly Hills home with the help of full and part time employees who are paid primarily to troll the Internet looking for (but not removing) allegedly infringing copies of Perfect 10 images for use in existing or potential future litigation and to draft declarations and other papers.

11. Perfect 10 is so litigious that Judge Matz of the Central District of California, before whom a number of Perfect 10 cases had been consolidated, has made clear to Perfect 10 that it should not file any more lawsuits, which is why it filed this suit in the Southern District of California even though this district has no connection to the parties or the underlying claims.

12. Upon information and belief, Perfect 10 started as a vanity project of founder Norm Zada, a multi-millionaire gambler who in the late 1990s sought to emulate Hugh Hefner's lifestyle by pumping up to $20 million of his own personal fortune into Perfect 10, which he modeled on the Playboy magazine of his youth in the 1950s. Zada tried to replicate Playboy's success four decades earlier by launching a magazine, which he ran from his own version of the "Playboy Mansion" in Beverly Hills. But whereas Playboy was and is a trend-setter and innovator, Perfect 10 appears to have been little more than a vehicle for Zada to improve his social life.

13. From the start, Perfect 10's business model did not make business sense. Its *Perfect 10* magazine (now defunct) was never competitively priced and therefore never garnered a large circulation. It featured less content at higher prices than competitive magazines. Similarly, *Perfect 10* had little or no display advertising, which is a major source of revenue for magazines. Ultimately, Perfect 10 could not compete with better run, better known publications that had ample advertisements. The magazine eventually was shut down.

14. Perfect 10's website, like its magazine, is not financially viable. Perfect 10 could not compete with the vast amount of free (non-infringing) Internet porn that became widely available beginning in the late 1990s or Internet sites that offer more varied and richer adult content at lower prices than Perfect 10.

15. In fact, upon information and belief, Perfect 10 has never been profitable as a porn company, either based on magazine or Internet porn site revenue. But profit was not a primary motivating factor for Zada, at least initially. Indeed, early on Zada was quoted in the press as saying that he would be happy to lose $500,000 a year for the opportunity to run his porn company.

16. As Perfect 10 began to hemorrhage money year after year, its strategy changed. Beginning at some point in the last decade, Perfect 10 abandoned porn as a serious business model and sought to use its largely historic catalogue of images from its defunct publication as a portfolio to

sustain an endless stream of lawsuits. Accordingly, it closed its magazine and adds relatively little new content to its Internet porn site, pouring almost all of its resources instead into opportunistic, patent troll-like litigation.

17. While some of Perfect 10's early suits may have had merit, increasingly Zada came to see litigation as a profit center, where the more Perfect 10 images were infringed online, the more money he and Perfect 10 could earn in settlements extracted through litigation or merely the threat of litigation. Accordingly, Perfect 10 does little or nothing to deter infringement, including exercising self-help or implementing other measures that legitimate copyright owners use to minimize online infringement, preferring instead to tacitly encourage the spread of its images as widely as possible over the Internet.

18. Perfect 10 today goes out of its way to allow its images to metastasize over the Internet. Among other things, Perfect 10 fails to use industry standard copy protection technologies to deter infringement of its works. Similarly, when Perfect 10 finds unauthorized copies of its works online it fails to timely send takedown notices. For example, in this case, Perfect 10 acknowledges spending several years "gathering evidence" of Perfect 10 images allegedly stored on RapidShare by users, during which time it never bothered to send takedown notices to RapidShare. Had Perfect 10 done so, RapidShare would have expeditiously disabled access to the files, generated hash values for each file so that its filters would have prevented users in the future from uploading the same files, and terminated the accounts of repeat infringers. Instead, Perfect 10 watched and waited, silently lying in wait over a period of years, as the number of allegedly unauthorized images increased.

19. When forced to send notices by courts or otherwise, Perfect 10 avoids providing information that would allow expeditious removal of its works - such as specific files - preferring instead to send copies of its pictures of naked women to service providers to make it difficult if not impossible for service provider to actually locate allegedly unauthorized files. These actions are undertaken to allow Perfect 10 images to be spread online as widely as possible. Indeed, as of March 2010, Perfect 10 alleged that there were 222 million links on Google to ostensibly unauthorized Perfect 10 images on an untold number of websites all over the Internet - an astonishing feat for a little known and generally unpopular, defunct porn publication.

