Eric J. Benink, Esq., SBN 187434
Krause Kalfayan Benink & Slavens, LLP
625 Broadway, Suite 635
San Diego, CA 92101
(619) 232-0331 (ph)
(619) 232-4019 (fax)
eric@kkbs-law.com

Jeffrey N. Mausner (State Bar No. 122385)
David N. Schultz (State Bar No. 123094)
Law Offices of Jeffrey N. Mausner
21800 Oxnard Street, Suite 910
Woodland Hills, CA 91367
(310) 617-8100 (ph)
(818) 716-2773 (fax)
jeff@mausnerlaw.com

Attorneys for Plaintiff Perfect 10, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>RAPIDSHARE A.G., a corporation; CHRISTIAN SCHMID; BOBBY CHANG; and DOES 1 through 100, inclusive,<br><br>        Defendants. | Case No.: CV 09-2596 H WMc<br><br>**PLAINTIFF PERFECT 10, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT RAPIDSHARE'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PERFECT 10'S FIFTH AND SIXTH CLAIMS FOR RELIEF**<br><br>**[DECLARATIONS OF SEAN CHUMURA, DR. NORMAN ZADA, AND ERIC J. BENINK, RESPONSE TO SEPARATE STATEMENT OF MATERIAL FACTS, AND EVIDENTIARY OBJECTIONS SUBMITTED CONCURRENTLY HEREWITH]**<br><br>DATE:   July 12, 2010<br>TIME:    10:30 a.m.<br>CTRM:  13<br>JUDGE: Hon. Marilyn L. Huff<br><br>DATE FILED:  November 18, 2009<br>TRIAL DATE:  None Set |

**cv09-02596**

Plaintiff Perfect 10, Inc.'s Memorandum Of Points And Authorities In Opposition To Defendant Rapidshare's Motion For Partial Summary Judgment On Fifth And Sixth Claims For Relief

# **TABLE OF CONTENTS**

I.   INTRODUCTION AND SUMMARY OF ARGUMENT.................................1

    A.   RapidShare Is Not Entitled To Immunity Under The
        CDA.......................................................................................................2

    B.   Perfect 10's UCL Claim Is Not Preempted By The
        Copyright Act. ......................................................................................5

    C.   At The Very Least, Perfect 10 Is Entitled To Conduct
        Discovery To Oppose The Motion Under Rule 56(f). ..............................6

II.  RELEVANT FACTUAL BACKGROUND. ..........................................6

    A.   RapidShare Does Much More Than Merely Store
        Content. ..................................................................................................6

    B.   RapidShare Has Been Identified By The United States
        Congress As One Of The Worst Pirate Websites In The
        World. ....................................................................................................8

    C.   RapidShare Enters Password Protected Websites And
        Uploads Material Itself. ..........................................................................9

    D.   RapidShare Has Paid Users To Upload Content To
        RapidShare's Servers. ..........................................................................10

    E.   RapidShare Has Not Identified The Purported Third
        Parties That Allegedly Uploaded P10 Images To
        RapidShare's Servers. ..........................................................................11

    F.   RapidShare Is Substantially Involved In Every Aspect Of
        The Illegal Activity. ..............................................................................11

    G.   RapidShare Offers Massive Amounts Of Explicit
        Pornography. ........................................................................................13

    H.   The Allegations Underlying Perfect 10's UCL And Right
        Of Publicity Claims. ............................................................................14

III. RAPIDSHARE HAS FAILED TO SUBMIT SUFFICIENT
    AFFIRMATIVE ADMISSIBLE EVIDENCE TO OBTAIN
    SUMMARY JUDGMENT. ..........................................................................15

    A.   Legal Standards Applicable To The Motion...........................................15

    B.   The Schmid Declaration Does Not Constitute
        Affirmative Admissible Evidence.........................................................16

Plaintiff Perfect 10, Inc.'s Memorandum Of Points And Authorities In Opposition To Defendant
Rapidshare's Motion For Partial Summary Judgment On Fifth And Sixth Claims For Relief

IV.   THE EVIDENCE SUBMITTED BY PERFECT 10
      ESTABLISHES THAT RAPIDSHARE IS NOT ENTITLED
      TO CDA IMMUNITY..........................................................................17

      A.    Perfect 10 Has Established A Genuine Issue Of Material
            Fact As To Whether RapidShare Is An Information
            Content Provider....................................................................17

      B.    Perfect 10 Does Not Seek To Hold RapidShare Liable As
            A Publisher Or  Speaker. ..........................................................19

      C.    *CCBill* Does Not Support The Granting Of The Motion. .........................20

      D.    A Ruling That RapidShare Is Entitled To CDA Immunity
            Is Contrary To The Statute's Caption And Title. .....................................21

V.    THE COPYRIGHT ACT DOES NOT PREEMPT PERFECT
      10'S UCL CLAIM. ...........................................................................21

VI.   AT THE VERY LEAST, THIS COURT SHOULD DENY OR
      CONTINUE THE MOTION UNDER RULE 56(F) TO
      ALLOW PERFECT 10 TO TAKE DISCOVERY...........................................23

VII.  CONCLUSION................................................................................24

**09cv02596**

Plaintiff Perfect 10, Inc.'s Memorandum Of Points And Authorities In Opposition To Defendant
Rapidshare's Motion For Partial Summary Judgment On Fifth And Sixth Claims For Relief

1

## TABLE OF AUTHORITIES

2

**Cases**

3   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .............................................. 15, 24

4   *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406 (9th Cir.1995) ............................................ 16

5   *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009) .............................................. 2, 19

6   *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999 (9th Cir. 1990) ............................ 16

7
8   *Bekaert Progressive Composites Corp. v. Wave Cyber Ltd.,* 2007
    WL 1110736 *3 (S.D. Cal., Apr. 5, 2007) .................................................... 23

9   *Casey v. Lewis,* 4 F.3d 1516 (9th Cir. 1993) ................................................................ 16

10   *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................ 15

11   *Downing v. Abercrombie & Fitch* 265 F.3d 994 (9th Cir. 2001) ................................ 22

12   *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) ............................................................ passim

13   *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175 (9th Cir. 2002) ............................ 15

14   *KNB Enterprises v. Matthews,* 78 Cal.App.4th 362 (2000) ........................................ 22

15   *Kodadek v. MTV Networks, Inc.,* 152 F.3d 1209 (9th Cir.1998), ................................ 21

16
17   *Madsen v. Idaho Emergency Physicians, P.A.*, 2010 WL 1248255 at *3
    (D. Idaho, March 23, 2010) ............................................................ 16

18   *McCormick v. Fund American Cos., Inc.*, 26 F.3d 869 (9th Cir. 1994.) ...................... 23

19   *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832 (9th Cir. 2001) .................................. 24

20   *Ollier v. Sweetwater Union High School Dist.* 604 F.Supp.2d 1264 (S.D. Cal. 2009) . 15

21   *Perfect 10, Inc. v. CCBill, LLC* 448 F.3d 1102 (9th Cir. 2007) .................................. 20

