GREENBERG TRAURIG, LLP
IAN C. BALLON (SBN 141819)
WENDY M. MANTELL (SBN 225544)
LORI CHANG (SBN 228142)
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404
Telephone: (310) 586-7700
Facsimile: (310) 586-7800
Email:  ballon@gtlaw.com, mantellw@gtlaw.com, changl@gtlaw.com

Attorneys for defendant and counterclaimant RapidShare AG

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation<br><br>Plaintiff,<br><br>vs.<br><br>RAPIDSHARE A.G., a corporation, CHRISTIAN SCHMID; BOBBY CHANG; and DOES 1 through 100, inclusive<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS | CASE NO. 09 CV 2596 H (WMC)<br><br>**REPLY BRIEF IN SUPPORT OF RAPIDSHARE'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF PERFECT 10'S FIFTH AND SIXTH CLAIMS FOR RELIEF** *(Amended and re-filed to comply with Section 2(f) of the ECF Administrative Policies and Procedures Manual)*<br><br>[Filed concurrently with Reply Declarations of L. Chang and C. Schmid; Declaration of A. Hartojo; Evidentiary Objections to Declarations of N. Zada and S. Chumura; and Reply Separate Statement]<br><br>DATE:  July 12, 2010<br>TIME:  10:30 a.m.<br>CTRM:  13<br>JUDGE:  Marilyn L. Huff<br><br>DATE FILED:  November 18, 2009<br>TRIAL DATE:  None Set |

# I. INTRODUCTION

Perfect 10's ("P10") opposition to RapidShare's partial summary judgment motion seeks to convince the court that its copyright infringement suit should also be a right of publicity and unfair competition case. However, the large volume of material submitted by P10 alleging *copyright infringement* does not show that files allegedly stored by users on RapidShare's site in fact was stored by RapidShare itself (which it was not) -- and therefore does not circumvent the holding in *Perfect 10, Inc. v. CCBill,* 488 F.3d 1102, 1118-19 (9th Cir.), *cert. denied,* 128 S. Ct. 709 (2007) -- and the "evidence" submitted actually shows that its unfair competition claim is based on copyright infringement and therefore is also preempted by the Copyright Act. Cutting through the huge mass of paper that is intended to create the illusion of a factual dispute on the very narrow issue presented by this motion, P10 admits that RapidShare is an interactive computer service (Statement of Genuine Issues 1) and offers no *admissible evidence* to contradict the evidence presented by RapidShare that its users, not RapidShare, upload whatever files are stored on the site (Statement of Genuine Issue 2) and that therefore P10's unfair competition and right of publicity claims, like its similar claims in *CCBill*, are preempted. P10's "additional material facts" are in fact **not material** because they do not contradict the evidence that RapidShare is a site that hosts content originating with third party "information content providers" (or users) and any material at issue was stored by users, not RapidShare. As set forth in the accompanying reply declarations of Christian Schmid and Lori Chang, most of the asserted "facts" in fact are *false* and are either based on unreliable or anonymous postings on third party websites -- which is not evidence -- or reflect affirmative misrepresentations (as in the case of some statements in the Zada declaration). Yet, even if true (which they are not), or provable in discovery (which they are not), the asserted additional "material facts" relate, if at all, to inducement, which might be relevant under copyright law but does not qualify as *development* under *Rommates.com* and other CDA case law.

# II. P10 CANNOT SHOW DISPUTED MATERIAL FACTS

## A. The Two Simple Facts That Establish CDA Preemption Cannot Be Reasonably Disputed.

The Ninth Circuit's decision in *CCBill* is clear: P10's claims are preempted under 47 U.S.C. § 230, which immunizes interactive computer services from liability based on user content. *Perfect 10, Inc. v. CCBill, LLC*, 488 F.3d 1102, 1118-9 (9th Cir.), *cert denied*, 128 S. Ct. 709 (2007). The two facts

1  necessary to establish preemption are so straightforward that P10 had no choice but to concede the first
2  (that RapidShare is an interactive computer service), and therefore focused on the second -- that all of
3  the allegedly unauthorized files at issue were uploaded by users, not RapidShare (in addition to filing a
4  huge amount of paper that is irrelevant to either point).