20. Perfect 10 also goes out of its way to make it difficult if not impossible for service providers to actually locate the material or respond to an ostensible takedown request as a trap deliberately set to gain some advantage in future litigation. Perfect 10 intentionally withholds file information and URLs in its possession and tries its best to send notices that cannot easily be processed. For example, one tactic Perfect 10 uses is to send photographs of naked women to try to force service providers to sift through large numbers of files to match up its images or to try to set up the recipient for liability (even though U.S. law require notice of specific files to be given). Indeed, in or about April 2010, Zada even told an interviewer from XBiz.com, an adult entertainment industry news agency, that "It's not my obligation or up to me to spend time finding those links. That's not my problem."

21. Perfect 10 also prefers to send model names than identify specific files or file numbers, URLs or links to specific files, even though a model's name may not be reproduced or otherwise apparent from the name assigned to an allegedly infringing file and Perfect 10 itself does not even own the copyrights to all photographs that appeared in its defunct magazine or are available for download on is porn site.

22. As a further example of its unfair and deceptive practices, in this case, the only "notice" that Perfect 10 sent despite years of evidence gathering was an unlabeled CD disk of porn pictures sent without a cover note or explanation by Federal Express to a senior executive of RapidShare, who assumed the disk was a prank or contained a virus or some sort of malware that the sender intended to disseminate by including it on a disk of porn pictures. Zada claimed to have spent hundreds of hours on the RapidShare site over a several year period and therefore knew or should have known that the "Abuse" page on RapidShare's website clearly instructs copyright owners to forward links to allegedly unauthorized files by email to Abuse@RapidShare.com. Nonetheless, Zada, on behalf of Perfect 10, sent a disk, rather than an email, to an executive, rather than the Abuse Department, and failed to include a single link or identify a single file. Perfect 10 plainly had no intention of expeditiously having allegedly infringing files removed.

23. Perfect 10's notices are so transparently deficient that Chief Judge Kozinski of the Ninth Circuit even chastised Perfect 10 at oral argument in one of its many cases for refusing to send compliant takedown notices that service providers could reasonably address.

24. Despite Judge Kozinski's admonitions, Perfect 10 has continued its practices of providing as little useful information as possible in takedown notices, or withholding material details such as identification of specific file numbers or URLs, or simply sending no notice at all, to ensure that allegedly unauthorized copies of its images are widely distributed to sites and services all over the Internet.

C. **Perfect 10 Does Not Adequately Protect Its Copyrights And Instead Allows Infringing Copies Of Its Content To Metastasize All Over The Internet**

25. Perfect 10 makes its copyrighted images available to its website subscribers, who are allowed to save personal copies of images downloaded from perfect10.com, but does very little or nothing to protect those images from being subsequently reposted on other websites.

26. Unlike other copyright owners, Perfect 10 chooses not to employ commercially available technology and software that could deter infringement of its images.  For example, Perfect 10 could use a digital watermarking software, which would enable Perfect 10 to track where an image has been posted and allow Perfect 10 to easily send out a takedown notice (though Perfect 10 also refuses to send adequate takedown notices).

27. As noted earlier, Perfect 10 also fails to send takedown notices to sites and services where unauthorized copies of its images allegedly appear, or sends notices that are intentionally deficient to thwart efforts to actually remove the images, and seeks to entrap the site or service if it fails to find the relevant files on its own.

D. **Perfect 10 Engages In Unfair Business Practices By Tacitly Promoting Allegedly Unauthorized Use Of Its Works Online And Then Seeking To Capitalize On That Use**

28. Instead of generating revenue through legitimate business activities, Perfect 10 engages in unfair business practices by, among other things, releasing unprotected images onto the Internet in a manner that encourages misuse by users, not taking other reasonable steps to deter infringement and generally doing other things calculated to cause widespread dissemination of its works all over the Internet, and then lying in wait for extended periods of time before taking action to enforce its rights (including several years in this case), in order to maximize instead of mitigating its potential loss, and

obtain greater concessions from Internet sites and services, including RapidShare, where its images end up being stored by users.

29. Perfect 10 also engages in unfair business practices by deliberately sending notices that do not comply with the DMCA or which otherwise omit material information, which make it time consuming and burdensome -- if not impossible -- for service providers to identify allegedly unauthorized works and which are really intended to entrap the service provider, not lead to the removal of allegedly unauthorized material.

30. Among other things, Perfect 10 refuses to identify specific files, links or URLs in many of the notices it sends.

31. These practices continued even after the Ninth Circuit ruled that Perfect 10's notices were deficient in *Perfect 10, Inc. v. CCBill, LLC*, 488 F.3d 1102, 1113 (9th Cir. 2007) and after Chief Judge Kozinski chastised Perfect 10 at oral argument in that case for its practices, underscoring that Perfect 10's misconduct is willful.