22   *Polar Bear Productions, Inc. v. Timex Corp.,* 384 F.3d 700 (9th Cir. 2004) .............. 22

23   *Shakur v. Schriro*, 514 F.3d 878 (9th Cir. 2008) ........................................................ 16

24   *State of California v. Campbell*, 138 F.3d 772 (9th Cir. 1998) .................................... 23

25   *United States v. Kitsap Physicians Serv.*, 314 F.3d 995 (9th Cir. 2002) ...................... 23

26   Statutes

27   17 U.S.C. § 301 .......................................................................................................... 22

28

Plaintiff Perfect 10, Inc.'s Memorandum Of Points And Authorities In Opposition To Defendant
Rapidshare's Motion For Partial Summary Judgment On Fifth And Sixth Claims For Relief

17 U.S.C. §§ 102 and 103 ................................................................... 22

17 U.S.C. §106 ........................................................................... 12, 13

47 U.S.C. § 230 ........................................................................ passim

Cal. Bus. & Prof. Code § 17200 ............................................................ 1

**Rules**

Fed. R. Civ. Proc. 56 ................................................................... passim

Plaintiff Perfect 10, Inc.'s Memorandum Of Points And Authorities In Opposition To Defendant
Rapidshare's Motion For Partial Summary Judgment On Fifth And Sixth Claims For Relief

1

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT.

Before discovery has even commenced in this action, Defendant RapidShare A.G. ("RapidShare") has moved for partial summary judgment on two of Plaintiff Perfect 10, Inc.'s ("Perfect 10") eight claims for relief. RapidShare incorrectly asserts that Perfect 10's fifth claim for violation of California's unfair competition law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* (the "UCL"), and its sixth claim for violation of Perfect 10's rights of publicity are preempted by Section 230(c)(1) of the Communications Decency Act (the "CDA"), 47 U.S.C. § 230(c)(1) ("Section 230") and that Perfect 10's UCL claim is also preempted by the Copyright Act.

RapidShare's summary judgment motion (the "Motion") is based primarily on the unsupported, self-serving, and misleading claim of its founder, Christian Schmid ("Schmid"), that "all of the files, which are stored on RapidShare's website, have been stored by users and not RapidShare itself." [1] Schmid does not state that RapidShare has never *uploaded* files itself to RapidShare's servers. Moreover, Schmid never explains: (i) how RapidShare was able to start its business without uploading any files itself; or (ii) how RapidShare was able to persuade third parties to upload thousands of terabytes of pirated content to RapidShare servers.

RapidShare concedes that if it uploaded files to RapidShare's servers, its Motion must then be denied. *See* Memorandum of Points and Authorities in support of the Motion ("Memo") at 1:7-10, 1:13-14. Perfect 10 has not yet had the opportunity to conduct any discovery, either to challenge Schmid's baseless claim or to determine why the International Anti-Piracy Caucus of the United States Congress recently identified RapidShare as one of the six worst pirate websites in the world. Moreover,

---

[1] *See* Declaration of Christian Schmid in support of the Motion, dated June 11, 2010 ("Schmid Decl."), attached as Exhibit 7 to the Declaration of Lori Chang in support of the Motion (Docket No. 79-3), ¶2. Schmid provides no support whatsoever for this assertion. The inadmissibility of Schmid's statement is discussed in greater detail in Perfect 10's Evidentiary Objections, submitted concurrently herewith. As explained in Section III.B, below, if this Court determines that Schmid's statement is inadmissible, it should deny the Motion for this reason alone.

Plaintiff Perfect 10, Inc.'s Memorandum Of Points And Authorities In Opposition To Defendant Rapidshare's Motion For Partial Summary Judgment On Fifth And Sixth Claims For Relief

even without such discovery, Perfect 10 has submitted sufficient evidence to create genuine issues of material fact regarding immunity under the CDA and preemption under the Copyright Act so as to compel the denial of the Motion.

### A.  RapidShare Is Not Entitled To Immunity Under The CDA.

RapidShare engages in various activities which are not immunized by the CDA. The evidence submitted by Perfect 10 establishes that RapidShare: (i) stores content; (ii) creates content; (iii) uploads content itself, (iv) pays third parties to upload content; and (v) sells content.  Of these five activities, only the passive storage of content is potentially immunized by the CDA.

The CDA only immunizes an interactive computer service from a claim in which the plaintiff seeks to treat the service as a publisher or speaker of content created by third parties.  It states that "[n]o provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. §230(c)(1).  The CDA has been primarily applied to protect passive websites and bulletin boards from defamation claims arising from defamatory comments posted by users.  *See, e.g., Barnes v. Yahoo!, Inc.,* 570 F.3d 1096, 1101 (9th Cir. 2009).

If a website such as RapidShare does not act in a completely passive way, and instead is involved in the creation or development of the information that is provided, the website is deemed to be also functioning as an "information content provider" and is thus not entitled to CDA immunity.  The statute defines "information content provider" as "any person or entity that is responsible, in whole or *in part*, for the creation or development of information provided through the Internet or any other interactive computer service."  47 U.S.C. §230(f)(3) (emphasis added).  Accordingly, a website is not entitled to CDA immunity for *any* information it is responsible for creating or developing, even in part.  Furthermore, the Ninth Circuit has held that a website is responsible for the "development" of unlawful content, and thus not entitled to CDA immunity, "if it contributes materially to the alleged illegality of the conduct."

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1167-68 (9th Cir. 2008) (*en banc*) ("*Roommates*").

As explained below, RapidShare is acting as an "information content provider" when it uploads, creates, pays for, and sells infringing material. Accordingly, RapidShare is not entitled to CDA immunity for these activities.

### 1. RapidShare Uploads And Creates Infringing Content.

The Declaration of Sean Chumura, submitted concurrently herewith (the "Chumura Decl.") at the very least creates a genuine issue of material fact regarding the key issue underlying the Motion – whether the files on RapidShare's servers were uploaded solely by third parties. The Chumura Declaration establishes that RapidShare creates additional copies of infringing works both when its users upload those works to its servers and when it distributes copies of those works to its users during the downloading process, and that RapidShare creates its own thumbnail images of infringing works. Chumura Decl. ¶¶4-6, Exh. 1; s*ee also* Declaration of Dr. Norman Zada, submitted concurrently herewith ("Zada Decl."), ¶¶12, 22, Exhs. 10, 20. RapidShare's creation and distribution of thousands of copies of these works is the act of an information content provider that is not immunized by the CDA [*see* Sections II.F and IV.A, below].

In addition, as discussed on its own website, RapidShare offers a "remote upload" tool which RapidShare itself uses to access password-protected websites and upload infringing material from those websites directly onto RapidShare's servers. In this process, the infringing material never passes through a user's computer. RapidShare's use of the "remote upload" tool does not qualify for CDA immunity, because it is RapidShare's own act and not the passive publishing of content generated by third parties. In fact, no RapidShare user could legally authorize RapidShare to enter a third-party's password-protected website, upload material from that website, and then distribute that material to RapidShare users. Such activity is forbidden by the terms and conditions of password-protected websites, including RapidShare.com.