5        The declaration of Christian Schmid filed with the initial moving papers left little doubt that
6  *third-party users*, and not RapidShare itself, uploaded the alleged infringing files that underlie P10's
7  state claims for unfair competition and violation of rights of publicity.  *See* 6/11/10 Schmid Dec. (Doc.
8  No. 79-3), ¶ 2 (confirming that all of the files stored on RapidShare's website have been stored by users
9  and not RapidShare itself, except for two narrow categories, neither of which are at issue here).  P10
10 nonetheless accused Mr. Schmid of being "misleading" in his sworn testimony because the English
11 translation of the signed German declaration used the word "stored" instead of "upload."  *See* Opp. at 1.
12 There is no material difference between the two concepts.  Nonetheless, Mr. Schmid's reply declaration,
13 filed with this brief, *reiterates*:  No infringing files have *ever* been uploaded to RapidShare's website by
14 Christian Schmid, the company, or any of its employees.  Reply Schmid Dec., ¶ 2.  The allegedly
15 unauthorized files that P10 complains of were posted exclusively by third-party users, not RapidShare.
16 *Id.*  Accordingly, P10's state law claims are preempted by the CDA. *See CCBill*, 488 F.3d at 1118-19.

17 **B.    P10 Asserts "Facts" Which, Even if True, Do Not Amount to Development Under the CDA**

18       P10 incorrectly argues that the CDA only insulates passive websites.  However, the Ninth
19 Circuit, in the very case that P10 cites for this erroneous proposition, states unequivocally that section
20 230(c)(1) "by itself, shields from liability all publication decisions, whether to edit, to remove, or to
21 post, with respect to content generated entirely by third parties." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096,
22 1105 (9th Cir. 2009).  Indeed, the services offered by Yahoo are more interactive than RapidShare's.
23 The CDA likewise does not merely insulate interactive computer services from claims for defamation
24 (Opp. at 2) -- as P10 itself knows since the Ninth Circuit ruled that its right of publicity and unfair
25 competition claims were preempted by the CDA in *CCBill*.  *CCBill*, 488 F.3d at 1118.  The concept of
26 publication and speaking likewise are broadly construed.[1]

---

27  [1] For example, in *Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir.), *cert. denied*, 129 S. Ct. 600 (2008), the
28  Fifth Circuit rejected the assertion that MySpace could be held liable for failing to implement measures to that would have prevented a minor from being contacted by a predator.  The Fifth Circuit panel wrote

In *Roommates.com*, the Ninth Circuit ruled *en banc* that a roommate search service was entitled to CDA protection except to the extent that the site itself created the content. *Fair Housing Council of San Fernando Valley v. Roomates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008).  Thus, the defendant was not insulated from liability for writing the multiple choice questionnaire that forced users to identify categories alleged to violate housing laws, but was shielded from liability for any comments that users themselves wrote (even those arguably influenced or induced by the site itself based on its own content). The majority further rejected the argument that by encouraging some allegedly discriminatory preferences in its user form, Roommates.com encouraged further discriminatory preferences when it gave subscribers the opportunity to describe themselves in the "Additional Comments" section. The court held that "[s]uch weak encouragement cannot strip a website of its section 230 immunity, lest that immunity be rendered meaningless as a practical matter." *Id.* at 1174.[2]

Judge Kozinski made clear that promoting, encouraging or even tacitly assenting to illegal conduct does not bring an interactive computer service outside the CDA's ambit of protection.  He cautioned:

> Websites are complicated enterprises, and there will always be close cases where a clever lawyer could argue that something the website operate did encouraged the illegality. Such close cases ... must be resolved in favor of immunity, lest we cut the heart out of section 230 by forcing websites to face death by ten thousand duck-bites, fighting off claims that they promoted or encouraged or at least tacitly assented to the illegality of third parties. Where it is very clear that the website directly participates in developing the alleged illegality--as it is clear here with respect to Roommate's questions, answers and the resulting profile pages--immunity will be lost. But in cases of