32. Perfect 10's unwillingness to submit notices that actually identify specific links has also been raised in its pending case against Google (*Perfect 10, Inc. v. Google, Inc.*, No. 2:04cv9484 (C.D. Cal., filed Nov. 19, 2004), where Google has been complaining to Perfect 10 about its unintelligible notices since at least 2007. For example, in a letter dated May 20, 2009, citing six older deficient notices, Google's counsel stated, "Google has explained on multiple occasions that it is unable to process Perfect 10's purported DMCA notices in this format, which do not intelligibly identify the copyrighted work claimed to be infringed or the location of the allegedly infringing content. Instead, Perfect 10's May 7, 2009 purported notice provides Google with thousands of images Perfect 10 supposedly downloaded from various websites, and thousands off other 'screenshots' of Google search results and images."

33. Perfect 10 refuses to identify specific files or links and instead attempts to shift the costs and burden of policing its own copyrights onto website owners and service providers in contravention of the DMCA and the legal standards set forth in *CCBill* that place this burden squarely on the copyright owner.

34. Perfect 10 also deliberately delays, sometimes for several years, in sending takedown notices to allow unauthorized copies of its images to spread over the Internet to maximize the number of potential targets and the revenue it may extract in settlement or litigation.

35. Perfect 10 engages in this pattern of unfair business practices because it has benefited more by having unauthorized Perfect 10 images posted all over the Internet and then seeking to extract payments from numerous sites and services than operating a legitimate business and earning revenue from subscription fees and advertising (and taking normal measures to deter, rather than promote infringement).

36. Further, Perfect 10 chooses to bring claims against large, legitimate, and reputable companies, such as Google, Amazon.com, Microsoft, VISA, and Mastercard, *i.e.*, parties that are more likely to settle claims to avoid the cost and distraction of litigation and associated adverse publicity and injury to reputation caused by allegations of copyright infringement. On the other hand, Perfect 10 has not sought to enforce its copyrights against websites that are actively encouraging infringement of its works, such as Filestube.com, Rapid4me.com, and FilesMixx.com.

37. Perfect 10's practice of deliberately encouraging the dissemination of allegedly unauthorized copies of its images, and failing to take reasonable steps to deter infringement, so that it can then entrap unsuspecting sites and services, constitutes an unfair trade practice harmful to legitimate Internet sites and services. Likewise, its practice of sending notices that it knows are difficult if not impossible to process, rather than identifying specific files or otherwise disclosing information in its possession, or taking no action at all when it could employ simple steps to prevent infringement, constitutes an unfair trade practice intended to cause Internet sites and services to waste time and resources.

### E. Perfect 10 Has Caused Harm To RapidShare

38. By its acts of unfair competition, Perfect 10 has harmed RapidShare by, among other things, causing it to incur costs and expenses and damaging its reputation by allowing allegedly unauthorized files to remain on RapidShare's servers for a period of years.

39. Since at least 2005, Perfect 10 was aware of specific download links to allegedly infringing files stored by users on RapidShare's servers. Perfect 10 claims to have spent more than 100

hours downloading more than 26,000 infringing images from RapidShare's website "over the past several years," but did not bother to alert RapidShare about these allegedly unauthorized files over an extended period of time (and even today has refused to identify more than 662 allegedly unauthorized files that it alleges were stored on RapidShare). Perfect 10 either is deliberately withholding evidence that could allow RapidShare to remove allegedly unauthorized files or had no legitimate grounds for its wild assertions.

40. Perfect 10 has not availed itself of simple, available measures to protect its works.

41. Perfect 10's unwillingness to identify specific file numbers, URLs or download links or otherwise cooperate with RapidShare in taking down allegedly infringing files is consistent with its general lack of interest in self-help measures.

42. Perfect 10's refusal to identify download links, URLs or file numbers have also caused RapidShare economic waste. Without the links, its Abuse Department has had to spend significant time and labor searching the Internet for traces of the alleged 43,000 infringing Perfect 10 images, in order to locate and take down as many of the alleged files as possible.

43. Perfect 10's unfair business practices and wrongful acts have caused substantial harm to RapidShare's reputation and goodwill, and further caused substantial harm in its employee costs, attorneys' fees, and other pecuniary damages.