Chumura Decl. ¶¶4-7; Exhs. 1-2; Zada Decl. ¶¶11-12, Exhs. 9-10. Accordingly, merely because a user gives it "permission," RapidShare may not lawfully enter a website such as fox.com, upload every movie from that website, and then distribute those movies to other RapidShare users. For this reason as well, Rapidshare is not entitled to CDA immunity [*see* Sections II.C and IV.A, below].

### 2. RapidShare Pays For The Uploading Of Infringing Content.

RapidShare is responsible for the creation or development of infringing content because it has operated an affiliate program, under which RapidShare paid users to upload infringing material. Although RapidShare now asserts that this program has been suspended, the program unquestionably was in effect at least through January 2010, the period at issue in this action. Moreover, both RapidShare's website and third-party websites continue to state that RapidShare is offering such payments, as well as other incentives to members to upload content. Zada Decl. ¶¶18-20, Exhs. 16-18. RapidShare's payments constitute a material contribution to allegedly illegal conduct, which precludes CDA immunity [*see* Sections II.D and IV.A, below].

### 3. The CDA Does Not Immunize The Sale Of Infringing Content.

The CDA only immunizes websites such as RapidShare from being treated as publishers or speakers of information posted by third parties. It does not immunize RapidShare's sale of access to intellectual property that it does not own. Just because a RapidShare user stores the movie "Titanic" in a RapidShare file does not mean that RapidShare is authorized to make copies of "Titanic" and distribute "Titanic" to other RapidShare members without paying the rightful owners. RapidShare's offering its members the ability to download billions of dollars of intellectual property for only $10 per month, including images that violate Perfect 10's right of publicity – the conduct underlying Perfect 10's UCL and right of publicity claims – is simply not the passive act of a speaker or publisher protected by the CDA [*see* Section IV.B, below].

1

2

**4.      The CDA Was Not Designed To Protect Those Who Make And Distribute Thousands Of Copies Of Pornographic Works.**

3      CDA immunity must be considered in light of the statute's purpose and title.

4   Section 230(c) is titled "Protection for 'good samaritan' blocking and screening of

5   offensive material."  The Ninth Circuit has explained that "the substance of section

6   230(c) can and should be interpreted consistent with its caption."  *Roommates,* 521

7   F.3d at 1164.  RapidShare, however, offers its members access to at least 375,000 files

8   containing or associated with the term "porn," and at least 2,500 files containing or

9   associated with the term "Lolita." Zada Decl. ¶¶21-22, Exhs. 19-20.  RapidShare has

10  created a website which offers massive amounts of pornography by paying people to

11  upload such files.  Such conduct is the antithesis of good samaritan blocking and

12  screening of offensive material immunized by the CDA [*see* Section II.G and IV.D,

13  below].

14      **B.      Perfect 10's UCL Claim Is Not Preempted By The Copyright Act.**

15      RapidShare also asserts that Perfect 10's UCL claim is preempted by the

16  Copyright Act because it is premised on copying.  RapidShare is wrong, for at least

17  two reasons.  First, Perfect 10's UCL claim alleges, in part, that RapidShare is

18  engaging in unlawful conduct because it is violating trademark law and rights of

19  publicity.  These distinct claims are qualitatively different from, and not preempted by,

20  the Copyright Act.  Second, Perfect 10's UCL claim is premised on the fact that

21  RapidShare is unfairly competing with Perfect 10 through the theft and sale of

22  intellectual property belonging to *third parties*.  These elements of wrongdoing are in

23  addition to, and qualitatively different from, the elements of Perfect 10's copyright

24  infringement claim, which alleges that RapidShare has infringed *Perfect 10's own*

25  *copyrights*.  For each of these reasons, RapidShare's assertion that the UCL claim is

26  preempted by the Copyright Act fails [*see* Section V, below].

27

28

**C.    At The Very Least, Perfect 10 Is Entitled To Conduct Discovery To Oppose The Motion Under Rule 56(f).**

Even if this Court determines that Perfect 10 has not established a genuine issue of material fact sufficient to deny the Motion (and it should not, for all of the reasons discussed herein) the Court still cannot properly grant the Motion.  Here, RapidShare filed the Motion without allowing Perfect 10 the opportunity to conduct any discovery. The Declaration of Eric J. Benink, submitted herewith, establishes that Perfect 10 has the right to take discovery on critical issues relevant to the Motion, pursuant to Fed. R. Civ. P. 56(f).  These issues include (without limitation): (i) whether RapidShare itself has uploaded any material to its servers; (ii) how the 12,000 terabytes of movies, songs, and other allegedly pirated materials were uploaded to RapidShare's servers; (iii) the creation and development of RapidShare's affiliate program; (iv) RapidShare's business dealings with other infringing websites and uploaders; and (v) why the Congressional International Anti-Piracy Caucus and the Recording Industry Association of America consider RapidShare to be one of the six worst pirate websites in the world.  Accordingly, at the very least, this Court should deny or stay the Motion pursuant to Fed. R. Civ. P. 56(f), to allow Perfect 10 to conduct the necessary discovery [*see* Section VI, below].

## II.    RELEVANT FACTUAL BACKGROUND.

**A.    RapidShare Does Much More Than Merely Store Content.**

RapidShare operates one of the world's busiest websites.  Declaration of Christian Schmid, filed June 16, 2010 (Docket No. 83-2, Ex. B), ¶4.  It hosts 400 million files containing 12,000 terabytes of intellectual property, and has more than 50 million active users.  *Id*.  Assuming that half of its users pay the monthly fee of approximately $10, RapidShare's revenues are at least **$3 billion per year.**

RapidShare's immense revenues from the sale of content it does not own, demonstrates the significant level of unfair competition faced by Perfect 10 and other

copyright holders who pay for their content, while RapidShare does not.[2]

Although RapidShare refers to itself as a "storage locker" or a "cloud computing service" [*see, e.g.,* Memo at 2 n.2], RapidShare's business has not grown to astronomical proportions because people are eager to "store" the files on RapidShare's servers.  (The company is not called "RapidStore.")  Rather, RapidShare owes its enormous success to all of its non-storage activities, in which it exploits and sells the intellectual property of others.  RapidShare provides users with access to 12,000 terabytes of pirated materials found on its servers – a cyberspace black market where billions of dollars in movies, songs, videos, software, and images can be downloaded in exchange for a membership fee of approximately $10 per month.

RapidShare's own terms and conditions make clear that it is not a true storage locker.  First, RapidShare automatically deletes all files larger than 50 gigabytes that have not been downloaded in sixty days.  Second, RapidShare does not allow a user to download more than 25 gigabytes of files on any one day.  Third, RapidShare reserves the right to delete all of the files uploaded by a user without any notice whatsoever!  Each one of these terms and conditions is contrary to what one would expect from a bona fide storage locker.  Chumura Decl. ¶8, Exh. 2.