---

that these "allegations are merely another way of claiming that MySpace was liable for publishing the communications and they speak to MySpace's role as a publisher of online third-party-generated content." *Id.* at 420.  See also *Doe IX v. MySpace, Inc.*, 629 F. Supp. 2d 663 (E.D. Tex. May 22, 2009); *Doe II v. MySpace, Inc.*, 175 Cal. App. 4th 561, 96 Cal. Rptr. 3d 148 (Cal. App. 2009) (holding MySpace exempt from claims based on minors who allegedly were abused by people they met on MySpace).  Likewise, in *Doe v. America Online, Inc.*, 783 So. 2d 1010 (Fla. 2001), the Florida Supreme Court held that section 230(c)(1) immunized AOL from a claim that the company should have been held liable because of abuse that resulted when a pedophile met the plaintiff's child in an AOL chatroom.

[2]  To further clarify the distinction drawn, Judge Kozinski offered that if Roommates.com had filtered for obscenity or spam it would not make any difference because "minor editing and selection..." would not change the outcome.  *Id.* at 1173 n.36. Similarly, Roommates.com would not be deemed the developer of discriminatory content "if it provided a free-text search that enabled users to find keywords in the 'Additional Comments' of others, even if users utilized it to search for discriminatory keywords." *Id.* at 1174 n.37.

> enhancement by implication or development by inference--such as with respect to the "Additional Comments" here--section 230 must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles.

*Id.* at 1174-75.[3]

Similarly, here, while P10 complains the RapidShare promoted or encouraged infringing conduct, the reality is that the content at issue was not created or developed by RapidShare.[4] It was stored by users and therefore RapidShare is exempt under the CDA.

P10 also suggests that payment for third party content somehow amounts to development, but case law is to the contrary. *See, e.g., Blumenthal v. Drudge*, 992 F. Supp. 44, 50 (D.D.C. 1998) (holding that merely because America Online paid Drudge for the content he produced for AOL did not make

---

[3] Other courts have also held that inducement alone is not enough. For example, in *Universal Commc'n Sys., Inc. v. Lycos*, 478 F.3d 413 (1st Cir. 2007) the First Circuit affirmed the dismissal of a claim under subpart (c)(1) over the plaintiff's objection that Lycos had "rendered culpable assistance" in creating the allegedly defamatory posts "through the construct and operation" of its website, including a feature that allowed a single individual to post under multiple screen names. *Id.* at 420. *See also Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256-58 (4th Cir 2009) (holding that website of consumer generated reviews was not a developer of content and thus was entitled to immunity under the CDA despite plaintiff's allegations that website solicited consumer complaints, steered them into specific categories designed to attract attention of class action lawyers, contacted customers to ask questions about their complaints and helped them draft or revise their complaints and promised customers financial recovery by joining a class action lawsuit, which the court characterized as nothing more than a website operator's "traditional editorial function").

[4] P10's reliance on a press release discussing the Watch List issued by the International Anti-Piracy Caucus of the United States Congress, is flawed. Notwithstanding that both the press release and the Congressional report are hearsay, P10 materially misrepresents that the report "identifies RapidShare as one of the six worst pirate websites in the world." Opp. at 8. The press release P10 cites to is not the actual report and does not reflect congressional findings. In fact, RapidShare is nowhere listed on the watch list and is not mentioned in the findings of the report. *See* Reply Chang Dec., ¶ 3, Ex. C. The reference to RapidShare in the press release was obviously inserted by lobbyists, and the RIAA's comments are no different from those made about YouTube in the Viacom case, where prior to filing suit, Viacom sent **more than 100,000** DMCA notices to YouTube and the General Counsel of Viacom asserted that "YouTube and Google stole hundreds of thousands of video clips from artists and content creators." *See* Reply Chang Dec., Ex. D. Yet, Judge Louis Stanton of the Southern District of New York ultimately granted summary judgment in favor of YouTube under the DMCA. *See Viacom Intern. Inc. v. YouTube, Inc.*, __ F. Supp. 2d __, 2010 WL 2532404 (S.D.N.Y. June 23, 2010).

The press release was also based on outdated information, in that the referenced German court opinions have been discredited in the law review article previously submitted to the Court (*see* 4/29/10 Raimer Dec. (Doc. 26-5), Ex. F) and by the more recent German appellate court decision finding RapidShare to be a legitimate business that is not liable for the alleged acts of infringement of its users (*see* 5/5/10 Raimer Dec. (Doc. 37-2), Ex. D). In any event, the watch list and the press release address copyright infringement and have nothing to do with unfair competition or rights of publicity.