## COUNT I

### VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200, *et seq.*

44. RapidShare realleges and incorporates by references paragraphs 1-43.

45. Perfect 10's acts and conduct as described above in paragraphs 18-37 and 39-42 are likely to cause injury to RapidShare's reputation and result in Perfect 10 unfairly competing with RapidShare in violation of California Business and Professions Code § 17200 *et seq.* ("UCL").

46. Perfect 10's actions as alleged above violate the "unfair" prong of the UCL because they: (a) are immoral, unethical, oppressive, unscrupulous and substantially injurious to RapidShare; (b) offend public policy, including but not limited to policies underlying the DMCA and the Communications Decency Act (47 U.S.C. § 230), in that Perfect 10's actions undermine the promotion of the continued development of the Internet and other interactive computer services and discourage the

development of technologies which maximize user control over what information is received by individuals, families, and schools who use the Internet and other interactive computer services; (c) significantly threaten or harm competition; (d) violate Section 5 of the Federal Trade Commission Act (15 U.S.C. § 45(a)), in that the injury to RapidShare is substantial, is not outweighed by any countervailing benefits to consumers or competition, and is one that RapidShare could not reasonably have avoided; and (e) their utility is outweighed by the gravity of harm they cause to RapidShare.

47. Perfect 10's actions as alleged above violate the "unlawful" prong of the UCL because those same actions also constitute violations of the state and federal law, including but not limited to judge-made law as set forth in *Perfect 10, Inc. v. CCBill* and other applicable decisions, and/or the statutes set forth above, including but not limited to Section 512(c)(3)(a) of the DMCA, .

48. RapidShare has suffered actual injury as a result of Perfect 10's unfair business practices as alleged above, including but not limited to injury to its business reputation, loss of goodwill with its customers, economic waste and loss of money, and unless enjoined from engaging in such acts and conduct, and compelled by this Court to provide adequate detail in takedown notices that at minimum comply with the requirements of the DMCA, will continue to cause great, immediate and irreparable injury to RapidShare.

49. RapidShare is without an adequate remedy at law.

50. RapidShare is therefore entitled to injunctive relief pursuant to California Business and Professions Code § 17203.

## COUNT II

## COMMON LAW UNFAIR COMPETITION

51. RapidShare realleges and incorporates by references paragraphs 1-43 and 46-48.

52. Perfect 10's acts and conduct as described above in paragraphs 18-37 and 39-42 constitute unlawful or unfair competition under the common law of the State of California.

53. Perfect 10's above-mentioned acts were done in a willful, intentional, malicious and oppressive manner, and in conscious disregard of RapidShare's rights, justifying an award of punitive damages in an amount sufficient to punish and deter Perfect 10's wrongful conduct.

54. As a direct and proximate result of Perfect 10's acts and conduct, RapidShare has suffered damage, including, but not limited to, damage to its goodwill and reputation, economic waste, and other pecuniary damages in an amount to be fully determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, RapidShare prays for judgment against Perfect 10 on each and every count listed in the Counterclaim and that includes:

    a) An injunction ordering Perfect 10 to:

        i. include all relevant information in its possession, including identification of allegedly infringing files, URLs or download links, in DMCA or other takedown notices sent to Internet sites or services, including RapidShare, and to send such notices to the proper address and by the proper means of communications listed by a site or service on its website or in a DMCA registration filing with the U.S. Copyright Office; and

        ii. send any DMCA or takedown notices that it chooses to send to RapidShare, to RapidShare's Abuse Department via email to Abuse@RapidShare.com, rather than to some other location or via some other means of communication, and include in such notices identification of the specific file number, URL or download link for any files alleged by Perfect 10 to infringe on any of its rights; and

        iii. identify, now and in the future, any files that it believes are stored on the RapidShare site, which it believes infringe its copyrights, by file number, URL or download link, via email sent to Abuse@RapidShare.com

    b) Damages in an amount in excess of $75,000, to be proven at trial;

    c) Punitive damages in an amount sufficient to punish Perfect 10 and to deter further unfair and/or unlawful business practices;

    d) Attorneys' fees and costs of suit incurred herein; and

    d) Such other and further relief that this Court may deem just and proper.

1  DATED:  June 17, 2010              GREENBERG TAURIG, LLP

2

3                                     By: s/Ian C. Ballon
                                         Attorneys for defendant RapidShare AG
4                                        Email:  ballon@gtlaw.com

**DEMAND FOR JURY TRIAL**

RapidShare hereby requests a trial by jury.

DATED:  June 17, 2010                    GREENBERG TRAURIG, LLP


                                         By: s/Ian C. Ballon
                                             Attorneys for defendant RapidShare AG
                                             Email: ballon@gtlaw.com