Moreover, as explained below, RapidShare does not merely store content.  RapidShare also makes unauthorized copies of movies, songs, images, and computer software, and distributes such materials to its millions of users, without paying the owners of those works.  Furthermore, RapidShare uploads infringing materials itself using its remote upload tool, pays others to upload such materials through its affiliate program, and makes derivative copies of works which it uses to create its RapidShare link lists.  Chumura Decl. ¶¶4-6, 9-13, Exhs. 1, 3-4; Zada Decl. ¶¶12-22, Exhs. 10-20.

---

[2] Perfect 10 previously believed that RapidShare earned approximately $80 million a year.  Mr. Schmid's recent declaration shows that the actual figure is closer to $3 billion a year.  Most of this money belongs to the rightful owners of the content that RapidShare sells without permission, and explains why the International Anti-Piracy Caucus has determined RapidShare to be one of the six worst pirate websites in the world.

Plaintiff Perfect 10, Inc.'s Memorandum Of Points And Authorities In Opposition To Defendant Rapidshare's Motion For Partial Summary Judgment On Fifth And Sixth Claims For Relief

1  Such conduct is not the legitimate function of a storage locker and is not immunized by

2  the CDA.

3  **B.**    **RapidShare Has Been Identified By The United States Congress As**

4       **One Of The Worst Pirate Websites In The World.**

5       On May 19, 2010, the International Anti-Piracy Caucus of the United States

6  Congress, a caucus made up of 70 members of Congress and chaired by Senators

7  Orrin Hatch (R-Utah) and Sheldon Whitehouse (D-RI) and Congressmen Bob

8  Goodlatte (R-Va.) and Adam Schiff (D-Cal.), issued its 2010 International Piracy

9  Watch List (the "Congressional Anti-Piracy Report").  *The Congressional Anti-*

10 *Piracy Report identifies RapidShare as one of the six worst pirate websites in the*

11 *world.*  At a press conference discussing the issuance of the report, Senator

12 Whitehouse stated that "[t]he United States has been on the losing end of the

13 largest theft of intellectual property in history.  This must be stopped, and soon."

14 Congressman Schiff added that "[t]o ensure the continued creation and distribution

15 of music, movies, software, and books, from which we all benefit, we must ensure

16 that our artists, creators and producers *are paid for their work*." Zada Decl. ¶4,

17 Exh. 2 (emphasis added).  In a press release discussing the report, the Recording

18 Industry Association of America (the "RIAA") stated that RapidShare was one of

19 the "leading sources of illegal music and operate[s] with the clear purpose of

20 encouraging and inducing theft."  The RIAA added that RapidShare "brazenly

21 traffic[s] in copyright theft," is "overwhelmingly used for the global exchange of

22 illegal movies, music, and other copyrighted works," and "*undercut[s] the ability of*

23 *legitimate services to compete and thrive in the global marketplace*…" Zada Decl.

24 ¶4, Exh. 2 (emphasis added)..

25       Others have described RapidShare in a similar way.  For example, on February

26 24, 2010, six book publishers, including McGraw-Hill and John Wiley & Sons,

27 obtained an injunction in Germany against RapidShare.  In a press release

28 accompanying this ruling, the publishers stated, "Companies like RapidShare derive

Plaintiff Perfect 10, Inc.'s Memorandum Of Points And Authorities In Opposition To Defendant
Rapidshare's Motion For Partial Summary Judgment On Fifth And Sixth Claims For Relief

1  substantial profit by facilitating the theft of the work of others, adding no value to the

2  creative process and providing no compensation to the creators." *Id.*

3    **C.**  **RapidShare Enters Password Protected Websites And Uploads**

4       **Material Itself.**

5    RapidShare bases its Motion almost entirely upon its contention that only its

6  users, and not RapidShare, upload files to RapidShare's servers.  It is undisputed,

7  however, that RapidShare has created a "remote-upload" tool under which RapidShare

8  itself enters password-protected websites such as perfect10.com, playboy.com, or

9  fox.com, and uploads material from those websites to RapidShare's servers.  Zada

10  Decl. ¶¶11-12, Exhs. 9-10; Chumura Decl. ¶¶4-7, Exhs. 1-2.  When it uses this

11  "remote-upload" tool, RapidShare itself uploads files onto its servers, **without those**

12  **files ever being transmitted through the user's computer**.  As RapidShare's website

13  explains:

14    **What are remote-uploads and how can I start them?**

15      By using remote-uploads, *we will download the file for you and*
*upload it* automatically to RapidShare.   In your premium-zone you click

16  on "Remote-Uploads" and add your ULRs there.  We will then download

17  the file for you and re-upload it in your premium zone.

18      ***

19    **Can I use remote-uploads with authentication as well?**

20      Yes, thats [sic] possible.  Just use

21   http://LOGIN:PASSWORD@www.server.com/file.zip and replace
LOGIN with your login on that server and PASSWORD with your

22  password there.  We will login on that server with that data then.

23  Zada Decl. ¶12, Exh. 10, page 1 (emphasis added).

24    Password protected websites have terms and conditions which forbid their users

25  from giving out their passwords to others or allowing others to make copies of works

26  from those websites.  Thus, RapidShare's use of its remote-upload tool to enter third-

27  party, password-protected websites is strictly forbidden by these websites.  Zada Decl.

28  ¶11, Exh. 9; Chumura Decl. ¶7, Exh. 2.  Accordingly, when RapidShare created its

remote-upload tool, RapidShare knew that this tool could only be used for illegal purposes. RapidShare knows both that it cannot legally enter password-protected websites using someone else's username and password (even with that user's permission) and that none of the material uploaded to RapidShare's servers using its remote-upload tool may be legally copied, offered for sale, or otherwise distributed. Zada Decl. ¶11, Exh. 9 Nevertheless, RapidShare has engaged in exactly those acts.

### D. RapidShare Has Paid Users To Upload Content To RapidShare's Servers.

It is undisputed that RapidShare has operated an affiliate program in which RapidShare pays its members when they refer traffic to RapidShare's website and when other RapidShare members download files that these members have uploaded to RapidShare's servers. *See* Order Denying Plaintiff's Motion for Preliminary Injunction, dated May 18, 2010 (Docket No. 71) ("PI Order") at 10:1-6. This program encouraged RapidShare members to upload copyrighted files that would be frequently downloaded, such as full length movies, songs by major recording artists, and pornography. As this Court has noted [*see* PI Order at 10:11-15]:

> The goal of RapidShare's program was, and still is, to reward users for distributing and reproducing (through uploading and downloading) material, even if that material is infringing. Whether the program rewards users with money, merchandise, or charitable donations, it encourages users to upload and download potentially infringing material.

Although RapidShare claims that it has stopped offering cash to RapidShare's users as part of its affiliate program, RapidShare's website still contains web pages that offer such cash promotions. Zada Decl. ¶20, Exh. 18. Furthermore, such cash promotions still appear on third party websites, which advertise that a RapidShare user may "[e]arn up to 20 Euro for gaining us a new customer," or "[u]pload files and [e]arn money from RapidShare." Such promotions may be found on at least 4,380 web pages

Plaintiff Perfect 10, Inc.'s Memorandum Of Points And Authorities In Opposition To Defendant
Rapidshare's Motion For Partial Summary Judgment On Fifth And Sixth Claims For Relief

on sites where infringing materials are normally posted. The size of some of these RapidShare promotions, which often cover several pages of these websites, and the way these promotions are presented, strongly suggest that a commercial relationship exists between RapidShare and these infringing websites, which may even be owned or controlled by RapidShare. Zada Decl. ¶18, Exh. 16; Chumura Decl. ¶13, Exh. 4.