AOL an information content provider). Similarly, in *Roommates.com* the website charged a fee, but this did not disqualify it for CDA immunity. Indeed, even in *CCBill* the defendant adult verification service charged a fee for its services. Simply because RapidShare offers premium accounts for a fee -- in addition to free accounts -- does not in any way disqualify it from the CDA.[5]

*Roommates.com* also underscores why RapidShare cannot lose CDA immunity by offering neutral tools such as its remote uploader feature, even if the tool potentially could be used for infringing purposes (which in actuality seems highly unlikely given that it allows a user to upload one file at a time, whereas the files identified by P10 appear to be primarily compressed RAR files *which could not have been uploaded by the tool*). Reply Schmid Dec., ¶ 8. The tool facilitates the uploading of files *by users* from other remote locations (such as an office server) to RapidShare's servers. For example, a user may use it to copy a file from the user's own website or a photograph from his or her Flickr account. *Id*. P10's assertion that RapidShare itself makes these copies by offering the tool is incorrect as a matter of law under the CDA. Judge Kozinski explained that a site cannot be held liable merely for providing neutral tools such as the remote-upload function:

> To be sure, the website provided neutral tools, which the anonymous dastard used . . . but the website did absolutely nothing to encourage the posting . . . --indeed, the ... posting was contrary to the website's express policies. The claim against the website was, in effect, that it failed to review each user-created profile to ensure that it wasn't defamatory. This is precisely the kind of activity for which Congress intended to grant absolution with the passage of section 230.

*Roomates.com*, 521 F.3d at 1171-72.[6]

---

[5] P10 reargues what the Court previously rejected in denying the PI Motion, concluding that RapidShare's offer of paid premium services (in addition to free services) does not create liability for direct copyright infringement. *See* Order (6/11/10 Chang Dec. (Doc. 79-3), Ex. 5) at p. 5. RapidShare does not sell unlicensed content, and its premium services does not render it a paysite. Reply Schmid Dec., ¶ 3. Further, in the multiple declarations filed with the Court, RapidShare has provided ample testimony under oath that it does not operate, sponsor, or provide content to filestube.com, downloadnow.net, mydownloader.com, zevera.com, or any other third-party websites. *Id.* at ¶ 5; *see also* 4/29/10 Schmid Dec. (Doc. 26-5), ¶¶ 3-5; 5/5/10 Schmid Dec. (Doc. 37-2), ¶ 2.

[6] *See also Goddard v. Google, Inc.*, 2009 WL 2365866 (N.D. Cal. 2009) (dismissing with prejudice plaintiff's complaint based on alleged harm from click fraud, holding that Google's Keyword Tool was a neutral tool that could not subject Google to liability for developing whatever word combinations users generated with the tool); *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1198 (N.D. Cal. 2009) ("[T]the provision of neutral tools generally will not affect the availability of CDA immunity 'even if a service provider knows that third parties are using such tools to create illegal content.' [Citation omitted.] As a result, a plaintiff may not establish developer liability merely by alleging that the operator

1    Notice likewise is not enough to bring an interactive computer service outside the scope of the CDA. *E.g., Doe v. America Online, Inc.*, 783 So. 2d 1010 (Fla.), *cert. denied*, 534 U.S. 891 (2001) (holding that the CDA preempted a negligence claim even where the defendant had actual notice).

    Judge Kozinski underscored that under *Roommates.com*, an Internet site may be "held liable only for their own conduct; there is no vicarious liability for the misconduct of their customers." *Id.* at 1169 n.24; *see also, e.g., Doe IX v. MySpace, Inc.*, 629 F. Supp. 2d 663 (E.D. Tex. May 22, 2009) (dismissing plaintiff's complaint, noting that in *Roommates.com* the website required its users to provide certain information as a condition of use, whereas MySpace users were not required to supply additional information to their profiles); *Doe II v. MySpace, Inc.*, 175 Cal. App. 4th 561, 96 Cal. Rptr. 3d 148 (Cal. App. 2009) (concluding that in Roommates the lawsuit revolved around a portion of profiles generated by responses to a mandatory questionnaire, whereas here the responses were not at issue).