**E.** **RapidShare Has Not Identified The Purported Third Parties That Allegedly Uploaded P10 Images To RapidShare's Servers.**

As noted above, the Motion is based almost entirely upon Schmid's assertion that all of the files currently found on RapidShare's servers have been stored by third parties. Schmid Decl. ¶2. RapidShare has failed to provide Perfect 10 with any evidence to support this assertion. Moreover, RapidShare has never submitted declarations demonstrating that RapidShare never uploaded files to RapidShare servers itself, even though RapidShare most likely engaged in such uploading when it first started. Chumura Decl. ¶14.

Perfect 10 has sent six DMCA notices to RapidShare. These notices identified more than 2,200 RapidShare files which have offered at least 110,000 copies of copyrighted Perfect 10 Images ("P10 Images") to RapidShare users. In those notices, Perfect 10 asked RapidShare to identify the third parties that uploaded those P10 Images to its servers. RapidShare has refused to do so. Zada Decl. ¶5, Exh. 3.

**F.** **RapidShare Is Substantially Involved In Every Aspect Of The Illegal Activity.**

Perfect 10 has submitted evidence in opposition to the Motion, which was not previously before the Court,[3] which establishes that RapidShare is substantially

---

[3] The Chumura and Zada Declarations contain significant evidence that was not previously before this Court. Indeed, the PI Order states only that Perfect 10 "failed to present a prima facie case of direct infringement against RapidShare *based on the present record before the Court*." PI Order at 6:15-16 (emphasis added). Although not directly relevant to the issues raised by this Motion, the evidence submitted by Perfect 10 in opposition to the Motion, described in Section II, above, is more than sufficient for the Court to change its conclusion regarding the issue of direct infringement.

involved in every aspect of the illegal activity. In addition to accessing password-protected websites [*see* Section II.C, above] and paying users to upload unauthorized material [*see* Section II.D, above], RapidShare has also made copies of the infringing material, stored that material on its servers, displayed the infringing material, and sold access to it, including to third party websites for resale. Chumura Decl. ¶¶4-10, Exhs. 1-2; Zada Decl. ¶¶12-17, Exhs. 10-15. As explained below, RapidShare has engaged in the following unlawful conduct:

### 1. RapidShare Has Displayed P10 Images.

RapidShare has publicly displayed P10 Images and other images on its website. Chumura Decl. Exh. 1, pages 8-9; Zada Decl. ¶¶12, 17, 22, Exhs. 10, 15, 20.[4] RapidShare's assertion that "files are not publicly displayed on its site" [*see* Separate Statement of Material Facts (Docket No. 79-2) at 1:27-28] is simply incorrect.

### 2. RapidShare Creates Copies Of P10 Images When Its Users Both Upload And Download Files.

As explained in greater detail in the Chumura Declaration, RapidShare creates copies of P10 Images both when users upload these images to RapidShare's servers and when users download these images from RapidShare's servers. Before a user uploads a P10 Image, a copy of that image is located only on the user's computer. When that user uploads the P10 Image, RapidShare makes an additional copy of that image and stores the P10 Image on its servers. Similarly, at the time a user seeks to download a P10 Image from RapidShare, a copy of that image is located on RapidShare's servers. When the user starts the downloading process, RapidShare causes an extra copy of the P10 Image to be made and offered to the user. At the conclusion of the downloading process, there are two copies of the P10 Image – one located on RapidShare's servers and one in the user's computer.

---

[4] Although not directly relevant to the Motion, such conduct violates Perfect 10's exclusive right to display its copyrighted works publicly. *See* 17 U.S.C. §106(5).

Plaintiff Perfect 10, Inc.'s Memorandum Of Points And Authorities In Opposition To Defendant Rapidshare's Motion For Partial Summary Judgment On Fifth And Sixth Claims For Relief

During both the uploading and downloading process, RapidShare causes additional copies of P10 Images to be made, in violation of Perfect 10's exclusive reproduction rights. Chumura Decl. ¶¶4-6, Exh. 1; Zada Decl. ¶12, Exh. 10. *See* 17 U.S.C. §106(1).

### 3. RapidShare Creates Link Lists Which Include Thumbnails Created By RapidShare.

RapidShare creates "link lists" which allow users to view lists of images located on RapidShare's servers. As part of these "link lists," RapidShare makes thumbnail copies of the images that were uploaded by the RapidShare user. When a RapidShare user clicks on one of these thumbnails, a full-size image from RapidShare's servers is displayed on the user's computer. Chumura Decl. ¶¶4-6, Exh. 1; Zada Decl. ¶12, Exh. 10.

### 4. RapidShare Makes Its Content Available To Third Party Websites For Resale.

RapidShare is currently making the content on its servers available to at least three websites – downloadnow.net, mydownloader.com, and zevera.com – for distribution and sale by these websites to their members. Members of these websites can pay a fee which allows them to access RapidShare and download any files they want from RapidShare's servers. Zada Decl. ¶¶13-15, Exhs. 11-13. RapidShare also apparently accepts uploaded files from third party websites that simultaneously upload to multiple file hosts. Zada Decl. ¶16, Exh. 14. Such activities defy the notion that RapidShare is acting as a storage locker. Users that simultaneously upload to multiple file hosts are not storing information. Instead, they are seeking to gain greater revenue by being paid by multiple file hosts for their infringing content.

### G. RapidShare Offers Massive Amounts Of Explicit Pornography.

RapidShare has gone out of its way to wrongly describe Perfect 10 as a pornography company. Ironically, it is RapidShare that is the massive pornographer. Perfect 10 has discovered that RapidShare offers its members access to at least 375,000

RapidShare files containing the term "porn" and at least 2,500 files containing the word "Lolita." Zada Decl. ¶22, Exh. 20.  In addition, RapidShare offers files to its users with disgusting RapidShare file names that are strongly suggestive of child pornography, some of which are massive in size.  RapidShare also displays on its website, for people of any age to view, extremely distasteful images of celebrity faces superimposed on the bodies of people engaged in explicit sex.  Zada Decl. ¶¶21-22, Exhs. 19-20.

### H.    The Allegations Underlying Perfect 10's UCL And Right Of Publicity Claims.

In its Fifth Claim for Relief under the UCL, Perfect 10 alleges, among other things, that RapidShare "has commercially exploited and used millions of marketable adult-oriented photographs and likenesses," without authorization or license.  Complaint ¶62.  Perfect 10 further alleges that through these photographs, RapidShare "is unlawfully exploiting the publicity rights and trademark rights of Perfect 10, as well as the publicity rights, trademark rights, and copyrights of third-parties."  *Id.*  Perfect 10's UCL claim also alleges as follows:

> RapidShare is also selling without authorization, in competition with Perfect 10, billions of dollars in stolen songs, full-length movies, and even computer software.  This conduct enables RapidShare to compete directly and unfairly with Perfect 10 by, among other things, offering for free millions of valuable photographs and likenesses, and thousands of songs, and full length movies, as well as computer software, that are not lawfully available to Perfect 10 or other competitors acting lawfully.