    RapidShare gives its users unfettered discretion to upload files of any type or size. Under *Roommates.com* it is exempt from liability. As explained in *Doe II*:

> *Roommates.com* presents us with two ends of the spectrum with respect to how much discretion a third party user has in the content he posts on the site. A subscriber writing in the additional comments section is given almost unfettered discretion as to content [and the interactive computer service therefore was exempt from liability under the CDA]. On the other hand, the subscriber must select one answer from a limited number of choices in the question and answer profile section [for which liability was imposed].

96 Cal. Rptr. 3d at 158.   RapidShare does not provide the content that its users upload and therefore cannot be held liable for state law claims based on their content under the CDA.

## III.   RESPONSE TO PERFECT 10'S OTHER IMMATERIAL ATTACKS

---

of a website should have known that the availability of certain tools might facilitate the posting of improper content. **Substantially greater involvement is required**, such as the situation in which the website 'elicits the allegedly illegal content and makes aggressive use of it in conducting its business'" (citing *Roomates.com*, 521 F.3d at 1172) (emphasis added)).

    P10 has not shown that the remote uploader tool in fact has been misused. Yet, even if it was, RapidShare is no more responsible for a hypothetical user's alleged misuse of the tool than Xerox is when someone makes an unauthorized photocopy of a P10 image from a Xerox machine or uses a Sony betamax recorder (or its modern equivalent, the DVR) to make an unauthorized copy of a motion picture. It is the user that is doing the copying. Regardless, the question of "Who made the copies?" is an issue of *copyright* infringement. *See Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 126 (2d Cir. 2008). Under the CDA, providing a tool does not make an interactive computer service into an information content provider. *Roommates.com, supra; Goddard, supra.*

While not material to the motion, P10 asserts a number of other baseless allegations that are all diversions intended to obfuscate the narrow issues presented by the motion. These attacks are refuted in the accompanying reply declarations, though because some are obviously intended to prejudice the Court with erroneous facts, they are dealt with summarily here.

The most egregious concern the six DMCA notices (and the scores of other notices relating to non-P10 copyrights) that P10 sent *after* it lost its PI Motion and which identified links, many of which were dead links. *See* Hartojo Dec., ¶ 2. P10 improperly sought to manufacture evidence that it now purports to rely upon by including in these *ex parte* communications sent directly to RapidShare's Abuse Department the assertion that RapidShare would be deemed to have made certain admissions if it failed to counter certain assertions by particular dates. Reply Chang Dec., ¶ 5, Ex. E; *See* Zada Dec., Ex. 3.[7] Obviously, P10 cannot circumvent the Federal Rules of Civil Procedure and Hague Convention rules through electronic (and largely improper *ex parte*) requests for admission. In fact, P10 materially misrepresents that RapidShare refused to provide user information relating to these alleged files. RapidShare's counsel repeatedly reached out to P10 counsel to discuss discovery and even proposed an early meet-and-confer prior to the Rule 26 conference. *See* Reply Chang Dec., ¶ 5, Ex. E. P10, however, preferred to try to fabricate its own evidence through these improper communications.[8]

Similarly, P10's "evidence" that RapidShare allegedly is not a storage site, while not material, is equally misleading. For example, Dr. Zada submits a 5-year old rapidshare.de posting (Ex. 22) from early 2005 (soon after its launch) to dispute that RapidShare allows backup of personal files, but

---

[7] This is exactly the type of abusive tactics that Judge Matz previously admonished P10 for in the *Google* case as "slashing claims" (4/29/10 Chang Dec. (Doc. 26-7), Ex. H ("[t]his practice …of making all these slashing claims and then saying prove us wrong is not quite the way it's supposed to work")) and why Judge Matz ruled in P10's *Amazon.com* case that notices sent after a lawsuit was filed are legally irrelevant. *Perfect 10, Inc. v. Amazon.com, Inc.*, 2009 WL 1334364 (C.D. Cal. May 11, 2009)

[8] These notices (and others) prove nothing other than P10 had been hording the links well before it filed the PI Motion, that the number of files at issue is a tiny fraction of the numbers previously represented to the court and that most of the files identified by P10 in any case had already been detected and taken down by RapidShare, although none of this evidence is material to this motion.