*Id* .  Perfect 10's UCL claim does not incorporate the allegations regarding copyright infringement set forth in Perfect 10's first claim for relief.  *Id.* ¶61.  In its Sixth Claim for Relief, Perfect 10 alleges that RapidShare is infringing Perfect 10's rights of publicity by: (i) "selling Perfect 10 images for which Perfect 10 has been

assigned rights of publicity;" (ii) "selling non-Perfect 10 copyrighted images for which Perfect 10 has been assigned rights of publicity;", and (iii) "partnering with affiliate sites that violate Perfect 10 rights of publicity." *Id.,* ¶72.

## III. RAPIDSHARE HAS FAILED TO SUBMIT SUFFICIENT AFFIRMATIVE ADMISSIBLE EVIDENCE TO OBTAIN SUMMARY JUDGMENT.

### A. Legal Standards Applicable To The Motion.

A moving party may obtain summary judgment only if the pleadings and other evidence show "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment may not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, in determining whether the non-moving party has raised a genuine issue of material fact sufficient to deny summary judgment, the Court must believe the non-movant and draw all justifiable inferences in its favor. *Id.* at 255; *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1180 (9th Cir. 2002).

RapidShare's Motion seeks summary judgment that Perfect 10's UCL and right of publicity claims are preempted by the CDA and/or the Copyright Act – affirmative defenses for which RapidShare bears the burden of proof. *See* Defendant RapidShare's Answer to Plaintiff's Complaint (Docket No. 77) at 11:11-16 (alleging in the Fourteenth Affirmative Defense that Perfect 10's state law claims are preempted by the CDA and the Copyright Act); Memo at 3:17-8:2. Accordingly, in order to prevail on the Motion, RapidShare must produce affirmative admissible evidence establishing all of the essential elements of these defenses. *See, e.g., Ollier v. Sweetwater Union High School Dist.* 604 F.Supp.2d 1264, 1268 (S.D. Cal. 2009) ("When the moving party bears the burden of proof on an issue – whether on a claim for relief or an affirmative defense – the party must establish beyond peradventure all of the essential elements of

the claim or defense to warrant judgment in its favor.") (quotation omitted).  As the Ninth Circuit has explained, "[w]hen the moving party also bears the burden of persuasion at trial, to prevail on summary judgment it must show that the evidence is so powerful that no reasonable jury would be free to disbelieve it."  *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008) (quotation omitted).

## B.   The Schmid Declaration Does Not Constitute Affirmative Admissible Evidence.

Rule 56(e) requires. among other things, that affidavits submitted in support of a motion for summary judgment must be made on the personal knowledge of an affiant who is competent to testify to the matters stated therein and state facts that would be admissible in evidence.  Fed.R.Civ.P. 56(e).  Furthermore, a declarant must show personal knowledge and competency to testify by the facts stated.  *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412 (9th Cir.), *cert. denied,* 516 U.S. 989 (1995).  The matters must be known to the declarant personally, as distinguished from matters of opinion or hearsay.  *Id*.  A declarant's mere assertions that he or she possesses personal knowledge and competency to testify are not sufficient.  *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999 (9th Cir. 1990).  "Personal knowledge means that a witness or affiant may only testify to a fact that can be perceived by the senses and that the witness or affiant has actually perceived."  *Madsen v. Idaho Emergency Physicians, P.A.*, 2010 WL 1248255 at *3 (D. Idaho, March 23, 2010). Indeed, "[c]onclusory affidavits that do not affirmatively show personal knowledge of specific facts are insufficient."  *Casey v. Lewis,* 4 F.3d 1516, 1527 (9th Cir. 1993).

Here, RapidShare's Motion is based almost entirely on the statement in the Schmid Declaration that "[a]ll of the files, which are stored on RapidShare's website, have been stored by users and not RapidShare itself."  Schmid Decl. ¶2.  Schmid provides no foundational support whatsoever for this assertion.  He fails to provide any facts demonstrating how or why he personally knows who has uploaded the 400 million files that are located on RapidShare's servers.  He fails to identify any of the

individuals who have uploaded the more than 110,000 P10 Images that have been distributed by RapidShare to its members.  In fact, ***the entire Schmid Declaration is only two paragraphs long.***

In short, the Schmid Declaration is nothing more than a conclusory declaration that fails to affirmatively show that Schmid has personal knowledge of the specific facts surrounding the uploading of files onto RapidShare's servers or to identify the persons or entities who actually uploaded the 12,000 terabytes of content currently offered by RapidShare.  Accordingly, under the authorities cited above, the Schmid Declaration is "insufficient" to satisfy RapidShare's requirement to submit affirmative admissible evidence in support of the Motion.

## IV.   THE EVIDENCE SUBMITTED BY PERFECT 10 ESTABLISHES THAT RAPIDSHARE IS NOT ENTITLED TO CDA IMMUNITY.

Even if this Court determines that the Schmid Declaration constitutes sufficient affirmative admissible evidence in support of RapidShare's CDA preemption claim (and it should not, for all of the reasons discussed in Section III, above), this Court still may not grant the Motion.  By its own terms, the CDA only immunizes RapidShare from claims in which Perfect 10 is seeking to treat it as a "publisher or speaker" of information provided by third party users.  *See* 47 U.S.C. §230(c)(1) ("No provider … of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content providers").  It does not immunize RapidShare from claims arising from RapidShare's conduct as an information content provider, including RapidShare's sale, uploading, and creation of content – the predominant activity in which RapidShare is engaged.  Accordingly, as explained below, RapidShare is not entitled to immunity under the CDA.

### A.   Perfect 10 Has Established A Genuine Issue Of Material Fact As To Whether RapidShare Is An Information Content Provider.

The grant of immunity provided under the CDA only applies if RapidShare is not an "information content provider" which the CDA defines as "any person or entity

that is responsible, in whole *or in part*, for the creation or development of" the offending content. 47 U.S.C. §230(f)(3) (emphasis added.); *Roommates*, 521 F.3d at 1162. Indeed, "a website operator can be both a service provider and a content provider" and thus "be immune from liability for some of the content it displays to the public but be subject to liability for other content." *Id*. at 1162-63. The Ninth Circuit has explained that "the party responsible for putting information online may be subject to liability, even if the information originated with a user." *Id*. at 1165. Moreover, the mere fact that the user is physically pushing the button at his or her computer to transmit information is not determinative. *Id*. at 1166-67 ("The projectionist in the theatre may push the last button before a film is displayed on the screen, but surely this doesn't make him the sole producer of the movie."). Furthermore, "the CDA does not grant immunity for inducing third parties [to engage in illegal conduct.]" *Id*. at 1165. On the contrary, a website is a developer that does not enjoy immunity under the CDA if it ***"contributes materially to the alleged illegality of the conduct."*** *Id*. at 1168 (emphasis added).