Of the more than 50 so-called "unfair competition notices" (*i.e,* for content it does not own), almost all of which were sent within one business day of P10 filing its Opposition to this Motion, many notices also contained dead links, in some cases to files removed by RapidShare a year ago in 2009. Hartojo Dec., ¶ 3; Reply Chang Dec., ¶ 7. It is clear from these non-DMCA compliant notices that Dr. Zada does not review the files he asserts to be infringing, underscoring the lack of veracity of statements made ostensibly under penalty of perjury. *See* Reply Chang Dec., ¶ 5; Objections to Zada Dec.

undoubtedly knew (since it had to search for evidence that far back in time) that RapidShare has offered permanent storage to premium members continuously since *late 2005*. Reply Schmid Dec., ¶ 6, Ex. 1.[9]

Further, the thumbnail images that both Dr. Zada and P10's purported "expert" witness, Sean Chumura (who is in fact a P10 employee), attach to their respective declarations are printouts from their own premium accounts. The thumbnails (such as those reproduced as Exhibit 15 to Dr. Zada's declaration) are not publicly displayed, but rather visible to only the user, and in this case, P10 employees; and that they were visible to only Dr. Zada himself underscores that he (the user) is the one doing the uploading. RapidShare itself maintains the privacy of user accounts, and these thumbnails are not publicly disclosed by RapidShare. Reply Schmid Dec., ¶ 11.[10]

While these issues might be relevant under copyright law, they do not establish either that RapidShare itself uploaded files or that it developed the content uploaded by users.[11]

## IV. P10'S RULE 56(f) REQUEST IS PREMISED ON SPECULATION AND RELEVANT, IF AT ALL, ONLY ITS COPYRIGHT CLAIMS, AND THEREFORE MUST BE DENIED

As P10 aptly states in its opposition, summary judgment motions may be continued only when a continuance is "***needed to obtain facts essential*** to preclude summary judgment." *California Dep't of Toxic Substances Control v. Campbell,* 138 F.3d 772, 779 (9th Cir 1998) (affirming denial of a Rule 56(f) request because the sought-after facts were not essential to opposing summary judgment)(emphasis added). Indeed, in *Campbell*, the Ninth Circuit made clear that summary judgment

---

[9] Also, the assumption that RapidShare encourages infringement because it does not block users coming from websites such as filestube.com is equally flawed. It is common knowledge that the blocking technique referenced in Mr. Chumura's declaration would not be effective, previously was tried by RapidShare and can be easily circumvented. *See* Reply Schmid Dec., ¶ 6.

[10] A search engine such as Google, however, potentially could locate a linklist if a user posted his or her linklist on a third-party website. Thus, unless Dr. Zada himself publicized the linklist he apparently created with a RapidShare premium account, it would ***not*** be visible to anyone other than himself.

[11] All of the issues P10 raises pertain only to its copyright infringement claim, and therefore supports the additional conclusion that these state claims are preempted under the federal copyright law as well. *See Penpower Tech. Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d 1083, 1091-92 (N.D. Cal. 2008) (claim for unfair, unlawful, and fraudulent business practices under Cal. Bus. and Prof. Code § 17200 preempted by federal Copyright Act because claim was based on rights equivalent to those protected by federal copyright laws and falls within proper subject matter for copyright protection where defendant allegedly reverse-engineered plaintiff's Chinese handwriting software); *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1190-92 (C.D. Cal. 2001) (state law claim for breach of confidence preempted by federal Copyright Act where defendants allegedly took plaintiff's submissions and unlawfully copied the contents and the ideas therefrom in making the motion picture "The Peacemaker").

motions may not be continued unless P10 shows "(1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." *Id*. at 779; *Hancock v. Montgomery Ward Long Term Disability Trust*, 787 F.2d 1302, 1306 n.1 (9th Cir. 1986) (opposing party bears the burden of showing what facts she will hopes to discover to raise a material fact). Moreover, the Ninth Circuit has emphasized that "denial of a Rule 56(f) application is proper where it is clear that the evidence sought is almost certainly nonexistent or is the object of pure speculation." *Id*., at 780 (citing *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991) (denying 56(f) request because of failure to show "the existence of additional essential and discoverable evidence.").[12] Further, 56(f) continuances should be denied when the requesting party would be embarking on a "fishing expedition" or is seeking discovery as "merely as a strategic maneuver to delay an adverse ruling on the merits and to impose unnecessary costs." *See Ulloa v. American Airlines*, 1995 U.S. Dist. LEXIS 21951 (N.D. Cal. Nov. 16, 1995).