Here, Perfect 10 has demonstrated that RapidShare is engaged in the following activities, all of which involve the creation or development of the offending content:

1) RapidShare makes copies of millions of works, both during the process of uploading and downloading files. Chumura Decl. ¶¶4-6, 9, Exh. 1.

2) RapidShare distributes those copies to its users, without any authorization, and without paying the rightful owners.

3) RapidShare enters password-protected websites without authorization, makes unauthorized copies of material from those websites, uploads those copies to its servers, and then distributes those copies to its users. Chumura Decl. ¶¶4-7, Exhs. 1-2; Zada Decl. ¶¶11-12, Exhs. 9-10.

4) Through its affiliate program, RapidShare pays users to upload infringing content to RapidShare servers. Zada Decl. ¶¶18-20, Exhs. 16-18.

5) RapidShare creates link lists which contain RapidShare created thumbnails of

Plaintiff Perfect 10, Inc.'s Memorandum Of Points And Authorities In Opposition To Defendant Rapidshare's Motion For Partial Summary Judgment On Fifth And Sixth Claims For Relief

infringing works.  Zada Decl. 12, 22, Exhs. 10, 20; Chumura Decl 4-6, Exh. 1.

None of the above activities is immunized by the CDA.  At a minimum, the evidence submitted by Perfect 10 concerning the above RapidShare activities creates a genuine issue of material fact as to whether RapidShare is acting as an information content provider sufficient to deny the Motion.

### B.    Perfect 10 Does Not Seek To Hold RapidShare Liable As A Publisher Or  Speaker.

The Motion fails for the additional reason that Section 230 of the CDA only protects RapidShare from being treated as a "publisher" or "speaker" of materials uploaded by a third party.  Here, however, Perfect 10 is not seeking to hold RapidShare liable as a publisher or speaker.  Indeed, when RapidShare engages in the conduct described in Section IV.A, above, including uploading content itself, paying others to upload content, and selling access to content it does not own, it is not acting as a speaker, a publisher, or a passive storage locker.  Moreover, this very conduct forms the basis for Perfect 10's UCL and right of publicity claims – RapidShare's offering access to billions of dollars of intellectual property, including images that violate Perfect 10's rights of publicity (and for which Perfect 10 does not own the copyright in many cases), for only a $10 monthly fee, in competition with Perfect 10.  For this reason as well, RapidShare is not entitled to judgment as a matter of law that these claims are barred by the CDA.

Such a conclusion is compelled by *Barnes v. Yahoo!, Inc.,*, 570 F.3d 1096 (9th Cir. 2009), a case cited by RapidShare.  *See* Memo at 4:4-7.  In *Barnes*, plaintiff sued defendant Yahoo after Yahoo promised to remove harmful materials about plaintiff that her ex-boyfriend had posted on a Yahoo website, but failed to do so.  *Id.* at 1098-99.  Yahoo argued that plaintiff's state law claims were preempted by the CDA.  *Id.* at 1099.  In rejecting Yahoo's contention that plaintiff's breach of contract claim under a theory of promissory estoppel was immunized by the CDA, the Ninth Circuit stressed that, in applying Section 230(c)(1) of the CDA, courts must determine

19                                    **09cv02596**

Plaintiff Perfect 10, Inc.'s Memorandum Of Points And Authorities In Opposition To Defendant
Rapidshare's Motion For Partial Summary Judgment On Fifth And Sixth Claims For Relief

whether the cause of action inherently requires the court to treat the defendant as the "publisher or speaker" of content provided by another.  To put it another way, courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a "publisher or speaker." *Id.* at 1102.  Applying the above language, the Ninth Circuit held that plaintiff "does not seek to hold Yahoo liable as a publisher or speaker of third-party content, but rather as the counter-party to a contract, as a promisor who has breached." *Id.* at 1107.  Therefore, the court ruled, Section 230 of the CDA did not preclude plaintiff's claim.

Here, as well, Perfect 10 does not seek to hold RapidShare liable as a publisher of third party content.  Rather, Perfect 10 seeks to hold RapidShare liable as a seller and as a creator or developer, at least in part, of content.  For this reason as well, this Court should deny the Motion.

**C.    *CCBill* Does Not Support The Granting Of The Motion.**

RapidShare mistakenly asserts that in *Perfect 10, Inc. v. CCBill, LLC,* 448 F.3d 1102 (9th Cir.), *cert. denied*, 128 S. Ct. 709 (2007), the Ninth Circuit held that "similar claims for unfair competition and violation of rights of publicity brought by Perfect 10" were barred by the CDA.  Memo at 4:8-18.   The defendants there were very different from RapidShare.  Defendant CCBill simply acted as a passive processor of credit cards transactions.  It did not store content, make copies, upload material, or pay others to upload material.  Its affiliate, defendant CWIE, provided "connectivity services" for websites, which included providing them with rackspace and power.  CWIE did not upload content, pay others to upload content, or sell access to content.  RapidShare is vastly more involved in the infringing process and in the creation and development of offending content than either CCBill or CWIE.  *See* Zada Decl. ¶23, Exh. 21.

Moreover, the *CCBill* court held that Perfect 10 had established genuine issues of material fact as to whether CCBill and CWIE operated a website known as hornybees.com and as to whether hornybees.com had infringed Perfect 10's copyrights

by posting pictures of a Perfect 10 model's body with the head of a celebrity. *CCBill,* 448 F.3d at 1119-20. Hornybees.com displayed only third party content, and was substantially less involved in the alleged infringement than RapidShare. Zada Decl. ¶23, Exh. 21. Nevertheless, the *CCBill* court ruled that "[i]f CCBill and CWIE operate horny-bees.com, no immunity for infringement on that site is available under either ***the DMCA or the CDA.***" *Id.* at 1120 n.6 (emphasis added). For this reason as well, *CCBill* does not support the granting of the Motion.

### D. A Ruling That RapidShare Is Entitled To CDA Immunity Is Contrary To The Statute's Caption And Title.

The Ninth Circuit has held that "the substance of section 230(c) can and should be interpreted consistent with its caption." *Roommates,* 521 F.3d at 1164. Section 230(c) is titled "Protection for 'good samaritan' blocking and screening of offensive material." RapidShare, however, is not engaging in the "good samaritan blocking and screening of offensive material. Instead, it is offering its users access to massive amounts of pornography, which RapidShare has failed to screen or block. Zada Decl. ¶¶21-22, Exhs. 19-20. The CDA was designed to protect Good Samaritans that remove distasteful or offensive content. It was certainly not designed to protect massive pirate websites like RapidShare from claims of unfair competition by law abiding businesses. For this reason as well, CDA immunity is inapplicable here.

## V. THE COPYRIGHT ACT DOES NOT PREEMPT PERFECT 10'S UCL CLAIM.

RapidShare mistakenly asserts that Perfect 10's UCL claim is preempted by the Copyright Act because it is based solely on Perfect 10's copyright infringement claim. Memo at 7:5-8:2. RapidShare is simply incorrect.