Here, the discovery sought is relevant, if at all, to P10's copyright claims, not the applicability of the CDA, as underscored in the preceding sections of the brief and the accompanying Declaration of Lori Chang. It is apparent that P10 had no basis in fact for asserting that RapidShare itself posted files on the RapidShare site -- it simply pled the additional facts necessary to pursue the very same unfair competition and right of publicity claims that the Ninth Circuit previously ruled were preempted in *CCBill*. Its arguments for discovery are based on speculation and seek a fishing expedition -- knowing full well that the cost of discovery to RapidShare will be at least ten or twenty times greater (or more) if

---

[12] Additional discovery under Rule 56(f) is not guaranteed in every circumstance and if granted, such discovery should be less extensive in scope than the general discovery obtainable under Rule 26. *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 298 (1968) (affirming summary judgment and denial of petitioner's request under Rule 56(f) for additional document and deposition discovery). In particular, when a movant for additional discovery under Rule 56(f) has already had significant earlier discovery, but has been unable to show specific facts that present a genuine issue for trial from such discovery, the Supreme Court has indicated that additional discovery "would be merely a fishing expedition and would unduly harass respondent." *Id*. at 270. When granting additional discovery under Rule 56(f), courts have actively narrowed the additional discovery requests as necessary to meet the First Nat. Bank standard. *See Aristocrat Technologies v. Int'l Game Tech., Inc.*, 2009 WL 1331095, *2 (N.D. Cal. 2009) (unreported) (narrowing scope of 56(f) request for additional production from "all documents" to "documents sufficient to show," among other narrowing changes to scope of additional discovery requests) (citing *First Nat. Bank*, 391 U.S. at 298).

every one of over 400 million files is at issue (as part of a theory of unfair competition), rather than merely the approximately 2,200 files alleged to have infringed copyrights actually allegedly owned by P10.

There only two undisputed facts relevant to the present motion. P10 has already conceded one (that RapidShare is an interactive computer service.). The other undisputed fact -- that the files underlying P10's unfair competition and right of publicity claims were uploaded by users, not RapidShare -- is evidenced by the two declarations submitted by RapidShare's Verwaltungsratspraesident. P10 may not like this fact, but it has no basis (other than rank speculation) for challenging it.[13] Moreover, its suggested discovery requests either relate to questions of *copying* -- which would largely be preempted by the Copyright Act -- or involve speculation about misconduct which, even if true, would not qualify as *development* under the CDA. *Roommates.com* and the other cases cited in section II(B) make clear that development of content (such as forcing users to select content to upload written by the site itself) is not the same as providing neutral tools or unfettered user discretion on what to upload, which is not actionable, or mere encouragement, which is the focus of P10's requested discovery but also is not actionable under the CDA. Hence, the discovery sought would not defeat summary judgment on P10's preempted right of publicity and unfair competition claims.

DATED:  July 6, 2010                    GREENBERG TRAURIG, LLP


                                         By: s/Ian C. Ballon
                                            Attorneys for defendant and counterclaimant
                                            RapidShare AG
                                            Email: ballon@gtlaw.com

---

[13] For example, as support for its plea for discovery on the identify of RapidShare users, P10 claims that RapidShare must have "initially loaded its servers with the illegal materials" in order to grow to "astronomical proportions." *See* Benink Decl., ¶ 5. These facts simply do not exist. *See* 6/11/10 Schmid Decl., ¶ 2. And even if they did, such conduct in 2005 when the site was launched would be barred by the applicable statute of limitations. *See* Cal. Bus. & Prof. Code § 17208 ("Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued"); Cal. Code Civ. Proc. § 335.1 (two year statute of limitations for rights of publicity actions).