*Kodadek v. MTV Networks, Inc.,* 152 F.3d 1209 (9th Cir.1998), the case upon which RapidShare relies [*see* Memo at 7:10-14], specifically holds that a "state law cause of action is preempted by the Copyright Act" only if "the rights that a plaintiff asserts under state law [are] 'rights that are equivalent' to those protected by the

Copyright Act" and the work involved "fall[s] within the "subject matter" of the Copyright Act as set forth in 17 U.S.C. §§ 102 and 103. *Id.* at 1212. *See also Downing v. Abercrombie & Fitch,* 265 F.3d 994, 1003 (9th Cir. 2001).

Here, as explained in Section II.H, above, Perfect 10's UCL claim is not premised on RapidShare's alleged infringement of P10 Images. In fact, the allegations of copyright infringement found in Perfect 10's first claim for relief are not incorporated in its UCL claim. *See* Complaint ¶61. Rather, the UCL claim is premised on the allegation that RapidShare "is unlawfully exploiting the ***publicity rights and trademark rights of Perfect 10, as well as the publicity rights, trademark rights, and copyrights of third-parties*." *Id.* ¶62 (emphasis added).[5]

The Ninth Circuit has clearly held that a right of publicity claim is not preempted by the Copyright Act. *See Downing,* 265 F.3d at 1005 (because the subject matter of plaintiffs' "right of publicity claims is their names and likenesses, which are not copyrightable, the claims are not equivalent to the exclusive rights contained in § 106"); *see also KNB Enterprises v. Matthews,* 78 Cal.App.4th 362, 374-75 (2000) (state law right of publicity claims brought by copyright owner of erotic photographs which had been displayed without authorization and for profit by an Internet website were not preempted by the Copyright Act). Furthermore, Perfect 10's UCL claim is also not preempted by the Copyright Act to the extent it is based on trademark law. *See Polar Bear Productions, Inc. v. Timex Corp.,* 384 F.3d 700, 721 (9th Cir. 2004) (noting that "[c]opyright and trademark are related but distinct property rights, evidenced by different federal statutes governing their protection" and that "[t]he Copyright Act does not preempt related state laws if the state laws 'protect rights which are qualitatively different from copyright rights'"). Finally, the rights asserted by Perfect 10 in connection with its UCL claim are not

---

[5] Accordingly, this Court's assertion that "Perfect 10's unfair competition claim rests on its cause of action for copyright infringement" [PI Order at 13:8-9] is not supported by the allegations found in Paragraphs 61 and 62 of the Complaint.

"equivalent" to those protected by the Copyright Act, because the UCL claim is premised on the fact that Defendants unfairly compete through the theft and sale of intellectual property *belonging to third parties*. Complaint ¶62. For each of these reasons, Perfect 10's UCL claim is not preempted by the Copyright Act. *See, e.g., Bekaert Progressive Composites Corp. v. Wave Cyber Ltd.,* 2007 WL 1110736 at \*3 (S.D. Cal., April 5, 2007) (plaintiff's UCL claim not preempted by Copyright Act because plaintiff has pled "elements of wrongdoing in addition to and qualitatively different from the elements of a Copyright Act claim"). For each of these reasons, Perfect 10's UCL claim is not preempted by the Copyright Act.

## VI. AT THE VERY LEAST, THIS COURT SHOULD DENY OR CONTINUE THE MOTION UNDER RULE 56(F) TO ALLOW PERFECT 10 TO TAKE DISCOVERY.

Even if this Court is inclined to rule in favor of RapidShare (and it should not, for all of the reasons discussed above), the Court may not properly grant the Motion. Together with its opposition papers, Perfect 10 has submitted the Declaration of Eric J. Benink (the "Benink Declaration"), requesting that the Court deny or continue the Motion pursuant to Fed. R. Civ. P. 56(f), to allow Perfect 10 to conduct discovery so that it may present facts essential to justify its opposition to the Motion. As explained below, this Court is required to apply Rule 56(f) here, because RapidShare filed the Motion before Perfect 10 was able to conduct any discovery in this action.

Rule 56(f) "provides a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence." *United States v. Kitsap Physicians Serv*., 314 F.3d 995, 1000 (9th Cir. 2002). "[A] district court should continue a summary judgment motion upon a good faith showing by affidavit that the continuance is needed to obtain facts essential to preclude summary judgment." *State of California v. Campbell*, 138 F.3d 772, 779 (9th Cir.), *cert. denied,* 522 U.S. 822 (1998). Although relief under Rule 56(f) is discretionary, the Supreme Court has clearly stated that summary judgment must be refused under Rule 56(f) "where the

nonmoving party has not had the opportunity to discover information that is essential to [its] opposition." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 n.5 (1986). *See also Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001).

Here, RapidShare would not be entitled to summary judgment if it uploaded files to Rapidshare's servers itself or otherwise materially contributed to the offending conduct about which Perfect 10 complains. Accordingly, Perfect 10 at the very least is entitled to conduct discovery regarding the following essential issues (among others), which will bolster Perfect 10's ability to oppose the Motion: (i) whether RapidShare has uploaded any material to its servers; (ii) the persons or entities that uploaded the first movies, songs, and other intellectual property onto RapidShare's servers; (iii) RapidShare's relationship with those persons or entities that have uploaded pirated materials onto RapidShare's servers; (iv) RapidShare's use of its "remote upload" tool; (v) RapidShare's agreements and relationships with persons and entities it has paid to upload infringing material; (vi) RapidShare's agreements and relationships with websites such as downloadnow.net to which RapidShare sells content; and (vii) the creation and development of RapidShare's affiliate program. These and other areas of discovery to which Perfect 10 is entitled are discussed in greater detail in the Benink Declaration. Accordingly, this Court must deny the Motion under Rule 56(f) to allow Perfect 10 to conduct such discovery.

## VII. <u>CONCLUSION.</u>

Perfect 10's UCL and right of publicity claims are not based upon RapidShare's acts as a passive storage facility. Nor do these claims seek to treat RapidShare as the publisher of third-party content. Rather, these claims are based upon RapidShare's actions as an "information content provider" when it uploads, creates, pays for, and sells offending content – actions for which RapidShare is not entitled to immunity under the CDA. Moreover, Perfect 10's UCL claim is premised not on its copyright infringement claim, but on its claim that RapidShare is unlawfully exploiting the publicity rights and trademark rights of Perfect 10 and

the publicity rights, trademark rights, and copyrights of third parties.

Accordingly, for all of the foregoing reasons, Perfect 10 respectfully requests that this Court should deny the Motion.  Alternatively, this Court at the very least should deny or continue the Motion so that Perfect 10 can conduct discovery necessary to bolster its opposition to the Motion, under Fed. R. Civ. P. 56(f).

DATED:  June 28, 2010                    KRAUSE KALFAYAN BENINK & SLAVENS


                                          By:_____/s/ Eric J. Benink_____
                                              Eric J. Benink
                                              Attorney for Plaintiff Perfect 10, Inc.
                                              eric@kkbs-law.com